UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANTHONY TELLIS and BRUCE CHARLES on behalf of themselves and all others similarly situated | JUDGE ELIZABETH E. FOOTE<br>USMJ MARK L. HORNSBY |
| VERSUS | |
| JAMES M. LEBLANC, Secretary of the Louisiana Department of Public Safety and Corrections, JERRY GOODWIN, Warden of David Wade Correction Center COL. LONNIE NAIL; DOCTOR GREGORY SEAL; ASSISTANT WARDEN DEBORAH DAUZAT; STEVE HAYDEN; AERIAL ROBINSON; JOHNIE ADKINS; and THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS | CIVIL ACTION<br>NO.: 5:18-CV-00541-EEF-MLH |

**DEFENDANTS' POST-HEARING BRIEF IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Defendants offer the following Post-Hearing Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction [R. Doc. 45]. The Plaintiffs have failed to carry their burden. As such, the Defendants respectfully request that this Honorable Court deny Plaintiffs' request for a preliminary injunction.

**LAW AND ARGUMENT**

In order to be entitled to injunctive relief, Plaintiffs' had the burden of showing "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Tate v. LeBlanc*, No. 13-CV-1253-P, 2014 WL 6455794 at *2

(W.D. La. 2014) (citing *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)). The Plaintiffs failed to carry their burden.

## PLAINTIFFS HAVE FAILED TO CARRY THEIR BURDEN

The Defendants demonstrated that the video sought by the Plaintiffs would not capture any material relevant to this matter. First, this lawsuit is about mental health care at DWCC. The Plaintiffs made no showing of irreparable harm regarding their essential claims. In fact, none of their presentation demonstrated how tier footage would be relevant to mental health care at DWCC. Second, the Plaintiffs failed to address the real concerns raised by their overbroad request to maintain terabytes and terabytes of video. Jacob Trupiano testified that the amount of video the Plaintiffs seek to judicially compel the Defendants to create and store would be approximately 15 terabytes every two weeks. The Plaintiffs identified no obligation for DWCC to utilize tier cameras and have cited no case law in support of their overreaching request.

Third, the Plaintiffs went beyond relevance and attempted to conflate issues by invoking the untested allegations of spoliation of evidence. The testimony was unrebutted that the Defendants have provided information—including video—to all of the specific requests made by the Plaintiffs. During the time when the cameras were operational, any requested video that had not been overwritten was provided to the Plaintiffs. With regard to the system itself, the Plaintiffs were allowed to inspect the system and make bit-for-bit copies of the hard drives as they existed at the time they ceased recording. All video that was contained on those drives has been acquired by the Plaintiffs through their expert. There can be no prejudice because the Plaintiffs have all of the video that existed at the time of their request and all of the video stored on the cameras at the time they ceased to record. Since DWCC has provided all video that was available, Plaintiffs have failed to demonstrate irreparable harm.

Fourth, the tier cameras were for administrative convenience to ensure DWCC's officers round at the appropriate times. Given that DWCC now has swipe card readers in the tiers of buildings N1–N4, they no longer serve their essential purpose. Further, two of the hard drives servicing the cameras are corrupted and all parties agree that they can no longer be used on that system.

Rather than replace the hard drives for a nonessential system, the Defendants simply did not restore the recording capability of the tier cameras. The United States Supreme Court has stated that prison administrators are to be accorded "wide-ranging deference in their adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain internal security." *Block v. Rutherford*, 468 U.S. 576, 584–85 (1894); *Roberts v. Vannoy*, No. 16-CV-600-JWD-EWD, 2017 WL 2256962, at *2 (M.D. La. 2017). As a result, federal district courts should not allow themselves to become "enmeshed in the minutiae of prison operations." *Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Bell v. Wolfish*, 441 U.S. 520, 561 (1979)); *Roberts v. Vannoy*, No. 16-CV-600-JWD-EWD, 2017 WL 2256962, at *2 (M.D. La. 2017). Defendants respectfully request that this Honorable Court decline the Plaintiffs' invitation to become "enmeshed in the minutiae of prison operations."

## THE TESTIMONY AND EVIDENCE JUSTIFIES DENIAL OF THE REQUEST FOR INJUNCTIVE RELIEF

Plaintiffs' request for injunctive relief should be denied because it would create a tremendous burden on DWCC. The testimony was clear that the tier cameras record virtually all the time since the installation of oscillating wall-mounted fans that were installed in the tiers of N1–N4. As a result, terabytes of irrelevant video had to be stored by DWCC. Mr. Trupiano's uncontroverted testimony established that it takes many hours to copy video from the camera system. In fact, Plaintiffs' technology consultant—a self-professed data expert— testified it took

3

him 40 hours to make the copies of the hard drives in November of 2017—hardly the painless process he insists this endeavor would be.

Beyond that, Mr. Trupiano and the documentation of the video capture software confirm that the tier cameras cannot record to multiple storage devices at one time. As such, recording while copying this data is a "three hard drive" process—one needs the hard drive with the data to be copied, another hard drive to copy the data to, and a third hard drive so that camera footage during copying can be captured. Though the Plaintiffs' data professional disagreed, he admitted that he had not inspected DWCC's system and he was not familiar with the software used by DWCC. The tier camera system is simply not built for the large scale data transfers the Plaintiffs seek to have this Court order. This burden is significantly increased by the fact that the Plaintiffs' request of creating and copying all tier video is not tailored at all.

Fed. R. Civ. P. 26(b)(2)(B) provides that "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." The Defendants have demonstrated the tremendous burden and cost associated with the Plaintiffs' request that DWCC create and store voluminous video data.

The Plaintiffs spent the bulk of their presentation reviewing videos taken from DWCC officers' body cameras. This misguided focus was intended to show hypothetical issues the Plaintiffs have with the body cameras—such as framing issues and the ability for officers to turn the cameras on and off. The law is clear that in order to be entitled to an injunction, "'[s]peculative injury is not sufficient.'" See *Warren v. Gusman*, No. CV 16-15046, 2017 WL 1373875, at *18 (E.D. La. 2017). The presentation completely missed the issues before this

Honorable Court. The request for a preliminary injunction is aimed at forcing DWCC to create and record low resolution, audioless video of the tiers of buildings N1–N4.

Plaintiffs pointed to sounds of cameras being deactivated that were, incidentally, captured by other officers' body cameras that continued to run. Most importantly for the Court, though, the interactions captured by the body cameras would not have been captured by the tier cameras. These incidents where Plaintiffs point to irrelevant "gaps" in footage took place in the cell and in the lobby of the building, areas where the tier cameras do not provide footage. As indicated by the Defendants in their opposition, the tier cameras do not add any clarity to the state of mental health care at DWCC. The tier cameras would not have captured additional views of the incidents presented for the Court. The videos appeared to be attempts to bring unrelated issues of discipline before this Court. In any event, the Plaintiffs' presentation certainly did not demonstrate irreparable harm on behalf of the Plaintiffs.

After the weakness of their presentation was demonstrated, the Plaintiffs now seek to argue that tier cameras might show cell interactions and may indicate how long DWCC officers are in a given tier. [R. Doc. 83 at 8.] Implicit in this new claim is that, without the tier cameras, these details cannot be determined. That is simply incorrect. Beyond the swipe cards, both the officers and the offenders know these details. The Plaintiffs argument strengthened Defendants claims that their request is an overbroad fishing expedition. Instead of focusing on alleged incidents of force on offenders, now the Plaintiffs argue that other interactions which occurred much earlier must be examined. The rings of inquiry will continue to expand to video further and further in the past which the Plaintiffs hope they can characterize as some grave misdeed. The preservation request is not sufficiently tailored—indeed, it is not tailored at all—toward

seeking demonstrable relevant data. Instead, it appears to be an attempt to *ex post facto* call in to question the maintenance of order and discipline at DWCC.

The supporting offender testimony also lacked credibility. Offender Blanchard claims to be the victim of retaliation, despite admitting in Court that he was violating DWCC's rules on noise. Offenders Blanchard and Ricard were both caught on the officers' body cameras failing to comply with multiple orders given by DWCC officers. If retaliation was occurring as is being alleged, it is telling that the Plaintiffs provided no evidence related to the named plaintiffs, offenders Tellis and Charles. It strains reason to insist that an offender mentioned in a complaint was singled out for retaliation, while the named plaintiffs received no such treatment.

The Plaintiffs further make the nonsensical argument that offenders are justified in not complying with DWCC officers' commands if they feel like they are being targeted. [R. Doc. 83 at 4.] If an offender is truly concerned about reprisal, it does not make sense to purposefully not comply with verbal orders. The evidence is clear that the videos of the incidents (which would not have been captured by the tier cameras in any event) were not acts of retribution; rather, they were cases of offenders simply creating a self-fulfilling prophecy. The offenders are allegedly concerned about retaliation, yet they continuously refused to follow DWCC rules by failing to comply with the officers' verbal orders and using vile language. Another detail casting extraordinary doubt on offender Blanchard's testimony is that he claims to have been taunted by Master Sergeant Davis, yet Master Sergeant Davis was not involved or even present during the incident captured by the officers' body cameras. [*See* R. Doc. 83 at 8.]

Offender Ricard's testimony was even less believable. Offender Ricard is heard to yell out about having his head pushed into a wall as the body camera is running. No head shove can be observed on the video. Now the Plaintiffs are claiming this alleged act occurred in the cell—

again, where the tier cameras provide no view. The Plaintiffs also ignore that it was the actions of offender Ricard violently thrashing against DWCC officers that dislodged the body camera resulting in it briefly ceasing to record.

Without any demonstrable foundation, Offender Ricard testifies that a shower causes pain when chemical agents are used on an offender. The shower (and the eyewash) is intended to remove the chemical agent and assist in recovery. The Plaintiffs made no showing on proper foundation for the counter-intuitive assertion that a shower enhances the effect of the use of chemical agents.

The Plaintiffs also offered footage regarding offender Henry. While the footage was viewed by this Honorable Court, the Plaintiffs failed to demonstrate any connection to a specific incident. Beyond that, the Plaintiffs simply offered that the body cameras did not have offender Henry in the frame. The Plaintiffs again focus their argument on a so-called objective record. [R. Doc. 83 at 10.] That is not the standard at issue. The standard is irreparable harm. If this Court were to accept the Plaintiffs' argument that creating a so-called objective record justifies the imposition of a costly injunction, the argument would support an injunction requiring DWCC to run the body cameras 24-hours a day and placing cameras within the cells themselves.

Not only did Plaintiffs fail to show irreparable harm, but the Defendants demonstrated that the burden imposed by Plaintiffs' request for an injunction would be significant in terms of both time and cost. Should this Court find injunctive relief appropriate, significant security should be required to be furnished by the Plaintiffs. If the tier camera footage is as significant as the Plaintiffs contend (even though they could not demonstrate that fact at the hearing), the Plaintiffs should not object to this Court requiring significant security substantiated by the record.

## CONCLUSION

The Plaintiffs are not entitled to injunctive relief on the showing made. The Plaintiffs failed to carry their burden. The evidence and testimony showed that the tier cameras would not capture the incidents the Plaintiffs put before the Court. Plaintiffs did not demonstrate that the tier cameras are relevant to mental health care at DWCC, they did not show irreparable harm, their plan was demonstrated to be overbroad and unreasonably burdensome, and they did not rebut Defendants' contentions on cost or security. The administration of a correctional facility is given wide-ranging deference, and the decision to discontinue recordings of the tiers in buildings N-1 through N-4 is within that discretion. As a result, the Defendants respectfully request that this Honorable Court deny the Plaintiffs' request for injunctive relief.

Respectfully Submitted:

**JEFF LANDRY,
ATTORNEY GENERAL**

KANTROW, SPAHT, WEAVER & BLITZER
(A PROFESSIONAL LAW CORPORATION)
445 North Boulevard, Suite 300 (70802)
P. O. Box 2997
Baton Rouge, Louisiana 70821-2997
Telephone: (225) 383-4703
Facsimile: (225) 343-0630

By: /s/ Randal J. Robert
    Randal J. Robert (#13800)
    Connell L. Archey (#29992)
    Keith J. Fernandez (#33124)
    George P. Holmes (#36501)
    *Special Assistant Attorneys General*
    Email: randy@kswb.com
           connell@kswb.com
           keith@kswb.com
           george@kswb.com

    Margaret A. Collier (#33790)
    Assistant Attorney General
    Louisiana Department of Justice

Civil Division
P.O. Box 94005
Baton Rouge, LA 70804-9005
Telephone: (225) 326-6000
Fax: (225) 326-6098
Email: collierma@ag.louisiana.gov

Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of June, 2018, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

                /s/ Randal J. Robert
                Randal J. Robert