UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ANTHONY TELLIS, ET AL.             CIVIL ACTION NO. 18-cv-0541

VERSUS                                JUDGE ELIZABETH E. FOOTE

JAMES M. LEBLANC, ET AL.          MAGISTRATE JUDGE HORNSBY

# ORDER

Before the Court is the Report and Recommendation of the Magistrate Judge on Plaintiffs' motion for a preliminary injunction ordering Defendants to reactivate the recording capability of the tier cameras in four housing units at David Wade Correctional Center ("DWCC"). [Record Document 93]. The Court has thoroughly reviewed the record, including Plaintiffs' written objections and Defendants' response. [Record Documents 96 and 101]. The Court **ADOPTS** the factual findings of the Magistrate Judge. The Court **CONCURS** with the Magistrate Judge's presentation of the scope of this litigation. Although the Court **CONCURS** with the Magistrate Judge's ultimate recommendation to deny Plaintiffs' motion, the Court **DECLINES TO ADOPT** his reasoning that the motion should be denied because granting it would require the creation of evidence.

At its heart, Plaintiffs' motion seeks a discovery order. Under the discovery rules:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Although a motion for class certification is pending, [Record Document 2], at present there are only two plaintiffs in this case: Anthony Tellis and Bruce Charles, [Record Document 1 at 3]. The Court is aware that the parties have agreed that merits discovery and class discovery will overlap in this case. [Record Document 52 at 2]. The Court also acknowledges that a certain expansiveness of discovery may be necessary pre-certification in order to identify actual or potential class members. Nevertheless, this Court finds that video footage from every tier camera in the four DWCC housing units at issue is disproportionate to the present needs of this case.

At the preliminary injunction hearing, Plaintiffs primarily presented the tier cameras as a means to more fully develop their theory that DWCC correctional officers use excessive force against potential class members and retaliate against them for their participation in this litigation. [Record Documents 82 and 93 at 11]. While this Court must "find" the facts necessary to certify Plaintiffs' proposed class, the class certification hearing for which the parties are gathering evidence will "not be [a] mini-trial[] on the merits of the class or individual claims." *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974)). The requested footage appears most relevant to demonstrating that retaliation in fact occurred, which is an issue for a later stage of litigation. To the extent that claims of excessive force and retaliation are relevant to class certification, Plaintiffs have access to other sources of information that, while not necessarily providing information identical to that available from the tier cameras, nevertheless convey sufficient information at this stage of litigation. Such sources may include but are not limited

to body camera footage, tier camera footage from the suicide-watch cells, swipe card data, unusual occurrence reports, administrative remedy procedure requests and rulings, medical records, and statements or testimony from inmates themselves.[1]

The tier cameras are installed and operational as live-feed cameras; they are capable of recording footage, but this capability has been deactivated. [Record Document 93 at 5]. In order for discovery of recorded footage to occur, the recording capability must be restored and a system developed to transmit the footage to Plaintiffs; these facts increase Defendants' burden of producing the discovery.[2] Additionally, as the Magistrate Judge noted, any information provided by tier camera footage is not central to this case, which primarily concerns the adequacy of the mental health care provided at DWCC. [*Id.* at 11]. The Court thus distinguishes the requested footage from other requests for global information about the population of inmates in the four housing units, such as Plaintiffs' request for the medical records for all prisoners who are or were housed in the relevant tiers. [Record Document 97 at 2]. The latter request is directly relevant to identifying the members of the proposed sub-class of inmates with disabilities related to mental health or who are perceived as having such disabilities. [Record Document 1 at 43].

Therefore, because Plaintiffs' discovery request is disproportionate in light of the posture of this litigation, Plaintiffs' motion for a preliminary injunction [Record Document

---

[1] The Court lists these sources of information by way of example only and makes no finding that any of them is, in fact, discoverable.

[2] The Court notes that the parties continue to disagree significantly regarding the extent of this burden in terms of both cost and employee time. [Record Document 93 at 7–8].

45] is **DENIED** without prejudice to being re-urged following the Court's decision on Plaintiffs' class-certification motion. The Court offers no opinion as to whether a more focused discovery request related to the tier cameras might be appropriate pre-certification. The present ruling only rejects, at this stage of litigation, Plaintiffs' request for recorded footage from every tier camera in the four housing units.

The Court would make a few observations to assist the parties should this issue be re-urged. First of all, the preliminary question is whether recordings from the tier cameras are, in fact, discoverable; this determination is controlled by the standard in Rule 26(b) of the Federal Rules of Civil Procedure. If tier camera recordings are discoverable, then the Court believes that the proper procedural vehicle for Plaintiffs' request is not a motion for a preliminary injunction, but rather a motion for an order requiring preservation of evidence. *See Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 433 (W.D. Pa. 2004) (citing *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 139 n.8 (2004)). DWCC is not being asked to install cameras that do not exist; the cameras are on the tiers and are presently creating digital data that is transmitted to monitors inside DWCC. The only issue is that the data created by the cameras is evanescent. Thus, what is being asked of Defendants is not to create data but rather to preserve data that would otherwise vanish.

The Court also believes that the three-prong test of *Capricorn Power Co. v. Siemens Westinghouse Power Corp.* may be an appropriate legal standard under which to evaluate a request to require Defendants to reactivate the tier cameras' recording capabilities because

the *Capricorn* test is a standard for preservation orders. *See id.* at 433–34. Under *Capricorn*, a court should decide a motion for preservation by evaluating the following factors:

> 1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; 2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and 3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition or contents, but also the physical, spatial and financial burdens created by ordering evidence preservation.

*Id.* Because the Court denies Plaintiffs' motion, the Court declines to decide at this time whether the *Capricorn* test is, in fact, the correct standard in this matter.

Nevertheless, the Court does find that the alternative tests proposed by the parties are unsuitable. As the Magistrate Judge noted, the standard four-prong test for a preliminary injunction involves considerations of a likelihood of success on the merits and of the public interest that are not relevant in the context of discovery. [Record Document 93 at 9]. Thus, to the extent that they still maintain it, the Court rejects Defendants' contention that the four-prong injunction test applies. [Record Documents 49 at 5 and 101 at 6]. Plaintiffs' reliance on Rule 37(e) of the Federal Rules of Civil Procedure is also unavailing. [Record Document 96 at 5]. Rule 37(e) concerns sanctions for destroying or refusing to produce electronically stored information that "should have been preserved." Fed. R. Civ. P. 37(e). Because the rule presupposes that the missing information was discoverable, the rule does not address either of the questions actually posed by Plaintiffs' motion: whether the tier camera footage is discoverable at all and whether Defendants can be ordered to reactivate the cameras' recording capabilities. Indeed, the cases Plaintiffs cite in support of their

argument that Rule 37(e) controls this issue all concern trial-related sanctions following a failure to produce discovery, not orders requiring production of discovery or the preservation of material. *See Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1151 (N.D. Cal. 2012) (granting a motion for an adverse inference instruction); *Linde v. Arab Bank, PLC*, 269 F.R.D. 186, 205 (E.D.N.Y. 2010) (precluding certain evidence and argument, deeming certain facts admitted, giving an adverse inference instruction, and awarding costs and attorney fees); *Gen. Atomic Co. v. Exxon Nuclear Co.*, 90 F.R.D. 290, 308–09 (S.D. Cal. 1981) (designating certain facts presumed, precluding certain evidence, and awarding attorney fees and expenses).

Second, Defendants repeatedly complain that Plaintiffs' proposal would require DWCC to "provid[e] full backups of its camera system to an adversary in litigation without limit and without the capability to store the information itself." [Record Document 49 at 12]. The choice to retain a copy of material turned over in discovery belongs to the producing party; hence, any expense associated with Defendants maintaining their own copy of any video footage cannot be taxed to Plaintiffs. Additionally, Warden Goodwin made the decision to deactivate the cameras' recording capabilities. [Record Document 93 at 5]. This Court can only conclude from his decision that Defendants do not require recordings from the tier cameras in order to efficiently and safely operate the prison. Hence, it is unclear how the operation of DWCC is impacted in any way by Defendants' inability to maintain copies of recordings that DWCC's own warden does not believe are necessary.

Third, although the Court concurs with the Magistrate Judge's finding that the body camera footage is of superior quality in that it is in high-definition and includes audio, [*id.* at 6–7], the fact that individual DWCC employees must activate the body cameras creates the possibility of intentional or accidental failure to activate them and thus to capture certain uses of force against prisoners with mental illnesses. Although the issue of the use of body cameras is not before this Court at this time, the Court hopes that DWCC continues to provide training and oversight to ensure that whatever body-camera policies Defendants determine are appropriate for safe and efficient operation of DWCC are <u>consistently followed</u> throughout the pendency of this litigation.

Finally, the Court reiterates the Magistrate Judge's observation that the issue of spoliation is not presently before the Court. [*Id.* at 11]. Although the Court finds that recorded footage of <u>all</u> of the tier cameras is not presently discoverable given the procedural posture of the case and the current state of the cameras' recording capability, this ruling should not be taken to imply that specific footage that has not been or will not be recorded or that has been destroyed may not be the appropriate subject of a spoliation motion.

Therefore, **IT IS ORDERED** that Plaintiffs' Motion for Preliminary Injunction [Record Document 45] is **DENIED** without prejudice to being re-urged as a motion for a preservation order should this Court grant Plaintiffs' class certification motion.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the ____ day of __November__, 2018.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE

7