UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ANTHONY TELLIS and BRUCE           *      CIVIL ACTION NO.:
CHARLES, on behalf of themselves   *      5:18-CV-00541-EEF-MLH
and all other similarly situated prisoners   *
at David Wade Correctional Center, *
                                   *      JUDGE ELIZABETH E. FOOTE
     PLAINTIFFS,                   *      USMJ MARK L. HORNSBY
                                   *
VS.                                *      CLASS ACTION
                                   *
JAMES M. LEBLANC, et al.           *
                                   *
     DEFENDANTS.                   *

**MEMORANDUM IN SUPPORT OF PRELIMINARY INJUNCTION NOT TO
RESTRICT PLAINTIFF ACCESS TO PUTATIVE CLASS**

For almost two years, Plaintiffs' counsel have traveled to David Wade every two or three

weeks to conduct attorney visits with clients and to respond to requests for assistance, consistent

with their duties as putative class counsel. On January 29, 2019, Plaintiffs' counsel gave notice

to Defendants that counsel for the Plaintiffs intended to visit DWCC and conduct meetings with

a slate of people, including two named class representatives as well as 11 other individuals.[1]

That evening, Defendants replied that Plaintiffs' counsel would not be allowed to conduct any

visits with individuals other than the two named Plaintiffs until this Court decides their unrelated

motions for a protective order against the Advocacy Center's ("AC") access to the extended

lockdown tiers, Rec. Doc. 102, and Defendants' counsels' rights to communication with putative

---

[1] Exh. 1.

1

class members, Rec. Doc. 139.[2]  Neither of Defendants' motions relates to the Plaintiffs' right to conduct confidential attorney visits.  To be clear, Defendants did not raise objections to the timing, concerns about the individuals to be interviewed, or any security-related issues.  The sole basis of their refusal, and the sole condition upon which visits would be allowed in the future, is that they await rulings from this Court on their other motions.

Plaintiffs requested that Defendants confirm that Defendants intended to take this course of action and expressed the need for Court intervention.[3]  Defendants' second response to Plaintiffs raises an additional reason for denying attorney visits with putative class members. Defendants claim they are not interfering with attorney-client relationships or with prisoners' right to meet with counsel, because Plaintiffs' counsel do not have an attorney-client relationship with the people they seek to meet with.[4]  This is factually false and misstates the law.

Plaintiffs have stated that they "represent all members of the putative class, which at a minimum includes all prisoners housed in extended lockdown (N1-N4) as it is defined in the complaint."[5]  Plaintiffs confirmed that "every communication we have with every prisoner on the South Compound has been with the understanding that the communication is privileged."[6]

Defendants then restated their refusal and took a new position, denying Plaintiffs' counsel access to members of the putative class on the secondary grounds that Plaintiffs have not identified, by name, the individuals who have sought representation.[7]  This second limitation on Plaintiffs' counsel is also an unlawful interference with the right to counsel and Plaintiffs' right to communicate with the putative class.

---

[2] Exh. 2.
[3] Exh. 3.
[4] Exh. 4.
[5] Exh. 5, quoting Supplemental Response to Defendants' Interrogatory No. 19
[6] Exh. 5, quoting Supplemental Response to Defendants' Interrogatory No. 19
[7] Exh. 5.

Plaintiffs seek the extraordinary remedy of an emergency injunction from this Court compelling Defendants to allow Plaintiffs' counsel to conduct attorney visits. The legal standard for a temporary restraining order and subsequent preliminary injunction in the Fifth Circuit is that the movant must satisfy a cumulative burden of proving each of the following four elements:

> (1) a substantial likelihood that the movant will prevail on the merits, (2) there is a substantial threat that irreparable harm will result if the injunction is not granted, (3) the threatened injury outweighs the threatened harm to the defendant, and (4) the granting of the preliminary injunction will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir.1987); *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009), *citing Speaks v. Kruse*, 445 F.3d 396, 399–400 (5th Cir.2006). Plaintiffs satisfy every element of this standard.

I.   **Plaintiffs' Likelihood of Success on the Merits is Based on Decades of Undisputed Case Law.**

The barriers now created by Defendants violate decades of well-established and important principles of law. Incarcerated people have the right to access counsel as a basic element of their right to access the courts. It is equally well-established that putative class members have the right to speak with counsel seeking to represent them as a class. Finally, the Advocacy Center and its agents in the ACLU have a federal statutory right to speak with people held in a state prison.

   *a.   Prisoners have a Constitutional Right of Access to the Courts Through Counsel.*

"It is now established beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821, 97 S. Ct. 1491, 1494, 52 L. Ed. 2d 72 (U.S. 1977). Access to counsel is an obvious feature of their right to access the courts. This right, originating under the First Amendment, is established with clarity in the decades-old existing caselaw of the Supreme Court, Fifth Circuit, and district courts across the country. *Procunier v.*

*Martinez*, 416 U.S. 396, 397, 94 S. Ct. 1800, 1804, 40 L. Ed. 2d 224 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989); *see also White v. Sullivan*, 474 F.2d 16, 17 (5th Cir. 1973) (reversing dismissal and remanding suit on "prison officials' refusal to allow the solitarily confined prisoners to communicate with the courts and their attorneys"); *Conklin v. Hancock*, 334 F. Supp. 1119, 1122 (D.N.H. 1971) ("The prisoner's attorney must be allowed to confer privately with any inmates of the prison who may be possible witnesses for the petitioner in his pending trial [. . .]"); *Rhem v. McGrath*, 326 F. Supp. 681, 691 (S.D.N.Y. 1971) ("We think it only fair, particularly when an inmate has sued the Commissioner who holds him in custody, that the inmate be afforded a full opportunity to confer or correspond with his attorneys in privacy and without observation, interference, or listening in by representatives of the Commissioner, the adverse party."); *Berch v. Stahl*, 373 F. Supp. 412, 423 (W.D.N.C. 1974) ("Inmates, however, confined, may not be deprived of visits from attorneys, mail from courts and attorneys, telephone calls to attorneys, writing materials or legal papers, as these are the rudiments of the exercise of the constitutional right to petition for redress of grievances."); *Nunez v. Boldin*, 537 F. Supp. 578, 582 (S.D. Tex.), *dismissed*, 692 F.2d 755 (5th Cir. 1982) (restrictions on access to attorneys which are not reasonably related to orderly administration cannot stand).

The right of prisoners to access the courts to seek redress of violations of their basic constitutional rights related to the conditions of their confinement is explicitly protected in *Lewis v. Casey*, 518 U.S. 343, 354-55 (1996).   Defendants refusal to allow any prisoners except the named Plaintiffs access to counsel knowingly and willfully violate the putative class's clearly established rights under the First Amendment. Defendants' position that attorney-client visits will be withheld indefinitely pending resolution of two unrelated motions is plainly unlawful.

Such lawless disregard for the fundamental rights of prisoners necessitates immediate and forceful judicial intervention.

> b. *Putative Class Members Have a Right to Communicate with Counsel.*

Counsel have been clear that they are seeking to hold attorney-client, privileged meetings with the individuals they seek to visit. It is a foundational principle of legal ethics that communications between a person and a lawyer are privileged where the person is seeking legal assistance, regardless of whether the lawyer ultimately files litigation in the name of that person. An attorney-client relationship is formed in the consultation and giving of legal advice, and information received in the course of an investigatory meeting is cloaked in privilege.

Defendants take the completely unprecedented position that because the individuals on counsels' visit list are not named class representatives, counsel have no right to meet with them. Defendants conduct violates myriad basic principles of legal ethics.  First, as just articulated, meeting with a lawyer is confidential regardless of whether a lawsuit is ultimately filed in that individuals' name. When a lawyer gets a request for assistance from a putative class member, that lawyer has an obligation to fully investigate the allegations to ascertain whether they should be brought to the Court's attention; the lawyer is bound by confidentiality and privilege in that process, and the lawyer's decision as to how to advocate for a person as a result of information learned is not only privileged but is work product and strategy. Second, lawyers are bound by confidentiality obligations to protect even the fact of someone seeking assistance, particularly where, as here, disclosing the content of those requests for assistance would subject the complainant and client or potential client to serious retaliation.

Defendants' actions violate the principles most basic to the operation of our profession. Plaintiffs' counsel sought attorney meetings with men in the custody of Defendants. Defendants

seek to test that legal relationship. Such behavior would never be tolerated outside of this prison environment. Consider: if the undersigned counsel represented class members to the BP oil spill, defense counsel would not be able to prevent counsel from meeting with their putative class members, whether they were the named class representatives or not. Simply put, Defendants are abusing their physical authority over Plaintiffs' clients to gain an advantage in this litigation in a way that would never be attempted were our clients free people.

More alarming, these tactics are clearly aimed at intimidating the men with whom Plaintiffs' counsel need to speak. It is not lost on our clients that we are unable to show up when we tell them we will. They are painfully aware that the state has repeatedly seized notes, denied us access, and cancelled visits. The clients see that, and some have asked that we not speak with them any further because of this retaliatory conduct. The degree to which prisoners are placing themselves at risk in communicating with undersigned counsel in this matter is abundantly clear from the necessity of the filing of this motion. Defendants' actions disrupt the attorney-client relationships in the case and breed mistrust between counsel and client.

Plaintiffs do not make these allegations lightly: the behavior exhibited in this case by both Defendants and their counsel in this litigation is unprecedented, obstructionist and bad faith conduct of the highest level. Our clients are incarcerated and every single element of their lives are controlled by the Defendants, down to whether they get a glass of water or can make a phone call. Shutting down Plaintiffs' counsel's access to putative class members is a tactic to demoralize; it sews belief that help is not coming and the lawlessness of the Defendants' conduct casts doubt on the ability of the legal process to redress harms and protect individuals. Defendants' interference is leading to fractures in counsel's relationships with our clients. Our

clients are at risk of harm. Defendants' conduct here is not just another stall tactic, it is an attack on the integrity of Plaintiffs' counsel's relationship with the putative class.

"It is clear that class counsel have the right to communicate with putative class members prior to class certification." *Adamov v. Pricewaterhouse Coopers LLP*, 2017 U.S. Dist. LEXIS 211210, *8 (E.D. Cal. Dec. 21, 2017). Defendants contend that they also have the right to speak with class members who are not Plaintiffs' clients. The parties have a dispute over whether Plaintiffs have accommodated that request, which is subject to briefing due before this Court in two weeks. Rec. Doc. 140. That matter will be briefed in due course. Defendants' position of denying counsel access to clients until this Court decides that motion is an abuse of their physical authority over counsel's clients. Plaintiffs have always provided Defendants with written advance notice of meetings with any putative class members and worked with Defendants to arrange mutually convenient dates for those meetings. Conversely Defendants have never given Plaintiffs any notice that they intended to speak to any putative class members[8] and yet ask this Court to intervene. Defendants new refusal to allow these people to visit their attorneys is an act of egregious bad faith.

c. *The Protection and Advocacy Acts Guarantee the Advocacy Center Reasonable Unaccompanied Access to DWCC.*

Defendants refusal to allow attorneys from the Advocacy Center or their co-counsel with the ACLU access to DWCC is illegal under federal law. The Advocacy Center is created by federal law and charged with a statutory mandate to protect the civil and human rights of people with disabilities, including those held in prison. 42 U.S.C. § 6000, *ee, e.g.* 42 U.S.C. § 10805

---

[8] Plaintiffs' Supplemental Response to Interrogatory No. 19: [. . .] If you have a belief that we are not the representative of a particular person and intend to proceed with speaking with that individual please notify Plaintiffs in advance of any intended contact with a putative class member.

(a)(1)(A) and (B), 42 U.S.C. § 6042 (a)(2)(A) and (B).  The Protection and Advocacy Acts require that the state's designated system have reasonable, unaccompanied access to any state prison.  42 C.F.R. § 51.2; 42 C.F.R. § 51.42(b).  The federal law vesting the Advocacy Center with that investigative access authority does not permit any state facility to impose new requirements or limitations that interfere with the P&A's ability to conduct a full investigation.  See, *Mississippi Protection & Advocacy System, Inc. v. Cotten*, 929 F.2d 1054, 1059 (5th Cir. 1991).  Defendants' course of action inflicts fresh injury on the Advocacy Center's statutory rights to access this facility.[9]

Defendants have moved for a protective order against enforcement of the July 2017 settlement agreement in *Advocacy Center v. LeBlanc*, Rec. Doc. 102. Part of their argument in that motion is that Advocacy Center attorneys can now access prisoners by individual confidential meetings and therefore do not need to walk through the tiers. Rec. Doc. 102-1 at 5. Immediately after making that argument to this Court, Defendants now state that they will not allow attorney-client visits with putative class members to occur at all until that motion is resolved.[10]  Defendants refusal to accede to the Advocacy Center's federal authority to speak to the people at this facility, other than named Plaintiffs, goes far beyond the relief requested in that protective order and directly assails Defendants' underlying statutory obligations. At this point the state agency charged with investigating allegations of abuse and neglect of persons with disabilities is unable to access a facility which that system has probable cause to believe

---

[9] The Advocacy Center has moved for leave to amend the Complaint to join this suit.  Rec. Doc. 128.  Defendants' misconduct demonstrates the importance of granting that motion and illustrates the benefit to judicial economy in avoiding duplicative and parallel litigation.

[10] "Given that the issues of site visits and access are now both before the Court, DWCC will not grant your request for interviews of putative class members in connection with the litigation until these matters [Rec. Doc. 102 and Rec. Doc. 139] are ruled upon."  Exhibit 2.

egregiously abuses and neglects people with disabilities. Plaintiffs are likely to succeed on these merits and this Court must intervene.

## II.     The Putative Class Will Suffer Irreparable Harm Unless Members Can Meet with Their Attorneys.

The March 8, 2019 deadline for the close of discovery for the class certification stage of this case is approaching rapidly.  Preventing Plaintiffs from conducting any meetings with the putative class during the critical coming weeks and months prior to that deadline inflicts prejudice and actual harm on the putative class's ability to carry its burden to certify the class. Meeting with the putative class members is one of the most basic and important elements of case preparation.

Defendants provide no alternative to in-person visits.  Defendants insist that they must be allowed to record any phone calls made by a prisoner to an attorney.  Knowledge of such a recording destroys the reasonable expectation of privacy, so no phone calls made to or from DWCC are protected attorney-client privilege.  The prison's practice of opening and misplacing legal mail articulated in the Complaint, the difficulty many class members have with reading and writing, as well as the time delays in letters make the mail an impractical option.

The timing of this sudden end to nearly two years of uneventful in-person attorney visits is highly suspect.  This case is on the home stretch before the close of discovery for class certification.  Plaintiffs need to be preparing for depositions, pouring over documents, and confirming the basis for critical patterns, not fighting for a basic right that has been settled law since the mid-seventies.

### III.     The Harm Inflicted on the Putative Class Drastically Outweighs the Inconvenience to Defendants.

Defendants have no legitimate penological interest in preventing Plaintiffs' counsel from meeting with putative class members until this Court resolves unrelated motions.  No burden has even been articulated by the Defendants; this is Defendants' retaliatory and abusive tactic for litigating access to class members. The law is clear that prisons must carry the burden of allowing contact with attorneys.  "Moreover, our decisions have consistently required States to shoulder affirmative obligations to assure all prisoners meaningful access to the courts." *Bounds v. Smith*, 430 U.S. 817, 824, 97 S. Ct. 1491, 1496, 52 L. Ed. 2d 72 (U.S. 1977).

On the other side of that scale weighs a fundamental right to access the courts, the ability of counsel to prepare to present the argument for class certification, and the federal statutory authority of the Advocacy Center to meet with its clients.  The conditions alleged in the Complaint are torturous.  The lack of mental health services and brutal treatment of the people with mental illness continues even now, putting people at risk of psychological deterioration, injury, and death.  Plaintiffs do not have weeks and months to delay their preparations for this case.

### IV.     This Injunction Serves the Public Interest.

Putative class members have the right to seek legal assistance and to meet with class counsel.  The orderly process of Plaintiffs' investigation depends on this access.  Plaintiffs have been willing to reschedule visits around the Defendants' schedule and clear rooms when they are needed for other purposes.  Plaintiffs have worked in good faith to arrange visits to minimize any burden that such visits might impose.  Plaintiffs wish for nothing more than a return to that status quo.

As stated above, Defendants have no legitimate penological interest to weigh against the fundamental right of prisoners to speak with counsel, for Plaintiffs' counsel to meet with the class, and for the parties to prepare for litigation in an orderly manner. Defendants are preventing putative class members from meeting with counsel until this Court resolves motions relating to the Advocacy Center's statutory authority to conduct tier walkthroughs and authorizing their communications with the putative class. Defendants' conduct is plainly contrary to the public interest in the orderly process of litigation and the right to petition for redress of injuries. It also is contrary to the public interest in vindicating the constitutional rights of the men held in David Wade Correctional Center.

Defendants have stated repeatedly that they disagree with Plaintiffs' position on the scope of the attorney-client relationship with putative class members and Plaintiffs' response to Interrogatory 19. Preventing Plaintiffs from having attorney-client meetings with putative class members is not a good faith means of resolving such a dispute. Defendants asked a question in Interrogatory 19. Plaintiffs answered it by stating that we have held ourselves out from the first instance as the attorneys for the entire putative class and that all communications between putative class members and counsel are privileged. Defendants did not like the answer and so they will not allow Plaintiffs to meet with putative class members until Plaintiffs change the scope of the attorney-client relationship.[11] This Court will decide Defendants' motion for access

---

[11] "DWCC's position is still that, at this time and in light of the pending motions, it will facilitate meetings with those that have an affirmative attorney-client relationship with your organization. We have repeatedly asked you to identify the specific persons you contend you have an attorney-client relationship with. You, in response, continue to obfuscate by claiming a position that is not in step with the clear law on the issue. You continue to imply you have attorney-client relationships with other offenders in extended lockdown, but, similarly, continue to refuse to identify those individuals. As such, you have furnished nothing that would allow a reasonable person to identify which persons are represented by the Advocacy Center in this matter. One thing is clear, however. The named plaintiffs enjoy such a relationship." Exhibit 6. Plaintiffs dispute this characterization of their position and conduct.

soon.  But the public interest in the orderly progress of litigation weighs powerfully in favor of calling an end to Defendants' lawless and abusive tactics.

CONCLUSION

Plaintiffs' counsel needs to meet with members of the putative class.  The members of the putative class have a clear right to meet with counsel.  The Plaintiffs' counsel has a federal statutory mandate to meet with people at state facilities such as this.  Defendants' refusal to allow putative class members to meet with counsel is an unlawful act.  Their conduct violates the basic principles of legal ethics, prevents the orderly preparation for litigation, and stands in egregious bad faith.  For these reasons, Plaintiffs seek the extraordinary remedy of a temporary restraining order.

Respectfully submitted this 30th day of January, 2019,

*/s/ Jonathan C. Trunnell*

Jonathan C. Trunnell, La. Bar No. 36956, T.A.
Sarah H. Voigt, La. Bar No. 18483
Melanie Bray, La. Bar No. 37049
Ronald K. Lospennato, La. Bar No. 32191
Advocacy Center
8325 Oak Street
New Orleans, LA 70118
504-708-1460
504-507-1956 (fax)
jtrunnell@advocacyla.org

*/s/ Katie M. Schwartzmann*
Katie M. Schwartzmann, La. Bar No. 30295
Roderick & Solange MacArthur Justice Center
4400 S. Carrollton Avenue
New Orleans, La 70119
p. (504) 620-2259
katie.schwartzmann@macarthurjustice.org

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 31th day of January, 2019, a copy of the foregoing Motion was electronically filed with the clerk of Court using the CM/ECF system.   Notice of this filing will be sent to counsel of record by operation of the court's electronic filing system.

*/s/ Jonathan Trunnell*