UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

ANTHONY TELLIS and BRUCE CHARLES    *   JUDGE ELIZABETH E. FOOTE
on behalf of themselves and all others similarly    *   USMJ MARK L. HORNSBY
situated    *

   *

VERSUS    *

   *

JAMES M. LEBLANC, Secretary    *
of the Louisiana Department of Public Safety    *
and Corrections, JERRY GOODWIN,    *
Warden of David Wade Correction Center    *   CIVIL ACTION
COL. LONNIE NAIL; DOCTOR GREGORY    *   NO.: 5:18-CV-00541-EEF-MLH
SEAL; ASSISTANT WARDEN DEBORAH    *
DAUZAT; STEVE HAYDEN; AERIA    *
ROBINSON; JOHNIE ADKINS; and    *
THE LOUISIANADEPARTMENT OF    *
PUBLIC SAFETYAND CORRECTIONS    *

## PLAINTIFF ANTHONY TELLIS RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

TO:    Anthony Tellis, Bruce Charles, and the Putative Class
      *Through their attorney of record*
      Jonathan Trunnell
      The Advocacy Center
      8325 Oak St.
      New Orleans, Louisiana 70118

## INSTRUCTIONS

These discovery requests are continuing in nature, and to the extent that the response may

be enlarged, diminished, or otherwise modified by information acquired by you subsequent to

the filing of the initial responses hereto, you are required to promptly provide supplemental

responses or responses reflecting such changes upon receipt by you of such additional

information.

Each request shall be responded to separately and fully, in writing under oath, unless it is

objected to, in which event the reasons and legal basis for objection shall be stated in lieu of an



EXHIBIT

B

answer, within the time period provided by law. The responses shall be signed by the person making them, and the objections signed by the attorney making them. Whenever an estimate rather than exact information has been used in your response, please state that your response is an estimate and state all reasons why exact information is unavailable. The discovery sought by this pleading encompasses material contained in, or which might be derived or ascertained from your "personal files" and the "personal files" of your agents, representatives, and the files of your attorney(s). You are requested to assemble your response and mark the response by the corresponding number of each request.

If a request (or any part thereof) herein propounded is objected to or is not fully, truthfully and completely answered because of either a claim of privilege or a claim that the response constitutes the mental impression, conclusion, opinion, or legal theory of any attorney concerning this litigation, then in each such instance state the following information as though this request were made a separate and integral part of each such request (or part thereof):

A.     The complete basis for the claim of privilege and identify all persons having knowledge of any of the facts which you claim to be privileged;

B.     The complete basis for your claim that the information constitutes the mental impression, conclusion, opinion or legal theory of any attorney concerning this litigation and identify all persons having knowledge of any of the facts which you claim to be mental impressions, conclusions, opinions and legal theories of any attorney to whose mental impressions, conclusions, opinions or legal theories you refer; and

C.     State whether any of the information not disclosed is known to the personnel of any regulatory or governmental authority or agency.

**DEFINITIONS**

The following definitions apply:

(a)    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) through any means, oral or written.

(b)    "Document" means any documents or Electronically Stored Information (as defined *infra*) or any type or description, or any means of storage of information, including, without limitation, any writings, drawings, graphs, charts, photographs, sound recordings, images and other data or data compilations stored in any medium or form from which information can be obtained, translated, if necessary, into reasonably usable form. The term "document" includes correspondence; memoranda; electronic mail; metadata; communications; handwritten or other notes; minutes, diaries; calendars; computer or word processing records, printouts, tapes or diskettes; microfilm; microfiche; videotapes; agreements; drafts; reports; ledgers; journals; work sheets; invoices; files; statements; accounts; books; periodicals; calculations; computations, or any other item of a similar nature, whether an original or copy, to which you have or had access, or which is or was in your possession, custody or control. The term "document" specifically includes all non-identical duplicates and drafts. The term also includes electronically stored data from which information can be obtained either directly or by translation through detection devices or readers.

(c)    "To identify a person" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been so identified, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

3

(d)    "To identify documents" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

(e)    "To identify communications" means to give, to the extent known, the (i) type of communication (i.e. oral or written); (ii) the general subject matter; (iii) the names of all persons who heard, received, participated in or were privy to the communication; and (iv) the date of the communication.

(f) "You" or "your" shall mean the named plaintiffs and putative class members and their respective present and former owners, employees, managers, directors, agents, consultants, advisors, attorneys, representatives, and affiliates.

(g)    "Defendants" refers to the named defendants herein and their respective present and former owners, employees, managers, directors, agents, consultants, advisors, attorneys, representatives, and affiliates.

(h)    "DWCC" refers to David Wade Correctional Center.

## INTERROGATORIES

Plaintiffs first object to the extent that these interrogatories seek responses from unnamed putative class members.  The named Plaintiffs respond.

### INTERROGATORY NO. 1:

Please identify any and all persons answering or providing information for these interrogatories and requests for production of documents specifying which discovery response the identified individual answered or supplied information for.

### RESPONSE TO INTERROGATORY NO. 1:

I answered these interrogatories myself, with assistance from my attorneys, Katie Schwartzmann and Jonathan Trunnell.

**INTERROGATORY NO. 2:**

Please give the date, place and nature of each and every crime for which you have been arrested during your lifetime and booked into any jail or correctional facility, including the disposition for each such crime.

**RESPONSE TO INTERROGATORY NO. 2:**

Response provided by Mr. Tellis, to the best of his ability:

I was first arrested in 2004 or 2003 for simple battery in Bienville Parish.  I pled guilty and got probation.

The second time I was arrested was in Missouri County, TX, in 2007.

I was arrested for a murder charge in Bienville parish but no charges were instituted.

I was arrested for charges in Webster parish including 2nd degree attempted murder, 3 assaults with a firearm, aggravated battery, and unauthorized use of an automobile.  I pled guilty to 2nd degree aggravated battery, everything else was not prosecuted.

In 2016, I was charged with manslaughter while I was incarcerated and I pled guilty.


**INTERROGATORY NO. 3:**

Please state the full name, telephone number and last known address of every witness known to you or to your attorney who has or purports to have knowledge regarding the facts and circumstances surrounding the incidents referred to in your complaint or your alleged injuries, including, but not limited to, medical witnesses and other persons having any knowledge thereof. If any of the witnesses listed are related to you or to each other, please state the nature of such relationship.

**RESPONSE TO INTERROGATORY NO. 3:**

Plaintiffs object to this request as duplicative and refer Defendants to Plaintiffs' initial disclosures. Plaintiffs further object that discovery is ongoing, Plaintiffs continue to await most of the Defendants' responses to discovery, and witnesses are still being identified based upon that discovery. Subject to that objection, what follows is the response provided by Mr. Tellis:

Every prisoner who has been in South Compound is potential witness.  I am not related to anybody else back here.  I do not know if anybody else on lockdown are related.

**INTERROGATORY NO. 4:**

Identify every person that you or your attorney has met with or have taken statements from (whether oral or written) regarding the facts of your complaint.

**RESPONSE TO INTERROGATORY NO. 4:**

Plaintiffs object insofar that this Interrogatory seeks information from attorneys rather than from a party, and seeks protected and privileged attorney work product and communications. Subject to the foregoing objections, the following is the response provided by Mr. Tellis:

I have only met with my attorneys from the Advocacy Center and MacArthur Justice Center. I do not know who else they have met with.

**INTERROGATORY NO. 5:**

Please list and describe in detail each and every document, exhibit, or piece of demonstrative evidence you may use at the trial of this cause; for each such document, exhibit and/or piece of demonstrative evidence, state the name, address and phone number of the custodian and the location and times during which the document, exhibit, and/or piece of demonstrative evidence may be inspected.

**RESPONSE TO INTERROGATORY NO. 5:**

Plaintiffs object that discovery is ongoing and Plaintiffs continue to await discovery responses from Defendants, which will inform which documents may be used at trial of this cause. Subject to that objection Plaintiffs refer Defendants to their responses to the Requests for Production propounded herewith, in which Plaintiffs identify the documents in their possession for Defendants, despite Defendants themselves being the source of said documents. Subject to the foregoing objections, the following is the response provided by Mr. Tellis:

I do not know what will be used at trial.

**INTERROGATORY NO. 6:**

If you have ever been involved in any other legal action, civil or criminal, either as a defendant or as a plaintiff, please state:

a)      The date and place each such action was filed, giving the name of the court, the name of the other party or parties involved, the number of such actions and the names of the attorneys representing each party;

b)      A description of the nature of each action; and

c)     The result of each such action, whether or not there was an appeal and the result of the appeal and whether or not such case was reported and the volume number, name and page citation of such report.

## RESPONSE TO INTERROGATORY NO. 6:

Response provided by Mr. Tellis:

This is the only case in which I am plaintiff.

I am defendant in civil suit related to the manslaughter charge from 2016.

I have been a defendant in the criminal cases identified in interrogatory number 2.

## INTERROGATORY NO. 7:

Please identify all factual bases for your allegations contained in paragraphs 51–106 and identify all documents and evidence you contend support these allegations.

## RESPONSE TO INTERROGATORY NO. 7:

Plaintiffs object that this interrogatory is unduly broad, compound and overly burdensome. The Complaint is replete with the very specific factual bases supporting the allegations therein. The conditions in Defendants' prison are within their possession and control. Additional factual bases and documents continue to be identified through discovery.

Subject to that objection, the following response was additionally provided by Mr. Tellis:

There is no mental health unit back here.

Nurses don't usually pass out meds, officers do.  They haven't messed my meds up, but I only get one Remeron.

When I first showed up, I sent a letter asking for mental health help.  They didn't take it very seriously.  Requests don't get you nothing but a hard time.

Robinson has been making more rounds lately, no set routine still.  She comes and talks to people on suicide, then walk down the tier and swipe her card.  She might talk to a few people, but she's not really doing much.  They are not really doing better, just doing little stuff to make it seem like they are doing more.

When I showed up back in extended lockdown on the manslaughter charge, I asked for mental health help.  I didn't get any counseling or therapy.

The guys they moved were really bad off.  I remembered seeing guys that they got rid of.  I saw people who were really bad off, and it solidified that they weren't going to do anything for you. Those guys stopped showering, would throw their food, and would do it all over and over again. That isn't right or ordinary.  Nobody would rather be in a gown than a jumpsuit.

Gerald Bonner would rather be in the gown and that guy just wasn't right.  I saw that they were not doing anything for him, what are they going to do for me?

**INTERROGATORY NO. 8:**

Please identify with particularity each and every instance of "extreme conditions creat[ing] mental illness [] and exacerbate[ing] pre-existing mental illness" alleged in Paragraph 2 of your Complaint as a result of practices at DWCC and identify all documents and evidence you contend support these allegations.

**RESPONSE TO INTERROGATORY NO. 8:**

Plaintiffs object that this interrogatory is unduly broad, compound and overly burdensome. The Complaint is replete with the very specific facts supporting the allegations therein. The conditions in Defendants' prison are within their possession and control. Additional instances and documents continue to be identified through discovery.

Subject to that objection, the following response was additionally provided by Mr. Tellis:

You can look at Gerald Bonner.  He was always naked or on suicide watch.  He was just not normal.

I remember Oscar Toussant, he started out having good sense.  He made perfect sense, worked in the kitchens and everything.  But, when he came back here, I don't know what happened but the conditions back there he started talking to himself for hours at a time, laugh for hours to himself, spitting. Before, you could have a conversation with him, but then he would just become withdrawn and anti-social.

The cells get to some people and they just want to argue all day.  Arguing and acting out turns into some people's only way of expressing themselves.

I went so many months without a write-up, but then I lost control of the situation.  I was getting really tired, tired of being treated like that.  I felt angry and hopeless because I was just stuck in lockdown.  I just lashed out and got in a fight.  Being in the cells effects my moods and decision making.  When I'm angry, I'm going to react a certain type of way.  I just feel like I'm being disregarded when I'm asking for help.

Being in the cells has made me a lot more paranoid.

How I feel changes all the time.  My mood swings all the time.  Some days I feel like I can cope. Sometimes, I'm laying back there and all I want to do is just sleep.

**INTERROGATORY NO. 9:**

Please identify with particularity all factual bases for your allegation that "[v]irtually no mental health care is provided to prisoners on extended lockdown" and identify all documents and evidence you contend support this allegation.

**RESPONSE TO INTERROGATORY NO. 9:**

Plaintiffs object that this interrogatory is unduly broad, compound and overly burdensome. The Complaint is replete with the very specific facts supporting the allegations therein. The conditions in Defendants' prison are within their possession and control. Additional instances and documents continue to be identified through discovery.

Subject to that objection, the following response was additionally provided by Mr. Tellis:

There is no real counseling or programming as far as I've experienced.  Also, we have someone working on the staff who isn't even licensed.

I wrote that letter asking for help, and nothing happened after.

The only thing that happens is just you see Dr. Seal every 90 days and he only asks about meds.

One time, they were having call-outs and I saw that some people got a MH callout and I heard that they watched a film. I never get called out of my cell for mental health reasons other than for the appointments with Dr. Seal.

**INTERROGATORY NO. 10:**

Please identify all factual bases for your allegations that you were punished for speaking out against a "lack of treatment" and identify all documents and evidence you contend support these allegations.

**RESPONSE TO INTERROGATORY NO. 10:**

I have not personally had instances of this happening.

**INTERROGATORY NO. 11:**

Please identify each and every instance in which you contend Defendants ignored your complaints concerning your mental health needs.

**RESPONSE TO INTERROGATORY NO. 11:**

The objections and answer to this question are the same as to Interrogatory #7.

**INTERROGATORY NO. 12:**

Please identify all bases for your allegation that mental illness goes untreated at DWCC.

**RESPONSE TO INTERROGATORY NO. 12:**

The objections and answer to this question are the same as to Interrogatory #7.

**INTERROGATORY NO. 13:**

Please identify each and every instance in which you contend Defendants took any actions which you believe demonstrate a disregard for your serious mental health needs.

**RESPONSE TO INTERROGATORY NO. 13:**

The objections and answer to this question are the same as Interrogatory #7. The following additional response was given by Mr. Tellis:

When a person is acting out and they don't respond with mental health staff.

The staff are supposed to notify mental health before using chemical sprays but don't. Mental health is not on the scene.

**INTERROGATORY NO. 14:**

If you contend Defendants have ever delayed providing mental health care to you, please identify each and every instance in which you believe that has occurred and how you were substantially harmed as a result of any such delay.

**RESPONSE TO INTERROGATORY NO. 14:**
Plaintiffs object that the Complaint is replete with the very specific facts supporting the allegations therein. The conditions in Defendants' prison are within their possession and control. Additional instances and documents continue to be identified through discovery.

Subject to that objection, the following response was additionally provided by Mr. Tellis:

When I wrote the letter, Hayden came down and didn't do anything. He didn't give me any meds or refer me or anything.

I told him how I was doing and how the cell had me feeling, and he thought I was just upset because I on the charge. It made me feel like asking for help doesn't even work. It made my

mental health worse because it made me feel more rebellious and aware that I shouldn't ask them for nothing. I felt like I couldn't ask for help and that's why I hardly ask for help now.

## INTERROGATORY NO. 15:

Please identify prisoner AA referenced in paragraphs 167–185.

## RESPONSE TO INTERROGATORY NO. 15:

I do not personally know. My lawyers tell me that this person is Ivan Clark.

## INTERROGATORY NO. 16:

Please identify with particularity all factual bases for the allegations that Defendants respond "brutally" to symptoms of mental illness, requests for mental health treatment, and attempts to redress grievances and identify all documents and evidence you contend support these allegations. Please also specify which Defendants are responsible for any identified bases.

## RESPONSE TO INTERROGATORY NO. 16:

Plaintiffs object that this interrogatory is unduly broad, compound and overly burdensome. The Complaint is replete with the very specific facts supporting the allegations therein. The conditions in Defendants' prison are within their possession and control. Additional instances and documents continue to be identified through discovery.

Subject to that objection, the following response was additionally provided by Mr. Tellis:

I was sprayed after the recent incident where I flashed out.

I've seen spraying like that so many times. Ricard has several incidents like that, he's been maced so many times. I don't know if he's mental health, but he probably should be. He just seems like he lashes out like he can't control himself. He didn't used to be like that.

People get maced for being in a confrontation. If they tell you to stop making noise or just talking loud and you don't immediately quiet down.

If you throw stuff or spit they respond with force. People throwing their own [feces] has got to be symptom of mental illness.

## INTERROGATORY NO. 17:

Please list the names of all persons, both staff and prisoners, at DWCC who have ever been responsible for providing mental health care to you.

**RESPONSE TO INTERROGATORY NO. 17:**

Dr. Seal
Steve Hayden
Aeriel Robinson
Dauzat asked me questions when I was arrested at DWCC, but she seemed to be doing an investigation not providing some kind of care.

**INTERROGATORY NO. 18:**

Please identify all factual bases for allegations that Defendants discriminate as to mental health treatment on the basis of disability at DWCC and identify all documents and evidence you contend support these allegations.

**RESPONSE TO INTERROGATORY NO. 18:**

Plaintiffs object as this calls for a legal conclusion.  This request also seeks information already identified with particularity in the Complaint. Additional factual bases are continuing to be identified through ongoing discovery. Subject to the objection, the following response was provided by Mr. Tellis:

It is harder to get off extended lockdown if you have mental illness because write-ups keep you here.  Most mental patients aren't thinking and just catch write-ups.  They don't try to tell discipline problems from mental health problems.  People with mental health have problems conforming their behavior and avoiding write-ups and need help.

**INTERROGATORY NO. 19:**

Please identify all offenders at DWCC you claim have a current attorney–client relationship with your attorneys.

**RESPONSE TO INTERROGATORY NO. 19:**

Plaintiffs object as this request calls for a legal conclusion.  Subject to the objection, every prisoner housed in extended lockdown at DWCC is a member of the putative class. As such, every conversation that has taken place between counsel and prisoners has been with the understanding that the communication is privileged.

The following is the response provided by Mr. Tellis:

I don't know.

**INTERROGATORY NO. 20:**

Please identify each and every instance you contend Defendants have violated the First Amendment, identify which Defendant you contend is responsible for the violation, and identify all documents and evidence you contend support these allegations.

**RESPONSE TO INTERROGATORY NO. 20:**

Plaintiffs object as this calls for a legal conclusion.

**INTERROGATORY NO. 21:**

Please identify all bases upon which you contend that Defendants have violated the Eighth Amendment and identify all documents and evidence you contend support these allegations.

**RESPONSE TO INTERROGATORY NO. 21:**

Plaintiffs object as this request calls for a legal conclusion.

**INTERROGATORY NO. 22:**

Please identify all documents, evidence, video, records, public records requests, health records, and communications you or your attorney's have made to DWCC and identify what was provided in response thereto.

**RESPONSE TO INTERROGATORY NO. 22:**

Plaintiffs object that this question is overly broad and unduly burdensome, as it seeks information that is already in the possession of the Defendants. Additionally, this request seeks information in the possession of the attorneys rather than a party. However, in the spirit of cooperation, Plaintiffs refer to the response to Request for Production No. 10.

**INTERROGATORY NO. 23:**

Please identify all expert witnesses you have retained in connection with this action including its investigation.

**RESPONSE TO INTERROGATORY NO. 23:**

Plaintiffs will identify expert witnesses for the class certification proceedings by October 1 pursuant to the court's scheduling order.

**INTERROGATORY NO. 24:**

Please identify instances you claim that Defendants have destroyed evidence in this matter, the basis upon which you make that assertion, and identify all documents and evidence you contend support these allegations.

**RESPONSE TO INTERROGATORY NO. 24:**

The following response was provided by Mr. Tellis:

I understand that the hard drives for the cameras were unplugged.

**INTERROGATORY NO. 25:**

Please identify all persons you contend have intentionally been moved out of DWCC as alleged in paragraph 212 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 25:**

Plaintiffs object that this interrogatory is presently the subject of discovery that remains outstanding and overdue from Defendants.

Subject to that objection, the following response was provided by Mr. Tellis:

Oscar Touscan
Vinson Dotson
Gerald Bonner

**REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:**

Any and all photographs, videotapes, or any other type of audio and/or video or any other type of recordings in any media format, in any way pertaining to this matter.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

All video in possession of the Plaintiffs has come directly from Defendants as the result of requests that Plaintiffs have made. Plaintiffs' response to this request is labeled RFP No. 1.

**REQUEST FOR PRODUCTION NO. 2:**

Any and all documents or exhibits, excluding those documents or exhibits previously requested, in the possession of you and/or your attorneys relative to the incidents, injuries and/or damages allegedly sustained by you in this matter.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

This request for production is vague and overbroad because it does not identify what documents that Defendants are seeking with any degree of specificity that would allow Plaintiffs to ascertain whether the document is responsive.  Insofar as this request for production seeks every document in Plaintiffs' possession that bears any relationship to this suit, with the sole limitation excluding documents that have been previously requested, Plaintiffs object that it is overbroad and burdensome.

Subject to this objection, Plaintiffs Anthony Tellis and Bruce Charles' responses to this request may be found in the folder RFP No. 2.

**REQUEST FOR PRODUCTION NO. 3:**

All items of tangible and/or demonstrative evidence which you may introduce and/or use at the trial of this matter.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Plaintiffs object as this request is premature and a trial date for the merits of the case has not even been set.  The parties remain in discovery moving toward the upcoming hearing on the issue of class certification. Plaintiffs will abide by the obligations set forth in any forthcoming scheduling order for the trial and will produce evidence by the date that is set.

**REQUEST FOR PRODUCTION NO. 4:**

Any and all statements, not privileged, made by you concerning the subject matter of this lawsuit, including any written statements, signed or otherwise adopted by you, in any stenographic, mechanical, electrical, or other type of recording or any transcription thereof, made by you or under your direction and/or control and contemporaneously recorded.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Plaintiffs have no documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 5:**

Any and all statements, not privileged, made by any party or witness concerning the subject matter of this lawsuit, including any written statements, signed or otherwise adopted by any party or witness, in any stenographic, mechanical, electrical, or other type of recording or any

transcription thereof, made or taken by you or any of your agents, employees and brokers or under your direction and/or control and contemporaneously recorded.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Documents responsive to this request may be found at RFP No. 5.

**REQUEST FOR PRODUCTION NO. 6:**

Any and all reports, documents, and tangible things, including all reports, physical models, compilations of data, and any other materials, prepared by an expert or for an expert.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Plaintiffs object that this request is premature.  Plaintiffs do not have any documents responsive to this request other than what is provided in response to RFP nos. 8 & 9.

**REQUEST FOR PRODUCTION NO. 7:**

Copies of all pleadings from any judicial proceedings, civil or criminal, in which you have been a party.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

There are no documents responsive to this request in possession of Plaintiffs.

**REQUEST FOR PRODUCTION NO. 8:**

Please produce a copy of any and all notes taken by representatives of Slate Technology in relation to DWCC's tier cameras in buildings N1–N4.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Documents responsive to this request may be found at RFP No. 8.

**REQUEST FOR PRODUCTION NO. 9:**

Please produce all correspondence, contracts, receipts, payments, reports, analysis, hard drive images, inventories, plans, recommendations, and electronic or other files created by Slate Technology related to DWCC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Plaintiffs object to the extent that this request seeks privileged and confidential attorney work product.

Information not related to DWCC has been redacted from the billing invoices.

Subject to that objection, see Plaintiffs' response at RFP no. 9.

**REQUEST FOR PRODUCTION NO. 10:**

Please produce all requests for information, documents, records, videos, audio recordings ARPs, logs, notes, and electronic or other files requested by you or your attorneys from DWCC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

The response to this request is found in the folder RFP No. 10.  This response does not include any discovery requests.

**REQUEST FOR PRODUCTION NO. 11:**

Please produce all information, documents, records, videos, audio recordings ARPs, logs, notes, and electronic or other files received by you or your attorneys from DWCC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Plaintiffs object that this request is unduly burdensome as Defendants are asking Plaintiffs to produce what Defendants produced to Plaintiffs. Plaintiffs response includes all the documents that were provided by Defendants.

Plaintiffs will not be supplementing this response for prospective DWCC productions. The response to this request is found in folder RFP No. 11.

**REQUEST FOR PRODUCTION NO. 12:**

Please produce copies of all information, documents, records, videos, audio recordings ARPs, logs, notes, electronic or other files, and mail you claim has been interfered with by DWCC as alleged in paragraphs 270–271 of your complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Documents responsive to this request are at RFP no. 12.

**REQUEST FOR PRODUCTION NO. 13:**

Please produce all documents and evidence related to your allegations that Defendants are retaliating against offenders for asking for, complaining about, or bringing lawsuits related to mental health care at DWCC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Plaintiffs do not have any documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 14:**

Please produce all documents evidencing which offenders at DWCC, the Advocacy Center claims to have an attorney–client relationship.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Plaintiffs objects to this request as it is improperly propounded to the attorney. The Plaintiffs do not, and would not, have access to any documentation forming an attorney-client relationship.

Plaintiffs further object on the basis of attorney client privilege and work product. Communications with counsel, either to seek representation or during the course of legal representation, are covered by attorney client privilege.

**REQUEST FOR PRODUCTION NO. 15:**

Please produce all documents related to the Advocacy Center's billing in this matter.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Plaintiffs object that this is information not in the possession of a party. Plaintiffs further object based upon relevancy. This request is intended to burden, distract and delay.

Plaintiffs' counsel are non-profit law firms and do not bill clients.

**REQUEST FOR PRODUCTION NO. 16:**

Please produce all documents and evidence related to your allegations in paragraph 212 of the complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

This request for documents and evidence related to the allegations in paragraph 212 of the complaint is vague.

Plaintiffs do not otherwise have possession of documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 17:**

Please produce all documents related to your allegations that this matter is appropriate for class certification.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Plaintiffs object as this request is vague and overbroad.  The particular nature of what this request is seeking is unclear.  However, in the interest of responding, Plaintiffs have identified what they believe to be documents responsive to this request.  The list of documents in possession of Plaintiffs provided in the initial disclosures is responsive to this request.  All records referred to were provided by Defendants, and therefore are in the possession of Defendants as well.  Plaintiffs additionally refer back to the documents responsive to Requests for Production No. 1, 2, 10, and 11.

Discovery for the class certification does not close until November 19, 2018 and as Defendants are aware Plaintiffs presently have several outstanding requests to Defendants for productions relevant to the class certification hearing.

Respectfully submitted this 31[th] day of August, 2018,

> */s/ Jonathan C. Trunnell*
> Jonathan C. Trunnell, La. Bar No. 36956, T.A.
> Sarah H. Voigt, La. Bar No. 18483
> Melanie Bray, La. Bar No. 37049
> Ronald K. Lospennato, La. Bar No. 32191
> Advocacy Center
> 8325 Oak Street
> New Orleans, LA 70118
> 504-708-1460
> 504-507-1956 (fax)
> jtrunnell@advocacyla.org
>
> */s/ Katie M. Schwartzmann*
> Katie M. Schwartzmann, La. Bar No. 30295
> Roderick & Solange MacArthur Justice Center
> 4400 S. Carrollton Avenue
> New Orleans, La 70119
> p. (504) 620-2259
> katie.schwartzmann@macarthurjustice.org

CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of August, 2018, a copy of the foregoing Responses to First Interrogatories and Requests for Production of Documents was sent to counsel of record for Defendants via electronic communication.

> */s/ Jonathan Trunnell*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ANTHONY TELLIS and BRUCE CHARLES | * | JUDGE ELIZABETH E. FOOTE |
| on behalf of themselves and all others similarly | * | USMJ   MARK   L.   HORNSBY |
| situated | * | |
| | * | |
| VERSUS | * | |
| | * | |
| JAMES M. LEBLANC, Secretary | * | |
| of the Louisiana Department of Public Safety | * | |
| and Corrections, JERRY GOODWIN, | * | |
| Warden of David Wade Correction Center | * | CIVIL ACTION |
| COL. LONNIE NAIL; DOCTOR GREGORY | * | NO.:    5:18-CV-00541-EEF-MLH |
| SEAL; ASSISTANT WARDEN DEBORAH | * | |
| DAUZAT; STEVE HAYDEN; AERIAL | * | |
| ROBINSON; JOHNIE ADKINS; and | * | |
| THE LOUISIANA DEPARTMENT OF | * | |
| PUBLIC SAFETY AND CORRECTIONS | * | |

## PLAINTIFF BRUCE CHARLES' RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

TO:   Anthony Tellis, Bruce Charles, and the Putative Class
      *Through their attorney of record*
      Jonathan Trunnell
      The Advocacy Center
      8325 Oak St.
      New Orleans, Louisiana 70118

## INSTRUCTIONS

These discovery requests are continuing in nature, and to the extent that the response may be enlarged, diminished, or otherwise modified by information acquired by you subsequent to the filing of the initial responses hereto, you are required to promptly provide supplemental responses or responses reflecting such changes upon receipt by you of such additional information.

Each request shall be responded to separately and fully, in writing under oath, unless it is objected to, in which event the reasons and legal basis for objection shall be stated in lieu of an

answer, within the time period provided by law. The responses shall be signed by the person making them, and the objections signed by the attorney making them. Whenever an estimate rather than exact information has been used in your response, please state that your response is an estimate and state all reasons why exact information is unavailable. The discovery sought by this pleading encompasses material contained in, or which might be derived or ascertained from your "personal files" and the "personal files" of your agents, representatives, and the files of your attorney(s). You are requested to assemble your response and mark the response by the corresponding number of each request.

If a request (or any part thereof) herein propounded is objected to or is not fully, truthfully and completely answered because of either a claim of privilege or a claim that the response constitutes the mental impression, conclusion, opinion, or legal theory of any attorney concerning this litigation, then in each such instance state the following information as though this request were made a separate and integral part of each such request (or part thereof):

A.     The complete basis for the claim of privilege and identify all persons having knowledge of any of the facts which you claim to be privileged;

B.     The complete basis for your claim that the information constitutes the mental impression, conclusion, opinion or legal theory of any attorney concerning this litigation and identify all persons having knowledge of any of the facts which you claim to be mental impressions, conclusions, opinions and legal theories of any attorney to whose mental impressions, conclusions, opinions or legal theories you refer; and

C.     State whether any of the information not disclosed is known to the personnel of any regulatory or governmental authority or agency.

## DEFINITIONS

The following definitions apply:

(a)    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) through any means, oral or written.

(b)    "Document" means any documents or Electronically Stored Information (as defined *infra*) or any type or description, or any means of storage of information, including, without limitation, any writings, drawings, graphs, charts, photographs, sound recordings, images and other data or data compilations stored in any medium or form from which information can be obtained, translated, if necessary, into reasonably usable form. The term "document" includes correspondence; memoranda; electronic mail; metadata; communications; handwritten or other notes; minutes, diaries; calendars; computer or word processing records, printouts,  tapes  or diskettes; microfilm; microfiche; videotapes; agreements; drafts; reports; ledgers; journals; work sheets; invoices; files; statements; accounts; books; periodicals; calculations; computations, or any other item of a similar nature, whether an original or copy, to which you have or had access, or which is or was in your possession, custody or control. The term "document" specifically includes all non-identical duplicates and drafts. The term also includes electronically stored data from which information can be obtained either directly or by translation through detection devices or readers.

(c)    "To identify a person" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been so identified, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

(d)      "To identify documents" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

(e)      "To identify communications" means to give, to the extent known, the (i) type of communication (i.e. oral or written); (ii) the general subject matter; (iii) the names of all persons who heard, received, participated in or were privy to the communication; and (iv) the date of the communication.

(f) "You" or "your" shall mean the named plaintiffs and putative class members and their respective present and former owners, employees, managers, directors, agents, consultants, advisors, attorneys, representatives, and affiliates.

(g)      "Defendants" refers to the named defendants herein and their respective present and former owners, employees, managers, directors, agents, consultants, advisors, attorneys, representatives, and affiliates.

(h)      "DWCC" refers to David Wade Correctional Center.

### INTERROGATORIES

Plaintiffs first object to the extent that these interrogatories seek responses from unnamed putative class members. The named Plaintiffs respond.

### INTERROGATORY NO. 1:

Please identify any and all persons answering or providing information for these interrogatories and requests for production of documents specifying which discovery response the identified individual answered or supplied information for.

### RESPONSE TO INTERROGATORY NO. 1:

I answered these interrogatories myself, with assistance from my attorneys Katie Schwartzmann and Jonathan Trunnell.

4

**INTERROGATORY NO. 2:**

Please give the date, place and nature of each and every crime for which you have been arrested during your lifetime and booked into any jail or correctional facility, including the disposition for each such crime.

**RESPONSE TO INTERROGATORY NO. 2:**

Response provided by Mr. Charles, to the best of his ability:

I was arrested on April 28, 2013 in Orleans Parish for aggravated burglary and being a felon in possession of a firearm. I was charged with simple burglary and being a felon in possession of a firearm.

I was arrested and booked on a domestic violence charge in Jefferson Parish in approximately 2010-2011, this information should be in my criminal records but I do not have a copy of it.

I was arrested in 2009 for criminal damage in Tensas Parish.

I was rebooked for obscenity at DWCC in 2017.

**INTERROGATORY NO. 3:**

Please state the full name, telephone number and last known address of every witness known to you or to your attorney who has or purports to have knowledge regarding the facts and circumstances surrounding the incidents referred to in your complaint or your alleged injuries, including, but not limited to, medical witnesses and other persons having any knowledge thereof. If any of the witnesses listed are related to you or to each other, please state the nature of such relationship.

**RESPONSE TO INTERROGATORY NO. 3:**

Plaintiffs object to this request as duplicative and refer Defendants to Plaintiffs' initial disclosures. Plaintiffs further object that discovery is ongoing, Plaintiffs continue to await most of the Defendants' responses to discovery, and witnesses are still being identified based upon that discovery. Subject to that objection, what follows is the response provided by Mr. Charles:

I do not have any relatives at David Wade Correctional Center.

**INTERROGATORY NO. 4:**

Identify every person that you or your attorney has met with or have taken statements from (whether oral or written) regarding the facts of your complaint.

**RESPONSE TO INTERROGATORY NO. 4:**

Plaintiffs object insofar that this Interrogatory seeks information from attorneys rather than from a party, and seeks protected attorney work product.  Subject to the foregoing objections, the following is the response provided by Mr. Charles:

I have never met with anybody to take an oral or written statement.  I do not know everybody who my attorneys have met.

**INTERROGATORY NO. 5:**

Please list and describe in detail each and every document, exhibit, or piece of demonstrative evidence you may use at the trial of this cause; for each such document, exhibit and/or piece of demonstrative evidence, state the name, address and phone number of the custodian and the location and times during which the document, exhibit, and/or piece of demonstrative evidence may be inspected.

**RESPONSE TO INTERROGATORY NO. 5:**

Plaintiffs object that discovery is ongoing and Plaintiffs continue to await discovery responses from Defendants, which will inform which documents may be used at trial of this cause. Subject to that objection Plaintiffs refer Defendants to their responses to the Requests for Production propounded herewith, in which Plaintiffs identify the documents in their possession for Defendants, despite Defendants themselves being the source of said documents. Subject to the foregoing objections, the following is the response provided by Mr. Charles:

I do not know what documents will be used at trial.

**INTERROGATORY NO. 6:**

If you have ever been involved in any other legal action, civil or criminal, either as a defendant or as a plaintiff, please state:

a)      The date and place each such action was filed, giving the name of the court, the name of the other party or parties involved, the number of such actions and the names of the attorneys representing each party;

b)      A description of the nature of each action; and

c)      The result of each such action, whether or not there was an appeal and the result of the appeal and whether or not such case was reported and the volume number, name and page citation of such report.

## RESPONSE TO INTERROGATORY NO. 6:

This is the only time I have ever been a plaintiff.

I have never been a Defendant in civil suit.

I have been a Defendant in criminal actions as described in response to Interrogatory 2.

## INTERROGATORY NO. 7:

Please identify all factual bases for your allegations contained in paragraphs 51–106 and identify all documents and evidence you contend support these allegations.

## RESPONSE TO INTERROGATORY NO. 7:

Plaintiffs object that this interrogatory is unduly broad, compound and overly burdensome. The Complaint is replete with the very specific factual bases supporting the allegations therein. The conditions in Defendants' prison are within their possession and control. Additional factual bases and documents continue to be identified through discovery.

Subject to that objection, the following response was additionally provided by Mr. Charles:

Warden Dauzat signs off on things without coming to talk to me about it. I only remember seeing Warden Dauzat three times the entire time I've been here. First, I saw her during orientation, she was just sitting there and did not speak. Once, she came around for a hunger strike. The second time was in 2017 and it was the only time when she went on rounds.

Nobody provides any treatment on the cell-block. There are no programs either.

You can't give an assessment without confidentiality. There is always a guard when I'm talking to Dr. Seal. Dr. Seal doesn't see me very often and makes assumptions about me based on very limited time.

Steve Hayden tries to diagnose people, but he doesn't know what he's doing. He doesn't see anybody unless they are on suicide watch.

On suicide watch, you just get a gown with no mattress. They don't try to figure out if anything is wrong, there's no concern or actual treatment. The Department of Corrections knew that I had a serious mental illness but put me on extended lockdown without any screenings.

The medicines are very poorly tracked.

They think everybody here is faking on suicide watch.  It made me feel disappointed and like I couldn't trust them.  I have also been placed on suicide watch when I didn't express any suicidal intent just because I had asked for mental health.

## INTERROGATORY NO. 8:

Please identify with particularity each and every instance of "extreme conditions creat[ing] mental illness [] and exacerbate[ing] pre-existing mental illness" alleged in Paragraph 2 of your Complaint as a result of practices at DWCC and identify all documents and evidence you contend support these allegations.

## RESPONSE TO INTERROGATORY NO. 8:

Plaintiffs object that this interrogatory is unduly broad, compound and overly burdensome. The Complaint is replete with the very specific facts supporting the allegations therein. The conditions in Defendants' prison are within their possession and control. Additional instances and documents continue to be identified through discovery.

Subject to that objection, the following response was additionally provided by Mr. Charles:

I feel depression, anxiousness and very uncomfortable in wider spaces. I have seen people develop different personalities and become schizo because they spend so much time alone. Interacting with different people becomes very difficult. You become more internal than anything else. People lose social skills and ability to cope in wider spaces.

Some people suffer from depression. Other people talk to selves, kind of lose it. Oscar Toussaint used to scream and holler, drink toilet water, throw stuff, instead of using toilet used floor. He laughed all day and talked to himself. He was acting more dehumanized and animalistic. Oscar used to work out, eat, and interact with people, but couldn't mentally handle the cells.

Those cells take away willpower and determination.

For me personally, I feel down more easily now, I go into a state of depression. The downs in my bipolar disorder last longer.  I try to keep my mind on other people but I can tell that it affects me. I block out my own well-being.  I numb myself.  I am anti-social and I didn't used to be.

The depression part of bipolar is more acute, especially following the deaths of my brothers.  It makes my anger management issues more difficult to manage.  When I found out my brother had shot himself and my other brother overdosed, I felt like I nearly lost my mind and it took all my will power.  After my family was turned around by the prison and not allowed to visit me when they drove 8 hours to see me after my brother died, it took all my willpower to keep it together.

Going into open spaces feels like climbing out of a box, it makes an uncomfortable feeling. I feel like my mind and my body is now used to the box. You get paranoid.  Sometimes when I go on

callouts, I get paranoid about people walking behind me.   I have to constantly check myself that I am tripping.

It also makes me angrier here because they blatantly say they are not going to help you. "We got nothing for you here." In the beginning I would flash out because I didn't realize it was a mental game rather than a physical, so I was going physical. Back then, I might try to do something to myself to force them to do something for me.

I was in cell down from Carlton Turner when he cut his scrotum open. I watched him jump off fence when I was on the yard. It had me afraid for other peoples' wellbeing and my own. If anyone goes to that length to hurt themselves to get help. This made me draw within myself and try to keep myself conscious and focused –I became more afraid that I also was going to lose it. I have to focus on being sane because I realize people around me were losing it.

Even Joshua Williams when he was on N3 B Tier he flashed out and threw feces on the free man. People talk to themselves all the time to release and because there is no one else to talk to. I had to find ways to cope with my environment.

**INTERROGATORY NO. 9:**

Please identify with particularity all factual bases for your allegation that "[v]irtually no mental health care is provided to prisoners on extended lockdown" and identify all documents and evidence you contend support this allegation.

**RESPONSE TO INTERROGATORY NO. 9:**

The objections and answer to this question are the same as Interrogatory #7. The following additional response was given by Mr. Charles:

You get no mental health care; no meetings, no actual help for us or tools to allow us to maintain. There is nothing to keep our minds busy, such as allowing us to talk and keep in contact with families.  I have assurance that my family is still out there, but having maybe one ten-minute-long phone call each month makes my feelings of isolation and depression worse.

**INTERROGATORY NO. 10:**

Please identify all factual bases for your allegations that you were punished for speaking out against a "lack of treatment" and identify all documents and evidence you contend support these allegations.

**RESPONSE TO INTERROGATORY NO. 10:**

The objections and answer to this question are the same as Interrogatory #7. The following additional response was given by Mr. Charles:

My aunt was told that I refused to visit her, but I was on hunger strike and suicide watch after my brother died. They turned her away, but they really just didn't want her to see that I was on hunger strike. There's no policy that says you can't see somebody on hunger strike. My aunt is scared to come visit now because she would get turned away.

They mess with my mail, make up write ups.

The rebooking on obscenity was also retaliatory. I lost good time and was criminally charged. The other guys who were also rebooked were mostly people who were involved in the case.

Col. Nail's wife wrote me up on a Rule 21 from outside the building. I was asleep at the time. I lost 90 days good time for that.

A couple of the sergeants said leave those lawyers alone, they are not going to help you. They threatened to say I spit on them to delay my release date.

## INTERROGATORY NO. 11:

Please identify each and every instance in which you contend Defendants ignored your complaints concerning your mental health needs.

## RESPONSE TO INTERROGATORY NO. 11:

The objections and answer to this question are the same as Interrogatory #7. The following additional response was given by Mr. Charles:

Every time I've been on suicide watch, I tell them how I feel but they never offer any kind of treatment. They just say "put him in a gown" and take my things.

Officers only just refer to mental health when I say I have any kind of problem. This is a security camp. If mental health comes, you usually get put in a gown. Otherwise, they do nothing. Their only real question is whether to put you in the gown. It's their only out because they don't have any programs.

## INTERROGATORY NO. 12:

Please identify all bases for your allegation that mental illness goes untreated at DWCC.

## RESPONSE TO INTERROGATORY NO. 12:

The objections and answer to this question are the same as Interrogatory #7. The following additional response was given by Mr. Charles:

They say that the treatment is Dr. Seal's visits. If you look worse, you get a higher dosage. If you look ok, they just check your blood levels and send you on your way. Other than that, it's only suicide watch.

After we filed the lawsuit, they started doing a program called TTP. They would put me in full restraints, sit a sergeant behind you, and talk to the social worker for a 5-10 minutes. She would ask if there's anything for her to do, how the family is doing. They do this every couple of months or so, but it feels random. I don't know how many times this happened, but maybe between 4-6.

**INTERROGATORY NO. 13:**

Please identify each and every instance in which you contend Defendants took any actions which you believe demonstrate a disregard for your serious mental health needs.

**RESPONSE TO INTERROGATORY NO. 13:**

The objections and answer to this question are the same as Interrogatory #7. The following additional response was given by Mr. Charles:

They also knew I have seizures. I have to work hard to control anxiety and emotional level. And the mace. I couldn't breathe. They put the cuffs on my wrist and ankles. I said I was feeling weak and couldn't get up. I hadn't eaten in 7 days.

See also, Plaintiff Charles' responses to interrogatories 8, 9, 10, 11, 12, 14, 16, and 18.

**INTERROGATORY NO. 14:**

If you contend Defendants have ever delayed providing mental health care to you, please identify each and every instance in which you believe that has occurred and how you were substantially harmed as a result of any such delay.

**RESPONSE TO INTERROGATORY NO. 14:**

In addition to the specific allegations in the Complaint as well as his answers to the other interrogatories, Mr. Charles answers:

They're still delaying. Mental health programs are not provided to inmates on extended lockdown. In order to receive treatment, you have to make the board and return to the main compound.

Plaintiff Charles explained how this causes substantial harm in response to Interrogatory # 8.

**INTERROGATORY NO. 15:**

Please identify prisoner AA referenced in paragraphs 167–185.

**RESPONSE TO INTERROGATORY NO. 15:**

Ivan Clark.

**INTERROGATORY NO. 16:**

Please identify with particularity all factual bases for the allegations that Defendants respond "brutally" to symptoms of mental illness, requests for mental health treatment, and attempts to redress grievances and identify all documents and evidence you contend support these allegations. Please also specify which Defendants are responsible for any identified bases.

**RESPONSE TO INTERROGATORY NO. 16:**

Plaintiffs object that this interrogatory is unduly broad, compound and overly burdensome. The Complaint is replete with the very specific facts supporting the allegations therein. The conditions in Defendants' prison are within their possession and control. Additional instances and documents continue to be identified through discovery.

Subject to that objection, the following response was additionally provided by Mr. Charles:

There are guys who beat on the bars and do it just because. They don't even know why they're doing it. All they do is come, give a verbal direct order, repeat it, spray mace. They don't call mental health and don't have any protocol to calm things. There isn't any real mental health, so they only just treat everything like it's a security problem.

Security ends up doing the part of both security and mental health. Mace is used where there is nobody in any physical danger, just somebody with mental illness trying to cope by yelling or raking the bars.

People get sprayed in full restraints. They will say he spit or tried to head-butt or was abusive in the lobby. They use the littlest excuses in any situation to administer the chemicals. Mace is used to keep people in order instead of providing mental care.

Capt. Heard punched a man in his eye last year. The man flashed out. Instead of restraining him, the Captain just beat the piss out of him in his cell. His whole face was purple. He's on the same tier as Blanchard and Henry.

[Mr. Charles does not know his legal name. He was housed N3-B cell 14.]

**INTERROGATORY NO. 17:**

Please list the names of all persons, both staff and prisoners, at DWCC who have ever been responsible for providing mental health care to you.

**RESPONSE TO INTERROGATORY NO. 17:**

The following response was provided by Mr. Charles:

Dr. Seal, he provides medication only.

If I say I have a problem, the social workers Steve Hayden and Ariel Robinson will come to see about putting me on suicide watch.

I have no meetings with Warden Dauzat or Nicky McCoy. Johnnie Adkins can come give you a phone call if your family calls, but he's never done that for me.

**INTERROGATORY NO. 18:**

Please identify all factual bases for allegations that Defendants discriminate as to mental health treatment on the basis of disability at DWCC and identify all documents and evidence you contend support these allegations.

**RESPONSE TO INTERROGATORY NO. 18:**

Plaintiffs object as this request calls for a legal conclusion. This request also seeks information already identified with particularity in the Complaint. Additional factual bases are continuing to be identified through ongoing discovery. Subject to the objection, the following response was provided by Mr. Charles:

They do not make any programs or care available for us back here to help us work our way to the compound. The way they discipline people makes it hard for anyone with mental issues to make it to the compound.

**INTERROGATORY NO. 19:**

Please identify all offenders at DWCC you claim have a current attorney–client relationship with your attorneys.

**RESPONSE TO INTERROGATORY NO. 19:**

Plaintiffs object as this request calls for a legal conclusion. Subject to the objection, every prisoner housed in extended lockdown at DWCC is a member of the putative class. As such, every conversation that has taken place between counsel and prisoners has been with the understanding that the communication is privileged.

The following is the response provided by Mr. Charles:

I don't know. I do know that I am a class representative. I have seen my lawyers walk back on the tier and know that they are trying to represent everybody back there.

13

**INTERROGATORY NO. 20:**

Please identify each and every instance you contend Defendants have violated the First Amendment, identify which Defendant you contend is responsible for the violation, and identify all documents and evidence you contend support these allegations.

**RESPONSE TO INTERROGATORY NO. 20:**

Plaintiffs object as this request calls for a legal conclusion.

**INTERROGATORY NO. 21:**

Please identify all bases upon which you contend that Defendants have violated the Eighth Amendment and identify all documents and evidence you contend support these allegations.

**RESPONSE TO INTERROGATORY NO. 21:**

Plaintiffs object as this request calls for a legal conclusion.

**INTERROGATORY NO. 22:**

Please identify all documents, evidence, video, records, public records requests, health records, and communications you or your attorney's have made to DWCC and identify what was provided in response thereto.

**RESPONSE TO INTERROGATORY NO. 22:**

Plaintiffs object that this question is overly broad and unduly burdensome, as it seeks information spanning years that is already in the possession of the Defendants. Additionally, this request seeks information in the possession of the attorneys rather than a party. However, in the spirit of cooperation, Plaintiffs refer to the response to Request for Production No. 10.

**INTERROGATORY NO. 23:**

Please identify all expert witnesses you have retained in connection with this action including its investigation.

**RESPONSE TO INTERROGATORY NO. 23:**

Plaintiffs will identify expert witnesses for the class certification proceedings by October 1 pursuant to the court's scheduling order.

**INTERROGATORY NO. 24:**

Please identify instances you claim that Defendants have destroyed evidence in this matter, the basis upon which you make that assertion, and identify all documents and evidence you contend support these allegations.

**RESPONSE TO INTERROGATORY NO. 24:**

The following response was provided by Mr. Charles:

I understand that the hard drives for the cameras were unplugged.

**INTERROGATORY NO. 25:**

Please identify all persons you contend have intentionally been moved out of DWCC as alleged in paragraph 212 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 25:**

Plaintiffs object that this interrogatory is presently the subject of discovery that remains outstanding and overdue from Defendants.

Subject to that objection, the following response was provided by Mr. Charles:

- Dominick Imbrugulio
- Oscar Toussant
- Ivan Clark
- Joe Goode
- Joshua Williams
- Chase Courville
- Joshua Musser
- Gerald Bonner
- Vinson Dotson

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

Any and all photographs, videotapes, or any other type of audio and/or video or any other type of recordings in any media format, in any way pertaining to this matter.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

All video in possession of the Plaintiffs has come directly from Defendants as the result of requests that Plaintiffs have made.  Plaintiffs' response to this request is labeled RFP No. 1.

### REQUEST FOR PRODUCTION NO. 2:

Any and all documents or exhibits, excluding those documents or exhibits previously requested, in the possession of you and/or your attorneys relative to the incidents, injuries and/or damages allegedly sustained by you in this matter.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

This request for production is vague and overbroad because it does not identify what documents that Defendants are seeking with any degree of specificity that would allow Plaintiffs to ascertain whether the document is responsive. Insofar as this request for production seeks every document in Plaintiffs' possession that bears any relationship to this suit, with the sole limitation excluding documents that have been previously requested, Plaintiffs object that it is overbroad and burdensome.

Subject to this objection, Plaintiffs Anthony Tellis and Bruce Charles' responses to this request may be found in the folder RFP No. 2.

### REQUEST FOR PRODUCTION NO. 3:

All items of tangible and/or demonstrative evidence which you may introduce and/or use at the trial of this matter.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

Plaintiffs object as this request is premature and a trial date for the merits of the case has not even been set. The parties remain in discovery moving toward the upcoming hearing on the issue of class certification. Plaintiffs will abide by the obligations set forth in any forthcoming scheduling order for the trial and will produce evidence by the date that is set.

### REQUEST FOR PRODUCTION NO. 4:

Any and all statements, not privileged, made by you concerning the subject matter of this lawsuit, including any written statements, signed or otherwise adopted by you, in any stenographic, mechanical, electrical, or other type of recording or any transcription thereof, made by you or under your direction and/or control and contemporaneously recorded.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Plaintiffs have no documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 5:**

Any and all statements, not privileged, made by any party or witness concerning the subject matter of this lawsuit, including any written statements, signed or otherwise adopted by any party or witness, in any stenographic, mechanical, electrical, or other type of recording or any transcription thereof, made or taken by you or any of your agents, employees and brokers or under your direction and/or control and contemporaneously recorded.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Documents responsive to this request may be found at RFP No. 5.

**REQUEST FOR PRODUCTION NO. 6:**

Any and all reports, documents, and tangible things, including all reports, physical models, compilations of data, and any other materials, prepared by an expert or for an expert.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Plaintiffs object that this request is premature. Plaintiffs do not have any documents responsive to this request other than what is provided in response to RFP nos. 8 & 9.

**REQUEST FOR PRODUCTION NO. 7:**

Copies of all pleadings from any judicial proceedings, civil or criminal, in which you have been a party.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

There are no documents responsive to this request in possession of Plaintiffs.

**REQUEST FOR PRODUCTION NO. 8:**

Please produce a copy of any and all notes taken by representatives of Slate Technology in relation to DWCC's tier cameras in buildings N1–N4.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Documents responsive to this request may be found at RFP No. 8.

**REQUEST FOR PRODUCTION NO. 9:**

Please produce all correspondence, contracts, receipts, payments, reports, analysis, hard drive images, inventories, plans, recommendations, and electronic or other files created by Slate Technology related to DWCC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Plaintiffs object to the extent that this request seeks privileged and confidential attorney work product.

Information not related to DWCC has been redacted from the billing invoices.

Subject to that objection, see Plaintiffs' response at RFP no. 9.

**REQUEST FOR PRODUCTION NO. 10:**

Please produce all requests for information, documents, records, videos, audio recordings ARPs, logs, notes, and electronic or other files requested by you or your attorneys from DWCC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

The response to this request is found in the folder RFP No. 10. This response does not include any discovery requests.

**REQUEST FOR PRODUCTION NO. 11:**

Please produce all information, documents, records, videos, audio recordings ARPs, logs, notes, and electronic or other files received by you or your attorneys from DWCC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Plaintiffs object that this request is unduly burdensome as Defendants are asking Plaintiffs to produce what Defendants produced to Plaintiffs. Plaintiffs response includes all the documents that were provided by Defendants.

Plaintiffs will not be supplementing this response for prospective DWCC productions. The response to this request is found in folder RFP No. 11.

**REQUEST FOR PRODUCTION NO. 12:**

Please produce copies of all information, documents, records, videos, audio recordings ARPs, logs, notes, electronic or other files, and mail you claim has been interfered with by DWCC as alleged in paragraphs 270–271 of your complaint.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 12:

Documents responsive to this request are at RFP no. 12.

### REQUEST FOR PRODUCTION NO. 13:

Please produce all documents and evidence related to your allegations that Defendants are retaliating against offenders for asking for, complaining about, or bringing lawsuits related to mental health care at DWCC.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 13:

Plaintiffs do not have any documents responsive to this request.

### REQUEST FOR PRODUCTION NO. 14:

Please produce all documents evidencing which offenders at DWCC, the Advocacy Center claims to have an attorney–client relationship.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 14:

Plaintiffs objects to this request as it is improperly propounded to the attorney. The Plaintiffs do not, and would not, have access to any documentation forming an attorney-client relationship.

Plaintiffs further object on the basis of attorney client privilege and work product. Communications with counsel, either to seek representation or during the course of legal representation, are covered by attorney client privilege.

### REQUEST FOR PRODUCTION NO. 15:

Please produce all documents related to the Advocacy Center's billing in this matter.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 15:

Plaintiffs object that this is information not in the possession of a party. Plaintiffs further object based upon relevancy. This request is intended to burden, distract and delay.

Plaintiffs' counsel are non-profit law firms and do not bill clients.

### REQUEST FOR PRODUCTION NO. 16:

Please produce all documents and evidence related to your allegations in paragraph 212 of the complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

This request for documents and evidence related to the allegations in paragraph 212 of the complaint is vague.

Plaintiffs do not otherwise have possession of documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 17:**

Please produce all documents related to your allegations that this matter is appropriate for class certification.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Plaintiffs object as this request is vague and overbroad.  The particular nature of what this request is seeking is unclear.  However, in the interest of responding, Plaintiffs have identified what they believe to be documents responsive to this request.  The list of documents in possession of Plaintiffs provided in the initial disclosures is responsive to this request.  All records referred to were provided by Defendants, and therefore are in the possession of Defendants as well.  Plaintiffs additionally refer back to the documents responsive to Requests for Production No. 1, 2, 10, and 11.

Discovery for the class certification does not close until November 19, 2018 and as Defendants are aware Plaintiffs presently have several outstanding requests to Defendants for productions relevant to the class certification hearing.

Respectfully submitted this 31th day of August, 2018,

/s/ Jonathan C. Trunnell
Jonathan C. Trunnell, La. Bar No. 36956, T.A.
Sarah H. Voigt, La. Bar No. 18483
Melanie Bray, La. Bar No. 37049
Ronald K. Lospennato, La. Bar No. 32191
Advocacy Center
8325 Oak Street
New Orleans, LA 70118
504-708-1460
504-507-1956 (fax)
jtrunnell@advocacyla.org

/s/ Katie M. Schwartzmann
Katie M. Schwartzmann, La. Bar No. 30295

Roderick & Solange MacArthur Justice Center
4400 S. Carrollton Avenue
New Orleans, La 70119
p. (504) 620-2259
katie.schwartzmann@macarthurjustice.org

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of August, 2018, a copy of the foregoing Responses to First Interrogatories and Requests for Production of Documents was sent to counsel of record for Defendants via electronic communication.

*/s/ Jonathan Trunnell*