UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ANTHONY TELLIS and BRUCE CHARLES   *      JUDGE ELIZABETH E. FOOTE
on behalf of themselves and all others similarly   *     USMJ MARK L. HORNSBY
situated                                                          *

                                                          *
VERSUS                                                       *

                                                        *
JAMES M. LEBLANC, Secretary                        *
of the Louisiana Department of Public Safety     *
and Corrections, JERRY GOODWIN,          *
Warden of David Wade Correction Center       *     CIVIL ACTION
COL. LONNIE NAIL; DOCTOR GREGORY     *     NO.: 5:18-CV-00541-EEF-MLH
SEAL; ASSISTANT WARDEN DEBORAH      *
DAUZAT; STEVE HAYDEN; AERIAL         *
ROBINSON; JOHNIE ADKINS; and          *
THE LOUISIANADEPARTMENT OF          *
PUBLIC SAFETYAND CORRECTIONS       *

## DEFENDANTS' OPPOSITION TO MOTION
## FOR TEMPORARY RESTRAINING ORDER

## TABLE OF CONTENTS

Table of Authorities ................................................................................................................ ii

I.      Relevant Factual Background ....................................................................................... 1

II.     Law and Argument ......................................................................................................... 5

        A.      Plaintiffs Cannot Demonstrate a Substantial Likelihood of Success on the
                Merits .................................................................................................................... 9

        B.      Plaintiffs Cannot Show Irreparable Harm ........................................................ 10

        C.      The Threatened Injury Does Not Outweigh the Harm to DWCC ............................ 14

        D.      A Preliminary Injunction Does Not Serve the Public Interest ............................ 14

        E.      Should this Honorable Court Find the Issuing of Injunctive Relief
                Is Appropriate, Plaintiffs Must Furnish Adequate Security ........................... 15

III.    Conclusion ..................................................................................................................... 15

## TABLE OF AUTHORITIES

**A.**   **STATUTES AND REGULATIONS**

1.   Fed. R. Civ. P. 65 ..................................................................................15

2.   La. Admin Code. tit. 22, Pt I, § 315 .......................................................11

**B.**   **CASES**

1.   *Atari, Inc. v. Superior Court*, 166 Cal. App. 3d 867, 212 Cal. Rptr. 773
     (6th Dist. 1985) ......................................................................................13

2.   *Babbitt v. Albertson's Inc.*, 1993 WL 150300 (N.D. Cal. 1993) ..............13

3.   *Byrum v. Landreth*, 566 F.3d 442 (5th Cir. 2009) .....................................5

4.   *Clark v. Prichard*, 812 F.2d 991 (5th Cir. 1987) ......................................5

5.   *Crabtree v. Hayden, Stone Inc.*, 43 F.R.D. 281 (S.D.N.Y. 1967)..............7

6.   *Craft v. North Seattle Community College Foundation*, 2009 WL 424266
     (M.D. Ga. Feb. 18, 2009) .......................................................................12

7.   *In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litigation*,
     835 F.3d 1195 (10th Cir. 2016) ..............................................................11

8.   *DeGrate v. Toney*, No. CIV. A. 08-1943, 2009 WL 1309728 (W.D. La. May 11,
     2009) .........................................................................................................9

9.   *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*,
     762 F.2d 464 (5th Cir. 1985) ...............................................................5–6

10.  *Fulco v. Continental Cablevision, Inc.*, 789 F. Supp. 45 (D. Mass. 1992) ..............13

11.  *Garrett v. Metropolitan Life Ins. Co.*, 1996 WL 325725
     (S.D.N.Y. June 12, 1996)........................................................................13

12.  *Hammond v. City of Junction City, Kansas*, 167 F. Supp. 2d 1271
     (D. Kan. 2001) .......................................................................................13

13. *Havlik v. United States*, No. 18-CV-0692, 2018 WL 5117282 (W.D. La. Oct. 19, 2018) ...............................................................................................5–6

14. *Johnson v. Bankers Life and Cas. Co.*, 2013 WL 5442374 (W.D. Wis. Sept. 30, 2013)......................................................................12

15. *In re Katrina Canal Breaches Consolidated Litig.*, No. 05–4182, 2008 WL 4401970 (E.D. La. Sept. 22, 2008) ..........................................................7

16. *Keystone Tobacco Co., Inc v. U.S. Tobacco Co.*, 238 F. Supp. 2d 151 (D.D.C. 2002) ...................................................................................12

17. *Parks v. Eastwood Ins. Services, Inc.*, 235 F. Supp. 2d 1082 (C.D. Cal. 2002) ......12

18. *Resnick v. American Dental Ass'n*, 95 F.R.D. 372, (N.D. Ill. 1982) ......................13

19. *Roberts v. Vannoy*, No. 16-CV-600-JWD-EWD, 2017 WL 2256962 (M.D. La. 2017) ........................................................................5

20. *Roho, Inc. v. Marquis*, 902 F.2d 356 (5th Cir. 1990)..........................................5

21. *Tate v. LeBlanc*, No. 13-CV-1253-P, 2014 WL 6455794 (W.D. La. 2014)..............5

22. *Schick v. Berg*, 430 F.3d 112 (2d Cir. 2005).....................................................11

23. *Vallone v. CNA Financial Corp.*, 2002 WL 1726524 (N.D. Ill. March 19, 2002) ..13

24. *Velez v. Novartis Pharm. Corp.*, 2010 WL 339098 (S.D.N.Y. Jan. 26, 2010) ........12

25. *Walney v. Swepi LP*, 2017 WL 319801 (W.D. Pa. Jan. 23, 2017)) ..........................11

26. *In re Wells Fargo Wage and Hour Employment Practice Litigation*, 2014 WL 1882642 (S.D. Tex. May 12, 2014) .......................................................12

27. *Wright v. Adventures Rolling Cross Country, Inc.*, 2012 WL 2239797 (N.D. Cal. June 15, 2012) .................................................................12

C. **OTHER AUTHORITIES**

1. American Bar Association Formal Opinion 07-445 (April 11, 2007) ........................8

2. Restatement (Third) of the Law Governing Lawyers § 99 (2000) ........................7–8

iii

3.    Status of communications with class members, 2 McLaughlin on Class Actions
§ 11:1 (15th ed.) ................................................................................................7–8, 11

iv

**MAY IT PLEASE THE COURT:**

Defendants offer the following Memorandum in Opposition to Plaintiffs' Motion for Temporary Restraining Order [R. Doc. 142].   For the reasons more fully set forth herein, Plaintiffs are not entitled to the extraordinary remedy of a temporary restraining order.   As such, the Defendants respectfully request that this Honorable Court deny Plaintiffs' request for a temporary restraining order.

## I.   RELEVANT FACTUAL BACKGROUND

On July 19, 2018, the Defendants propounded discovery to the Plaintiffs asking them to identify "all offenders at DWCC you claim have a current attorney–client relationship with your attorneys." (Int. No. 19.)  In response, both named plaintiffs, through their counsel, objected to the interrogatory and implied that all offenders housed in N1–N4 had an attorney–client relationship with their counsel.   On September 18, 2018, the Defendants sent a deficiency letter to Plaintiffs' counsel stating as follows:

> With regard to Interrogatory No. 19, your office has made allegations that you have attorney–client relationships with the putative class.   We have asked a specific question about who you claim to have a relationship with.   This information goes directly toward adequacy of the class representatives.   The Plaintiffs as putative class representatives have an obligation to answer this question.   To the extent they continue to refuse to answer this interrogatory, we will assume that we may interview all inmates you do not identify as clients in this.   We would prefer to work with you on this very basic question, but if you persist in refusing to answer, we may have to take further action to get an answer to this question.

> In response, on October 5, 2018, the Plaintiffs supplemented their response as follows:

> **Supplemental Response to Interrogatory No. 19**: As stated in our original response, every communication we have with ·every prisoner on the South Compound has been with the understanding that the communication is privileged.

1

We represent all members of the putative class, which at a minimum includes all prisoners housed in extended lockdown (N1-N4) as it is defined in the Complaint.

You explicitly do not have our permission to "assume that you may interview all inmates." We have clearly stated that we consider ourselves to have an attorney-client relationship with every person housed on the South Compound and we have advised every person we have spoken with of same. If you have a belief that we are not the representative of a particular person and intend to proceed with speaking with that individual please notify Plaintiffs in advance of any intended contact with a putative class member.

During this litigation the Plaintiffs have been granted access to interview numerous offenders other than the named plaintiffs at DWCC no fewer than nine times, including, on March 16, 2018; July 26, 2018; August 14, 2018; August 27–29, 2018 (site visit); September 24–25, 2018; October 15–16; November 19–20, 2018; December 19, 2018; and January 22, 2019. Plaintiffs' counsel has also used the Protection and Advocacy Acts grant of access ("P&A access") pre-suit to investigate the claims in this action. At no time have the Plaintiffs identified by name any offenders with whom they claim an attorney–client relationship other than the named plaintiffs despite several opportunities to do so.

On January 29, 2019, the Plaintiffs asked to interview the named plaintiffs and other offenders at DWCC on January 31, 2019. (Pl. Ex. 1.) The Defendants responded that day as follows:

Jonathan,

We are in receipt of your request to conduct visits on January 31, 2019 for yourself, Bruce Hamilton, and Katie Schwartzmann. As you know, we previously provided you and Melanie Bray access to offenders at DWCC on January 22, 2019. We have also previously provided other members of the Advocacy Center access to offenders numerous other times during the course of this litigation. As you know, the issue of site visits to DWCC as it relates to this litigation is the subject of a pending motion for protective order [R. Doc. 102.]. This visit is

2

clearly in connection with the litigation and not pursuant to the Advocacy Center's P&A access authority given the fact that enrolled counsel in this case who are not members of the Advocacy Center are seeking access.

The issue of access is further made acute given that the Advocacy Center has refused to identify which offenders it represents in this matter and has sought to prevent the Defendants from having equal access to fact witnesses in this litigation. As you are undoubtedly aware, the issue of access to fact witnesses is now the subject of a pending motion to approve putative class communication [R. Doc. 139]. Given that the issues of site visits and access are now both before the Court, DWCC will not grant your request for interviews of putative class members in connection with the litigation until these matters are ruled upon. DWCC will, however, facilitate interviews with the named plaintiffs Charles and Tellis on January 31, 2019 for you, Ms. Schwartzman, and Mr. Hamilton.

(Pl. Ex. 2.)  In response, Plaintiffs' counsel confirmed via email at 8:57 PM that the interviews

were, indeed, not pursuant to the Advocacy Center's P&A access, stating:

Plaintiffs' counsel indeed intend to visit DWCC in connection with this litigation in our position as attorneys for many of the men housed there and attorneys for the putative class.

(Pl. Ex. 3.)  On January 30, 2019, the Defendants responded as follows:

Dear Mr. Trunnell,

Thank you for your response. We would like to clarify some misstatements therein. We do not intend and are not interfering with known attorney-client relationships. We also are not interfering with the right for offenders with counsel to meet with that counsel.

All of the offenders housed at DWCC may still seek legal assistance. DWCC's refusal to allow interviews of offenders by your office is not denying "access to legal counsel." In the spirit of cooperation, we invite you to identify any of the offenders you claim to represent in this matter so that we may facilitate meetings with those you affirmatively represent in this matter.

Finally, your hyperbole is just that. No rights are being "held hostage." The existence of an attorney-client relationship is the prerequisite to meeting with a client. We have afforded you numerous opportunities to identify those person [sic] that enjoy such a relationship with your office. You have chosen to refuse to

3

answer this simple question in the name of restricting access to important fact witnesses. To be absolutely clear, we remain willing to facilitate meetings with anyone that you have an affirmative attorney-client relationship with provided you demonstrate that relationship. We look forward to working with you to resolve access issues with those offenders that are represented in this matter.

(Pl. Ex. 4)

In response, Plaintiffs' counsel reiterated the position that they believe they represent all putative class members pre-certification and conflated alleged privileged communications with representation. (Pl. Ex. 5.) The Defendants responded as follows:

Dear Jonathan,

You continue to misstate my client's position in an attempt to posture. DWCC's position is still that, at this time and in light of the pending motions, it will facilitate meetings with those that have an affirmative attorney-client relationship with your organization. We have repeatedly asked you to identify the specific persons you contend you have an attorney-client relationship with. You, in response, continue to obfuscate by claiming a position that is not in step with the clear law on the issue. You continue to imply you have attorney-client relationships with other offenders in extended lockdown, but, similarly, continue to refuse to identify those individuals. As such, you have furnished nothing that would allow a reasonable person to identify which persons are represented by the Advocacy Center in this matter. One thing is clear, however. The named plaintiffs enjoy such a relationship.

Your accusations of unlawfulness are not appropriate and are inflammatory for the sake of posturing. As we have continued to clearly state, DWCC is willing to facilitate interviews with any and every offender who is officially represented by the Advocacy Center. Your blanket assertion that this is all offenders in extended lockdown, past, present, and future as indicated in the Complaint is not sufficient given the law on the matter. Your Rule 11 obligations existed at the time of filing. If any allegations you made at that time were not warranted by the facts and law, you need to take appropriate action.

(Pl. Ex. 6.)

As reflected in the above communications, the Defendants have consistently been willing to facilitate meetings between the Advocacy Center and its clients.  The issue, however, is that Plaintiffs' counsel refuses to identify their actual clients.

## II.  LAW AND ARGUMENT

In order to be entitled to injunctive relief, the Plaintiffs must show "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Tate v. LeBlanc*, No. 13-CV-1253-P, 2014 WL 6455794 at \*2 (W.D. La. 2014) (citing *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)).  The party seeking a TRO or preliminary injunction carries the "heavy burden" of showing that his request meets each of these requirements. *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985); see also *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Havlik v. United States*, No. 18-CV-0692, 2018 WL 5117282 at \*2 (W.D. La. Oct. 19, 2018).  If a plaintiff fails to meet his burden regarding any of the necessary elements, the Court need not address the other elements necessary for granting an injunction.  See *Roho, Inc. v. Marquis*, 902 F.2d 356, 361 (5th Cir. 1990) (declining to address the remaining elements necessary to obtain a preliminary injunction after finding that the plaintiff failed to show a substantial likelihood of success on the merits); *Roberts v. Vannoy*, No. 16-CV-600-JWD-EWD, 2017 WL 2256962 at \*2 (M.D. La. 2017).  In a prison setting, requests for preliminary injunctive relief are "viewed with

5

great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Havlik*, 2018 WL 5117282 at *2.

In considering whether to grant or deny a temporary restraining order, the district court "must remember that a preliminary injunction is an extraordinary and drastic remedy[.]" *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985). When the movant fails to prove that, absent the injunction, irreparable injury will result, the preliminary injunction should be denied. *Id.* Plaintiffs cannot meet their cumulative burdens as discussed herein.

After much review, the Defendants did not find a single case holding that putative class counsel is entitled to face-to-face interviews of putative class prisoners facilitated by a correctional institution, much less a case holding that such a right was absolute and limitless. Similarly, the Plaintiffs cite no such authority in their memorandum. For all of the hyperbolic claims that only allowing counsel to meet with their actual clients is "lawless,"[1] "unprecedented,"[2] "violates myriad basic principles of legal ethics,"[3] "alarming,"[4] "obstructionist,"[5] and "an act of egregious bad faith,"[6] no case law has been cited in favor of the Plaintiffs' position. In fact, the issue of direct communication between class counsel and absent class members raises questions about solicitation of clients prohibited by ethical rules, and if subject to no constraints, significant potential for abuse that could undermine the fairness of

---

[1] Mem. Supp. at 5.
[2] *Id.*
[3] *Id.*
[4] *Id.* at 6.
[5] *Id.*
[6] *Id.* at 7.

6

the proceeding. *See* § 11:1.  Status of communications with class members, 2 McLaughlin on
Class Actions § 11:1 (15th ed.).  Further, in order to prevent the class action mechanism as a tool
to identify potential clients, courts will ordinarily not permit putative class counsel to obtain
discovery of even the putative class members' *identities* at the pre-certification stage.  *Id.*; see
also *Crabtree v. Hayden, Stone Inc.*, 43 F.R.D. 281, 283 (S.D. N.Y. 1967) ("the purpose of the
pre-trial discovery rules . . . is to enable the parties to prepare for trial with respect to their own
bona fide existing claims, not to determine whether third parties may have similar claims").

    As to the question of whether putative class members are "clients" pre-certification of a
class action, the law is clear that a "client-lawyer relationship with a potential member of the
class does not begin until the class has been certified[.]"  *In re Katrina Canal Breaches
Consolidated Litig.*, No. 05–4182, 2008 WL 4401970 at *3 (E.D. La. Sept. 22, 2008); *see also*
Restatement (Third) of the Law Governing Lawyers § 99 (2000)  ("[O]nce the proceeding has
been certified as a class action, the members of the class are considered clients of the lawyer for
the class; prior to certification, only those class members with whom the lawyer maintains a
personal client-lawyer relationship are clients.").  Thus, before class certification, the putative
class members are not represented persons regardless of the purported "attorney-client
relationship" Plaintiffs' counsel attaches to members of the putative class.  (Mem. Supp. at 11.).

    The law is clear that, before a class has been certified, "only the named plaintiffs are
clients of the [plaintiffs' law] firm at this stage.  Therefore, [the firm] cannot assert the attorney-
client privilege with respect to . . . [un]named plaintiffs because only clients can claim this
privilege."  See *In re Katrina Canal Breaches Consol. Litig.*, No. CIVA. 05-4182, 2008 WL

4401970, at *2 (E.D. La. Sept. 22, 2008); *see also* § 11:1. Status of communications with class members, 2 McLaughlin on Class Actions § 11:1 (15th ed.) ("The majority rule is that while named plaintiffs are clients of class counsel precertification, absent class members are not represented parties prior to class certification and the expiration of any opt-out period, and thus neither the ethical rules governing communications with represented parties nor the attorney-client privilege, are applicable precertification."); Restatement (Third) of the Law Governing Lawyers § 99 (2000) ("[O]nce the proceeding has been certified as a class action, the members of the class are considered clients of the lawyer for the class; prior to certification, only those class members with whom the lawyer maintains a personal client-lawyer relationship are clients.").

> The American Bar Association is in accord, stating in a formal opinion:
>
> Before the class has been certified by a court, the lawyer for plaintiff will represent one or more persons with whom a client-lawyer relationship clearly has been established. As to persons who are potential members of a class if it is certified, however, no client-lawyer relationship has been established. A client-lawyer relationship with a potential member of the class does not begin until the class has been certified and the time for opting out by a potential member of the class has expired. If the client has neither a consensual relationship with the lawyer nor a legal substitute for consent, there is no representation. Therefore, putative class members are not represented parties for purposes of the Model Rules prior to certification of the class and the expiration of the opt-out period.

American Bar Association Formal Opinion 07-445 (April 11, 2007). As the named plaintiffs are the only offenders represented in this matter, Plaintiffs' counsel is only entitled to meet with the named plaintiffs.

The Defendants' position is aligned with the clear law—the Defendants will facilitate confidential meetings between Plaintiffs' counsel and those that are demonstrably clients of

Plaintiffs' counsel.  The Defendants expressly made offenders Tellis and Charles available for interviews and gave Plaintiffs' counsel every opportunity to identify others that are represented in this matter.  Plaintiffs' counsel refused the opportunity to specifically identify such others and did not exercise their opportunity to meet with their clients—offenders Tellis and Charles— despite them being made available.  As such, the Plaintiffs request for a temporary restraining order is without merit.

### A. <u>Plaintiffs Cannot Demonstrate a Substantial Likelihood of Success on the Merits.</u>

The Plaintiffs have not demonstrated a substantial likelihood that they can prevail on the merits.  Plaintiffs' counsel seek to meet with their clients.  The Defendants have already agreed to facilitate meetings with the named plaintiffs—the only actual clients identified.  There is no right for Plaintiffs' counsel to conduct limitless confidential interviews with putative class members at DWCC.

The Plaintiffs claim that the right to meet face-to-face with putative class members implicates the right of access to the courts.  To prevail on an access-to-the-court claim, a prisoner must generally demonstrate that he has suffered "an actual injury" stemming from the alleged defendants' unconstitutional conduct.  See *DeGrate v. Toney*, No. CIV. A. 08-1943, 2009 WL 1309728 at *6 (W.D. La. May 11, 2009).  As an initial matter, no person represented by Plaintiffs' counsel has standing to raise this claim at this time.  It is undisputed that the Defendants have never denied Plaintiffs' counsel access to the named plaintiffs.  Even despite the standing issue, the Plaintiffs have not demonstrated such an injury, much less unconstitutional conduct: the Defendants will permit confidential meetings of represented

9

offenders with their counsel, and the Plaintiffs have not identified one represented offender who has been denied access to his counsel.

Finally, the Plaintiffs invoke their fallback argument of their P&A access. (Mem. Supp. at 7.) Plaintiffs' counsel was clear that the meetings sought in this instance were not pursuant to the P&A access.[7] This conclusion is inevitable when one considers that Mr. Hamilton and Ms. Schwartzmann, both of whom were seeking meetings with putative class members, are not employees of the Advocacy Center. Thus, this is a litigation dispute, not a P&A access dispute.

### B.  Plaintiffs Cannot Show Irreparable Harm.

The Plaintiffs have also failed to show irreparable harm. Despite already enjoying confidential interviews with dozens of DWCC offenders over two years, conducting burdensome written discovery producing over 100,000 pages of documents, and conducting an expert site visit, the Plaintiffs characterize the approaching March 8, 2019 deadline as critical. Meanwhile, as documented by multiple pending motions before this Honorable Court, the Defendants have been shut out of the facts uncovered during the Plaintiffs' site visit and have been prevented from investigating the claims of DWCC offenders by the Plaintiffs' obstructionist tactics. Not allowing access to putative class members has no impact on the Plaintiffs' readiness for class certification. In fact, Plaintiffs' counsel has previously claimed that individual participation in this suit is "not required." [R. Doc. 135 at 3.] The Plaintiffs are not restricted from meeting with their clients to prepare. All the Defendants require is that the Plaintiffs identify those offenders with whom they enjoy an attorney-client relationship.

---

[7] Pls. Ex. 3 ("Plaintiffs' counsel indeed intend to visit DWCC in connection with this litigation in our position as attorneys for many of the men housed there and attorneys for the putative class.").

With respect to phone calls (Mem. Supp. at 9), the Plaintiffs incorrectly describe the underlying facts. DWCC's policy—as established in the Louisiana Administrative Code—is that all offender telephone calls made through use of the offender telephone system are recorded and are subject to monitoring, including calls made to attorneys using the offender telephone system. La. Admin Code. tit. 22, Pt I, § 315(D)(1)(d).  As to attorney phone calls, however, calls placed on the offender telephone system are recorded but not monitored unless the Warden determines a security need exists. La. Admin Code. tit. 22, Pt I, § 315(D)(6)(a)(iii).  Prior to examination of the content of the conversation with the attorney, the party requesting examination must put in writing the factors supporting the good cause and submit to the Warden for approval. *Id.* Only after approval has been received, shall the conversation be examined. *Id.*   Only investigators approved by the chief of operations shall be allowed to monitor the calls. *Id.* Thus, there is an expectation of privacy on such calls.

That being said, putative class members are not clients and, therefore, are not afforded privileged communications with class counsel pre-certification.   *See* § 11:1. Status of communications with class members, 2 McLaughlin on Class Actions § 11:1 (15th ed.) ("[N]either the ethical rules governing communications with represented parties nor the attorney-client privilege, are applicable precertification."); see also *In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litigation*, 835 F.3d 1195, 1203 (10th Cir. 2016) ("[T]he great weight of authority . . . is that the attorneys in the putative class action do not represent them as class counsel.") (citing McLaughlin on Class Actions); *Schick v. Berg*, 430 F.3d 112, 116–117 (2d Cir. 2005); *Walney v. Swepi LP*, 2017 WL 319801 at *13 (W.D. Pa. Jan. 23, 2017) (quoting

11

McLaughlin on Class Actions); *In re Wells Fargo Wage and Hour Employment Practice Litigation*, 2014 WL 1882642 at *5 (S.D. Tex. May 12, 2014) (a "'client-lawyer relationship with a potential member of the class does not begin until the class has been certified and the time for opting out by a potential member of the class has expired'"); *Johnson v. Bankers Life and Cas. Co.*, 2013 WL 5442374 at *2 n.1 (W.D. Wis. 2013) (quoting McLaughlin on Class Actions); *Wright v. Adventures Rolling Cross Country, Inc.*, 2012 WL 2239797 at *4 (N.D. Cal. June 15, 2012); *Velez v. Novartis Pharm. Corp.*, 2010 WL 339098 at *2 (S.D.N.Y. 2010) (noting that "with respect to Rule 4.2's application in the class-action context" representation occurs post-expiration of opt-out period); *Craft v. North Seattle Community College Foundation*, 2009 WL 424266 at *2 (M.D. Ga. 2009) (in case challenging charges for debt adjusting services, declining to bar defendant from communications with putative class members based on defendant's sending checks to putative class members where communication "did not make any reference to this lawsuit, did not make a lopsided presentation of the facts, did not explain the basis for the refund (or even call the check a 'refund'), and did not elicit a release of any claims"); *Parks v. Eastwood Ins. Services, Inc.*, 235 F. Supp. 2d 1082, 1084(C.D. Cal. 2002) ("[T]he majority view seems to be against a ban on pre-certification communication between Defendant and potential class members.  The Second Circuit, state and federal district courts in California, and a leading treatise conclude Rule 23 pre-certification communication is permissible because no attorney-client relationship yet exists."); *Keystone Tobacco Co., Inc v. U.S. Tobacco Co.*, 238 F. Supp. 2d 151 (D.D.C. 2002) (finding defense counsel's communications with putative class to encourage pre-certification settlement neither inaccurate

12

nor misleading and in compliance with established law); *Vallone v. CNA Financial Corp.*, 2002 WL 1726524 at *1 (N.D. Ill. March 19, 2002) (holding that the attorney-client privilege did not attach between putative class counsel and putative class members and granting defendants' motion to compel supplemental discovery of questionnaires); *Hammond v. City of Junction City, Kansas*, 167 F. Supp. 2d 1271, 1286 (D. Kan. 2001) ("It is fairly well-settled that *prior to* class certification, no attorney-client relationship exists between class counsel and the putative class members."); *Garrett v. Metropolitan Life Ins. Co.*, 1996 WL 325725 at *6 (S.D.N.Y. June 12, 1996), (noting that "before class certification, the putative class members are not 'represented' by the class counsel"); *Babbitt v. Albertson's Inc.*, 1993 WL 150300 at *1 (N.D. Cal. March 31, 1993) (finding that defense attorney's pre-certification communication with putative class members did not violate anticontact rule); *Fulco v. Continental Cablevision, Inc.*, 789 F. Supp. 45, 47 (D. Mass. 1992) (holding that DR 7-104 does not apply prior to certification because the potential class members are not yet "represented by" counsel); *Resnick v. American Dental Ass'n*, 95 F.R.D. 372, 376 n.6, (N.D. Ill. 1982) ("Before certification DR 7-104 does not apply because the potential class members are not yet 'represented by' counsel."); *Atari, Inc. v. Superior Court*, 166 Cal. App. 3d 867, 871, 212 Cal. Rptr. 773 (6th Dist. 1985) ("Absent a showing of actual or threatened abuse, both sides should be permitted to investigate the case fully [during the pre-certification period]").

As to the usage of mail, the Plaintiffs claim this is impractical.  There is no authority indicating that usage of the U.S. mail for communication is "impractical."  Mail is still used in

many class actions to contact putative class members.  In this specific case, the putative class members are easy to contact via the prison mail system.

**C. <u>The Threatened Injury Does Not Outweigh the Harm to DWCC.</u>**

Even assuming the Plaintiffs have shown a likelihood of success on the merits and irreparable injury, the threatened injury does not outweigh the harm to DWCC.  First, there is no injury.  All represented persons have access to their counsel.  DWCC will facilitate confidential meetings with all those that are represented, and DWCC has attempted to identify those persons.  Second, Plaintiffs' counsel has been investigating DWCC for over two years, has conducted an expert site visit, has had dozens of interviews, and has the complete files of all DWCC offenders they have requested.  Only the Defendants have not had access to the putative class members in this case.

**D. <u>A Preliminary Injunction Does Not Serve the Public Interest.</u>**

The granting of a preliminary injunction is adverse to the public interest. The Defendants' conduct is in accord with the law.  It has and will continue to provide access to all represented persons.  At this point, the only persons who are demonstrably represented in this matter are the named plaintiffs.  The orderly process of investigation relies on discovery, which has been conducted at length.  Pre-suit, the Advocacy Center claims to have spent two years investigating DWCC.  Should the Advocacy Center want to question additional offenders, it can notice their depositions.

14

**E.  Should this Honorable Court Find the Issuing of Injunctive Relief is Appropriate, Plaintiffs Must Furnish Adequate Security.**

Under Fed. R. Civ. P. 65(c), the Court may issue a preliminary injunction only if the movant gives security in an amount the Court deems proper to pay costs and damages sustained by a party who is wrongfully enjoined.  If the Court is inclined to grant injunctive relief, the Defendants respectfully request that the Court order the Plaintiffs to post as security an amount sufficient to cover the substantial costs imposed on DWCC of providing a callout procedure, providing meeting space, and providing security for the Advocacy Center.  An amount of $10,000.00 would be appropriate over the duration of this case assuming biweekly meetings going forward.

### III. CONCLUSION

The Plaintiffs are not entitled to injunctive relief on the showing made.  The Defendants have provided all represented persons access to their attorneys in this litigation.  The Defendants have even gone above and beyond by providing numerous opportunities to interview putative class members despite being under no obligation to do so.  There is no authority for the proposition that Plaintiffs' counsel is entitled to confidential face-to-face meetings with putative class members pre-certification.  At this point, a reasonable person could only identify offenders Charles and Tellis as clients in this matter.  The Defendants respectfully submit that this Honorable Court should deny the request for a temporary restraining order.

Respectfully Submitted:

**JEFF LANDRY,
ATTORNEY GENERAL**

15

KANTROW, SPAHT, WEAVER & BLITZER
(A PROFESSIONAL LAW CORPORATION)
445 North Boulevard, Suite 300 (70802)
P. O. Box 2997
Baton Rouge, Louisiana 70821-2997
Telephone: (225) 383-4703
Facsimile: (225) 343-0630

By: /s/ Randal J. Robert
        Randal J. Robert (#13800)
        Connell L. Archey (#29992)
        Keith J. Fernandez (#33124)
        George P. Holmes (#36501)
        *Special Assistant Attorneys General*
        Email: randy@kswb.com
                  connell@kswb.com
                  keith@kswb.com
                  george@kswb.com

        Margaret A. Collier (#33790)
        Assistant Attorney General
        Louisiana Department of Justice
        Civil Division
        P.O. Box 94005
        Baton Rouge, LA 70804-9005
        Telephone: (225) 326-6000
        Fax: (225) 326-6098
        Email: collierma@ag.louisiana.gov

Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of February, 2019, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

                /s/ Randal J. Robert
                Randal J. Robert

#374122

16