UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| ANTHONY TELLIS, ET AL. | CIVIL ACTION NO. 18-cv-0541 |
| VERSUS | JUDGE FOOTE |
| JAMES M. LEBLANC, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM ORDER**

**Introduction**

Before the court are Defendants' Motion for Protective Order (Doc. 102); Defendants' Motion to Compel (Doc. 112); and Plaintiffs' Motion for Leave to Amend Complaint (Doc. 128).

**Background**

This putative class action was filed by Anthony Tellis and Bruce Charles on behalf of themselves and all other similarly situated prisoners at David Wade Correctional Center. Plaintiffs seek injunctive and declaratory relief regarding "cruel and unusual conditions" of confinement for prisoners on extended lockdown at DWCC. Plaintiffs allege, among other things, that the conditions and the lack of appropriate mental health care trigger the onset or worsening of mental illness, which creates significant risk of serious harm to prisoners. Plaintiffs also allege that the facts giving rise to their claims are rooted in Defendants' systemic practices and policies, which apply with equal force to all prisoners held on extended lockdown.

Plaintiffs are represented by the Advocacy Center, which represents that is the designated Protection and Advocacy ("P&A") agency in the state of Louisiana. Plaintiffs state that the Advocacy Center has a federal statutory mandate to investigate allegations of abuse and neglect of people with disabilities. That mandate, according to Plaintiffs, explicitly includes people with disabilities in prison. Doc. 108, p. 6.

In 2017, the Advocacy Center sued Department of Corrections Secretary James M. LeBlanc, DWCC Warden Goodwin, and Colonel Lonnie Nail in the Middle District of Louisiana for not permitting the Advocacy Center reasonable access to inmates at DWCC. The Advocacy Center and the Louisiana Department of Corrections entered into a settlement agreement regarding the Advocacy Center's access to prisoners at DWCC. Plaintiffs were not parties to that lawsuit.

**Defendants' Motion for Protective Order (Doc. 102)**

In August 2018, Plaintiffs conducted a site inspection of DWCC with their expert witnesses. The site inspection was authorized by the court in a prior memorandum order (Doc. 91) that was issued pursuant to a discovery motion. The court imposed the following conditions on the site inspection. First, Defendants, their counsel, and their experts could accompany Plaintiffs' counsel and Plaintiffs' experts during all aspects of the site visit. Second, Defendants, their counsel, and their experts were required to keep a sufficient distance between them and Plaintiffs' counsel and experts during cell-front prisoner interviews so that the interviews could be conducted with a measure of respect and in a reasonably confidential manner.

Subsequently, Plaintiffs' counsel advised Defendants of their intention to conduct an additional site visit to do attorney walkthroughs of certain tiers. Defendants refused. Plaintiffs responded to Defendants' denial by invoking the dispute resolution provisions of the Middle District settlement agreement. Defendants took the position that the settlement agreement did not apply once litigation has begun.

After considering all of the parties' arguments, **Defendants' Motion for a Protective Order (Doc. 102) is denied**. The court does not believe that Plaintiffs are attempting to use the settlement agreement to circumvent well-established discovery procedures. The court finds that Plaintiffs' counsel are entitled to conduct an additional tier walkthroughs and cell-front interviews pursuant to Rule 26 and Rule 34. The court does not perceive this request as a "fishing expedition," as Defendants contend.

The parties are ordered to meet and confer in good faith regarding the date for the inspection. All previous conditions imposed on the prior inspection (Doc. 91) apply to this additional inspection.

Plaintiffs are cautioned that the court may require a strong showing of good cause before allowing additional requests under Fed. R. Civ. P. 34 for tier walkthroughs. Indeed, the court's resolution of Plaintiffs' motion to amend may obviate the need for additional tier walkthroughs for this litigation. Defendants are cautioned that any further discovery motion filed in this court must be preceded by a "meet and confer" conducted in person or by telephone; an exchange of emails does not comply with this court's local rule. <u>Johnson v. Coca-Cola</u>, 2006 WL 1581218 (W.D. La. 2006)(Hornsby, M.J.).

**Defendants' Motion to Compel (Doc. 112)**

Defendants' Motion to Compel seeks an order directing Plaintiffs to provide (1) the identity of each prisoner with whom Plaintiffs' counsel and experts spoke during the cell-front interviews; (2) a verbatim description of the content of the conversations; and (3) a request for production of all notes made by Plaintiffs' counsel and experts of any conversations with any prisoner during the interviews.

Defendants' motion is **granted in part and denied in part** as follows. Plaintiffs are ordered to provide a list of each prisoner that Plaintiffs' counsel and experts spoke with during the cell-front interviews. Defendants' request for a detailed or verbatim description of the content of the conversations is denied because that information is covered by the attorney-client privilege and work product immunity. Defendants have custody of these prisoners 24 hours a day, so they do not have a substantial need for Plaintiffs' counsel's work product. Defendants' request for the production of all notes is denied on the same basis. Defendants may obtain discovery from Plaintiffs' experts as set forth in Rule 26 and any scheduling deadlines set by this court.

**Plaintiffs' Motion for Leave to Amend Complaint (Doc. 128)**

Plaintiffs seek leave of court to amend their complaint to add the Advocacy Center as an additional plaintiff. Plaintiffs argue that the Advocacy Center's associational standing is a path to reaching the merits of this case without requiring the time and expense of class certification. Plaintiffs state that P&A agencies are often plaintiffs in prison litigation in order to protect the rights of their constituents and fulfill their statutory mandate. Plaintiffs also argue that Defendants will suffer no prejudice by the addition of

the Advocacy Center as a party. Plaintiffs note that the court recently rescheduled all of the class discovery deadlines, and the hearing on class certification is not set until October 15, 2019.

Defendants argue that the Advocacy Center is simply attempting to amend its complaint to avoid the rigorous analysis required to obtain class certification. Defendants also argue that the motion to amend is untimely, and the proposed amendment should be denied as futile.

The Supreme Court explained the requirements for associational standing in Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 343 (1977):

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

See also Prison Justice League v. Bailey, 697 Fed.Appx. 362, 363 (5th Cir. 2017). There apparently is no dispute that the Advocacy Center meets the first two prongs. However, Defendants argue that Plaintiffs cannot meet the third prong required to have associational standing—Plaintiffs must show that neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of the individual members.

A party satisfies the third prong if its "claims can be proven by evidence from representative injured members, without a fact-intensive-individualized inquiry." Bailey, supra. While excessive force cases are necessarily fact intensive, and whether the force used is "excessive" or "unreasonable" depends on the facts and circumstances of each case, an association may be able to prove excessive force or retaliation without a fact-intensive-

individualized inquiry.  Id. at 364.  And where an association plausibly alleges that inmates fear retaliation from officers if they were to be named individually in a complaint, that association's claim is necessarily bolstered.  Id.[1]

After a careful review of the proposed Amended Complaint, the parties' briefs and the relevant factors, and after consultation with the District Judge, **Plaintiffs' motion to amend (Doc. 128) is granted**.  The proposed Amended Complaint seeks only prospective and declaratory relief applying to DWCC inmates on extended lockdown.  The Advocacy Center does not seek individualized relief for any particular plaintiff.  In fact, Plaintiffs contend that the entire system of care at DWCC is broken or missing, not that care in individual instances has fallen beneath the constitutional floor.  Doc. 135, p. 4.  Furthermore, the Amended Complaint alleges that Defendants "punish those [inmates]

---

[1] The court acknowledges that Fifth Circuit precedent appears to foreclose associational standing under the first factor. In Association for Retarded Citizens of Dallas v. Dallas County Mental Health & Mental Retardation Center Board of Trustees, 19 F.3d 241, 244 (5th Cir. 1994), the Fifth Circuit held, without extensive analysis or citation to the statutes establishing the authority of P&A agencies, that Texas's P&A agency did not have associational standing "because most of its 'clients'—handicapped and disabled people—are unable to participate in and guide the organization's efforts." Id. However, the client at issue in that case was a minor with cerebral palsy and an intellectual disability. Id. at 243. Thus, the authority under which the Texas P&A agency was operating was the authority granted by the Protection and Advocacy of Individual Rights Program of the Rehabilitation Act of 1973, 29 U.S.C. § 794e, which excludes (and excluded at the time of the Fifth Circuit's opinion) individuals eligible for services solely because they are mentally ill. But here, the Advocacy Center's authority to advocate for individuals with mental illness (such as the prisoners in this case) is based on a different federal law that expressly requires each P&A agency serving mentally ill populations to have an advisory council at least 60% of whose members are "individuals who have received or are receiving mental health services or who are family members of such individuals" and that must be "chaired by an individual who has received or is receiving mental health services or who is a family member of such an individual." 42 U.S.C. § 10805(a)(6)(B)–(C). Thus, federal law expressly contemplates that mentally ill clients of the Advocacy Center will be involved in directing the agency's efforts.  Therefore, this case is distinguishable.

who speak out or act out due to lack of [mental health] treatment," and that "every prisoner . . . is at significant risk of being trapped in an ever-deepening cycle of untreated mental illness…" ¶¶ 5 & 112.  Plaintiffs also allege that when Defendants' staff become upset with a prisoner, the staff may simply put the prisoner on Policy 34 (strip cell due to rule violation) without any showing that the prisoner has violated any rules. ¶ 49.  Plaintiffs further allege that DWCC staff react punitively and "engage in targeted punishment of suicidal prisoners." ¶¶ 50 & 54.

The sum and substance of the Amended Complaint is that DWCC's staff does not properly screen for or treat prisoners with mental health problems, and when a prisoner does request mental health care or speaks up for himself, the prisoner is punished by being placed on suicide watch and/or held in harsh and brutal conditions. Amended Complaint ¶ 5.  The court agrees with Plaintiffs that this case presents exactly the sort of claims and remedies for which associational standing is appropriate.

The court overrules Defendants' timeliness argument regarding the amendment.  While significant work has been done by the parties, much more work remains.  The court perceives little if any prejudice to Defendants in allowing the amendment at this time.

**Effect on Other Motions**

Counsel for the parties are ordered to confer in good faith to determine whether the court's rulings on the above motions impacts or moots any other pending motion in this case, including the motion to certify a class action.  The parties are directed to notify the court in writing of the results of their good faith discussions within fourteen (14) days of the date of this order.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 7th day of February, 2019.

Mark L. Hornsby
U.S. Magistrate Judge