UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ANTHONY TELLIS, ET AL.           CIVIL ACTION NO. 18-cv-0541

VERSUS           JUDGE ELIZABETH ERNY FOOTE

JAMES M. LEBLANC, ET AL.           MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

Before the Court are Plaintiffs' motion for a temporary restraining order and preliminary injunction, [Record Document 142], and Defendants' motion to approve communication with members of the proposed class, [Record Document 139]. For the reasons given below, **IT IS ORDERED** that Defendants are to provide Plaintiffs' counsel with reasonable opportunity to conduct confidential interviews with members of the proposed class. As a result of this order, Plaintiffs' motion for a preliminary injunction, [Record Document 142], is **DENIED AS MOOT**. Defendants' motion, [Record Document 139], is also **GRANTED**; defense counsel may speak with inmates who are not currently represented by Plaintiffs' counsel, subject to the prophylactic guidelines described below.

I. **Plaintiffs' Counsel's Access to Members of the Proposed Class**

Plaintiffs seek a temporary restraining order and preliminary injunction allowing Plaintiffs' counsel to interview the named plaintiffs as well as other inmates at David Wade Correctional Center ("DWCC"). [Record Document 142]. Although the parties have reported to the Court that they have resolved their dispute regarding the ten

1

inmates whose interviews were the subject of the motion, the parties have also alerted the Court that they continue to dispute the access Plaintiffs' counsel may have to members of the proposed class.

At the outset, the Court observes that a preliminary injunction is not the ideal procedural vehicle for the relief Plaintiffs seek. Although the amended complaint alleges certain kinds of interference with what inmates can bring to attorney meetings, it does not allege that Defendants are preventing these meetings entirely. [Record Document 154 at 45, 53]. The absence of this allegation in an otherwise detailed complaint suggests that the specific issue raised by Plaintiffs' motion—the availability of in-person interviews with counsel—is not necessarily connected to the merits of this litigation.[1]

In order to control the progress of a class action, Rule 23(d) of the Federal Rules of Civil Procedure authorizes a district court to "enter whatever orders are necessary to the conduct of the action." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1102 (5th Cir. 1977) (citing *Gordon v. E. Air Lines, Inc.*, 549 F.2d 1006, 1012 n.8 (5th Cir. 1977); *Calhoun v. Cook*, 469 F.2d 1067 (5th Cir. 1972)). This action has been pending for over a year, and a hearing on class certification is set for October 15, 2019. Actions by either party that invite additional delay interfere with the "just, speedy, and inexpensive determination" of the merits of this action. Fed. R. Civ. P. 1. As a result, the Court finds that the interests of justice are best served by allowing Plaintiffs' counsel

---

[1] In making this observation, the Court does not preclude the possibility that provision for in-person interviews between inmates and counsel might be part of a final judgment.

2

reasonable access for in-person confidential interviews with members of the proposed class.

Several unique features of this litigation support this Court's conclusion. First, inmates in the proposed class have a First Amendment right to a "reasonable opportunity to seek and receive the assistance of attorneys. Regulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid." *Procunier v. Martinez*, 416 U.S. 396, 419 (1974) (citing *Ex parte Hull*, 312 U.S. 546 (1941)), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 410 (1989). This Court acknowledges that the named plaintiffs may lack standing to raise the claims of other members of the proposed class. Nevertheless, given the procedural posture of this case, this Court feels that it must give some weight to the interests of members of the proposed class.

Second, the Magistrate Judge has granted Plaintiffs' motion to amend the complaint to add the Advocacy Center as a plaintiff. [Record Document 153]. Although the amendment is the subject of a pending appeal, [Record Document 157], the Advocacy Center is currently a party to this litigation. The Advocacy Center is the protection and advocacy ("P&A") agency for Louisiana. P&A agencies have a statutory mandate to investigate conditions at facilities that house the mentally ill. 42 U.S.C. §§ 10802(3), 10805(a). Federal regulations enforce this mandate by allowing P&A agencies "reasonable unaccompanied access to public . . . facilities . . . which render care or treatment for individuals with mental illness . . . and . . . . reasonable unaccompanied access to residents at all times necessary to conduct a full investigation of an incident of

abuse or neglect," 42 C.F.R. § 51.42(b); these facilities include prisons, *id.* § 51.2. Hence, the Advocacy Center has a right to access DWCC inmates. However, DWCC and the Advocacy Center have previously entered into a settlement agreement in the Middle District of Louisiana regarding the Advocacy Center's access to the prison. This Court does not intend to interfere with any resolution of disputes under that agreement. Instead, this Court merely wishes to note the existence of authority for the Advocacy Center to access individual inmates who may be members of the proposed class.

Characteristics of the members of the proposed class also weigh in favor of allowing Plaintiffs' counsel in-person interviews. Because the members of the prospective class are all incarcerated, Plaintiffs' counsel has no means of accessing them except with Defendants' cooperation. Although Defendants assert that mail is an effective substitute for in-person visits, [Record Document 145 at 13–14], Plaintiffs have pointed out various characteristics of their clients or prospective clients that render mail an ineffective substitute for in-person meetings, including the literacy level of many inmates, [Record Document 142-1 at 9]. The Court also notes that the inmates who are the subject of this litigation are mentally ill, a circumstance that not infrequently contributes to difficulties in communication.

Finally, Plaintiffs represent that in-person attorney visits have been conducted at DWCC for nearly two years without incident. [*Id.*]. Defendants do not dispute that, until recently, they have been providing the access that they are now denying. They have pointed to no change in circumstances at DWCC that would support a need to curtail visits that have been going on for some time. This, in turn, suggests that there is no

strong penological interest in preventing reasonable in-person visits of Plaintiffs' counsel with members of the prospective class.

Therefore, **IT IS ORDERED** that Defendants are to allow Plaintiffs' counsel <u>reasonable</u> access to confidential interviews with members of the proposed class. In light of this order, Plaintiffs' motion for a preliminary injunction [Record Document 142] is **DENIED AS MOOT**. If the requests for interviews become unreasonable in number, duration, or frequency, Defendants may raise that issue in a subsequent motion.

## II. <u>Defendants' Communication with Members of the Proposed Class</u>

Defendants have moved for permission to communicate with unrepresented members of the proposed class. [Record Document 139]. The parties have represented to the Court that Plaintiffs' counsel claims to have an attorney-client relationship with 310 DWCC inmates.

Prior to class certification, defendants have a right to speak with unrepresented class members. Fed. Judicial Ctr., *Manual for Complex Litigation, Fourth* § 21.12 (2004) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 95 (1981)) ("Defendants and their counsel generally may communicate with potential class members in the ordinary course of business . . . ."); *see also Gulf Oil*, 452 U.S. at 100 (finding that a ban on communication between counsel for a party and members of a proposed class without prior court approval was an abuse of discretion absent findings warranting the restraint on expression). However, ethical rules prohibit defense counsel from speaking directly with named plaintiffs. *See* La. R. Prof'l Conduct 4.2.

Rule 4.2 of the Louisiana Rules of Professional Conduct provides that an attorney may not speak with a "person the lawyer knows to be represented by another lawyer in the matter." *Id.* Members of the proposed class, even those with present attorney-client relationships with Plaintiffs' counsel, are technically not parties "in the matter" at the moment. However, if the class is certified, then these putative class members with whom Plaintiffs' counsel has a present attorney-client relationship will become parties to this matter. In accord with the spirit of Rule 4.2, the Court concludes that defense counsel may not speak with members of the proposed class with whom the Advocacy Center currently has an attorney-client relationship.

Thus, to allow Defendants and their counsel to exercise their right to communicate with members of the proposed class, they must have some way to determine who is currently represented. Therefore, **IT IS ORDERED** that by **March 15, 2019** Plaintiffs' counsel provide defense counsel with a list of inmates with whom a present (not prospective) attorney-client relationship exists.

The Court will offer a few observations to assist the parties in determining who is presently represented by Plaintiffs' counsel. First of all, the Court finds it somewhat difficult to believe that Plaintiffs' counsel has a present attorney-client relationship with 310 different inmates. Plaintiffs appear to be confusing the existence of a privilege with the existence of an attorney-client relationship. If an inmate has spoken with or written to Plaintiffs' counsel as a prospective client, then that communication is privileged and counsel has acquired limited duties of loyalty and confidentiality. *See* La. R. Prof'l Conduct 1.18.

Nevertheless, communication with a prospective client does not, in itself, create an attorney-client relationship. The formation of an attorney-client relationship requires a "clear and express agreement between the parties." *Spicer v. Gambel*, p. 5 (La. App. 4 Cir. 6/20/01); 789 So. 2d 741, 744 (citing *Keller v. LeBlanc*, 369 So. 2d 193 (La. Ct. App. 1979)). For lawyers practicing in Louisiana, an attorney-client relationship is formed when:

> (1) a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person; and either
>    (a) the lawyer manifests to the person consent to do so; or
>    (b) the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services . . . .

*In re Austin*, 2006-0630, p. 10 (La. 11/29/06); 943 So. 2d 341, 347 (quoting Restatement (Third) of Law Governing Lawyers § 14 (Am. Law Inst. 2000)). Thus, the client must subjectively believe that an attorney-client relationship has been formed and that belief must be objectively reasonable. *Feingerts v. D'Anna*, 2017-0321, p. 9 (La. App. 4 Cir. 1/10/18); 237 So. 3d 21, 28 (quoting *St. Paul Fire & Marine Ins. Co. v. GAB Robins N. Am., Inc.*, 2008-0331, pp. 8–9 (La. App. 4 Cir. 11/19/18); 999 So. 2d 72, 77). If the lawyer merely gathers information without offering to provide legal services, an attorney-client relationship might not be formed. *Cf. Austin*, 2006-0630, pp. 10–11; 943 So. 2d at 348 (holding that when an attorney acted as an investment advisor and did not provide legal services no attorney-client relationship was formed). In the pre-certification context, the fact that a member of the proposed class will become represented if the class is certified is not relevant to determining whether a present attorney-client relationship exists between proposed class counsel and the member of

7

the proposed class. When compiling the list of inmates with whom Plaintiffs' counsel has an attorney-client relationship, counsel is encouraged to keep this law in mind. If Defendants disagree with Plaintiffs' counsel's characterization of their relationship with a particular inmate, Defendants may file an appropriate motion.

Although defense counsel has the right to speak with unrepresented class members, this Court retains discretion to oversee that communication. *See* Fed. R. Civ. P. 23(d); *Gulf Oil*, 452 U.S. at 100 ("Because of the potential for abuse, a district court has both the duty and broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."). Nevertheless, because restricting communication raises First Amendment concerns, the Supreme Court has instructed that

> an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. . . . . [S]uch a weighing— identifying the potential abuses being addressed—should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances.

*Gulf Oil*, 452 U.S. at 102. Courts have specifically intervened to limit communication with putative class members "where the communications were misleading, coercive, or an improper attempt to undermine Rule 23 by encouraging class members not to join the suit." *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 667 (E.D. Tex. 2003) (citing *Kleiner v. First Nat'l Bank of Atl.*, 751 F.2d 1193, 1206 (11th Cir. 1985); *Burrell v. Crown Cent. Petroleum*, 176 F.R.D. 239, 244–45 (E.D. Tex. 1997); *Hampton Hardware, Inc. v. Cotter & Co.*, 156 F.R.D. 630, 632–33 (N.D. Tex. 1994)).

8

Defense counsel have a First Amendment right to engage in noncoercive and nonmisleading communication with unrepresented members of the proposed class. Moreover, Plaintiffs' counsel represent that potentially problematic communications with members of the proposed class have been made by Defendants themselves rather than by defense counsel. [Record Document 164 at 3–4].

On the other hand, "prisons and jails are inherently coercive institutions . . . ." *West v. Atkins*, 487 U.S. 42, 56 n.15 (1988). In addition, during a recent pretrial conference, counsel for Defendants stated that they had information that specific inmates, including a named plaintiff, no longer wished to be associated with this litigation. [Record Document 152 at 2]. This revelation raises a possibility that coercive pressure is being placed upon named plaintiffs and other prospective class members.[2] This Court is also concerned that inmates may have some difficulty understanding precisely who defense counsel represents. Counsel from Kantrow Spaht are not state employees and are not the attorneys typically representing DWCC and its officials.

Therefore, Defendants' motion to approve class communication [Record Document 139] is **GRANTED. IT IS ORDERED** that defense counsel may interview unrepresented members of the proposed class. However, to lessen the risk of coerced communications, **IT IS FURTHER ORDERED** that the following requirements are put in place:

---

[2] Plaintiffs' counsel has now clarified that there is no evidence that defense counsel had improper contact with either named plaintiff. [Record Document ____ at 2]. Instead, it appears that this contact occurred through Warden Deborah Dauzat, one of the defendants in this matter. [*Id.* at 3–4].

9

(1) Defense counsel may not interview members of the proposed class who appear on the list of currently represented persons that Plaintiffs' counsel will provide by **March 15, 2019**;

(2) Before any interview with an unrepresented member of the proposed class, defense counsel must inform the inmate of the following:

    a. That counsel represents DWCC and each of the Defendants;

    b. That the inmate may decline to speak with defense counsel;

    c. That the inmate cannot be punished for refusing to speak with defense counsel;

    d. That the inmate cannot be rewarded for choosing to speak with defense counsel.

**IT IS FURTHER ORDERED** that defense counsel are to ensure that Defendants and their agents do not give members of the proposed class any impression that is contrary to guarantees (b), (c), and (d) above.

This order mirrors practices specifically approved by the Eastern District of Michigan for communication between defense counsel and inmates who are members of a prospective class:

> ascertaining whether each interviewee was already represented by counsel in a conditions of confinement case and discontinuing the interview if the interviewee answered in the affirmative, disclosing their identity as [defense counsel] and their representation of the [department of corrections], [and] allowing . . . the interviewees the ability to decline to . . . speak with the [defense attorneys] without disciplinary repercussions.

*Doe 1 v. Mich. Dep't of Corr.*, No. 13-14356, 2014 WL 3809419, at *9 (E.D. Mich. Aug. 1, 2014). As with the *Doe* court, this Court believes that the procedure embodied in its order represents a minimal restriction on speech that still enables Defendants to exercise their rights. This Court also believes that items (c) and (d) address Plaintiffs' concern that communication between defense counsel and members of the proposed class "could give the incarcerated men the impression that if they cooperate with defense counsel in this litigation they will be transferred from the prison or otherwise receive privileges." [Record Document 164 at 4–5].

The Court feels that a few observations about the scope of this litigation may assist the parties going forward.[3] Defendants have insisted that interviews with members of the prospective class are a necessary part of Defendants' factual investigation. [Record Document 139-1 at 5]. Although the Court does not discount the possibility that interviews with members of the proposed class might produce some relevant information, it does not seem likely that these interviews will yield a large amount of such information.

Information obtained from individual interviews with members of the proposed class will be relevant primarily to the extent that the information proves or disproves the existence of policies or procedures that result in inadequate mental health care. If the Court finds in Plaintiffs' favor on the merits, the result will be an order requiring DWCC to institute new policies and procedures related to mental health care. Individual

---

[3] The Court offers these observations as an aid to the parties. The Court has not yet decided whether to certify the class, and nothing in this opinion should be viewed as binding upon the Court when it rules on class certification.

examples in which mental health care was adequate or inadequate may help this Court to shape these new policies, but this Court will not order specific injunctive relief tailored to each individual member of the class. Because the central issue in this case is Defendants' policies and procedures, it would seem to the Court that Defendants' records likely contain much of the information that Defendants require in order to mount a defense.

Turning now to the present stage of litigation, the Court notes that Plaintiffs seek certification under Rule 23(b)(2). Under that rule, certification is proper if the "party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Although certification under this rule requires class members to "have been harmed in essentially the same way," *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007) (citing *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 975 (5th Cir. 2000)), courts, including the Fifth Circuit, have consistently held that

> certification of a Rule 23(b)(2) class is proper despite the fact that not all class members may have suffered the injury posed by the class representatives so long as the challenged policy or practice was generally applicable to the class as a whole. The requirement focuses on the defendant and questions whether the defendant has a policy that affects everyone in the proposed class in a similar fashion.

2 William Rubenstein, et al., *Newberg on Class Actions* § 4:28 (5th ed.) (footnotes omitted); *see M.D. ex rel. Stuckenberg v. Perry*, 675 F.3d 832, 847 (5th Cir. 2012) (rejecting a defendant's argument that (b)(2) certification is only appropriate if the class claims "are premised on a 'specific policy [of the State] uniformly affecting—and

injuring—each child'" (emphasis added)). Thus, proof that appropriate mental health care is currently being provided to some DWCC inmates will not necessarily negate a finding that systems for providing that care are deficient if, in other cases, unsatisfactory care is being provided. Similarly, because individual inmates will likely not have the right to opt out of this Rule 23(b)(2) class,[4] individual inmates' dissatisfaction with Plaintiffs' counsel or with the progress of this litigation is likely immaterial unless it is so severe as to call into question the suitability of Plaintiffs' counsel to serve as class counsel.

### III. Conclusion

In light of the foregoing discussion, **IT IS ORDERED** that Defendants are to allow Plaintiffs' counsel <u>reasonable</u> access to confidential interviews with members of the proposed class. In light of this order, Plaintiffs' motion for a preliminary injunction [Record Document 142] is **DENIED AS MOOT**.

Defendants' motion to approve class communication [Record Document 139] is **GRANTED**. **IT IS ORDERED** that defense counsel may interview unrepresented members of the proposed class. However, to lessen the risk of coerced communications, **IT IS FURTHER ORDERED** that the following requirements are put in place:

---

[4] The Court notes that although it has discretion to allow class members to opt out of a Rule 23(b)(2) class, this is most logical in the context of a 23(b)(2) class that also seeks damages. *See In re Monumental Life Ins. Co.*, 365 F.3d 408, 417 & n.15 (5th Cir. 2004); *see also Ayers v. Thompson*, 358 F.3d 356, 375 (5th Cir. 2004) (quoting *Penson v. Terminal Transp. Co.*, 634 F.2d 989, 994 (5th Cir. Unit B Jan. 1981)) ("[A] member of a class certified under Rule 23(b)(2) has no absolute right to opt out of the class.").

(1) Defense counsel may not interview members of the proposed class who appear on the list of currently represented persons that Plaintiffs' counsel will provide by **March 15, 2019**;

(2) Before any interview with a member of the proposed class, defense counsel must inform the inmate of the following:

    a. That counsel represents DWCC and each of the named Defendants;

    b. That the inmate may decline to speak with defense counsel;

    c. That the inmate cannot be punished for refusing to speak with defense counsel;

    d. That the inmate cannot be rewarded for choosing to speak with defense counsel.

**IT IS FURTHER ORDERED** that defense counsel are to ensure that Defendants and their agents do not give members of the proposed class any impression that is contrary to guarantees (b), (c), and (d) above.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the ____ day of March, 2019.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE