ANTHONY TELLIS, ET AL                    CIVIL ACTION NO. 18-cv-0541

VERSUS                                   JUDGE FOOTE

JAMES M. LEBLANC, ET AL                  MAGISTRATE JUDGE HORNSBY

## MEMORANDUM ORDER

**Introduction**

The Advocacy Center, on behalf of inmates at the David Wade Correctional Center ("DWCC"), filed this putative class action to seek injunctive relief with respect to the mental health care afforded inmates who are held in extended lockdown on the south compound in buildings N-1 through N-4, which are solitary confinement and extended lockdown tiers. Several months before suit was filed, counsel for the Advocacy Center wrote DWCC and demanded that it place a litigation hold on relevant evidence, specifically including video footage from cameras located in the N tiers.

Before the court is **Plaintiffs' Motion to Compel (Doc. 133)**, which seeks an order from this court to compel Defendants to produce outstanding documents in response to Plaintiffs' discovery requests. For the following reasons, the motion is **granted in part and denied in part**.

**Applicable Law**

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. The information need not be admissible at trial to be discoverable. Fed. R. Civ. P. 26.

**Request for Production No. 3**

Plaintiffs request all documents and communications related to Administrative Remedy Procedures (ARP) regarding 15 prisoners, including the two named plaintiffs. Plaintiffs claim that Defendants did not provide responsive documents for inmates Hearne and Palmer, nor did Defendants certify that they had no such documents.

Defendants respond that Palmer has not been housed at the facility since June 2017 and that there are no responsive documents for either offender. In their reply, Plaintiffs state that, regardless of Palmer's specific location, he has at all relevant times been in the custody of the Louisiana Department of Safety and Corrections ("LDPSC"), which is a named defendant. Therefore, Defendants should have responsive documents as to Palmer. Plaintiffs also request that Defendants certify that they have no responsive documents as to Hearne.

Granted in part. If Palmer submitted ARPs while at DWCC, then Defendants are ordered to produce the requested documents. ARPs submitted by Palmer while held elsewhere are irrelevant. If there are no responsive documents for either Hearne or Palmer, the Defendants must say so.

**Request for Production No. 4**

Plaintiffs request all documents and communications related to ARPs on the topics of mental health, medication management, tier temperature, use of force, Policy 34, and interference with the mail system. Plaintiffs argue that Defendants have only provided ARPs for the two named Plaintiffs as well as individuals named in other requests, but the complete response should include ARPs on the specified topics filed by anyone on extended lockdown. Defendants objected to the request on the basis that the request sought information that was not relevant or admissible. Defendants also objected to the extent that the request called for a determination of what documents or classes of documents are "related" to the specified topics. Defendants further objected on the basis that the request sought confidential information and was unduly burdensome.

In their response to the motion, Defendants argued that the request is not proportional to the needs of the case and that they have provided documents as to the named plaintiffs as well as 27 other offenders. Defendants also assert that the request is unduly burdensome as it would require them to view all of the ARPs at DWCC and determine which ones are related to the specified topics.

Plaintiffs collectively addressed all of the blanket objections in their reply memorandum. They argue that Defendants have not made a showing, under Rule 34(a)(1), of undue burden. Plaintiff contends that the lawful process of discovery necessarily places some burden on litigants, but Defendants have not submitted evidence or affidavits to show that any of the requests would impose an undue burden.

Granted. Defendants have not met their burden of showing the request is unduly burdensome. These requests go to the heart of this case, and the court finds that the requests are proportional, in light of the relevant time period that was defined.

**Request for Production No. 5**

Plaintiffs seek all mental health records for certain offenders. Plaintiffs claim that the records produced by Defendants contain certain gaps in the records, that some of the records are lacking signatures, and that there was no record provided for inmate Palmer. Defendants respond that there are no additional documents that have not already been provided. They state that the missing signatures are due to the records being printed from DWCC's system. Finally, no documents were produced for Palmer because he is not housed at DWCC.

Denied. The court cannot force Defendants to produce something they do not have.

**Request for Production No. 6**

Plaintiffs request all documents related to suicide watch or extreme suicide watch for prisoners placed on either status during the relevant time period. Plaintiffs claim that Defendants have only provided responsive documents for individuals listed in other, separate requests rather than all suicide watch records. Plaintiffs argue that the requested documents are relevant to the case as an entire section of the complaint deals with suicide watch. Defendants objected to the request on the basis that it called for a determination of what documents are "related" to suicide watch and to the extent that the request sought confidential information. Subject to those objections, Defendants did provide some responsive documents.

In their response, Defendants argue that the request is unduly burdensome to determine which offenders have been on suicide watch. Defendants would have to determine which documents are "related" to suicide watch. Defendants argue that the request is not sufficiently tailored to the needs of the case. Plaintiffs reply that Defendants "have made no showing that the universe of documents created by the prison in relation to an individual being placed on suicide watch is so vast as to render an ordinary person unable to determine its boundary."

Granted in part. The request is very overbroad as written, but the court will modify it include only the documents that were created by Defendants as a result of specific prisoners, to be identified by Plaintiffs, being placed on either type of suicide watch status during the relevant time period.

**Request for Production No. 7**

Plaintiffs seek documents sufficient to show the names, job title, and dates of employment of all mental health and medical staff employed by or contracting with DWCC. Plaintiffs assert that Defendants have not provided end dates for some of the staff. Defendants respond that they provided a responsive document, but it did not contain the end dates. Defendant argues that, pursuant to <u>Stevens v. Omega Protein, Inc.</u>, 2002 WL 1022507, *3 (E.D. La. 2002), a request for production cannot compel the production of a document. Defendants state that they can provide end dates for the employees informally or through another discovery device.

Granted in part as follows. Defendants are directed to provide the end dates informally (but in writing).

**Request for Production No. 8**

Plaintiffs request all documents sufficient to show the monthly inventory of all mental health medications at DWCC within the last 12 months. Plaintiffs claim that Defendants objected on the basis that they did not possess any responsive documents but referred to the medicine administration records and prescription records attached to their response to Request for Production No. 9.

Defendants argue that DWCC does not have an onsite pharmacy, and its pharmacy needs are fulfilled by the Elayn Hunt Correctional Center, which is not a party to this suit. In their reply, Plaintiffs point out that the records of Elayn Hunt are under the custody and control of defendant LDPSC.

Granted. The court does not believe it would be difficult for Defendants to obtain this inventory information from Elayn Hunt.

**Request for Production No. 9**

Plaintiffs request all documents related to DWCC's prescription drug database. Plaintiffs allege that defendants did not provide any documents related to DWCC's prescription drug database but only provided pill call logs for a small number of individuals.

Defendant objected to the request as vague with regard to the term "database." Defendant asserts that it does not have a prescription drug database within the intent of the request as its pharmacy needs are fulfilled by Elayn Hunt. Defendant claims that it provided administration and pharmacy records in its possession for the named Plaintiffs and for whom Plaintiffs provided medical releases. As with Request No. 8, Plaintiff claims

that the records of Elayn Hunt are within the custody and control of LDPSC, and Defendant must produce the documents.

Denied. This request is redundant of No. 8. Furthermore, the request "for all documents related to …" is too broad in the context of this request.

**Request for Production No. 11**

Plaintiffs requested all unusual occurrence reports during the relevant time period pertaining to several individuals. Defendant did not provide reports for inmates Blanchard, Johnson, Kelly, or Palmer. Defendant objected to the request on the basis that it sought information regarding offenders who were not named plaintiffs and who had not authorized release of their information. Defendants again state that Palmer is not housed at DWCC, and Defendants have not located any responsive documents as to Johnson and Kelly. Defendants also claim that they have provided several reports relating to Blanchard, contrary to Plaintiff's assertion.

Granted. Defendants shall produce the information requested to the extent it exists.

**Request for Production No. 12**

Plaintiffs request documents that show every instance in which a prisoner has been admitted to the DWCC infirmary due to self-inflicted injuries. Defendants objected on the basis that the request was overbroad and unduly burdensome, sought protected health information, and was vague as to the term "self-inflicted injuries." Defendants claim that they asked for clarification as to that term, but Plaintiffs did not provide clarification. Defendants argue that the request would require them to review all infirmary admissions and evaluate them for whether or not a given injury was self-inflicted.

Plaintiffs reply that Defendants have not identified which documents it provided responsive to the request. Plaintiffs also argue that infirmary records for people who require medical attention for self-inflicted injuries are a sufficiently clear category of documents for Defendants to ascertain what is being described.

Granted, but only as to documents created by Defendants from February 20, 2017 until this order was issued. The term "self-inflicted injuries" is not vague, as Defendants argue. The court pauses here to note that Defendants' responses which say that "[s]ubject to the objection, please see the attached…" are not helpful to the requesting party or the court. Were any documents withheld based on the objection? Or were all documents produced that were in Defendants' possession, custody, or control? Counsel are admonished that such statements must be avoided in the future, or care must be taken in describing exactly what was produced and what was withheld (and why).

**Request for Production No. 14**

Plaintiffs request all documents related to any internal investigations or analyses of the mental health care system at DWCC. Defendants' response to the request referenced an Excel spreadsheet, but Plaintiffs had not received that spreadsheet. In their response to the motion, Defendants state that they have located that spreadsheet and will make it available to Plaintiffs for inspection and copying.

Granted, but the scope is narrowed to any document within the possession, custody, or control of Defendants (including the spreadsheet) that reports on, summarizes, or describes the findings or results of any internal investigation or analysis of the mental health care system at DWCC for the three years before suit was filed until the present.

**Request for Production No. 15**

Plaintiffs request documents sufficient to show all contracts with third-party health care providers effective at any time during the relevant time period. Plaintiffs claim that Defendants have only provided responsive documents for 2018-2019, but none for 2017. Plaintiffs also claim that the contracts for Dr. Seal, who is primarily responsible for providing mental health medication, have not been produced in full. Plaintiff asserts that those contracts are "central to this litigation."

Defendants objected to providing the expired contracts as having no relevance to claims for relief or the current conditions at DWCC. But Plaintiffs argue that the expired contracts are relevant to demonstrate obligations of parties to the contract during the period the contract was effective. Plaintiffs also point out that Defendants have provided multiple years of contracts for other physical health services dated back to 2014 without raising a similar objection.

Granted. Defendants' objections are overruled. The information is relevant to the claims and defenses in this case.

**Request for Production No. 16**

Plaintiffs request all communications with third party health care providers at DWCC regarding patient mental health care or treatment during the relevant period. Plaintiffs claim that Defendants only pointed to the records produced in response to RFP 5, but this request was not limited to the individuals in RFP 5 and is broader than the contents of individual health care records.

Defendants respond that the request is unduly burdensome as it would require them to identify all communications with any health care provider over a two-year period and to review the substance of any identified communications to determined whether they regard mental health care or treatment.

Denied.  The request is overbroad.

**Request for Production No.  18**

Plaintiffs request all documents related to instances in which a prisoner was disciplined or threatened with discipline for malingering, including any sick call forms leading to such discipline or threated discipline.  Plaintiffs claim that Defendants have only provided the updated policies on malingering, not the individual charges.

Defendants object to the request as being overly broad and unduly burdensome and on the basis that it seeks protected health information.  Defendants produced a report that identified 112 malingering reports during the relevant time period.  Defendants also point out that malingering is no longer a rule violation system-wide.  Since Plaintiffs are seeking only prospective relief, Defendants argue that they should not have to undertake the burden of locating and producing the requested documents.

Plaintiffs point out that, if there are reports identified, they should be produced.  Plaintiffs argue that, although Defendants have changed their policy, the records remain relevant and have "significant additional evidentiary value."  However, Plaintiffs do not explain how the records are relevant.

Granted in part.   Defendants shall produce the disciplinary reports for any prisoner who was *actually* disciplined for malingering as a result of putting in a request for a mental health related sick call during the relevant time period.

**Request for Production No. 22**

Plaintiffs request video recordings documenting the use of force against any prisoner in extended lockdown at DWCC.  Plaintiffs claim that they are missing all footage between June 2017 and November 2017.  Plaintiffs and Defendants give conflicting stories as to the production of the recordings.  Defendants assert that they previously made these videos available for copying and inspecting, but Plaintiffs did not copy the missing videos. Plaintiffs claim that they arranged to inspect the videos, but the staff at the prison did not allow them time to inspect and copy the videos.    Instead, Warden Goodwin handed Plaintiffs' counsel a hard drive containing video footage.

Defendants state that they will make the videos available to Plaintiffs for inspection and copying again.  Therefore, this issue is moot.

**Request for Production No. 23**

Plaintiffs request unusual occurrence reports of any use of force in extended lockdown from January 2016 to the present date.  Defendants objected to the request on the basis that some of the reports contained HIPAA information, but Plaintiffs argue that Defendants did not supplement the request after the court entered a HIPAA stipulation. Defendants respond that they have provided all of the requested reports and that Plaintiffs do not point to any specific documents they seek.  Defendants contend that their response to this request is complete.

Denied.  The court cannot force Defendants to produce documents that do not exist.

**Request for Production No. 24**

Plaintiffs request the names and mental health records of any prisoners transferred from DWCC to Elayn Hunt between January 1, 2016 and the present.   Plaintiffs state that Defendants have only provided a list of names of those transferred subject to an objection that the requested information was protected under HIPAA.

Defendants respond that the request seeks records for offenders housed at Elayn Hunt, therefore, the records are at that facility rather than at DWCC.  Defendant also argues that, since those offenders are no longer housed at DWCC, the documents are not relevant to Plaintiffs' claims for prospective relief.

In their reply, Plaintiffs argue that these records are critically relevant because Elayn Hunt is the LDPSC's primary facility for providing mental health treatment for patients with the most severe needs.  The requested records are for inmates who were housed at DWCC but transferred to Elayn Hunt to receive mental health treatment.  The case focuses on individuals with mental illness who were not receiving appropriate treatment at DWCC. Plaintiff again points out that records of Elayn Hunt are subject to disclosure because LDPSC is a defendant in this case.

Granted as to those prisoners who were transferred during the time period requested for the purpose of providing mental health treatment.

**Request for Production No. 27**

Plaintiffs request the tier card swipe records and tier log books from building N4 for several months.  Defendants objected to the request on the basis that it was not possible to

produce the records as requested. Defendants did provide punch history reports in response to another request, which Plaintiffs claim contradict the objection.

Defendants respond that they produced over 3,000 pages of log books for the requested areas. They claim that the requested swipe card data is searchable and exportable by card, not by location. Accordingly, it would require hundreds of hours to review the data and provide the information as requested. Defendants also state that the log books produced provide the information sought.

Denied. Defendants' production is sufficient. The other information sought is unduly burdensome and not proportional to the needs of this case.

**Request for Production No. 30**

Plaintiffs request all documents showing dates of purchase and delivery for all body cameras received at DWCC. Defendants objected on the basis that the documents sought are not reasonably calculated to lead to the discovery of admissible evidence, but they did provide 15 pages of responsive documents. Plaintiffs ask whether any records have been withheld or whether the documents produced constitute all documents. Defendants respond that, to their knowledge, the response was complete at the time it was made.

Granted in part as follows. Defendants shall specify whether documents were withheld on the basis of their objections or whether all responsive documents have been produced. If the production is not complete, Defendants shall produce the remaining documents.

**Interrogatory No. 3**

Plaintiffs seek a description of the qualifications and job description for the Americans with Disabilities Act ("ADA") coordinator position at DWCC. Defendants answered by stating that there was no ADA coordinator at DWCC, but they identified an "ADA liaison" position. Plaintiffs requested a supplement with the liaison position description or clarification, but Defendants did not answer the request.

Defendants respond that requiring Defendants to describe the position of "ADA liaison" is tantamount to a new request and that their response to the interrogatory as originally written is complete. In their reply, Plaintiffs argue that Defendants are "playing a word game." Plaintiffs point out that Angie Huff's name and the title "ADA coordinator" were "prominently displayed" on the bulletin board in the security building, and the request was based on this posting.

Granted. Defendants' objection is frivolous and is borderline sanctionable. Discovery is not a game. It is a tool used in the search for the truth. United States v. Bryan, 339 U.S. 323, 331 (1950).

**Plaintiffs' Third Set of Requests for Production**

In these requests, Plaintiffs seek various documents related to Torre Huber, an inmate who died on July 21, 2018. His autopsy indicated that he died a natural death incident to cardiovascular disease and COPD. Some of the documents Plaintiffs seek are video of Huber in the days leading up to his death, video recordings of visitations, audio recordings of telephone calls, notes or writings in his cell, documents reflecting his

property, sick calls, grievances, requests for medical or mental health care, write-ups, visitation call lists, and the like.

Defendants respond that these requests constitute a fishing expedition, and Plaintiffs have not articulated why the requested documents would be relevant to their claims. Defendants point out that Huber, who died of natural causes, was not participating in the instant suit. Defendants also argue that producing footage of all cameras with views of Huber in his final days is unduly burdensome. Furthermore, Defendants did provide Plaintiffs with Huber's entire prison and health records.

Denied as unduly burdensome and not proportional to the needs of this case. Defendants' response is sufficient.

**Request for Production No. 51**

Plaintiffs request documents showing which educational programs and curriculum are offered to any prisoners at DWCC and documents showing housing requirements for participation. Plaintiffs argue that the documents are relevant to the allegations in the complaint pertaining to the lack of educational or other programs available to inmates housed on extended lockdown.

Defendants objected to the request as vague, not relevant, overly broad, unduly burdensome, and not proportional to the needs of the case. Defendants argue that educational programs are not germane to the system of health at DWCC and pulling all documents regarding such programs over a two-year period is overly burdensome.

Granted but only as to programs available, if any, to prisoners on extended lockdown.

**Request for Production No. 52**

Plaintiffs request documents showing licensure of any and all staff employed at DWCC. Plaintiffs claim that they are missing documents pertaining to Aeriel Robinson, Nicki McCoy, Steve Hayden, and Johnie Adkins. Defendants claim that these persons are either not licensed or work in a position at DWCC that does not require a license. Defendants state that they have provided all license documents in their possession.

Denied. Defendants' response is sufficient.

**Request for Production No. 53**

Plaintiffs request all logs or documents related to any chemical agent/OC spray/pepper spray/mace, specifically including documents showing use and purchase. Plaintiffs allege that the documents produced by Defendants had descriptions of items redacted, having the name blacked out on every single line item on every page, with no reason given for the redaction. Plaintiffs provided a copy of the redacted documents (Doc. 138-4). Defendants respond that they produced the documents as they exist, and nothing was redacted from the documents.

Granted. The names of the products are redacted. Defendants shall either produce unredacted documents or explain in detail who redacted the documents and why.

**Request for Production No. 56**

Plaintiffs request all documents related to individuals who have died while in the custody of DWCC in the last 6 years, whether the death occurred on DWCC grounds or offsite. Plaintiffs contend that they are missing any critical incident reviews or suicide

reviews. Defendants respond that all responsive documents have been produced with one exception, which relates to documents related to an offender who was shot during an escape attempt. As that matter is an ongoing investigation by outside agencies, Defendants cannot produce those documents.

Denied. The court cannot order Defendants to produce documents that do not exist.

**Request for Production No. 57**

Plaintiffs request all documents related to the recent change in status and use of the N-1 dorm. Plaintiffs claim that defendants did not provide responsive documents to this request. Defendants respond that they have provided these documents, which can be found at DWCC 016520-016527. Plaintiffs claim that these documents were attached to another request and were not specifically identified in Defendants response to this request. Plaintiffs argue that they should not have to guess which documents are responsive to a particular request.

Granted. Defendants shall supplement their response and specify which documents are responsive to this request. This court does not allow documents dumps in which the requesting party has to guess as to which documents are responsive to each request.

**Request for Production No. 58**

Plaintiffs request all Classification Review Board documents and results related to extended lockdown. Defendants objected to the request as overly broad, unduly burdensome, and not relevant. Plaintiffs argue that the core of the complaint is that individuals with mental illness are held on lockdown without any determination as to whether they have a mental health condition that would make such placement improper.

Plaintiffs assert that the requested documents are relevant to the issues of numerosity and commonality for disability discrimination and failure to provide reasonable accommodations in classification decisions.

Defendants argue that the requested documents are voluminous and would be expensive to produce as classification reviews are done at least every 90 days and are stored by individual offender. Defendants also claim that many of these documents have been produced in the files of individual offenders. Defendants also argue that Plaintiffs have not offered any explanation for why the material is needed.

Granted in part as follows. Plaintiffs shall identify up to 15 additional prisoners, and Defendants shall provide the reviews for those prisoners for the time period requested.

**Request for Production No. 59**

Plaintiffs request all letters between prisoners on the south compound of DWCC and staff. Defendants objected to the request as unduly burdensome and overly broad. Defendant argues that they receive letters routinely, but these documents are not generally kept during the course of operations at DWCC. Defendants stated that they will attempt to locate any specific communications that Plaintiffs identify and request.

Denied for lack of specificity and undue burden (as written).

**Request for Production 60**

Plaintiff request the complete prison records of 27 inmates, including pill call records. Plaintiffs claim that they are missing the "Master Prison File" for inmate Joe Smith. Plaintiffs also claim that the medical/mental health records are incomplete for 11 of the individuals. Defendants originally objected to the request as overbroad and unduly

burdensome; however, they did produce over 36,000 pages of responsive documents. Defendants argue that Plaintiffs did not confer on this issue, and it was raised for the first time in this motion, but Plaintiffs dispute this allegation. Defendants claim that they will investigate Plaintiffs' claims and supplement with any documents identified as responsive.

Granted. Defendants shall provide the requested information if they have not already done so.

### Request for Production No. 61

Plaintiffs request all health pathology and other temperature monitoring logs for extended lockdown (N-1, N-2, N-3, and N-4 buildings). Plaintiffs claim that Defendants provided the tier log books, but no temperature-specific log books or records of heat pathology precautions were provided. Defendants respond that they have provided over 41,000 pages of responsive documents and a complete response to the request has been furnished.

Denied. Defendants represent that they complied with this request.

### Request for Production No. 63

Plaintiffs request documents reflecting or pertaining to staff entry onto or presence in the lockdown buildings, including swipe card/access card records and log books. Plaintiffs claim that, despite objecting to the request as burdensome and not possible, Defendants provided a Punch History Report that appears to account for the locations and months requested. Defendants respond that they have already verified that the response to this request is complete.

Plaintiffs offer to view all swipe card records in Defendants' possession and undertake the burden of sorting through that data to organize it by building and date. Plaintiffs argue that the hand-written log books are not an adequate substitute for the documents they seek, so the Defendants' response is not complete.

Granted as follows. Defendants shall either produce all swipe card records for the five months requested (this will minimize the burden of sorting the information by building or tier) or permit Plaintiffs counsel to review the information as it is kept in the normal course of operations.

**Request for Production No. 64**

Plaintiffs seeks documents showing all prisoner call outs for any reason from lockdown for five specified months. Defendants did not produce any responsive documents and objected to the request as overboard, unduly burdensome, and not proportional to the needs of the case. Defendants argue that the request would require them to review all documents evidencing offender movement and pull and copy the ones that are responsive. Defendants claim that this is likely thousands of documents, and thus the request is not proportional to the needs of the case.

Denied. The request is unduly burdensome as written.

**Request for Production No. 68**

Plaintiffs request any and all policies pertaining to heat precautions. Plaintiffs claim that Defendants raised objections and stated that the relevant policies were attached, but none of the documents are identified as responsive. Defendants did not address this request in their response.

Granted.  If this information was already produced, Defendants shall identify the relevant policies with specificity.

**Interrogatory No. 16**

Plaintiffs ask Defendants to identify the names of all people in the mental health caseload or receiving mental health care on the dates of January 1, 2017 and January 1, 2018.  Plaintiffs claim that Defendants provided information as of November 2018.  Plaintiffs argue that knowing how many people were on the mental health caseload at any given time is key to establishing the central issues to class certification and numerosity.

Defendants respond that the information cannot be determined without significant burden because the records cannot be exported as of a specific date.  Rather, Defendants would have to review the entire database and retrieve individually those persons receiving treatment as of those specific dates.  Plaintiffs reply that Defendants have offered no evidence or affidavits that would show pulling the records is an undue burden.

Granted.  The parties shall confer by telephone and determine how this information can be obtained without significant burden or expense on Defendants.  This may include hiring a third party to sort the information.  It may also include cost shifting to Plaintiffs.  But the court leaves those determinations to the parties, who are in the best position to develop a fair and efficient process.

**Deadlines**

Unless the parties agree otherwise, Defendants supplemental responses are due by **July 8, 2019**.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 20th day of June, 2019.

Mark L. Hornsby
U.S. Magistrate Judge