UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| ANTHONY TELLIS, ET AL. | CIVIL ACTION NO. 18-cv-0541 |
|---|---|
| VERSUS | JUDGE FOOTE |
| JAMES M. LEBLANC, ET AL. | MAGISTRATE JUDGE HORNSBY |

MEMORANDUM RULING

Before the Court is Plaintiffs' second motion to amend their complaint [Record Document 169] and their associated motion to supplement their memorandum in support of their motion for class certification [Record Document 170]. Because Plaintiffs have carried their burden to justify their late request for leave to amend, because proposed Plaintiff Ronald Brooks ("Brooks") has standing, and because the Court is satisfied that the claims are not moot for purposes of class certification, the motions [Record Documents 169 and 170] are **GRANTED**. The Clerk of Court is to file into the record Document 201-1 as the Second Amended Complaint and Document 201-2 as the Supplemental Memorandum in Support of Class Certification.

I. <u>Background</u>

As the procedural background of this matter has been discussed extensively in this Court's ruling on Plaintiffs' first motion to amend the complaint, [Record Document 178 at 1–2, 14–15], this ruling will only update that history. The Magistrate Judge granted leave to add the Advocacy Center as an associational plaintiff, a ruling that the undersigned ultimately affirmed on appeal. [Record Documents 153 at 4–7, 154 at 7–9, and 178 at 4–18]. While Defendants' appeal was pending, Plaintiffs filed a second motion to amend, seeking to add three additional named plaintiffs: Carlton Turner ("Turner"), Larry Jones ("Jones"), and

1

Brooks (collectively, "Additional Named Plaintiffs"). [Record Document 169 at 2]. They also filed a motion for leave to supplement their memorandum in support of their motion for class certification in order to incorporate information about the Additional Named Plaintiffs. [Record Document 170]. At the same time, Plaintiffs filed a motion to dismiss Anthony Tellis ("Tellis"), a named plaintiff who had been moved out of extended lockdown at David Wade Correctional Center ("DWCC") and requested to withdraw from the litigation. [Record Document 169-2 at 2 and 171]. Because this Court has dismissed Tellis, [Record Document 174], the Plaintiffs in this matter are currently Bruce Charles ("Charles") and the Advocacy Center. [Record Document 154 at 7–11].

Plaintiffs filed the second motion to amend when the deadline for class discovery was rapidly approaching. Faced with numerous unresolved discovery disputes, the parties agreed that class discovery and merits discovery could proceed in tandem and that class certification would be addressed alongside dispositive motions. [Record Document 182]. The Court accordingly upset the original deadlines related to class certification. [Record Document 184]. The Court then issued a new scheduling order setting January 15, 2020 for the close of fact discovery and October 1, 2020 for Plaintiffs' supplemental briefing in support of class certification. [Record Document 195]. The Court has subsequently further extended the scheduling deadlines in this matter, making Plaintiffs' supplemental briefing in support of class due December 1, 2020. [Record Document 293].

The motion for leave to amend originally sought to add another named plaintiff, Damonte Henry, [Record Document 169 at 2], who has since withdrawn from this litigation. [Record Documents 196 and 197]. The Court ordered Plaintiffs to amend their proposed amended complaint and the supplemental memorandum in support of class certification to

remove the allegations and arguments related to Henry. [Record Document 197 at 1]. Plaintiffs have complied with this order. [Record Documents 201-1 and 201-2].

Further, prior to the Court ruling on the instant motions, Plaintiffs appealed a discovery order issued by the Magistrate Judge. [Record Document 232]. Throughout the course of briefing the appeal, Plaintiffs represented that Turner and Brooks were no longer housed on the extended lockdown unit at DWCC. [Record Document 240 at 2-3]. This prompted the Court to order additional briefing on whether the claims of inmates no longer housed in extended lockdown at DWCC are moot, therefore preventing them from being properly named as class representatives in this action and making the instant motion to amend futile. [Record Document 259]. This issue has now been fully briefed, [Record Documents 280, 292 and 296], and Plaintiffs' motions are ripe for review.

II. <u>Law and Analysis</u>

A. <u>Standard for Amendment of Pleadings</u>

A court should "freely" grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a). However, once a scheduling order is in place, a request to amend a pleading after the deadline for amendment has passed is controlled by a more restrictive standard. *Filgueira v. U.S. Bank Nat'l Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013) (citing *Fahim v. Marriot Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008)). Under that standard, leave may be granted "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The four factors relevant to good cause are: '(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.'" *EEOC v. Serv. Temps Inc.*, 679 F.3d 323, 334 (5th Cir. 2012) (quoting *Fahim*, 551 F.3d at 348).

3

B. **Application**

Turning first to Plaintiffs' explanation for the timing of their motion to amend, Defendants argue that Plaintiffs could have made their motion (filed on March 22, 2019) as early as January 2019. [Record Document 183 at 2–3, 5]. At the time this Court entered its scheduling order, [Record Document 56], Plaintiffs had no reason to know that Tellis would ask to withdraw from this litigation. Although it appears that some weeks passed between Plaintiffs' knowledge that Tellis wished to withdraw and the motion to amend, Plaintiffs have explained at least some of this delay by a need to meet with the Additional Named Plaintiffs before filing the motion. [Record Document 169-2 at 3]. Therefore, the Court finds that Plaintiffs have adequately explained their delay in seeking to amend their complaint to add the Additional Named Plaintiffs.

Second, the Court will address the importance of the amendment. A class action may not be maintained without a named plaintiff. *See* Fed. R. Civ. P. 23(a). Given that at present there is only one named plaintiff, Plaintiffs correctly point out that any procedural or other difficulties encountered with Charles could derail the class portion of this litigation after both parties have already committed extensive resources to litigate the class certification issue. [Record Document 169-2 at 4]. Allowing the Additional Named Plaintiffs to appear as representatives of the proposed class will reduce the likelihood that the parties would needlessly expend their resources. And so, this Court finds that the amendment is important to the orderly progress of this litigation.[1]

---

[1] Although it appeared that allowing the Advocacy Center to enter as a plaintiff might eliminate the need to certify a class, Plaintiffs have elected to proceed with class certification. As this Court has pointed out, it appears that vague communication of Plaintiffs' intentions led this Court and Defendants to believe that adding the Advocacy Center as an

4

When affirming the Magistrate Judge's decision to allow Plaintiffs to add the Advocacy Center as a party, this Court observed that including the Additional Named Plaintiffs would have "no effect on the merits claims in this case." [Record Document 178 at 22]. Although Defendants assert that this observation reduces the importance of the proposed amendment, [Record Document 183 at 5], they appear to misunderstand the role of representative parties in this action. The reason to allow the amendment is not to broaden the set of issues in play or the scope of relief available (i.e., merits issues). Rather, the purpose of adding additional class representatives is to ensure that the withdrawal of the one remaining representative would not prevent this Court from determining whether or not to certify the class. Thus, the relative importance of the amendment at issue is a question of procedural rather than substantive law, and it is in that sense that the proposed amendment has no effect on the merits of this case.

The Court must next examine Defendants' potential prejudice if the amendment is allowed. Initially, Defendants argued that they would be prejudiced by the amendment because the deadline for class certification was fast approaching. [Record Document 167-1 at 2–3]. Now that the Court has significantly extended the discovery deadlines, Defendants argue that they will be prejudiced because they will have to conduct written discovery about and depositions of the Additional Named Plaintiffs. [Record Document 183 at 5–6]. While Defendants might elect to conduct this discovery (and so incur the expense), it is also possible that they might not do so; Defendants have not asserted that they <u>will</u> conduct this discovery. Moreover, much of that discovery consists, as Plaintiffs point out, of medical and other documents already in Defendants' possession as the custodian of the Additional

---

associational plaintiff would replace class certification rather than supplement it. [Record Document 178 at 20]. The Court cautioned Plaintiffs to be more accurate in the future. [*Id.*].

5

Named Plaintiffs. [Record Documents 169-2 at 5 and 186 at 4]. In addition, discovery must be evaluated in light of the overall scope of litigation. *See* Fed. R. Civ. P. 26(b)(1) (requiring that the scope of discovery be "proportional to the needs of the case"). In this case, discovery has involved over one hundred thousand pages of documents related to all of the inmates in extended lockdown at DWCC. [Record Document 136 at 4]. Even with the expense of depositions (should defense counsel wish to take them), the Court finds that discovery related to the Additional Named Plaintiffs will not substantially increase the discovery burden that already exists. Thus, while the Court acknowledges that adding named plaintiffs will somewhat increase Defendants' burden when arguing against class certification, the Court finds this prejudice to be relatively minor when considered in light of the overall scope of this litigation.

*In re Norplant Contraceptive Products Liability Litigation*, 163 F.R.D. 258 (E.D. Tex. 1995), does not convince this Court otherwise. Although Defendants assert that this case is analogous, [Record Document 183 at 8–9], this Court finds it readily distinguishable. In *Norplant*, the district court found that the defendants were prejudiced when the plaintiffs moved to add additional class representatives after the close of class discovery and after defendants had filed their brief in opposition to class certification. *Norplant*, 163 F.R.D. at 260. The court understandably found that being unable to "reevaluate their decision concerning which class representatives to depose for purposes of contesting master class certification" would disadvantage the defendants. *Id.* Here, by contrast, the deposition deadline has not yet passed and Defendants' brief in opposition to class certification is not due until December 2020. [Record Document 293]. Thus, Defendants do not face a similar level of prejudice as the *Norplant* defendants.

Finally, the Court notes that a short extension is available to cure any prejudice Defendants may face. The deposition deadline is currently set for March 15, 2020. [Record Document 293]. With the supplemental class briefing not set to resume until December 2020, there is ample time to allow the parties additional time to complete depositions of the Additional Named Plaintiffs upon request.

Therefore, the Court concludes that Plaintiffs have satisfied the requirements for a grant of leave to amend their complaint to add the Additional Named Plaintiffs.

### C. <u>Brooks's Standing</u>

Defendants argue that Brooks lacks standing to proceed in this matter because he was not housed at DWCC at the time the original complaint was filed; Plaintiffs contest this conclusion. [Record Documents 183 at 6, 186 at 1–3, 193 at 2–3, and 194 at 1–2]. Article III standing is a matter of subject-matter jurisdiction. *Crane v. Johnson*, 783 F.3d 244, 251 (5th Cir. 2015) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Subject-matter jurisdiction, including questions of standing, "is determined as of the date of the filing of the complaint." *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 460 (5th Cir. 2005) (quoting *Carr v. Alta Verde Indus., Inc.*, 931 F.2d 1055, 1061 (5th Cir. 1991)). It is undisputed that Brooks was not held in extended lockdown when Plaintiffs filed their initial complaint on February 20, 2018. [Record Documents 183 at 6 and 201-1 at 39]. He was in extended lockdown at DWCC when the second amended complaint was filed on March 22, 2019.[2] [*Id.*]. Thus, the question is whether the "complaint" that must allege facts sufficient to establish standing is the original complaint or the proposed second amended complaint.

---

[2] The second amended complaint was initially filed in connection with the instant motion to amend the complaint, [Record Document 169-1], and thus the Court will treat this as the date that Plaintiffs filed their amended complaint.

7

To address this issue, both parties point this Court to *County of Riverside v. McLaughlin*, 500 U.S. 44, 50–52 (1991). [Record Documents 186 at 2, 193 at 2–3, and 194 at 1–2]. In *McLaughlin*, a plaintiff held in the county jail brought a class action complaint in August 1987 challenging the constitutionality of his probable cause hearing. *Id.* at 48. An amended complaint in July 1988 named additional class representatives. *Id.* at 48–49. The Supreme Court held that for the three new plaintiffs, the relevant point in time at which to judge their standing was "at the time the second amended complaint was filed." *Id.* at 51.

There appears to be no dispute that Brooks was held in extended lockdown on the date that Plaintiffs filed their second amended complaint. Under *McLaughlin*, that is the date on which to judge the existence of standing. 500 U.S. at 51. At that point in time, Brooks was suffering an alleged injury (i.e., being held in the conditions prevailing in extended lockdown at DWCC), caused by Defendants' conduct (i.e., their policies and procedures that created those conditions), and that would be redressed by a ruling in his favor (i.e., being held in improved conditions). *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Lujan*, 504 U.S. at 560–61). This Court concludes that Brooks had standing at the time the second amended complaint was filed and so this Court has subject-matter jurisdiction over his claim, at least while Brooks was housed at DWCC.

The Court must next determine if Charles and the Additional Named Plaintiffs, including Brooks, retain standing to serve as named plaintiffs in this matter given that they are no longer incarcerated in the extended lockdown units at DWCC.

8

D.  **Mootness**

At the Court's request, both parties addressed the question of whether the claims of the Additional Named Plaintiffs are mooted by the fact that Plaintiffs' suit seeks prospective injunctive relief and none of the men remain in extended lockdown at DWCC such that they will personally benefit from any injunctive relief that may be awarded in this case. While briefing this issue, Plaintiffs represented that at this time neither the Additional Named Plaintiffs nor the remaining originally named plaintiff, Charles, remain in DWCC extended lockdown. [Record Document 280 at 3]. The reason for this differs between the groups. Charles is no longer at DWCC because he has been released from state custody while the Additional Named Plaintiffs remain in custody but have been transferred to different facilities. [*Id.*]

Parties must establish standing at the inception of a lawsuit and the case or controversy must exist throughout all stages of litigation. *Fontenot v. McCraw*, 777 F.3d 741, 747 (5th Cir. 2015). When this does not occur, the case is moot and the claims should usually be dismissed. *Id.* "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Id.* (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). The legally cognizable interest requirement is also known as the "personal stake" requirement. *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980).

In this case, the controversy remains live—at least for members of the proposed class Charles and the Additional Named Plaintiffs seek to represent—because the conditions of confinement in the extended lockdown units of DWCC remain in a state that Plaintiffs

9

allege is unconstitutional. *Rocky v. King*, 900 F.2d 864, 867 (5th Cir. 1990). At issue, then, is whether Charles and the Additional Named Plaintiffs retain a personal stake in the outcome.

Plaintiffs lack a personal stake in the outcome at this time because they do not stand to personally benefit from any relief that may be granted. Their lawsuit seeks only prospective declaratory and injunctive relief intended to stop the allegedly unconstitutional conditions of confinement faced by inmates in DWCC extended lockdown. [Record Document 201-1 at 58-59]. They seek no redress for past harms they may have suffered while incarcerated there. [*Id.*] Because Charles and the Additional Named Plaintiffs do not currently reside in the DWCC units at issue, any relief granted would be of no benefit to them—they are not currently suffering the injury that this lawsuit seeks to stop. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (stating that the purpose of the personal stake requirement is to confine the federal judiciary to adjudicating "actual and concrete disputes, the resolutions of which have direct consequences on the parties involved."). While all of the men may very well remain fully committed to disputing "the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Yarls v. Bunton*, 905 F.3d 905, 909 (5th Cir. 2018) (quoting *Already, LLC*, 568 U.S. at 91). Without a personal stake in the outcome, the claims of Charles and the Additional Named Plaintiffs are moot under general rules of mootness.

1. **<u>Capable of Repetition Yet Evading Review</u>**

Because the Court finds that the claims are moot under the general rules, it must next address whether Plaintiffs' claims qualify for an exception to the general rule of mootness. Regardless of the fact that Plaintiffs seek to represent a class, Plaintiffs' claims may avoid

being dismissed as moot if their claims are capable of repetition yet evading review. A claim qualifies for the capable of repetition yet evading review exception to mootness "only 'if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again.'" *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540 (2018) (quoting *Turner v. Rogers*, 564 U.S. 431, 439-40 (2011)). "[T]he standard is not 'mathematically precise' and requires only a 'reasonable likelihood' of repetition." *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (quoting *Honig v. Doe*, 484 U.S. 305, 318-19 (1988)).

First, precedent dictates that Charles's claim does not qualify for the exception. Plaintiffs argue that Charles faces a reasonable expectation that he will again suffer the conditions of DWCC extended lockdown because, should he be arrested again and returned to DWCC, he will be placed back on extended lockdown because inmates reentering prison retain the classification they had at the time they left custody. [Record Document 280 at 7-8]. This argument fails because under Supreme Court precedent, a court may not base a finding that a party may again be subjected to an action on "the possibility that a party 'will be prosecuted for violating valid criminal laws.'" *Sanchez-Gomez*, 138 S. Ct. at 1541 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974)). Instead, courts must assume that litigants "will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct." *Id.* With this assumption in mind, the Court cannot conclude that Charles faces a reasonable expectation of return to DWCC extended lockdown.

Second, the Additional Named Plaintiffs' claims fail for a similar reason. The Fifth Circuit has found claims of inmates seeking injunctive relief moot when the inmate was

transferred to a different facility and refused to apply the capable of repetition yet evading review exception because transfer back to the facility at issue in the lawsuit was too speculative. *See, e.g., Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001); *Johnson v. Livingston*, 779 F. App'x 254, 255 (5th Cir. 2019); *Haralson v. Campuzano*, 356 F. App'x 692, 696 (5th Cir. 2009).

Therefore, under general mootness rules, Plaintiffs' claims should be dismissed as moot. This conclusion is also applicable in the class action context if a named plaintiff's claim becomes moot *before* the class is certified, as is the case here. *Fontenot*, 777 F.3d at 748. There are several additional possible mootness exceptions applicable to class actions, however, that the Court must now address.

### 2. The Inherently Transitory Exception

The first possible exception unique to the class action context that may save the Additional Named Plaintiffs' claims from mootness is the "inherently transitory" exception. Under this exception, a proposed named plaintiff's claim that becomes moot at some point before a court rules on a motion for class certification may avoid being dismissed as moot if the claims at issue are so "inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *Geraghty*, 445 U.S. at 399. For those claims that are inherently transitory, "the 'relation back' doctrine is properly invoked to preserve the merits of the case for judicial resolution." *McLaughlin*, 500 U.S. at 52.

In an unpublished opinion, the Fifth Circuit recently examined Supreme Court precedent and compiled a list of factors relevant to determining whether this exception

12

should apply in a particular case. *Ward v. Hellerstdet*, 753 F. App'x 236, 242 (5th Cir. 2018). These factors are whether:

> [T]he challenged conduct giving rise to the claim is of a fleeting or temporary nature; uncertainty exists at the outset as to the duration of each plaintiff's exposure to the allegedly harmful conduct; it is unlikely that any given individual plaintiff could see his claim to fruition prior to the claim becoming moot; and there exists a constant group of people suffering the harm alleged by the plaintiffs.

*Id.* (citing *Genesis Healthcare Corp.*, 569 U.S. at 76; *Gerstein v. Pugh*, 420 U.S. 103, 110, n.11 (1975)).

Plaintiffs clearly satisfy at least two of these elements. First, there is uncertainty existing at the outset as to the duration of each individual plaintiff's claim. Inmates in custody can be transferred at any time which makes predicting if a particular potential plaintiff will remain on extended lockdown at DWCC throughout the duration of the class certification process nearly impossible. Second, while individual inmates may be transferred out of extended lockdown at DWCC or released from custody, there will always remain some group of inmates housed in extended lockdown and subject to the allegedly unconstitutional conditions.

Less clear is whether the challenged conduct is of a fleeting or temporary nature and whether any given individual plaintiff could see his claim to fruition before it becomes moot. Defendants argue that Plaintiffs' claims are not temporary because they seek to challenge the conditions of *extended* lockdown which, by its very nature, is not temporary and often lasts for years. [Record Document 292 at 7]. They further point to several inmates that have remained housed in extended lockdown throughout the duration of this litigation. [Record Document 292 at 7-8]. Plaintiffs concede that some inmates have remained on extended lockdown at DWCC for years but note the near impossibility of accurately predicting for

13

which potential plaintiffs this will be true, especially when Defendants retain complete control over when an inmate may be moved from DWCC. [Record Document 296 at 4-5]

Courts have previously found claims raised in the prison context to be of a fleeting or temporary nature when the challenged action lasts as few as several days to as long as several months. *McLaughlin*, 500 U.S. at 51-52; *Ward*, 753 F. App'x at 242. In contrast, the *Rocky v. King* court found that the inherently transitory exception was inapplicable to an inmate attempting to represent a class of prisoners in a challenge to the constitutionality of field work conditions at the Louisiana State Penitentiary because the inmate was challenging conditions "of long-term, not short-term, confinement." *Rocky*, 900 F.2d at 870.

While the average claim of a putative class representative in this case may be longer than the several months previously held to be temporary or fleeting in the prison context, other considerations lead the Court to conclude that Plaintiffs' claims nonetheless qualify for the inherently transitory exception. First, the parties agreed that adjudication of class certification would be delayed until the dispositive motion stage of this litigation. [Record Document 182]. This necessarily means that the timeframe during which Plaintiffs' claims may become moot has been expanded, currently to approximately three years for Charles and two years for the Additional Named Plaintiffs. [Record Documents 2, 169, and 293]. In relation to this extended certification process, claims lasting for several months or even a year at a time are temporary or fleeting such that any potential plaintiff's claim faces a serious risk of becoming moot before the Court can rule on class certification. Second, it will be nearly impossible for Plaintiffs to identify which, if any, inmates will be housed on extended lockdown at DWCC long enough for a class to be certified. While the Fifth Circuit has not addressed which factor in the inherently transitory analysis is most important, at least one

other Circuit has concluded that the "essence" of the inherently transitory exception is not the length of confinement, but "uncertainty about whether a claim will remain alive for any given plaintiff long enough for a district court to certify the class." *Olson v. Brown*, 594 F.3d 577, 582 (7th Cir. 2010).

The extended class certification process in this case, the impossibility of predicting which potential plaintiffs will remain at DWCC throughout the duration of the class certification process, and the existence of a constant group of inmates subject to the allegedly unconstitutional conditions lead the Court to conclude that Plaintiffs' claims are inherently transitory. Because Plaintiffs' claims are inherently transitory, the relation back doctrine applies, and Charles and the Additional Named Plaintiffs' claims are not moot because they relate back to when their complaint was filed. *McLaughlin*, 500 U.S. at 52.

### 3. The "Picking Off" Exception

Plaintiffs' claims may also avoid being dismissed for mootness under the "picking off" exception. This doctrine developed in the context of defendants fully satisfying the monetary claims of individually named plaintiffs seeking to represent a class before the class could be certified, therefore preventing a court from certifying a class and adjudicating the class claims. *See, e.g., Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1050 (5th Cir. 1980). Recognizing that this situation posed similar challenges as claims that are inherently transitory, the court held that when "there is pending before the district court a timely filed and diligently pursued motion for class certification," the putative class representatives'

claims need not be dismissed for mootness even though their individual claims were satisfied.[3] *Id.* at 1051.

The policy concerns leading to this exception to the mootness doctrine are also of legitimate concern in the context of this litigation where Defendants control where the Additional Named Plaintiffs reside. Theoretically, Defendants could transfer any inmate seeking to act as a class representative out of DWCC and into a different facility, thus preventing any plaintiff from presenting claims that avoided mootness long enough for a class to be certified.[4] This is analogous to a wealthy defendant continually satisfying the monetary claims of individual plaintiffs. The Court therefore concludes that even if Charles's and the Additional Named Plaintiffs' claims did not qualify for the inherently transitory exception, the "picking off" exception applies, and their claims are saved from mootness because they relate back to the filing of their respective complaints.

## III. Conclusion

For the reasons given above, the motion to amend the complaint [Record Document 169] is **GRANTED**. By granting leave to amend, this Court has added new representatives for the proposed class. Hence, it is also appropriate for this Court to **GRANT** Plaintiffs' associated motion to supplement their memorandum in support of the motion to certify a class. [Record Document 170]. Carlton Turner, Larry Jones, and Ronald Brooks are added as

---

[3] While the Fifth Circuit has recently questioned the status of *Zeidman*, it has not yet overruled the case and thus this Court treats it as controlling precedent. *Fontenot*, 777 F.3d at 750.

[4] The Court does not intend to suggest that Defendants are currently engaged in "picking off" potential class representatives. It merely notes that Defendants have the ability to engage in such action because of the relationship between the parties to this action. *See Zeidman*, 651 F.2d at 1050 ("The fact remains that in those cases in which it is financially *feasible* to pay off successive named plaintiffs, the defendants would have the *option* to preclude a viable class action from ever reaching the certification stage.") (emphasis added).

representative plaintiffs in this matter. The Clerk of Court is instructed to file Document 201-1 into the record as the Second Amended Complaint and Document 201-2 into the record as the Supplemental Memorandum in Support of Plaintiffs' Motion for Class Certification.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this the 13th day of March, 2020.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE