UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| BRUCE CHARLES, on behalf of himself and all other similarly situated prisoners at David Wade Correctional Center, | * * * * * | CIVIL ACTION NO.: 5:18-CV-00541-EEF-MLH<br><br>JUDGE ELIZABETH E. FOOTE |
| and | * * | |
| The ADVOCACY CENTER, | * * | USMJ MARK L. HORNSBY |
| PLAINTIFFS, | * * | |
| VS. | * * | CLASS ACTION |
| JAMES M. LEBLANC, *et al.*, | * * | |
| DEFENDANTS. | * | |

**MEMORANDUM IN SUPPORT OF PROTECTIVE ORDER FOR
30(b)6 DEPOSITION OF THE ADVOCACY CENTER**

**TABLE OF CONTENTS**

**BACKGROUND**......................................................................................................................2
**ARGUMENT**...........................................................................................................................4
    **I.    Applicable Standards**.................................................................................4
    **II.   Much of the information Defendants sought to obtain at the June 30, 2020 deposition is Protected Work Product**...................................................................................8
    **III.  All Information Sought by Defendants is Available Through Other Means**.....................15
    **IV.  The Manner in which Defendants conducted the Rule 30(b)(6) Deposition Is Inconsistent with the Protections Afforded Against Disclosure of Attorney Mental Impressions, Conclusion, Opinions, and Legal Theories.**...........................................................................16
**CONCLUSION**.....................................................................................................................18

## TABLE OF AUTHORITIES

Cases

*Avis Rent A Car Sys., LLC v. City of Dayton*, No. 3:12-cv-399, 2013 WL 3778922, at *10 (S.D. Ohio July 18, 2013) .................................................................................................................................. 8
*Chester v. Allen*, 122 F. App'x 184 (6th Cir. 2005) ................................................................... 8
*CyberSpy Software, LLC*, 2009 WL 2386137, at *4 ................................................................ 14
*Dunn v. Dunn*, 219 F. Supp. 3d 1163 (M.D. Ala. 2016) ............................................................ 9
*EEOC v. McCormick & Schmick's Seafood Rest., Inc.*, 2010 U.S. Dist. LEXIS 61603 *1-2 (D. Md. 2010) .............................................................................................................................. 10, 11
*Equal Employment Opportunity Comm'n v. Am. Int'l Grp., Inc.*, No. 93 CIV. 6390(PKL)RLE, 1994 WL 376052, at *2 (S.D.N.Y. July 18, 1994) ............................................................................ 5
*Hickman v. Taylor*, 329 U.S. 495 (1947) ................................................................................... 5
In re Grand Jury Subpoena, 697 F.2d 277 (10th Cir.1983) ......................................................... 6
Jon–T Chemicals, Inc. v. Freeport Chemical Co., 704 F.2d 1412 (5th Cir.1983) ....................... 5
Nguyen v. Excel Corp., 197 F.3d 200 (5th Cir. 1999) ................................................................. 5
*SEC v. Nacchio*, 614 F. Supp. 2d 1164 (D. Colo. 2009) ........................................................... 14
*SEC v. Rosenfeld*, 1997 U.S. Dist. LEXIS 13996 *7 (SDNY 1997) ............................... 9, 13, 15
*Shelak v. White Motor Co.*, 581 F.2d 1155 (5th Cir. 1978) ....................................................... 5
*Shelton v. American Motors Corporation,* 805 F.2d 1323 (8th Cir. 1986) ................................. 7
*Sierra Club v. BNSF Ry. Co.*, 2016 U.S. Dist. LEXIS 116716 *11 (WD Wash. 2016) ......... 9, 10, 15
*Sporck v. Peil*, 759 F.2d 312 (3d Cir. 1985) ............................................................................... 6
United States v. Hodgson, 492 F.2d 1175 (10th Cir.1974) .......................................................... 6

Statutes

42 U.S.C. § 10805 (a)(1)(B) .................................................................................................... 3, 9
Federal Rule of Civil Procedure 26(b)(3)(B) ............................................................................. 9

Plaintiffs, by and through counsel and pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, submit this Memorandum in Support of Plaintiffs' Motion for Protective Order.

## BACKGROUND

Each State and United States Territory has a designated Protection and Advocacy ("P&A") organization pursuant to federal law. Disability Rights Louisiana ("DRLA," formerly the Advocacy Center) is the designated P&A for Louisiana. DRLA intervened in this action as an associational plaintiff, advocating for the interests of its constituents, and seeking enforcement of the law, as permitted by its federal authorizing legislation. (Rec. Doc. 128-1); *see also* 42 U.S.C. § 10805

(a)(1)(B) (granting P&As authority to pursue legal remedies for violations of the rights of people with mental illness). DRLA was granted leave to amend the complaint to add allegations as to its right and ability to serve as an associational plaintiff. (Am. Comp. ¶¶ 13-14, 188, 191-199.)

On March 17, 2020 this Court granted, in part, Defendants' Motion to Compel another 30(b)(6) deposition of Advocacy Center. In that order (Rec. Doc. 319), this Court found that Executive Director Christopher Rodriguez, who DRLA produced for the deposition in November 2019, was not sufficiently prepared and, therefore, granted Defendants the right to take another Rule 30(b)(6) deposition of DRLA. However, that decision did not compel Plaintiffs to disclose work product or privileged information. Indeed, as Defendants recognized in response to Plaintiffs' request to meet and confer regarding their concerns that the notice of deposition implicated work product and attorney-client privilege issues, "the procedure of contemporaneous objection will be used." Rec. Doc. 275-1.

The Rule 30(b)(6) deposition was scheduled for and held on June 30, 2020.[1] Throughout the seven-hour deposition, Defendants repeatedly questioned Mr. Lospennato concerning events at DWCC of which neither he nor anyone else at DRLA had first-hand knowledge. In addition, over Plaintiffs' objections, Defendants repeatedly pressed Mr. Lospennato for DRLA's theories about the facts, how the DRLA intends to marshal those facts, and DRLA's belief as to the inferences to be drawn from those facts. Moreover, during the deposition, in response to DRLA's counsel's instructions not to answer such questions, counsel for the Defendants repeatedly threatened to file a motion to compel and seek sanctions in an effort to intimidate the deponent into answering questions despite the fact that objections were made. Finally, at the end of the

---

[1] Exhibit 1 – Notice of 30(b)(6) Deposition for June 30, 2020.

deposition, defense counsel also insisted that he would need a second deposition day to complete the questioning but refused to say how much additional questioning remained.[2]

In light of the actions and threats of Defendants' counsel, Plaintiffs now seek a protective order protecting Mr. Lospennato, or other representative of DRLA, from submitting to a second day of direct deposition testimony, rather allowing only redirect and re-cross. In the alternative, if a second day of direct testimony is allowed, Plaintiffs request this Court to issue an order barring Defendants from requesting work product documents and or interposing any questions inquiring into the mental impressions, analysis, conclusions, opinions and theories of counsel of record in this case.

Notably, Plaintiffs' counsel is far from the only source of information that is available to Defendants. The parties have engaged in extensive discovery. To date, Plaintiffs have responded to 14 sets of Interrogatories and Requests to Produce, answered 98 requests for admission, and reproduced thousands of documents in response to requests for production. Defendants have also deposed 50 incarcerated men who are putative class members, have secured their own experts to assess the claims in this case, have complete access to all employees and prisoner records that have been made available to them or which are in their possession, custody and control at DWCC, and will have available the reports of Plaintiffs' experts, as well as the right to depose these experts.

## ARGUMENT

**I.      Applicable Standards**

A deposition taken under Rule 30(b)(6) requires an organization to "testify about information known or reasonably available to the organization." The discovery rules "are

---

[2] *See*, Exhibit 4 – 30(b)(6) Deposition of DRLA, June 30, 2020, at p. 337:4-11.

designed to narrow and clarify the issues and to give the parties mutual knowledge of all relevant facts, thereby preventing surprise." *Shelak v. White Motor Co.*, 581 F.2d 1155, 1159 (5th Cir. 1978) (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)). Recognizing the discovery process can be abused, however, the Federal Rules of Civil Procedure allow for the issuance of a protective order for good cause shown.

In such instances, the Court may order, among other things, that the discovery will not be had, that the discovery will be available only on specified terms, that the discovery may be had only by a different method of discovery than the one sought, or that the scope will be limited. Fed. R. Civ. P. 26(c). The Court has broad discretion in ruling on a Motion for Protective Order. See *Jon–T Chemicals, Inc. v. Freeport Chemical Co.,* 704 F.2d 1412, 1417 (5th Cir.1983).

With that in mind, however, as the Fifth Circuit has emphasized, "a request to depose opposing counsel generally would provide a district court with good cause to issue a protective order," since such depositions "disrupt[ ] the adversarial system, lower[ ] the standards of the profession, add[ ] to the already burdensome time and costs of litigation, and detract[ ] from the quality of client representation." *See, e.g.*, *Nguyen v. Excel Corp.*, 197 F.3d 200, 209 & n.26 (5th Cir. 1999). Therefore, while relevant facts and discoverable evidence are central to the discovery process, discovery does not extend to the mental impressions or legal theories of the attorneys in the case. *Hickman*, 329 U.S. at 511. "Work product includes an attorney's intended lines of proof and his ordering of the facts." *Equal Employment Opportunity Comm'n v. Am. Int'l Grp., Inc.*, No. 93 CIV. 6390(PKL)RLE, 1994 WL 376052, at *2 (S.D.N.Y. July 18, 1994).

> Opinion work product includes such items as an attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and weaknesses of his case, and the inferences he draws from interviews of witnesses. *See, e.g.*, *In re Grand Jury Investigation*, 599 F.2d 1224 (3d Cir.1979); *see also* Special Project, The Work Product Doctrine, 68 Cornell L.Rev. 760, 818–19 (1983) (cases cited

> therein). Such material is accorded an almost absolute protection from discovery because any slight factual content that such items may have is generally outweighed by the adversary system's interest in maintaining the privacy of an attorney's thought processes and in ensuring that each side relies on its own wit in preparing their respective cases.

*Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985).

Under FRCP Rule 26(b)(3)(A), work product is only available in limited circumstances. In order to discover "documents and tangible things that are prepared in anticipation of litigation or for trial" by the other party's attorney, the party seeking such information must demonstrate that

**(i)** they are otherwise discoverable under Rule 26(b)(1); and

**(ii)** the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Furthermore, even when discovery of those materials is permitted, the court is required to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." FRCP Rule 26(b)(3)(B).

The procedure for invoking the protection of the work product rule is to raise a timely objection during the deposition when a question seeks protected information. *See United States v. Hodgson,* 492 F.2d 1175, 1177 (10th Cir.1974); *see In re Grand Jury Subpoena,* 697 F.2d 277, 279 n. 1 (10th Cir.1983) (noting that the Tenth Circuit has "explicitly condemned ... a blanket assertion" of privilege, citing *United States v.. Hodgson*). While the subject matters included in the Notice concerned information that potentially could be protected by privilege and the work product rule, it also covered information that was not.[3] For example, it would be proper for Defendants to pursue questioning regarding the "circumstances surrounding the facts pleaded in the complaint as

---

[3] Exhibit 1 – June 30, 2020 Notice of 30(b)(6) Deposition of Advocacy Center

6

amended or proposed to be amended" by asking about the process DRLA used to obtain information regarding the conditions at DWCC and to establish contact with individuals whose allegations appear in the complaint. Defendants efforts in the 30(b)(6) deposition of Mr. Lospennato, however, were not so limited.

Plaintiffs seek a protective order because throughout the June 30, 2020 deposition of Mr. Lospennato, Defendants' counsel demanded that he respond to and provide information regarding to Plaintiffs' counsel's mental impressions or legal theories and insisted on a second day of deposition. In addition, during the deposition Defendants' counsel threatened that unless Mr. Lospennato identified every piece of evidence relied upon in supporting a fact, Defendants will attempt exclude use of that evidence.

Attorneys seeking protected work product through the deposition of an attorney must meet a high bar. *Shelton v. American Motors Corporation,* 805 F.2d 1323 (8th Cir. 1986). To seek protected attorney work product at deposition, a party must establish that: "(1) no other means exist to obtain the sought information; (2) the information is relevant and nonprivileged; and (3) the information is crucial in the case." *Id.* at 1327 (internal citations omitted). Applying this standard, courts have frequently restricted or prohibited attorney depositions or their equivalents under Rule 30(b)(6). Applying this standard, courts have frequently restricted or prohibited attorney depositions or their equivalents under Rule 30(b)(6). *See, e.g.*, *Nguyen v. Excel Corp.*, 197 F.3d at 209 (holding that the magistrate's order authorizing depositions of employer's counsel was overbroad to extent that it permitted inquiry into counsels' understanding of employer's perceptions and inquiry into counsels' opinion); *Chester v. Allen*, 122 F. App'x 184, 188 (6th Cir. 2005) (lower court erred in not applying *Shelton* test before compelling attorneys' depositions); *Avis Rent A Car Sys., LLC v. City of Dayton*, No. 3:12-cv-399, 2013 WL 3778922, at *10 (S.D.

7

Ohio July 18, 2013) (City's motion to quash deposition of city attorney granted under *Shelton* analysis); *EEOC v. HBE Corp.*, 157 F.R.D. 465, 466 (E.D. Mo. 1994) ("The defendant has failed to establish that there are no other means to obtain the information, that the information is relevant, or that the information is crucial to the preparation of its case.").

Courts have also granted protective orders in circumstances similar to the case at bar. For example, in *American International Group, Inc.*, the EEOC voluntarily submitted to a Rule 30(b)(6) deposition, producing the supervisor of the assigned investigator as its designee. 1994 WL 376052, at *1. Unsurprisingly, during the deposition the EEOC instructed the witness not to answer certain questions on the grounds of work product protection and deliberative process privilege. *Id*. at *2-3. The defendants then filed a motion to compel seeking, among other things, attorney fees and costs, an admonishment of the EEOC, precluding the EEOC from taking further depositions, and other sanctions. *Id*. at *1. Most of the contested matters were ultimately resolved by the court in the EEOC's favor. *Id.* at *2-3. *See also* U.S. v. Dist. Council of N.Y.C., No. 90–5722, 1992 WL 208284, at *5–6, 10 (S.D.N.Y. Aug. 18, 1992) (DOJ voluntarily submitted to Rule 30(b)(6) deposition in civil RICO enforcement action, and prevailed when defendants later sought to compel testimony related to government's work product).

It is clear from the aforementioned cases that Defendants cannot meet the standards imposed by Rule 26(c). The information sought by Defendants is work product and Defendants have obtained and are able to obtain substantially equivalent information they seek from Plaintiffs' attorneys through other discovery.

**II.    Much of the information Defendants sought to obtain at the June 30, 2020 deposition is Protected Work Product**

Federal law provides DRLA with the authority to prosecute actions in its own name and on behalf of its constituents. 42 U.S.C. § 10805 (a)(1)(B). Doing so necessarily involves

investigation of facts and information and the application of legal analysis. *See, e.g., Dunn v. Dunn*, 219 F. Supp. 3d 1163, 1171 (M.D. Ala. 2016) (surveying courts that have "squarely held[] that Congress, by granting P&As the authority to pursue legal remedies to ensure the protection of those with disabilities," facilitated third-party standing to enforce those rights).

Under Rule 26(b)(3)(B), the preparation of allegations of a complaint is done in anticipation of litigation, and is therefore work product. A Rule 30(b)(6) deposition of an entity engaged in an enforcement action on behalf of others is effectively a deposition of the entity's counsel. *SEC v. Rosenfeld*, 1997 U.S. Dist. LEXIS 13996 *7 (S.D.N.Y. 1997) (holding deposition of the Securities and Exchange Commission was impermissible because agency counsel developed the allegations of the complaint). This reasoning is equally applicable to non-governmental entities that bring actions based on investigations of counsel. *See, e.g., Sierra Club v. BNSF Ry. Co.*, 2016 U.S. Dist. LEXIS 116716 *11 (W.D. Wash. 2016), superseded by statute on other grounds as stated in 2016 U.S. Dist. LEXIS 126448 (D. Ariz. 2016) (granting motion for protective order related to allegations of the complaint).

In *Sierra Club*, the defendant sought to conduct a Rule 30(b)(6) deposition of the Natural Resources Defense Council ("NRDC") regarding the factual bases for its allegations related to the defendants' alleged discharge of pollutants. *Sierra Club*, at *3. The court granted NRDC's motion for protective order because the information had been available through other means of discovery, and a Rule 30(b)(6) deposition "would only serve to reveal NRDC's attorneys' interpretation or previously provided information." *Id*. at *11.

In *EEOC v. McCormick & Schmick's*, the defendant sought to depose plaintiff EEOC regarding factual information alleged in its complaint. *EEOC v. McCormick & Schmick's Seafood Rest., Inc.*, 2010 U.S. Dist. LEXIS 61603 *1-2 (D. Md. 2010). The scope included facts that

supported or rebutted the allegations of the complaint, information regarding employees subject to discrimination, and the Equal Employment Opportunity Commission's factual support for assertions that the defendants engaged in various discriminatory activities. *Id.* *2-3. The EEOC argued that the testimony sought would have to be provided by counsel or a proxy and would therefore invade the EEOC's work product. *Id.* *4. The defendant contended that it simply wanted to discover the factual bases for the complaint. *Id.* *5. The court, granting the motion for protective order, noted:

> Numerous other federal courts have similarly concluded that 30(b)(6) deposition notices directed to a law enforcement agency involving the type of information Defendants seek in this case were, in effect, notices to depose opposing counsel of record and would not be permitted given a) the agencies' lack of independent knowledge of the transactions at issue and that the information the noticing party was seeking was generated by the agencies' counsel or counsel's agents in preparation of trial, b) the consequent high potential for intrusion into attorney work product, c) the undue burden and inefficiency entailed to prepare a lay witness to engage in rote memorization and recitation of the evidence in the case, and d) the availability of alternative means to secure legitimate factual discovery.

*Id.* at *10-11.

DRLA is a plaintiff in this case in an enforcement capacity and not as a person or entity whose individual rights were violated or whose knowledge is separate from its legal advocacy.[4] Through the use or misuse of the Rule 30(b)(6) deposition, Defendants are attempting to turn the rules of discovery on their head by directing their discovery efforts to Plaintiffs' counsel and circumventing the numerous other means of obtaining information, including but not limited to interrogatories, requests for the production of documents, expert reports, and the depositions of prisoners, staff, and experts. As with the above cases, these inquiries necessarily required counsel "to engage in rote memorization and recitation of the evidence in the case," either of which would intrude into protected work product. *Id.* at *11. That is exactly what is happening in this matter.

---

[4] Exhibit 3 – Lospennato Aff. ¶ 4.

For example, during the deposition, Defendants asked Mr. Lospennato "Does the Advocacy Center believe that lithium is improper for [Carlton Turner's] mental health condition?"[5] Plaintiffs objected on the basis of work product because this question seeks both improper expert opinion and the opinions of counsel.[6] There was, in fact, no real need for Defendants to seek this information from Plaintiffs' counsel. The clinical significance of any given prescription is a matter of expert opinion, not the knowledge of the Plaintiffs. Plaintiffs and Defendants have both retained mental health experts for the purposes of opining about clinical matters that are outside of the expertise of attorneys. All of the opinions of experts will be available to the parties pursuant this Court's discovery orders.

Furthermore, this question illustrates the difference between a question that seeks to discover facts and a question that seeks to discover an attorney's work product. Defendants are not seeking to uncover Mr. Turner's medical history or any facts about the care he was receiving. Both parties are aware that Mr. Turner was prescribed lithium because that information in included in the records provided by the Defendants in discovery. In addition, Defendant had the opportunity to and, in fact, did depose Mr. Turner. During Defendants' deposition of Mr. Turner, he mentioned his prescriptions, including lithium, twice[7] but Defendants never asked any questions of him about the adequacy, effectiveness, or any subsequent problems with his prescriptions. In this light, it is clear that the question was directed at discovering Plaintiffs' counsel's opinion of Mr. Turner's prescribed medication.

At deposition, Defendants sought protected work product by asking the organizational representative, "Would you agree that for someone with a mental health diagnosis who's been

---

[5] Exhibit 4 – 30(b)(6) Deposition, June 30, 2020, at p. 23:4-6
[6] *Id.* at 23:7-15.
[7] Exhibit 5 – Deposition of Carlton Turner at 32:1, 33:2.

11

prescribed medicine that it's important for them to take their medicine?"[8] Mr. Lospennato answered:

> I suspect for whatever relevance it has, I suspect that in most cases that's true. I also suspect, knowing that -- having done this work for a long time, that there are also instances where medications can be harmful. And that people make rational decisions not to take medication and sometimes those decisions are correct. But in the main, I think that that is correct. But again, it's my opinion and that's beside the point.

Beyond the common-sense generality that most people benefit from taking their medications, DRLA is not in a position to speculate beyond that as to the impact of medication on specific mental illnesses. That clinical judgment belongs to parties' expert witnesses, not to DRLA itself testifying at a 30(b)(6) deposition. DRLA as a Plaintiff has retained experts, but counsel and the organization are not in the same position as an expert to opine on clinical matters. To ask an organizational representative to step into the shoes of the organization's retained experts and answer questions about that expert's clinical judgment exceeds the permissible use of a 30(b)(6) deposition and intrudes upon the protected work product in the attorney's consultation with the retained experts.

Similarly, Defense counsel asked, "[i]s it important for someone with major depressive disorder to take medicine if they've been prescribed it?"[9] Plaintiffs' counsel replied that he was not properly qualified as an expert witness on clinical matters and asserted work product protection over the non-final expert reports.[10] Defense counsel then stated his intention to move to compel. The question of whether taking medication is "important" based on a person's diagnosis is rooted in clinical judgment. This question is nearly identical to the previous question, except that it is now specific to a particular diagnosis rather than a broad generality. By focusing this inquiry to a

---

[8] Exhibit 4 – 30(b)(6) Deposition at 31:6-9.
[9] *Id.* at 32:19-21.
[10] *Id.* at 33:10-13.

specific diagnosis, Defendants clarify their intention to seek clinical expert judgments rather than facts about the case.

At the deposition, Defense counsel also asked "[a]re you answering that you don't know [Larry Jones is] compliant because you really don't know and you haven't looked at them? Or are you answering that because you don't like those records?"[11] An attorney's "opinions as to the significance of documents, credibility of witnesses" are protected work product. *S.E.C. v. Rosenfeld*, No. 97 CIV. 1467 (RPP), 1997 WL 576021, at *3 (S.D.N.Y. Sept. 16, 1997).

Defendants are not seeking any new documents or information that is only in the possession of the Plaintiffs. Defendants are seeking the opinions and conclusions of Plaintiffs' counsel about the credibility of the medication administration documents that the Defendants provided to Plaintiffs in discovery. At the deposition of Larry Jones, Mr. Jones mentioned having problems with his medication.[12] Defendants never followed up on that line of questioning while Mr. Jones was under oath. The question about times that Jones missed doses is not properly addressed to his attorneys, but rather to Mr. Jones himself. Conversations between counsel and Mr. Jones about his medications are protected by the attorney-client privilege, the clinical judgment of Plaintiffs' experts is protected work product pending the final report, and counsel's mental impressions and opinions about Jones' medication records is the protected opinion work product of his attorneys. Defendants deposed Mr. Jones on February 18, 2020, at which time counsel did not ask him questions regarding his medication, its efficacy, or how often he is taking it.[13] This question, as well as others asked by the Defendants' counsel, are improper under *Shelton* and the Federal Rules of Civil Procedure.

---

[11] Exhibit 4 – 30(b)(6) Deposition at 43:23 – 44:2
[12] Exhibit 6 – Deposition of Larry Jones at 40:6-19.
[13] *Id.* at 39:13-19.

Beyond the clear overreach by Defendants' counsel in its efforts to obtain work product information, a review of the deposition as a whole makes it clear that the primary rationale for the deposition of Mr. Lospennato was to harass counsel and intimidate the Plaintiffs. For example, during the deposition, Defendants threatened a Motion to Compel regarding the current housing location of Larry Jones.[14] Defendants had asked Mr. Lospennato about DRLA's knowledge of the current location where Mr. Jones was incarcerated. After Mr. Lospennato at first incorrectly answered DWCC, Plaintiffs' counsel asked to confer with the witness. Once he received clarification, Mr. Lospennato corrected himself and answered that Mr. Jones was moved to Elayn Hunt Correctional Center. In response, Defendants' counsel stated that he intended to move for sanctions on the basis that DRLA was "stonewalling" him.

It is axiomatic that an "agency is not required to produce a witness who has memorized all of the facts that have been uncovered to date." *CyberSpy Software, LLC*, 2009 WL 2386137, at *4 (*SEC v. Nacchio*, 614 F. Supp. 2d 1164, 1177 (D. Colo. 2009)) (noting that requiring a government representative to spend weeks, if not months, learning the case would be "inefficient in the extreme" and that even agency counsel might not have all the facts "immediately at her fingertips"). Mr. Lospennato answered Defendants' question to the best of DRLA's knowledge. The question of Mr. Jones' current housing location is not in any serious dispute. The Department of Public Safety and Corrections does not depend on DRLA to track the location of its prisoners. Plaintiffs did not lodge an objection to this question and answered it fully. Defendants' statement that this line of questioning entitles them to sanctions is not consistent with the law and borders upon harassment. The information sought in this question is both outside of the deponent's direct

---

[14] Exhibit 4 – 30(b)(6) Deposition at 48:20 – 51:1.

14

knowledge, is already in the Defendants' possession and unquestionably could have been obtained via several other means.

**III.     All Information Sought by Defendants is Available Through Other Means**

Inquiry into work product is only permitted where a "party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3), Courts addressing efforts to conduct depositions implicating attorney work product have granted protective orders where the discovery was available through other means. *Sierra Club, supra*, 2016 U.S. Dist. LEXIS 116716 *11; *SEC v. Rosenfeld, supra*, 1997 U.S. Dist. LEXIS 13996 *9.

Here, as discussed above, Defendants have been provided with ample information through, among other things, interrogatories, requests for production, and prisoner depositions regarding the facts of this case. DRLA is a party to this case, but the facts of each individual prisoner are not within the organization's direct knowledge. As discussed above, Defendants repeatedly questioned DRLA's representative about the placement of prisoners, their conduct records, and their medical needs. Those questions did not relate to DRLA as a corporate entity, but rather as counsel to Plaintiffs. Defendants failed to ask these questions at the depositions of the class representatives. There is no reason to permit the invasion of the attorney's mental impressions and communications with the class representatives.

In addition, Plaintiffs' expert reports are due August 20, 2020, and Defendants will subsequently have ample opportunity to depose them. Defendants repeatedly asked DRLA clinical questions regarding medications and the adequacy of care. Defendants simply have no reason to seek protected work product through the testimony of attorneys, rather than from the experts themselves.

Because Defendants could have – and did – discover information as to the subjects of the proposed Rule 30(b)(6) deposition through other means, and could have conducted any additional discovery needed, Defendants are not entitled to conduct discovery of the work product of Plaintiffs' counsel.

**IV.     The Manner in which Defendants conducted the Rule 30(b)(6) Deposition Is Inconsistent with the Protections Afforded Against Disclosure of Attorney Mental Impressions, Conclusion, Opinions, and Legal Theories.**

Even where there is a showing that would support discovery of work product, there is a complete bar to discovery of mental impressions, opinions, conclusions, and legal theories of counsel. Fed. R. Civ. P. 26(b)(3). As noted above, the questions posed by Defendants' counsel during the June 30, 2020 30(b)(6) deposition repeatedly demanded that Mr. Lospennato divulge the factual and legal conclusions of the attorneys in the case. In addition, Defendants also repeatedly sought information regarding the allegations, facts, or bases that DRLA contends supports any claim asserted in the complaint. Finally, in that deposition, Defendants sought to depose DRLA regarding the information that will be the subject of expert reports that were not yet due at the time of the scheduled deposition.

For example, counsel for Defendants asked, "[w]ould you agree that for someone with a mental health diagnosis who's been prescribed medicine that it's important for them to take their medicine?"[15] As noted above, however, DRLA is not in a position to speculate as to the impact of medication on specific mental illnesses. That clinical judgment belongs to Plaintiffs' expert witnesses, not to DRLA itself testifying at a 30(b)(6) deposition. DRLA as a Plaintiff has retained experts, but counsel and the organization are not in the same position as an expert to opine on clinical matters. Beyond the lack of clinical expertise on the part of DRLA, any

---

[15] Exhibit 4 – 30(b)(6) Deposition at 31:6-9.

communications between the experts and counsel regarding the appropriateness and efficacy of specific medications is attorney work product until the release of the expert's report.

In addition, during the deposition, counsel for Defendants also asked Mr. Lospennato to explain a number of broad allegations contained in the Amended Complaint. For example, counsel sought answers to the following questions:

- Q: "What offenders have been deprived of needed medications?" 126:4-5.

- Q: "Other than those 2018, early 2019 dates in the complaint, are you aware of any other time this occurred?" 173:20-22. [Regarding the allegations of bluesing.]

- Q: "You think it's your work product whether the windows were open there or not?" 174:2-3.

Defendants' effort to depose DRLA as to the allegations in the Second Amended Complaint and the factual analysis underlying those allegations essentially asks that DRLA to explain the case to Defendants. Doing so would require counsel – or another individual required to learn every fact in the case – to explain the thinking of the lawyers involved in the case in making the allegation. *See, e.g.*, *EEOC v. Texas Roadhouse, Inc.*, No. 11-11732-DJC, 2014 WL 4471521, at *3 (D. Mass. Sept. 9, 2014) ("While the request is framed as one for 'factual information' and 'documents,' the witness, in explaining why certain documents 'support' or 'rebut' the allegations, would necessarily be asked to interpret the facts and discuss how the EEOC decided to proceed in preparing the case."); *EEOC v. HBE Corp.*, 157 F.R.D. 465, 466 (E.D. Mo. 1994) ("The defendant asserts that it is seeking to 'explore the factual bases of the claims made by Plaintiff.' As defendant well knows, it is the selection and compilation of the relevant facts that is at the heart of the work product doctrine."). In *HBE Corp.*, the Rule 30(b)(6) deposition of the

EEOC, which sought information about allegations in the complaint was quashed on grounds of work product and the fact EEOC previously produced investigative file and answered defendant's discovery.

Throughout the June 30 deposition, Defendants sought varying degrees of detail of the products of counsel's investigation, research, and analysis of the issues in the case, with similar implications for inquiry into "mental impressions, conclusions, opinions, or legal theories." Fed. R. Civ. P. 26(b)(3). Yet, the facts underlying the Second Amended Complaint have been the subject of many depositions and thousands of documents exchanged between the parties. Defendants have had ample opportunity to obtain that information through other means. Under these circumstances, Defendants cannot establish that there are no other means to obtain the information, that the information is relevant, or that the information is crucial to the preparation of its case.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Protective Order.

Respectfully submitted this 20th day of July, 2020,

**BRUCE CHARLES ET AL, ON BEHALF OF ALL OTHERS SIMILARLY SITUATED AND DISABILITY RIGHTS LOUISISANA (PREVIOUSLY KNOWN AS THE ADVOCACY CENTER)**

By and through their attorneys

*/s/ Jonathan C. Trunnell*
Jonathan C. Trunnell, La. Bar No. 36956, T.A.
Melanie Bray, La. Bar No. 37049
Ronald K. Lospennato, La. Bar No. 32191
Advocacy Center
8325 Oak Street
New Orleans, LA 70118
504-708-1460
504-507-1956 (fax)

jtrunnell@advocacyla.org


*/s/ Bruce Hamilton*
Bruce Hamilton, La. Bar No. 33170
ACLU Foundation of Louisiana
P.O. Box 56157
New Orleans, Louisiana 70156
Telephone: (504) 522-0628
Facsimile:(504) 613-5611
bhamilton@laaclu.org


*/s/ Katie M. Schwartzmann*
Katie M. Schwartzmann, La. Bar No. 30295
*Cooperating Counsel for ACLU-F LA*
Tulane Law School
6329 Freret Street
New Orleans, La 70115
(504) 496-8566
kschwartzmann@tulane.edu