UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BRUCE CHARLES, on behalf of himself and all other similarly situated prisoners at David Wade Correctional Center | * * * * | JUDGE ELIZABETH E. FOOTE USMJ MARK L. HORNSBY |
| and | * * | |
| ADVOCACY CENTER, | * * | |
| PLAINTIFFS | * * | CIVIL ACTION NO. 5:18-cv-00541-EEF-MLF |
| VERSUS | * * | |
| JAMES M. LEBLANC, et al., | * * | |
| DEFENDANTS | * | |

**<u>MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT REGARDING ADA AND RA CLAIMS</u>**

## TABLE OF CONTENTS

I.      Overview ......................................................................................................................1

II.     Undisputed Material Facts .........................................................................................2

    A.      The SAC Does Not Allege that the Defendants Discriminate Against Disabled Offenders on the South Compound or that Plaintiffs Have Requested and Been Denied Accommodations ..............................................2

    B.      Plaintiffs' Expert Witnesses Offer No Evidence or Opinions that the Defendants Discriminate Against Disabled Offenders on the South Compound or that Plaintiffs Have Requested and Been Denied Accommodations ............................................................................................5

III.    LAW AND ARGUMENT ...........................................................................................7

    A.      Law on Stating a Claim for Violations of the ADA or the RA......................7

    B.      Plaintiffs' Conclusory Allegations Do Not State a Claim for Violation of the ADA or the RA ......................................................................................9

    C.      Plaintiffs' Allegations of the Use of Administrative Segregation and Inadequate Mental Health Care Do Not State a Claim for Violation of the ADA or the RA ...........................................................................................11

    D.      Plaintiffs Are Not Being Discriminated Against By Reason of a Disability......................................................................................................12

IV.     Conclusion ...............................................................................................................16

V.      Attachments

    A. Excerpts from the deposition Kathryn Burns, M.D. taken on March 24, 2021

    B. Expert report of Kathryn Burns, M.D.

    C. Expert report of Craig Haney, Ph.D.

    D. Excerpts from the deposition of Steven Hayden taken on March 29, 2019

    E. Excerpts from the deposition of Warden Michelle Dauzat taken on February 21, 2019

## TABLE OF AUTHORITIES

<u>STATUTES</u>

Rule 56(a) of the Federal Rules of Civil Procedure..............................................................7

29 U.S.C. § 794(a) ................................................................................................................8

42 U.S.C. 12101(b)(1) .........................................................................................................7

42 U.S.C. 12132...................................................................................................................7

<u>CASES</u>

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505 (1986)...........................7

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) .............................................9-10

*Atkins v. County of Orange*, 251 F. Supp. 2d 1225 (S.D.N.Y.2003).............11, 12, 15, 16

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)......9-10

*Bryant v. Madigan*, 84 F.3d 246 (7th Cir. 1996) ................................................7, 8, 11, 15

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986) ......................................7

*Goodman v. Johnson*, 524 Fed. Appx. 887 (4th Cir. 2013)...............................................8

*Hale v. King*, 642 F.3d 492 (5th Cir. 2011).......................................................................7

*Irby v. Sumnicht*, 683 F. Supp. 2d 913 (W.D. Wis. 2010)...............................................14

*Kokinda v. Pennsylvania Dept. of Corrections*, 779 Fed. Appx. 944 (3d Cir. 2019).......8

*Lee v. State, Dept. of Correctional Services*, 1999 WL 673339 (S.D.N.Y. 1999) .......8, 11

*Maccharulo v. New York Dept. of Correctional Services*, 2010 WL 2899751
(S.D.N.Y 2010) ............................................................................................................8, 12

*O'Guinn v. Nevada Dept. of Corrections,*, 468 Fed. Appx. 651 (9th Cir. 2012)...............13

*Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011 (9th Cir. 2010) ........................................11

*Smith v. Harris County, Texas*, 956 F.3d 311 (2020) ...................................................8, 11

*Williamson v. Larpenter*, 2019 WL 3719761 (E.D. La. 7/5/19)............................8, 14, 15

*Wilkinson v. Austin*, 545 U.S. 209, 125 S. Ct. 2384 (2005)........................................ 13, 15

**MAY IT PLEASE THE COURT:**

This memorandum is submitted on behalf of defendants, James M. LeBlanc, Secretary of the Louisiana Department of Public Safety and Corrections; Jerry Goodwin, Warden of David Wade Correction Center; Col. Lonnie Nail; Doctor Gregory Seal; Assistant Warden Deborah Dauzat; Aerial Robinson; Johnie Adkins; and the Louisiana Department of Public Safety and Corrections (collectively the "defendants") seeking to dismiss all claims based upon alleged violations of the Americans with Disabilities Act ("ADA") and the alleged violations of the Rehabilitation Act of 1973 ("RA") set forth in Plaintiffs' Second Amended Complaint (the "SAC") as a matter of law as the undisputed genuine issues of material fact show that the defendants do not discriminate against prisoners with disabilities.

## I. <u>OVERVIEW</u>

The Plaintiffs consist of the Advocacy Center and four named plaintiffs. The Advocacy Center asserts associational standing on behalf of DWCC prisoners on extended lockdown who have or may have in the future a mental illness or emotional impairment. The four named plaintiffs allege that they have disabilities and seek to assert claims on behalf of themselves and a class of all prisoners at DWCC on extended lockdown who have a qualifying disability related to mental illnesses. The pertinent pleading at issue is the Second Amended Complaint (the "SAC") filed on March 13, 2020 [Doc. 316]

DWCC is a maximum security prison which consists of a North Compound and a South Compound. The North Compound houses general population. The South Compound houses offenders in restrictive housing. Offenders in the South Compound sections identified as N2A, N2B, and N3 through N4 are generally maintained in preventative segregation due to various

violations, disciplinary infractions, and other penological reasons. Plaintiffs' allegations pertain to preventative segregation activities in the South Compound

## II. UNDISPUTED MATERIAL FACTS

While the Plaintiffs assert claims for deficient and inadequate mental health care on the South Compound of DWCC (which claims are denied), there are no specific allegations that DWCC discriminates against disabled offenders on the South Compound or that the Plaintiffs have requested and been denied accommodations. These two facts are shown by the following and require dismissal of the ADA and RA claims.

### A. The SAC Does Not Allege that the Defendants Discriminate Against Disabled Offenders on the South Compound or that Plaintiffs Have Requested and Been Denied Accommodations.

The SAC sets forth the following conclusory allegations of violations of the ADA and the RA:

### B. Violations of the Americans with Disabilities Act

295. Plaintiffs bring their claims for the violation of the ADA on behalf of the sub-class of individuals in extended lockdown who have mental illness.

296. Plaintiffs and constituents of the Advocacy Center have disabilities due to mental illness, which interfere with their major life activities.

297. Plaintiffs' needs qualify them to receive mental health care, including therapy and counseling.

298. Plaintiffs reallege and incorporate all allegations above herein.

299. The Defendants knowingly and consistently discriminate against prisoners with mental disabilities, all of whom are constituents of the Advocacy Center, by failing to provide them with reasonable accommodation for their disabilities and punishing them for behavior that is a product of their disabilities.

300. Defendants have further knowingly discriminated against persons with disabilities, and constituents of the Advocacy Center, as the result of Defendants' methods of administration of their solitary confinement, extended lockdown, and mental health programs.

2

301. By placing prisoners with mental illness in extended lockdown, Defendants have denied prisoners with mental illness the benefits of the facility's services, programs, and activities, including education, programming, recreation, exercise, and mental health treatment and services, thus discriminating against persons on the basis of their disability.

302. Discrimination against prisoners with mental illness occurs particularly because prisoners do not receive mental health services sufficient to counteract the effects that extended lockdown and other forms of punishment have on mentally ill prisoners, which is more severe than the impact it has on prisoners who are not mentally ill.

303. The Defendants discriminate against prisoners with serious mental illness on the basis of their disabilities. The Defendants routinely warehouse prisoners with serious mental illness in solitary confinement, and disproportionately place prisoners with serious mental illness in extended lockdown and especially solitary confinement.

304. By placing prisoners with serious mental illness in extended lockdown and imposing behavior management plans and other forms of punishment, the Defendants (a) failed to furnish reasonable accommodation to prisoners with disabilities, (b) punish prisoners with serious mental illnesses for disability-related conduct; and (c) deprive prisoners with mental illness of access to adequate mental health care.

### C. Violation of Section 504 of the Rehabilitation Act of 1973

305. Plaintiffs reallege and incorporate all allegations above herein.

306. Plaintiffs qualify as individuals with disabilities as defined in Section 504 of the Rehabilitation Act of 1973. They have mental impairments that substantially limit one or more major life activity, including but not limited to thinking, concentrating, interacting with others, and controlling their behavior. They have records of having such impairment or are regarded as having such an impairment.

307. The Defendants discriminate against prisoners with disabilities, all of whom are constituents of the Advocacy Center, by failing to provide reasonable accommodation for their disabilities.

308. Defendants discriminate against prisoners with disabilities solely on the basis of their disabilities in violation of Section 504.

309. In placing prisoners with serious mental illness in extended lockdown the Defendants have deprived prisoners with mental illness from the benefits of the

3

facility's services, programs, and activities, including education, programming, recreation, exercise, and mental health services, thus discriminating against them on the basis of their disabilities.[20]

Other than generic conclusory allegations, the SAC asserts no facts pertaining to discrimination or requests for accommodations pursuant to the ADA or the RA. This fact is demonstrated by a listing of the major headings under the "Factual Allegations" section of the SAC, to wit:

A.   The Physical Plant of Lockdown Units at David Wade Correctional Center (SAC p. 11)

B.   Conditions in the David Wade Lockdown Units are Brutal and Inhumane. (SAC p.12)

C.   Defendants Fail to Provide Adequate Mental Health Care and Are Deliberately Indifferent to Prisoners' Mental Health Needs. (SAC p. 16)

D.   Defendants' Lack of Mental Health Care Results in Serious Harm. (SAC p. 25)

E.   Defendants Respond Brutally to Symptoms of Mental Illness, Requests for Mental Health Treatment, and Attempts to Redress Grievances. (SAC p. 47)

F.   Defendants Systematically Deny Plaintiffs Delivery of Mail to and from Counsel. (SAC p. 48).[21]

Specific allegations contained in the SAC confirm that the Plaintiffs have not alleged that offenders who are allegedly disabled are discriminated against or treated differently that offenders who are not disabled. See the following allegations:

40.   All prisoners who are transferred to DWCC are housed in lockdown for a period of time prior to being moved to general population. The lockdown units also are used for any prisoner in general population who is suicidal or attempts suicide. Finally, the units are used for the disciplinary population: prisoners who have committed a rule violation in general population may be administratively sentenced to serve time in the lockdown buildings.

---

[20] See Plaintiffs' Second Amended Complaint at R. Doc. 316.
[21] See Plaintiffs' Second Amended Complaint at R. Doc. 316.

82.    The failure of DWCC's system of intake, diagnosis, and routine evaluation exposes all prisoners to the real risk that a mental illness will be left undiagnosed and untreated.

120.    All prisoners on extended lockdown are subjected to the risk that a mental illness will develop and that Defendants will leave it untreated.

276.    Like all prisoners on extended lockdown at DWCC, the class representatives are not provided access to counseling, group therapy, or support groups.[22]

In addition, the word "accommodation" does not appear anywhere in the factual allegations section of the SAC.

In short, other than the conclusory allegations in the claim purporting to assert violations of the ADA and the ADA, there are simply no factual allegations in the SAC of discrimination or failure to provide accommodations to Plaintiffs.

**B.   Plaintiffs' Expert Witnesses Offer No Evidence or Opinions that the Defendants Discriminate Against Disabled Offenders on the South Compound or that Plaintiffs Have Requested and Been Denied Accommodations.**

Plaintiffs retained two experts to opine on the health care at DWCC, Dr. Kathryn Burns, and Craig Haney, Ph. D.  Neither provide opinions pertaining to the ADA or the RA.

Dr. Burns is not an expert in in the ADA and is offering no opinions on the ADA.[23]  That said, Dr. Burns clearly opines in her report that offenders with disabilities are treated the same as offenders without disabilities. See the following:

Every prisoner housed in extended lockdown at DWCC is subjected to these same policies and practices. There are no exceptions. All prisoners are exposed to these harmful conditions and many suffer mental consequences.[24]

The policies and procedures of DWCC's extended lockdown are applied equally to all prisoners housed there.[25]

---

[22] See Plaintiffs' Second Amended Complaint at R. Doc. 316.
[23] Dr. Burns' depo. taken on March 24, 2021 at p. 23 attached as Ex. A.
[24] Dr. Burns' Expert Report at p. 10 attached as Ex. B.
[25] Burns expert report, Ex. B, p. 30.

As a consequence of these profound deficiencies in the surveillance for and treatment of mental illness, all prisoners in extended lock down at DWCC are exposed to the risk of developing serious mental consequences including psychiatric illness, psychological suffering and including serious self-harm and death by suicide.[26]

Burns offers no opinions on accommodations.

Dr. Haney similarly asserts in his report that all prisoners are allegedly subject to harm, as follows:

14. …conditions of confinement place all prisoners at significant risk of serious harm, regardless of their pre-existing mental health status.[27]

58. …Neither of these facts undercuts the overall consensus that has emerged on the harmful effects of long-term isolation and the serious risk of such harm that this form of confinement poses for all prisoners who are subjected to it.[28]

62 …DWCC confines all prisoners who have been transferred to the prison to serve 90 days in extended lockdown/solitary confinement, irrespective of their disciplinary history or behavior when they arrive…[29]

142. …all prisoners in solitary confinement should be "monitored closely and effectively for any sign of psychological deterioration."[30]

161. As I noted at length earlier in this Declaration, there is a robust scientific literature that establishes the adverse psychological effects of solitary or isolated confinement and the severe risk of serious harm that it poses for all prisoners who are subjected to it.[31]

163. …Time spent in these units places all prisoners at significant risk of serious psychological harm.[32]

Again, Dr. Haney offers no opinions on accommodations.

The claims for alleged violations of the ADA and the RA should be dismissed considering the lack of factual allegations of discrimination necessary to state such claims.

---

[26] Burns expert report, Ex. B, p. 30.
[27] Dr. Haney's Expert Report at ¶14, attached as Exhibit C.
[28] Haney expert report, Ex. C, ¶ 58.
[29] Haney expert report, Ex. C, ¶ 62.
[30] Haney expert report, Ex. C, ¶ 142.
[31] Haney expert report, Ex. C, ¶ 161.
[32] Haney expert report, Ex. C, ¶ 163.

## III.  LAW AND ARGUMENT

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325, 106 S. Ct. 2548 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S. Ct. 2548.

### A.  Law on Stating a Claim for Violations of the ADA or the RA

A plaintiff states a claim for relief under Title II of the ADA if he alleges: (1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability. *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011).

The purpose of the ADA as specifically stated by Congress is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. 12101(b)(1).  The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. 12132.  The ADA is not meant to be an "end run" around Eighth Amendment cases. *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996).

7

Similarly, under Section 504 of the RA, "no otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. 794(a). The RA is interpreted the same as the ADA with certain exceptions not applicable here. *Smith v. Harris County, Texas*, 956 F.3d 311, 317 (2020).

The ADA proscribes discrimination against disabled individuals. The Eastern District of Louisiana in *Williamson v. Larpenter*, 2019 WL 3719761 (E.D. La. 7/5/19) held that:

> the ADA is a <u>discrimination statute</u>. The fact that a person has a qualifying disability is not alone sufficient to state a cognizable ADA claim. Instead, the person with a disability must also establish causation, i.e., that he was discriminated against in the provision of benefits, services or programs <u>by reason of his disability</u>.

(Emphasis in original.). See also, *Kokinda v. Pennsylvania Dept. of Corrections*, 779 Fed. Appx. 944 (3d Cir. 2019) (Claim was dismissed because plaintiff failed to "assert that he was excluded from a program or service on account of or because of his disability as required."); *Goodman v. Johnson*, 524 Fed. Appx. 887 (4th Cir. 2013) (ADA claim dismissed because plaintiff "failed to allege facts indicating that, due to his disability, he has been deprived of benefits for which he was otherwise qualified."); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (Failure to attend to a disabled person's needs is not a violation of the ADA where no discrimination is alleged and the disabled persons is not treated worse because he was disabled.); *Maccharulo v. New York Dept. of Correctional Services*, 2010 WL 2899751 (S.D.N.Y 2010) ("Therefore, when there is no allegation of 'disparate treatment,'...between disabled and non-disabled individuals, the plaintiff has not stated a claim under the ADA or the Rehabilitation Act."); *Lee v. State, Dept. of Correctional Services*, 1999 WL 673339 (S.D.N.Y. 1999) (Plaintiff's allegations suffered from a fundamental defect in that they failed to state that the offender was excluded from any prison service or program because of his disability.).

8

**B. Plaintiffs' Conclusory Allegations Do Not State a Claim for Violation of the ADA or the RA**

While the Plaintiffs go to great lengths to disparage the conditions and mental health care provided at DWCC, there are no allegations or evidence that the Defendants have discriminated against the Plaintiffs. In fact, to the contrary, the allegations of the SAC and the opinions of the Plaintiffs' experts are that all offenders are treated the same – the direct opposite of discrimination. There is simply no evidence of discrimination against Plaintiffs or offenders with disabilities.

A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). Conclusions of law are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950. Only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950; *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965. The "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 554, 127 S. Ct. at 1964. A claim only has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

In *Twombly*, the plaintiffs alleged a violation of section 1 of the Sherman Act, 15 U.S.C. § 1. The issue was whether the complaint could survive a motion to dismiss when it alleged that major telecommunications providers engaged in certain parallel conduct unfavorable to competition, absent some factual context suggesting agreement, as distinct from identical, independent action. The Supreme Court held that a plaintiff's obligation to provide the "grounds"

9

of his entitlement to relief requires more than labels and conclusions, and that a formulaic recitation of the elements of a cause of action will not do. *Twombly*, 550 U.S. at 545, 127 S. Ct. at 1959. The Supreme Court held that the plaintiff must set forth enough factual matter to suggest that a plausible argument that an agreement was made. *Id.* An allegation of parallel conduct and a bare assertion of conspiracy were insufficient. *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1966. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. *Twombly*, 550 U.S. at 556-57, 127 S. Ct. at 1966. Without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stayed into neutral territory. *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966. Although in form a few stray statements spoke directly of agreement, on fair reading those statements were merely legal conclusions resting on the prior allegations. *Twombly*, 550 U.S. at 564, 127 S. Ct. at 1970.

In *Iqbal*, a Muslim sued Ashcroft, the attorney general, Mueller, the FBI director, and others for deprivation of constitutional rights during his detention after September 11. The complaint alleged that the government officials "knew of, condoned, and willfully and maliciously agreed to subject [him]" to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." The complaint alleges that Ashcroft was the "principal architect" of this invidious policy, and that Mueller was "instrumental" in adopting and executing it. The Supreme Court found these bare assertions amounted to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim. As such, the allegations were considered conclusory and were not entitled to be assumed true. *Iqbal*, 556 U.S. at 681, 129 S. Ct. at 1951.

Here, the Plaintiffs' allegations are even more deficient than those set forth in *Twombly* and *Iqbal*. The factual allegations of the SAC set forth the Plaintiffs' contentions that administrative segregation at DWCC is bad and that the mental health care provided is deficient (both allegations are denied in the strongest terms). Other than the conclusory allegations of discrimination, there simply are no factual allegations of discrimination against the Plaintiffs. As stated by the court in *Lee*, a mere recitation of the legal standard does not state a claim:

> The Court acknowledges that the Amended Complaint does also state that Defendants "denied [Plaintiff's son] the benefits of public services, programs and activities as a result of his mental disability by, among other things their failure to make reasonable accommodations for mentally disabled persons who come into contact with the criminal justice system." Am. Compl. ¶ 45. This recitation of the legal standard, in the absence of any allegations in support, does not add to Plaintiff's claim.

*Lee v. State, Dep't of Corr. Servs.*, 1999 WL 673339, at \*13 (S.D.N.Y. 1999). Plaintiffs' claims based upon the ADA and the RA should be dismissed based upon the absence of factual allegations of discrimination.

## C. **Plaintiffs' Allegations of the Use of Administrative Segregation and Inadequate Mental Health Care Do Not State a Claim for Violation of the ADA or the RA**

The real essence of the SAC is that the Plaintiffs contend that the Defendants provide inadequate mental health care to offenders in administrative segregation on the South Compound. Neither the ADA nor the RA applies to claims regarding the quality of mental health services. *Smith v. Harris County, Texas*, 956 F.3d 311, fn. 1 (2020) ("[T]he ADA does not typically provide a remedy for negligent medical treatment."); *Atkins v. County of Orange*, 251 F. Supp. 2d 1225, 1232 (S.D.N.Y.2003); *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability."); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (The ADA is "not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners" where no discrimination is

11

alleged.).  Similarly, a claim that challenges the adequacy or the substance of services that are provided to a disabled individual is not a valid claim under either the ADA or the RA. *Maccharulo*, at p. 3; *Atkins*, 251 F. Supp. 3d at 1232.

In *Maccharulo*, the offender's condition deteriorated during his stay at a level two facility. After being transferred to a level one facility, his condition improved.  When the offender was transferred back to the level two facility, his condition again deteriorated.  The court noted that the claim was one that challenged the adequacy of the services provided to the offender in level two, rather than the denial to disabled persons of services provided to non-disabled persons.  A challenge to the adequacy of services provided, as opposed to a challenge alleging denial of services provided to non-disabled persons was not a valid claim under the ADA or the RA.

The Plaintiffs have asserted a claim that the Defendants policies and procedures in the South Compound violate the Eighth Amendment's prohibition against cruel and unusual punishment (again, those allegations are denied in the strongest terms possible).  Those allegations simply fail to state a cause of action for violation of the ADA or the RA.

## D.  Plaintiffs Are Not Being Discriminated Against By Reason of a Disability

Here, the evidence is undisputed that the Plaintiffs and offenders with disabilities are treated the same as the non-disabled offenders housed in the South Compound. The SAC alleges clearly that all offenders in the South Compound are treated the same.[33]   Dr. Burns and Dr. Haney both also confirm that all offenders are treated the same.  There is simply no evidence of discrimination against Plaintiffs or offenders with disabilities.

Providing the Plaintiffs the best arguments possible, paragraphs 301 of the SAC alleges that:

---

[33] See paragraphs 82, 120, and 276 of the Second Amended Complaint, R.Doc. 316.

12

> By placing prisoners with mental illness in extended lockdown, Defendants have denied prisoners with mental illness the benefits of the facility's services, programs, and activities, including education, programming, recreation, exercise, and mental health treatment and services...

However, disciplinary action taken as a result of misconduct is not discrimination based upon the disability as mental health. In *O'Guinn v. Nevada Dept. of Corrections,*, 468 Fed. Appx. 651 (9th Cir. 2012), the plaintiff argued that the health care provided was inadequate and that he was disciplined due to his mental health. Very much as here, the plaintiff asserted a chain of causation: because he was untreated, he committed misconduct; because of his conduct, he was disciplined. The court rejected the plaintiff's argument holding that:

> Because O'Guinn failed to produce evidence showing that his disciplinary action was on account of his disability—rather than on account of his misconduct—there is no disputed issue of material fact on this point.

*O'Guinn*, 468 Fed. Appx. At 654.

Further, assertions that DWCC provides programs such as anger management and the like to offenders on the North Compound and that such programs are not available on the South Compound is insufficient. As recognized in *O'Guinn*, discipline against offenders with mental illness is allowed. The United States Supreme Court has acknowledged that "harsh conditions [of administrative segregation] may well be necessary and appropriate in light of the danger that high-risk inmates pose both to prison officials and to other prisoners." Wilkinson v. Austin, 545 U.S. 209, 224, 125 S. Ct. 2384, 2395 (2005).

Moreover, group therapy and *in person* programs are not available to any offender on the South Compound, including offenders with or without disability. [34] That said, programs are available to offenders in the South Compound in writing, unless the offender is on further

---

[34]Steve Hayden's depo. taken on March 29, 2019 at pp. 126-27 attached as Ex. D.

13

restriction. [35] In addition, any offender on the South Compound is provided individual counseling with mental health professionals to discuss the materials upon request.[36] So while the offenders on the South Compound cannot attend the programs in person, they have access to the programs through written materials and counseling upon request. Thus, there is no discrimination.

The Defendants have no duty to provide an accommodation where Defendants do not offer the program, service or activity. The court in *Williamson* held that:

> If the entity does not provide the program, service or activity as a general matter, then the entity has no duty under Title II to provide an accommodation for disabled persons. This makes sense because the goal of the ADA is to provide equal access to individuals with disabilities to opportunities and benefits, not to provide privileges withheld from everyone else.

*Williamson*, p. 15 (Quoting, *Irby v. Sumnicht*, 683 F. Supp. 2d 913, 917 (W.D. Wis. 2010)) (Emphasis in original). The court in *Williamson* concluded that plaintiff's denial of services was not discriminatory because none of the Terrebonne inmates, disabled or otherwise, had access to the programs; the plaintiff was not treated differently from other inmates. *Williamson*, at p. 15.

In *Williamson*, the offender complained of conditions of confinement and treatment for mental health condition. Among other things, he complained that

> The conditions of the suicide watch holding cell were unsanitary, cramped, crowded with four to five inmates at a single time, permitted him no access to his personal possessions and lacked a mattress.

The court found that these "conditions, while plainly not comfortable, do not rise to a level of seriousness constituting a constitutional violation." In addition, as to the ADA, the offender asserted that the "defendants discriminated against him by denying him access to therapy, group programs, and regular trips to a mental health facility." The court addressed the ADA claims

---

[35] Hayden dep., Ex. D, p. 127.
[36] Warden Michelle Dauzat's depo. taken on February 21, 2019 at p. 44 attached as Exhibit E.

specifically by noting that the jail did not provide any of the services to <u>any</u> of the inmates at the jail. The court then noted that, the plaintiff "was not treated differently from other inmates."

The Court in *Atkins v. Cty. of Orange*, 251 F. Supp. 2d 1225 (S.D.N.Y. 2003) addressed practically an identical situation. There, the plaintiffs argued that an alternative to keeplock isolation should be provided to the mentally disabled in order to avoid exacerbation of their illness. In dismissing the ADA and RA claims, the court held that:

> Here, plaintiffs suggest no alternative accommodations to keeplock isolation or any other procedure and, even if they did, they mention no specific service that is being denied as a result of the current procedures. Clearly, plaintiffs are dissatisfied with the quality of the mental health services, which is already covered under their § 1983 claims. *Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir.1996) (stating that plaintiff failed to state a claim under the ADA because the core complaint was incompetent treatment of his underlying medical condition). These factual allegations, even construed in the light most favorable to the plaintiffs, do not state a claim under the ADA or Rehabilitation Act.

*Atkins*, 251 F. Supp. 2d at 1232–33.

The Plaintiffs here obviously seek to eliminate or reduce the use of extended lockdown as far as possible. But as in *Atkins*, the Plaintiffs suggest no alternative to extended lockdown and they mention no service that is being denied. The mere fact that conditions may be harsh is not an allegation of discrimination. *Wilkinson v. Austin*, 545 U.S. at 224, 125 S. Ct. at 2395. In *Williamson*, the conditions of the suicide watch holding cell were unsanitary, cramped, crowded with four to five inmates at a single time, permitted the plaintiff no access to his personal possessions and lacked a mattress. The court held that:

> These conditions, while plainly not comfortable or pleasant do not rise to a level of seriousness constituting a constitutional violation.

Williamson, *10. Moreover, the court stated that "routine discomfort is part of the penalty that convicted prisoners pay for having committed crimes." *Williamson*, *11.

15

So notwithstanding any unpleasant conditions of segregation, the Plaintiffs' allegations fail to state a claim for violation of the ADA or the RA.

## IV. **CONCLUSION**

The fact of the matter is that Defendants do not discriminate against offenders with mental health who are assigned to the South Compound for disciplinary reasons. Plaintiffs' bare bone allegations of discrimination without any factual support are insufficient. As recognized in both the SAC and the Plaintiffs' expert reports, the Defendants treat all offenders the same on the South Compound. Thus, the SAC does not state claims for violation of the ADA or the RA. While Plaintiffs plainly allege that mental health is deficient and that they seek to end or greatly restrict the use of administrative segregation as cruel and unusual punishment under the Eighth Amendment, those allegations do not state a claim for violation of the ADA or the RA. The case substantially resembles *Atkins*. The Plaintiffs here, just as in *Atkins*, allege inadequate mental health care in extended lockdown. The Court here should find that the Plaintiffs have failed to state a claim for violation of the ADA and the RA, just as the court in *Atkins* found.

The Defendants respectfully pray that the Court dismiss all claims for violation of the ADA and the RA with prejudice.

Respectfully Submitted:

**JEFF LANDRY,
ATTORNEY GENERAL**

BUTLER SNOW LLP
445 North Boulevard, Suite 300 (70802)
P. O. Box 2997
Baton Rouge, Louisiana 70821-2997
Telephone: (225) 383-4703
Facsimile: (225) 343-0630

By: /s/ Randal J. Robert
        Randal J. Robert (#21840)

16

Connell L. Archey (#20086)
Keith J. Fernandez (#33124)
Allena W. McCain (#38830)
*Special Assistant Attorneys General*
Email:  Randy.Robert@butlersnow.com
        Connell.Archey@butlersnow.com
        Keith.Fernandez@butlersnow.com
        Allena.McCain@butlersnow.com

Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of June, 2020, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

_____ /s/ Randal J. Robert_____
Randal J. Robert

57556851.v1

17