**MINUTES [4:00]**
**December 16, 2021**

**ELIZABETH E. FOOTE**
**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| ANTHONY TELLIS, ET AL. | CIVIL ACTION NO. 18-541 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| JAMES M. LEBLANC, ET AL. | MAGISTRATE JUDGE HORNSBY |

On December 16, 2021, the Court conducted a Zoom pretrial conference in the above-captioned matter. Jonathan Trunnel, Melanie Bray, Emma Douglas, and Katie Schwartzmann participated on behalf of Plaintiffs. Connell Archey, Randy Robert, Keith Fernandez, and Madaline King participated on behalf of Defendants. Michael Schimpf is the law clerk in this matter, and any further questions about the minutes should be directed to him.

This matter is set for a bench trial to begin on January 10, 2022. The trial will be conducted by Zoom Video Conference instead of in person for the following reasons: none of the trial counsel live in the Shreveport area; no party's expert witness lives in the Shreveport area; individuals incarcerated at prisons not located in the Shreveport will be called as witnesses; other witnesses do not live in the Shreveport area. These factors coupled with the recent rise in infection due to the Omicron variant of the Covid-19 virus all favor a remote bench trial. Defendants' only objection to conducting the trial by Zoom was that it was easier to question witnesses about documents in person. All parties were instructed by the Court that it will be their responsibility to know how to operate on Zoom efficiently, including the use of the "share screen" feature to show documents while questioning witnesses. The Zoom invitations will be sent directly to counsel of record. Counsel shall

be responsible for sharing the Zoom access information with their own witnesses in advance of their testimony.

This trial is open to the public; the Court will issue a minute entry regarding public access approximately one week before the trial. The Court noted that some mental health records may contain sensitive and confidential information and that it may become necessary to seal parts of the trial. The Court will address this issue as it comes up at trial.

The Court has allocated 4 weeks for this trial. The parties had requested 3 weeks and no party has indicated that more time on the Court's schedule is necessary. However, the Court on its own has extended the trial time in light of its own observations and the Martin Luther King holiday which falls during the originally requested three weeks. In short, the parties have requested 15 days of trial time and the Court has allocated to them 18 days (4 weeks with two days off as specified below). The Court has allotted Plaintiffs **70 hours** of testimony, which includes their case-in-chief, cross-examination, and rebuttal case. Defendants have been allotted **52 hours** to present their case-in-chief and conduct cross-examination. These fixed time periods do not include opening/closing statements, nor do they include arguments on objections (unless handled by the Court without argument) or other evidentiary issues. Displaying videos will count against a party's time, so the parties are encouraged to edit their videos to show only relevant portions. If both parties wish for a video to be shown, the time taken to show it will be divided and counted against both sides evenly. The courtroom deputy will time each portion of counsel's presentation and subtract the amount of time used from the total amount of time allotted to that side. At the end of each day of trial, the courtroom deputy will tell counsel how much of their time remains. At any time, counsel may ask the courtroom deputy how much of the time allotted to them remains. Plaintiffs should be prepared to begin

testimony on the first day of trial, and all counsel should be prepared with sufficient witness testimony to fill each day of trial.

The parties should expect trial to begin at 9:00 a.m. each day and conclude after about 6.5 hours of actual testimony. When discussing the trial schedule, the Court noted that Monday, January 17, 2022, is Martin Luther King Jr. Day, which is a federal holiday. Thus, it informed the parties that trial will recess after testimony on Thursday, January 13, 2022, and resume on Tuesday, January 18, 2022. From January 18–21, 2022, the parties should anticipate working an extra hour and having 7.5 hours of actual testimony during the day.

The Court allotted the parties 20 minutes for opening statements. The Court will discuss closing statements towards the end of the trial. In lieu of preparing findings of fact and conclusions of law in advance of the trial, the Court directed the parties to provide an outline summary of their claims and defenses with a brief summary of evidence and law in support. Plaintiffs' submission deadline is **December 30, 2021**. Defendants' submission deadline is **January 5, 2022**. The parties shall submit their proposed findings of fact and conclusions of law after the trial. The specific deadline will be set at trial.

By **December 27, 2021**, Plaintiffs shall notify Defendants who on DWCC's mental health staff Plaintiffs intend to call at trial and the anticipated date the witnesses are to be called. Defendants shall reply and indicate the availability of the identified witnesses by **December 29, 2021**. Also, by **December 27, 2021**, Plaintiffs shall provide Defendants the names of the testifying inmates and the date each inmate is anticipated to testify. Because of the administrative and logistical hurdles in making inmate witnesses available for trial, Plaintiffs shall provide Defendants and prison officials 24 hours' notice before calling inmates. Defendants had no objections to the inmate witnesses testifying without a guard in the same room to the extent Defendants have the authority to do so.

Defendants stated that a guard was not present during the depositions and expect the testimony will proceed in the same way unless a situation arises with a specific prisoner. For all other witnesses, counsel shall exchange the order of witnesses for the following day each night by **7:30 p.m.** A copy of the witness order shall be provided to the courtroom deputy at the same time.

The rule of sequestration of witnesses shall apply. Holding the trial by video conference presents challenges to the enforcement of the rule. The courtroom deputy will keep witnesses in a virtual waiting room. However, the attorneys are responsible for ensuring that their witnesses are in compliance with the rule of sequestration. The Court has no issue with attorneys being in the same room and using only one video feed instead of multiple video feeds. The attorneys may also be in the same room as a witness. However, in its experience, the Court has found that having the witness in the same room as the attorney could pose several issues. With the use of two computers in the same room, there is feedback from each of the microphones. With one computer or camera, the Court may not be able to see the witness well. The Court has found it to be better practice to have a witness in a separate room even if that room is down the hall.

The parties informed the Court that they intend to offer two depositions in lieu of live testimony. The parties have already conducted one deposition, but it was not noticed as a video deposition. The Court specified that it would prefer for the depositions to be by video. Plaintiffs stated that they could obtain a video of the deposition if Defendants agreed to its release with the court reporter. However, Defendants objected to Plaintiffs obtaining video of that deposition. The Court declined to order Defendants to agree to the release of the video of the already conducted deposition but noted that this objection appears to be without reason. The parties will work to edit the deposition transcript. The parties will be "charged" with the time used by them in the deposition as if that deposition was played for the Court in open court.

**Motions in Limine**

The Court ruled on the three pending Motions *in Limine*. Record Documents 471, 472, & 473. For the reasons below, the Court **GRANTED** the motion regarding the Fifth Amendment privilege against self-incrimination [Record Document 471], **GRANTED IN PART** and **DENIED IN PART** the motion regarding prior convictions [Record Document 472], and **DENIED** the motion regarding spoliation of evidence [Record Document 473].

### I. Fifth Amendment Privilege against Self-Incrimination

Plaintiffs sought to prevent Defendants from asking incarcerated witnesses about the veracity of their alleged prior bad acts while at DWCC. Record Document 471. Plaintiffs argued that the incarcerated witnesses would likely invoke the Fifth Amendment privilege against self-incrimination if asked to confirm or deny the events in the disciplinary write-ups. The Court stated that the information in the disciplinary write-ups is both important and relevant, but the Court agreed with Plaintiffs that specifically questioning the inmates about the underlying truth of the write-ups was needless and a waste of time because the inmates could assert their Fifth Amendment rights and Defendants can establish the veracity of the disciplinary write-ups through other witnesses. If Defendants believe that there has been a change in the evidence to warrant this line of questioning, Defendants must first approach the Court and obtain permission before eliciting testimony on this issue. However, the Court warned that this is not an invitation to rehash arguments already decided by the Court. Accordingly, the motion [Record Document 471] was **GRANTED**.

### II. Prior Criminal Convictions

Plaintiffs argued that the Court should preclude or limit Defendants from inquiring into the criminal convictions of the incarcerated or formerly incarcerated witnesses. Plaintiffs stated that the prior convictions of the witnesses are irrelevant for the Court's ruling on the merits. Alternatively,

Plaintiffs requested the Court prevent Defendants from delving into the underlying facts of the criminal convictions. Defendants countered that the convictions are admissible under the rules of evidence, but they do not intend to address the underlying facts of the convictions unless Plaintiffs open the door or the facts become relevant at trial. The Court agreed with Defendants that the prior convictions are admissible and stated that the dangers of unfair prejudice are mostly absent because this is a bench trial. However, the Court found that the underlying facts of the prior convictions do not appear to be relevant at this time. Therefore, the Court ordered Defendants to refrain from exploring the underlying facts unless they can first show relevance. Accordingly, the motion [Record Document 472] was **GRANTED IN PART** and **DENIED IN PART**.

### III. Spoliation of Evidence

This motion arises from the tier cameras at DWCC. The Court previously adopted the Magistrate Judge's findings of fact, which extensively discussed DWCC's video cameras at issue in the present motion. The Court need not restate those facts here and refers the parties to those rulings. *See* Record Documents 93 & 126. In their spoliation motion, Plaintiffs allege that Defendants intentionally destroyed evidence by (1) deleting video evidence and (2) failing to continue recording and storing footage of the tiers after 2017.

The Court first addressed Defendants' discontinuance of the video recordings. In November of 2017, DWCC discontinued the recording feature of the video cameras and replaced them with body cameras. Defendants stated that the cameras now only provide a live feed to monitor the area. Plaintiffs countered that this conduct was intentional spoliation of evidence. The Court noted that it previously issued an opinion that stated the proper procedural vehicle would likely have been a motion for the preservation of evidence during discovery if Plaintiffs sought the reactivation of the recording feature of the tier cameras. *See* Record Document 126. Plaintiffs made no such motion.

Additionally, the Court found that Plaintiffs have other evidence regarding the frequency of the rounds of the medical staff, the frequency of pill pass, and the opening of windows. Thus, the Court rejected Plaintiffs' argument on this ground.

The Court then took up the allegation that Defendants intentionally deleted video files. The Court found that Plaintiffs did not meet their burden in showing that Defendants deleted videos in bad faith. The parties presented competing expert opinions in their briefs. Defendants' expert, Michael Richmond, opined that the software automatically deletes files that are older than 30 days, so he attributed the deletion to the software program. Record Document 478-3. Additionally, he opined that the folders in the recycling bin were already empty when they were placed in the recycling bin. *Id.* Plaintiffs' expert, Michael Harvey, attributed the deletion to a user, but he did not dispute that the folders were already empty before being placed in the recycling bin. Record Document 478-2 at 20–22. Further, Harvey could not identify any files he was unable to recover. *Id.* Based on the competing experts, the Court determined that Plaintiffs failed to meet their burden in showing the intentional destruction of evidence. Further, the Court stated that Plaintiffs have other evidence to prove what they sought through the video. Accordingly, the motion [Record Document 473] was **DENIED**.

**Objections to Exhibits and Witnesses**

    **I.**    **Defendants' Objections**

        1.    <u>ARPs</u>

Defendants objected to all ARPs contained in Plaintiffs' list of exhibits as containing inadmissible hearsay. Upon review, the Court found that the ARPs were not being offered for the truth of the matter asserted and found them admissible for other purposes such as showing a process. Thus, Defendants' objection regarding the ARPs was **OVERRULED** to this extent.

Plaintiffs also argued that the ARPs were relevant to show notice of jail conditions. The Court was undecided as to whether using the ARPs in that context was admitting them for the truth of the matter asserted. The Court **DEFERRED** ruling on this issue until it arises at trial.

2. <u>Letters and Envelopes Received by Disability Rights</u>

Defendants objected to the letters and envelopes received by Disability Rights, which contained writings on the envelopes. Defendants acknowledged that the letters and envelopes could be admissible for a certain purpose, but they argued that the statements written on the envelopes about the condition of the envelopes when the inmates sent them are inadmissible hearsay. The Court **DEFERRED** ruling on this objection. The parties should make arrangements so that Defendants can view the originals in short order.

3. <u>Mental Health Face Sheets</u>

Defendants objected to the face sheets as not relevant and cumulative of other evidence. After reviewing the exhibits provided by Defendants, the Court found them admissible if Plaintiffs can demonstrate the relevance through a witness. Therefore, the objection was **OVERRULED**.

4. <u>Non-Compliant Photographs</u>

Defendants objected to nine photographs as not complying with a prior directive of the Magistrate Judge, which prohibited Plaintiffs from photographing doors and locks in the prison. *See* Record Document 223. After reviewing the photographs, the Court stated that Defendants' interpretation of the limitation appears to be overly restrictive. The Court tentatively ruled that the photographs are admissible, but it intends to further review Record Document 223 and the relevant filings before firmly ruling on the admissibility of the photographs.

     5.     <u>Restrictive Housing Programs at EHCC and LSP</u>

Defendants objected to the relevance of the transition programs implemented at Elayn Hunt Correctional Center and Louisiana State Penitentiary. Defendants also argued that these programs should be considered subsequent remedial measures. Plaintiffs countered that the programs are relevant to show that other programs could be implemented at DWCC. Plaintiffs stated that they intend to demonstrate the relevance through expert testimony. At this time, Defendants have not established a definitive timeline for implementation of the policies or how policies implemented at other facilities could be considered subsequent remedial measures at DWCC. Additionally, the Court found that Plaintiffs were offering the evidence to show the feasibility of other policies. The Court **OVERRULED** Defendants' objection and will allow the relevance challenge to go to the weight of the evidence, not its admissibility. Defendants may renew this objection at trial if the developed evidence supports an arguable claim that the transition programs could be considered subsequent remedial measures.

     6.     <u>Witnesses</u>

Defendants objected to the testimony of three witnesses listed by Plaintiffs. Defendants argued that witness Peter Galvan was only housed at DWCC for a short period of time in 2016, several years before the discovery cutoff date. Defendants argued that his testimony is irrelevant because Galvan's observations would be based on stale facts. The Court disagreed. The Court found that the fact that Galvan was only on extended lockdown for a brief period of time does not make his testimony irrelevant. Galvan has direct personal knowledge of his experience at DWCC. Accordingly, the Court **OVERRULED** Defendants' objection as to Galvan.

Defendants objected to the testimony of Chelsea Orman and Leah O'Brien on the grounds that Plaintiffs did not identify them in the preliminary witness list. The Court inquired into the

purpose of their testimony. Plaintiffs stated that these witnesses will testify on behalf of Disability Rights as to the mail procedure of Disability Rights and the conditions of the envelopes when received by Disability Rights. The Court found that Defendants have long been on notice as to Plaintiffs' claims regarding DWCC's alleged interference with prisoner mail and thus declined to exclude the witnesses based on a failure to identify them in the preliminary witness list. Thus, the Court **OVERRULED** Defendants' objection as to Orman and O'Brien to the extent they only intend to authenticate the mail. To the extent Plaintiffs intend for these witnesses' testimony to exceed this scope, a ruling is **DEFERRED** until trial.

The Court also noted that the testimony of Orman and O'Brien is likely the type of testimony that could easily be stipulated to in advance of trial to avoid calling the witnesses live. Plaintiffs shall tender to Defendants the proposed testimony of Orman and O'Brien by **5:00 p.m.** on **January 4, 2022**. Defendants shall indicate to Plaintiffs whether they will stipulate to Orman's and O'Brien's testimony by **5:00 p.m.** on **January 6, 2022**.

**II.     Plaintiffs' Objections**

1. Liman Survey (Defense Exhibit 50)

The Court **DEFERRED** ruling on the admissibility of the Liman Survey. The Court directed Defendants to send Plaintiffs the relevant pages by **5:00 p.m.** on **Friday, December 17, 2021**.[1] Simultaneous briefing on this exhibit is due **Wednesday, December 22, 2021**.

---

[1] Based on an email received by the Court after this conference, it appears Defendants have complied with this deadline.

2.  Literature (Defense Exhibits 51–56)

Plaintiffs objected to the introduction of multiple articles and studies conducted by people who are not testifying and one article from Plaintiffs' expert witness, Dr. Kathryn Burns. Plaintiffs argued that this evidence is hearsay and only can be read into evidence pursuant to Federal Rule of Evidence 803(18). Defendants do not intend to offer the studies and articles in as evidence outside of what is allowed under Rule 803(18). Thus, the Court **SUSTAINED** Plaintiffs' objection to the extent the exhibits were being offered into evidence outside the scope of Rule 803(18).

3.  Compilation Documents (Defense Exhibit 79)

Plaintiffs objected to multiple photographs and pages of this exhibit as not being produced during discovery. Additionally, Plaintiffs argued that the photographs depict an area of the prison not subject to the present suit. Defendants countered that they did produce the exhibit in discovery. They did note that the photographs were in black and white, but they were able to obtain the colorized versions. Defendants stated that the photographs depict acts of violence from offenders who are released into the general population too soon.

The Court was unable to resolve the production issue at the conference. By close of business on **December 16, 2021,** Defendants must provide Plaintiffs with the bates numbers to show that they produced the full exhibit during discovery. Plaintiffs were given until the close of business on **December 17, 2021**, to renew their objection based on failure to produce.[2] Assuming Defendants produced this exhibit during discovery, the Court stated that it would allow the objection to go to the weight of the evidence, but it would not exclude the evidence based on relevance or the prejudicial effect of the photographs. The Court noted that the risk of unfair prejudice is greatly reduced because this is a bench trial. Accordingly, Plaintiffs' objection was **OVERRULED**, albeit

---

[2] The Court received no objection by this date.

Page **11** of **13**

subject to reconsideration if it is shown that Defendants did not produce the full exhibit during discovery.

    4.    <u>Demonstrative Exhibits</u>

Plaintiffs created a summary chart of evidence pursuant to Federal Rule of Evidence 1006. Defendants agreed that Plaintiffs are properly using Rule 1006. However, Defendants stated that they have uncovered errors in the summary chart. The Court found Plaintiffs are entitled to use the chart under Rule 1006, if the chart is accurate. Defendants may object to the accuracy of the exhibit by **January 4, 2022**. Plaintiffs should make corrections by **January 7, 2022**.

**Trial Deadlines**

All existing deadlines remain in place except as modified below.

**(1) December 27, 2021**

    a. Plaintiffs' Will-Call List

**(2) December 30, 2021**

    a. Counsel shall submit two paper copies of trial exhibits to chambers. Paper copies shall be submitted in binders with each exhibit separated by a numbered tab. A descriptive index of exhibits shall also be provided.

    b. Stipulations

    c. Submit a glossary of all names and unusual terms to the court reporter. The Court will notify the parties of the court reporter's information in due course.

    d. Trial depositions shall be edited jointly by the parties to remove all non-essential material. Two copies of any edited trial depositions shall be delivered to chambers. All objections thereto must also be filed and briefed by this deadline.

    e. Plaintiffs' Summary of Claims

**(3) January 3, 2022**

    a. Defendants' Will-Call List

**(4) January 5, 2022**

    a. Defendants' Summary of Defenses

**(5) January 18, 2022**

    a. Defendants shall submit their order of witnesses.

**(6) Within 10 days of the end of trial**

    a. In order to preserve the record for appellate review, a second CD-ROM containing pdf-format versions of the exhibits that were introduced at trial must be provided to the courtroom deputy at the close of trial. The parties must also submit an exhibit list reflecting only those exhibits introduced at trial in Word format to the courtroom deputy. The Court will establish a firm deadline towards the end of trial.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE