**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

ANTHONY TELLIS, ET AL.                              CIVIL ACTION NO. 18-541

VERSUS                                             JUDGE ELIZABETH E. FOOTE

JAMES M. LEBLANC, ET AL.                          MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

  This suit for injunctive relief was filed by several inmates at David Wade Correctional Center ("DWCC") to challenge the conditions of confinement for inmates on extended lockdown at DWCC and to challenge the mental health care provided to inmates on extended lockdown. Plaintiffs allege that DWCC's policies and practices are in violation of the Eighth Amendment, First Amendment, Americans with Disabilities Act ("ADA"),[1] and Rehabilitation Act of 1973 ("RA").[2] Previously, the Court certified a class of all prisoners who are or will be subjected to extended lockdown at DWCC and a subclass consisting of all individuals on extended lockdown at DWCC who have or are perceived as having a qualifying disability related to mental health, as defined within the ADA. Record Document 462.

  Before the Court are two motions for summary judgment, both filed by Defendants. In one of the motions, Defendants seek dismissal of the class's Eighth Amendment claims. Record Document 414. In the other motion, Defendants seek to dismiss all claims based on alleged violations of the ADA and RA. Record Document 413. Both motions are fully briefed. For the reasons below, the motions [Record Documents 413 & 414] are **DENIED**.

---

[1] 42 U.S.C. § 12101, *et seq.*
[2] 29 U.S.C. § 701, *et seq.*

## BACKGROUND

DWCC is a prison located in Claiborne Parish, Louisiana. The facility is divided into two compounds—the North Compound and the South Compound. Record Document 413-2 at 5. The South Compound, which is at issue in this case, has five buildings—N-1 through N-5. *Id.* at 5–6. As of March 2020, buildings N-1 through N-4 housed inmates on extended lockdown. *Id.* Inmates in buildings N-1 through N-3 are generally housed in cells holding two people while inmates in building N-4 are in single cells. *Id.* As to the Eighth Amendment claims, the plaintiff class alleges that DWCC's policies and practices unconstitutionally expose it to a substantial risk of serious harm. Record Document 316 ¶s 290–94. Additionally, the plaintiff class contends that DWCC's mental health care is inadequate to detect and prevent severe psychological harm to inmates housed in extended lockdown. Record Document 428 at 11. As to the ADA and RA claims, the plaintiff subclass avers that Defendants violated the ADA and RA by discriminating against inmates with qualifying mental disabilities. The plaintiff subclass argues that DWCC does not limit the use of extended lockdown for inmates with a severe mental illness or consider these inmates' mental health when placing them on extended lockdown, which the members allege is a failure to make a reasonable accommodation as required by 28 C.F.R. § 35.130(b)(7). Record Document 427 at 18–19. The plaintiff subclass presented evidence that DWCC fails to make reasonable accommodations in other ways as well. These include failing to modify existing mental health programming or counseling services to allow subclass members to participate and using excessive force on inmates with a diagnosed severe mental illness without regard to its impact on that inmate. *Id.*

Because of the complicated nature of this case, the Court previously bifurcated this matter into two phases: a liability phase and a remedy phase. *See* Record Document 459. The liability trial is set for a three- to four-week bench trial to begin on January 10, 2022. *Id.* at 2. During this phase

the Court intends to decide whether Defendants violated the Constitution and/or the ADA and RA as of March 2020, which was the discovery cutoff date. *Id.* The remedy phase will only occur if the Court finds any violations as of March 2020. It is set for two weeks starting on July 25, 2022. *See* Record Documents 463; 465. At the remedy phase, the Court will allow Defendants to present evidence of the conditions at DWCC as of March 31, 2022, in order to show that they have remedied any violation and that an injunction would be moot. *See* Record Documents 459 at 2; 463 at 3.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the non-movant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings and designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985) (citing *Adickes*

*v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the non-movant is so "weak or tenuous" that it could not support a judgment in the non-movant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." *Id.*

## LAW & ANALYSIS

Defendants have filed two motions for summary judgment. Record Documents 413; 414. The Court will first consider Defendants' motion regarding Plaintiffs' Eighth Amendment claims before proceeding to the motion regarding Plaintiffs' ADA and RA claims.

### I.   Eighth Amendment Claims

Defendants have moved for summary judgment regarding Plaintiffs' Eighth Amendment claims. Record Document 414. The Eighth Amendment provides that "[p]rison officials must provide humane conditions of confinement; they must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measure to ensure the safety of the inmates." *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004). "Mental health needs are no less serious than physical needs." *Id.* The elements of an Eighth Amendment claim are met when a prison official "1) shows a subjective deliberate indifference to 2) conditions posing a substantial risk of serious harm to the inmate." *Id.* at 333. "In a constitutional claim alleging deliberate indifference to the conditions of a prisoner's confinement, the plaintiff must satisfy both the 'subjective and

objective requirements' of the Eighth Amendment inquiry." *Valentine v. Collier*, 956 F.3d 797, 801 (5th Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 846 (1994)). "To satisfy the objective requirement, the plaintiff must show an 'objectively intolerable risk of harm.'" *Id.* (quoting *Farmer*, 511 U.S. at 846). "To satisfy the subjective requirement, the plaintiff must show that the defendant: (1) was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; (2) subjectively drew the inference that the risk existed; and (3) disregarded the risk." *Id.* (cleaned up). An obvious risk could be sufficient to allow a fact finder to conclude that prison officials knew of the risk. *Hinojosa v. Livingston*, 807 F.3d 657, 667 (5th Cir. 2015) (citing *Gates*, 376 F.3d at 340).

In a class context, plaintiffs must "identify a unified common policy, practice, or course of conduct that is the source of their alleged injury." *Dockery v. Fischer*, 253 F. Supp. 3d 832, 846 (N.D. Miss. 2016). This policy "need not be formal or officially-adopted" but may instead be "identified on the basis of custom or consistent practice." *Id.* at 846–47. "[F]ailure to act can also constitute a policy or practice." *Id.* at 848. A plaintiff must also "connect[] the policy or practice to the alleged harm." *Id.* at 847. Systemic deficiencies in a prison's health-care system could support a finding of deliberate indifference at the institutional level. *See Gates*, 376 F.3d at 333 ("Conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need." (citation omitted)). Plaintiffs can meet their burden by showing "repeated examples of negligent acts which disclose a pattern of conduct by the prison medical staff . . . or by proving there are such systemic and gross deficiencies in staffing, facilities, equipment, or procedures that the inmate population is effectively denied access to adequate medical care." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (citations omitted).

Defendants argue that Plaintiffs cannot meet their burden in showing that the conditions at DWCC violate the Constitution. In their motion, Defendants often rely on evidence of conditions existing at DWCC after the March 2020 discovery cutoff date. *See generally* Record Document 414-2. Additionally, they contend that this Court should disregard Plaintiffs' expert's, Dr. Craig Haney, opinions on summary judgment because he did not rely on the scientific method. *Id.* at 16–17. Lastly, Defendants aver that the undisputed facts show that they are not deliberately indifferent to the serious mental health needs of inmates housed in the South Compound. *Id.* at 18. For the reasons below, the Court finds that summary judgment would be inappropriate because Defendants rely on inadmissible evidence at this time and Plaintiffs have produced sufficient evidence to create a dispute of material fact for trial.

## A. Defendants Rely on Inadmissible Evidence in Their Motion

The Court will first address Defendants' reliance on impermissible evidence at this stage of the litigation. Per the Court's order in effect at the time the parties filed this motion, discovery closed in March 2020. Record Document 378. Thus, evidence concerning conditions at DWCC in March 2020 was the most up-to-date information available to Plaintiffs when this motion was filed. However, much of the facts and evidence relied on by Defendants comes after March 2020. For example, Defendants extensively rely on exhibit 27, which appears to be a written policy implemented in March 2021.[3] Defendants did not request permission to expand the discovery period before basing their motion for summary judgment on conditions after March 2020. Almost two months after filing this motion, Defendants filed a motion to consider current conditions at DWCC. Record Document 447. In the motion, Defendants expressed their position that the Court must

_____

[3] At times, the Court is unable to decipher whether Defendants are referring to conditions as of March 2020 or after March 2020.

consider the current conditions at DWCC regardless of its prior discovery order. The Court denied this motion orally on the record. *See* Record Document 459. It appears Defendants filed the motion for summary judgment with an expectation that they would be successful in convincing the Court of their legal position. Defendants were mistaken, and the Court finds their vast reliance on inadmissible evidence is reason in itself to deny this motion.

### B.  Dr. Craig Haney Relied on the Scientific Method

Next, Defendants contend that the Court should disregard the expert opinion of Dr. Craig Haney because he did not rely on the scientific method. Record Document 414-2 at 16–17. Defendants argue that without his opinions, Plaintiffs' claims must fail because Plaintiffs extensively rely on his expertise to show objectively intolerable risks of harm. In support, Defendants cite competing studies that they claim show that Dr. Haney's opinions are unreliable. *Id.* This argument is the same argument advanced by Defendants in their *Daubert* motion.[4] *See* Record Document 393 at 4–17. The Court rejects this argument for the reasons orally stated on the record at the *Daubert* hearing. *See* Record Document 437. As such, Defendants are not entitled to summary judgment based on the above argument.

### C.  Plaintiffs' Evidence is Sufficient to Survive Summary Judgment

Lastly, after reviewing the record, it is clear to the Court that material facts are in dispute that can only be resolved at a trial on the merits. In disputing Defendants' motion, Plaintiffs attached a plethora of evidence that, if true, could support an Eighth Amendment claim. The Court discussed this evidence in detail in its class certification ruling and finds that discussion applies equally here in showing the factual dispute. *Tellis v. LeBlanc*, No. 18-CV-541, 2021 WL 4267513, at *5–8 (W.D.

---

[4] Defendants even refer the Court to their *Daubert* motion for a more detailed argument. *See* Record Document 414-2 at 17 n.51.

La. Sept. 20, 2021); Record Document 462 at 8–15. When viewing the evidence in a light most favorable to Plaintiffs, they have presented sufficient evidence to survive summary judgment as to their Eighth Amendment claims. Simply put, Defendants and their experts disagree with Plaintiffs. However, the Court may not make credibility determinations on summary judgment. The Court finds that the credibility of the experts and other witnesses can only be determined from live testimony at trial and after cross-examination. *See Lewis v. Cain*, No. 3:15-CV-318, 2018 WL 4356584, at *1 (M.D. La. Sept. 12, 2018). Further, a fuller record at the bench trial will allow the Court to make more accurate findings of fact and conclusions of law. *See id.* After carefully reviewing the extensive briefing and voluminous pages of exhibits submitted by the parties,[5] the Court finds that it would be inappropriate to determine these serious and complex issues as a matter of law at the summary judgment stage.

## II.   ADA & RA

Defendants have also moved for summary judgment on Plaintiffs' ADA and RA claims. Record Document 413. The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. It defines a person with a disability as a person who has "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A); 28 C.F.R. § 36.105. This includes individuals with historical, but not present, impairments and those who are regarded as having an impairment regardless of actual disability. 42 U.S.C. § 12102(1)(B)– (C). The RA states that "[n]o otherwise qualified individual with a disability . . . shall solely by

---

[5] Indeed, the Court has received about ten four-inch binders totaling about 4,500 pages regarding this motion.

reason of his disability . . . be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). It defines disability in the same way as the ADA. *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010). "The RA and the ADA are judged under the same legal standards, and the same remedies are available under both Acts." *Id.* (citations omitted).

To prevail on ADA claims, a plaintiff must prove "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011). The elements of a claim under the RA are the same, except that the entity in question must be one which receives federal financial assistance. *See Kemp*, 610 F.3d at 234. "In addition to their respective prohibitions of disability-based discrimination, both the ADA and the Rehabilitation Act impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020) (citations omitted). "For this type of claim, a plaintiff must show that the entity knew of the disability and its consequential limitations, either because the plaintiff requested an accommodation or because the nature of the limitation was open and obvious." *Id.* at 724. Particularly relevant to this case, the ADA also recognizes a "methods of administration" claim that prohibits public entities from using "criteria or methods of administration . . . [that] have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(3); *see Dunn v. Dunn*, 318 F.R.D. 652, 664 (M.D. Ala. 2016).

For the purposes of this motion, Defendants do not dispute that members of the subclass are qualified individuals with disabilities that substantially limit one or more major life activities and that DWCC is a public entity that receives federal funding. *See generally* Record Document 413-2.

Instead, Defendants challenge the sufficiency of Plaintiffs' pleadings and whether Plaintiffs can show that members of the subclass are being discriminated against because of their disability. *See id.* After reviewing the evidence and the parties' arguments, the Court finds that Plaintiffs properly pleaded their claims and that there is a genuine dispute of material fact that must be resolved at the bench trial.

### A. Plaintiffs' Claims

Plaintiffs' claims under the ADA and RA can be grouped into two broad categories. Plaintiffs contend that DWCC violates the ADA and RA by (1) failing to accommodate inmates with severe mental illness ("SMI") and (2) employing methods of administration that discriminate against inmates with SMI. The Court will address each category in turn.

### 1. Failure-to-Accommodate Claims

Plaintiffs argue that DWCC fails in its affirmative duty to accommodate inmates with known disabilities. Record Document 427 at 21.

> In addition to prohibiting discrimination, the ADA and the Rehabilitation Act . . . impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals. . . . To succeed on a failure-to-accommodate claim, a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations.

*Smith v. Harris Cnty.*, 956 F.3d 311, 317 (5th Cir. 2020) (internal quotations marks and citations omitted); *Pena Arita v. Cnty. of Starr, Texas*, No. 7:19-CV-00288, 2020 WL 5505929, at *7 (S.D. Tex. Sept. 11, 2020). "For this type of claim, a plaintiff must show that the entity knew of the disability and its consequential limitations, either because the plaintiff requested an accommodation or because the nature of the limitation was open and obvious." *Cadena*, 946 F.3d at 724.

Plaintiffs assert three specific claims: (1) where DWCC does identify an inmate with a disability, DWCC does not make any reasonable modifications or accommodations for inmates

with a diagnosed SMI; (2) DWCC fails to make any reasonable accommodations to the disciplinary or use of force practices as they are applied to inmates with mental illness; and (3) DWCC disregards recommendations from its own mental health staff that inmates with SMI be placed in general population instead of extended lockdown. Record Document 427 at 21, 25, 32, & 35.

      *i.  Whether DWCC makes any reasonable modifications or accommodations for inmates with mental illness*

According to Plaintiffs, inmates at DWCC with a diagnosed SMI are subjected to the same conditions as all other inmates on the South Compound. That DWCC does not limit the use of extended lockdown for these inmates or consider these inmates' mental health when placing them on extended lockdown, Plaintiffs allege, is a failure to make a reasonable accommodation as required by 28 C.F.R. § 35.130(b)(7). In support of this claim, Plaintiffs cite to documented cases of inmates with a diagnosed SMI allegedly being left in extended lockdown for indefinite periods of time without any modifications accounting for their mental illness. Record Document 427 at 25–29. Plaintiffs contend that the inmates on extended lockdown are deprived of important mental health services and counseling. They cite Dr. Haney's expert opinion that mentally ill prisoners are especially vulnerable to the conditions of extended lockdown because they are "generally more sensitive and reactive to psychological stressors and emotional pain." Record Document 418-12 at 32–33. Dr. Haney explains that, for this reason, many corrections officials have limited the use of solitary confinement for those with mental illness. *Id.* at 35–36.

Defendants counter that Plaintiffs' claims must fail because they have failed to allege that inmates are being discriminated against because of their disabilities. Record Document 413 at 16. Defendants note that Plaintiffs admit that all inmates in the South Compound are treated the same and do not allege that disabled inmates are treated differently because of their disability. *Id.* As the

Court found in the class certification ruling, this argument is not persuasive and seems to fundamentally misunderstand the claims of the subclass—it is DWCC's failure to treat inmates with mental illness in a way that accommodates the mental illness that Plaintiffs allege is discriminatory. *See also Yates v. Collier*, 868 F.3d 354, 366 (5th Cir. 2017) (finding no error in a district court certifying a class to pursue ADA claims based on the alleged failure to provide reasonable accommodations to inmates with disabilities that could make them more susceptible to heat than other inmates). In fact, "a person with a disability may be the victim of discrimination precisely because she did not receive disparate treatment when she needed accommodation." *Presta v. Peninsula Corridor Joint Powers Bd.*, 16 F. Supp. 2d 1134, 1136 (N.D. Cal. 1998) (citation omitted). "[T]he purpose of the ADA's reasonable accommodation requirement is to guard against the facade of 'equal treatment' when particular accommodations are necessary to level the playing field." *Badalamenti v. Louisiana Dep't of Wildlife & Fisheries*, 439 F. Supp. 3d 801, 808 (E.D. La. 2020) (quoting *McGary v. City of Portland*, 386 F.3d 1259, 1267 (9th Cir. 2004)).

DWCC's concession that it does not limit the use of extended lockdown for inmates with a diagnosed SMI or consider these inmates' mental health before placing them on extended lockdown for a prolonged period of time is enough to create a dispute of material fact as to whether Defendants violated the ADA and RA by leaving inmates with a diagnosed SMI on extended lockdown without accounting for their SMI, which has the effect of excluding them from various programs, activities, and services. Accordingly, summary judgment is not appropriate.

ii. *Whether DWCC makes any reasonable accommodations to the disciplinary or use of force practices as they are applied to inmates with mental illness*

Plaintiffs also contend that Defendants fail to make reasonable accommodations by subjecting inmates with a diagnosed SMI to discipline and excessive force without regard to its

impact on that inmate. First, Plaintiffs aver that the mental health staff at DWCC employs a completely hands-off approach regarding the discipline of inmates with a diagnosed SMI, which Plaintiffs allege violates the ADA and RA. Record Document 427 at 34; *see Lewis v. Cain*, No. 3:15-CV-318, 2021 WL 1219988, at *55–56 (M.D. La. Mar. 31, 2021) (finding a violation of the ADA and RA at Louisiana State Penitentiary when the ADA coordinator and mental health staff employed a completely hands-off approach to discipline). In support, Plaintiffs cite to the deposition testimony of DWCC's mental health clinician, Steve Hayden, who stated that he had never been consulted about the initial decision to place inmates with a diagnosed SMI on extended lockdown. Record Document 418-26 at 35–36. Further, Plaintiffs cite to the deposition of Colonel Lonnie Nail, the unit manager of the South Compound and chairman of the disciplinary board during the relevant period, who stated that he never consulted with mental health personnel before imposing discipline, which could include loss of yard and recreation, loss of telephone, and being placed on strip cell status for an extended period.[6] Record Document 418-22 at 156.

Additionally, Plaintiffs allege that DWCC violates the ADA and RA by failing to consider mental illness before using force or imposing discipline against inmates who pose no immediate threat to safety. Record Document 427 at 32. Plaintiffs cite evidence that when viewed in a light most favorable to them shows inmates with mental disabilities being subjected to chemical sprays and other punishments for engaging in conduct linked to mental illness. Record Document 418-13. For example, Plaintiffs aver that Noel Dean, an inmate with an alleged mental disability, was sprayed with a chemical agent for only yelling while he was in full restraints on suicide watch.

---

[6] Being placed on strip cell status involves being stripped of all belongings and being placed in a paper gown for as long as 30 days. Additionally, the inmate's mattress is taken away at 5:00 a.m. every morning and not returned until 9:00 p.m. that night. Record Documents 418-12 at 47; 418-22 at 172–76.

Record Document 427 at 32 (citing Record Document 418-13 at 39–51). According to Plaintiffs and their expert, Dr. Haney, other inmates have their property and bedding taken away after engaging in behavior linked to mental illness. Record Document 418-12 at 63. Another of Plaintiffs' experts, Dan Pacholke, provides further support for Plaintiffs' allegations. Pacholke opined that in the South Compound, "[p]risoners are punished . . . for relatively minor infractions, and at no time is the root cause of negative behaviors addressed." Record Document 418-25 at 25.  Pacholke further observed from watching body camera footage that the staff at DWCC makes no attempt to de-escalate a situation before deploying force against an inmate. *Id.* at 43.

Defendants counter that these allegations, if proven, could be actionable under the Eighth Amendment but not the ADA or RA. Record Document 430 at 14. According to Defendants, the duty to provide accommodations does not apply to the discipline of disabled inmates. *Id.* However, the Court finds that to be a misstatement of the law. In the Court's view, "[a] failure to provide a reasonable accommodation can occur where a correctional officer could have used less force or no force during the performance of his or her penological duties with respect to a disabled person." *Lewis*, 2021 WL 1219988, at *56 (quoting *Armstrong v. Newsom*, No. 94-CV-02307 CW, 2021 WL 933106, at *25 (N.D. Cal. Mar. 11, 2021)). Additionally, a "lack of medical oversight in disciplinary decisions for disabled inmates" could support a failure-to-accommodate claim under the ADA and RA. *Id.*

In rebuttal, Defendants cite to *Hainze v. Richards*, a case in which the United States Fifth Circuit Court of Appeals held that the ADA and RA did not apply "to an officer's *on-the-street* responses to reported disturbances." 207 F.3d 795, 801 (5th Cir. 2000) (emphasis added). However, Defendants' reliance on *Hainze* is misplaced. The Fifth Circuit in *Hainze* made clear that its holding was limited to the time period before the officer secured the scene and ensured there was no threat

to human life. *Id.* at 802. The Fifth Circuit acknowledged that once the scene was secure, the officers "would have been under a duty to reasonably accommodate [the suspect's] disability in handling and transporting him to a mental health facility." *Id.* By contrast, the instant case does not involve an officer's "on-the-street" response; it involves inmates already in custody where Defendants have an affirmative duty to provide reasonable accommodations to disabled inmates. Simply put, *Hainze* in no way undermines the law as stated by the district court in *Lewis*.

Based on the Court's above resolution of the legal dispute and the evidence presented by Plaintiffs, the Court finds there to be a dispute of material fact that must be resolved at the bench trial. Summary judgment is thus not warranted.

> iii. *Whether DWCC disregards recommendations from its own mental health staff that inmates with mental illness be placed in general population instead of extended lockdown*

Plaintiffs allege that inmates "who Defendants subjectively know to have mental illness disabilities are placed in restrictive housing upon arrival at DWCC for prolonged periods of time, even where counter-indicated by the [inmate's] mental health intake assessment." Record Document 427 at 35. In viewing the evidence in a light most favorable to Plaintiffs, they present multiple instances of DWCC officials disregarding recommendations from its own mental health staff that individuals with SMI be placed in general population instead of extended lockdown. Record Documents 427 at 36; 418-27 at 1–6. Plaintiffs contend that inmates are placed in extended lockdown sometimes simply because there are not enough beds in general population. Record Documents 427 at 19; 418-14 at 60.

Defendants counter that Plaintiffs are re-asserting their Eighth Amendment claims and that the deliberate indifference standard is the appropriate legal standard to evaluate this claim.

Although the ADA and RA do not provide remedies for inadequate treatment for a disability in the prison context, they do provide remedies for "unjustified segregation." *Lewis*, 2021 WL 1219988, at *48. "[P]ublic entities are required to make reasonable modifications in policies, practices, or procedures in order to avoid the discrimination inherent in the unjustified segregation of the disabled." *Fisher v. Oklahoma Health Care Auth.*, 335 F.3d 1175, 1181 (10th Cir. 2003) (internal quotation marks & citation omitted).

At this time, the Court declines to prohibit Plaintiffs from presenting their argument at trial. It is possible that Plaintiffs are merely re-packaging their Eighth Amendment claims and that Plaintiffs have not stated a claim under the ADA or RA in this regard. However, Plaintiffs have produced sufficient evidence and argument to present this claim at trial. At the bench trial, the Court will have the benefit of a fuller record and be able to make more accurate findings of fact and conclusions of law to resolve this issue. Accordingly, summary judgment is denied as to this claim.

## 2. Methods-of-Administration Claims

Plaintiffs further assert that Defendants violate the ADA and RA by utilizing methods of administration that have the effect of discriminating against disabled inmates. Record Document 427 at 22.

> A public entity may not . . . utilize criteria or methods of administration . . . [t]hat have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability . . . [or] [t]hat have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities.

28 C.F.R. § 35.130(b)(3)(i) & (ii). "In other words, a public entity cannot actively undercut the ability of a public program to benefit those with disabilities." *Van Velzor v. City of Burleson*, 43 F. Supp. 3d 746, 752 (N.D. Tex. 2014). "[A]n omission as well as a commission can be an actionable method of administration." *Dunn*, 318 F.R.D. at 665. "The methods-of-administration regulation

makes clear that a know-nothing, do-nothing policy of non-administration is a privately actionable violation of the ADA, at least when plaintiffs can show that it has the effect of discriminating." *Id.* at 665 n.12.

Plaintiffs allege two specific violations: (1) that DWCC fails to individually identify inmates with disabilities and (2) that DWCC has an inadequate system for processing requests for reasonable accommodations and fails to track such requests.

### i. Whether Defendants individually identify inmates with mental disabilities

An unlawful method of administration can occur when a public entity "employ[s] no system or an inadequate system for identifying and tracking prisoners with disabilities." *Dunn*, 318 F.R.D. at 665. Plaintiffs argue that DWCC fails in this regard by using an under-inclusive definition of disability and by removing inmates from the categorization of having a mental illness when that inmate stabilizes—i.e., enters a period of remission. Record Document 427 at 22.

First, Plaintiffs contend that DWCC uses an under-inclusive definition of disability. According to Plaintiffs, DWCC's definition of SMI is based only on diagnosis rather than functional impairment. Record Documents 418-15 at 115–120; 418-16 at 252. One of Plaintiffs' experts, Dr. Kathryn Burns, opined that DWCC's definition of mental illness only includes six enumerated conditions: major depressive disorder, schizophrenia, schizoaffective disorder, bipolar disorder, unspecified schizophrenia spectrum, and severe anxiety disorder. 418-15 at 118–20. Dr. Burns stated that by limiting the definition of SMI to the above categories, DWCC's definition violates the standard set forth by the American Correctional Association because it entirely misses inmates with SMI by way of functional impairment—i.e., an impairment that "negatively impacts a person's behavior, their cognition, their ability to function at certain periods of time" but falls outside the enumerated categories of diagnosed mental illness. *Id.* at 115–20.

Next, Plaintiffs aver that even inmates at DWCC with a recorded SMI based on the under-inclusive definition lose their SMI designation if they are in a period of remission. Record Document 427 at 23–24. Plaintiffs argue that this policy violates the ADA because "[t]he determination of whether an impairment substantially limits a major life activity [must] be made without regard to the ameliorative effects of mitigating measures such as medication." 42 U.S.C. § 12102(4)(E)(i)(I); *Kemp v. Holder*, 610 F.3d 231, 236 (5th Cir. 2010). In support, Plaintiffs cite to the example of Bruce Charles, an inmate diagnosed with bipolar disorder, who lost his SMI designation because he was in a period of remission. Record Document 418-17. Plaintiffs' expert, Dr. Burns, opined that an inmate with an SMI such as bipolar disorder should still be tracked as having an SMI even while the SMI is controlled by medication and not be placed in extended lockdown even while in remission. Record Document 418-15 at 90–93.

In rebuttal, Defendants offer no argument aside from disagreement over disputed facts. For example, Defendants contend that they properly identify inmates with SMI and keep track of their mental illness. Record Document 430 at 8. However, Defendants reach this conclusion by assuming that their internal policies appropriately identify inmates with SMI, which is a fact strongly disputed by Plaintiffs and their expert, Dr. Burns. Summary judgment is not the appropriate setting for the Court to resolve these factual disputes or decide the adequacies of DWCC's policies and procedures. Summary judgment is thus denied as to this claim.

### ii.   Whether Defendants provide a process for requesting reasonable accommodations

Under the ADA, "employing no system or an inadequate system for prisoners to request accommodations and submit grievances regarding non-accommodation" can be an unlawful method of administration if it has the effect of discriminating against inmates with disabilities. *Dunn*, 318 F.R.D. at 665; *see Lewis*, 2021 WL 1219988, at *48–50, 52; *Armstrong v. Brown*, 857

F. Supp. 2d 919, 933 (N.D. Cal. 2012) (finding a violation of the ADA if the county jail lacked "functional and timely grievance procedures . . . to request and obtain disability accommodations"). Here, Plaintiffs contend that DWCC's failure to process and track requests for reasonable accommodations related to mental illness is part of DWCC's systemic failure to comply with the ADA and RA. Record Document 427 at 29. Defendants, however, dispute Plaintiffs' assertions and counter that they do have a system of tracking and processing requests for reasonable accommodations. Record Document 430 at 11–14.

The parties cite to competing evidence in support of their respective positions. For example, Defendants argue that the evidence shows that requests for accommodations are responded to by DWCC staff either formally or informally and that they track requests in a database as well as in a physical file. *Id.* Plaintiffs counter with evidence that tends to show that DWCC's staff is unaware of the process for requesting reasonable accommodations and that the tracking system is non-existent or inadequate. More specifically, Plaintiffs cite a request for admission where Defendants denied having received any requests for accommodations related to mental illness in the last five years. Record Documents 427 at 29; 418-19 at 38. Additionally, they cite to the deposition testimony of DWCC officials who were unaware of the process for requesting reasonable accommodations. Record Documents 418-22 at 142; 418-23 at 92. Also, Assistant Warden Angie Huff, the ADA Coordinator for much of the relevant period, stated that she required inmates to title requests as an "ADA complaint" or specifically state that they were making an accommodation request for them to be considered as such. Record Document 418-20 at 42–43.

After reviewing the evidence, it is apparent that much is in dispute regarding whether there is a systemic failure in DWCC's processing and tracking of requests for reasonable accommodations, which could have the effect of discriminating against inmates with mental

disabilities. At the summary judgment stage, the Court must resolve all disputes in favor of the non-moving party, unless otherwise provided for by law. *Anderson*, 477 U.S. at 255. Additionally, the Court must reserve all credibility determinations for the bench trial. *Id.* Based on the summary judgment record, Plaintiffs have produced evidence that when viewed in a light most favorable to them shows a deficiency in DWCC's processing and tracking of accommodation requests. For these reasons, summary judgment is not appropriate.

### B.  Plaintiffs' Complaint Satisfies the Pleading Standard

Defendants' motion reads in part as a motion to dismiss because they attack the sufficiency of Plaintiffs' pleadings. *See* Record Document 413-2. The Court first notes that this motion comes after extensive discovery has taken place in this matter, including the exchange of numerous expert reports, so Defendants have been on fair notice as to the claims Plaintiffs assert. Defendants offer no response as to why an attack on the pleadings should considered this late in the game. The Court does not believe a response to such an attack is necessary and believes it more appropriate to construe the motion as one for summary judgment. However, out of an abundance of caution, the Court will briefly address Plaintiffs' pleadings.

A complaint must contain sufficient factual statements, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To have facial plausibility, a plaintiff must plead factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Conclusory statements of law are not sufficient to survive dismissal. *Id.* at 679. The purpose of the complaint is to provide defendants "fair notice of what the . . . claims [are] and the grounds upon which [they] rest[]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted).

After reviewing the complaint, Plaintiffs have met that standard. First, Plaintiffs' complaint is not conclusory. Just like most complaints, it contains general statements of the law followed by more specific allegations that expound upon the more general statements. Plaintiffs' complaint details the stories of several inmates with an ADA-defined disability not being provided accommodations for their mental disabilities and being excluded from programs such as group counseling and therapy. Record Document 316 ¶s 124–209. Additionally, the stories depict DWCC staff responding to behavior linked to mental illness as a "disciplinary matter rather than a mental health symptom." *Id.* ¶ 81. In sum, Plaintiffs' complaint has put Defendants on notice as to the factual basis for their ADA and RA claims, and accepting those facts as true, Plaintiffs' allegations state a claim for relief. Accordingly, Defendants' motion must be denied.

## CONCLUSION

For the reasons above, Defendants' motions for summary judgment [Record Documents 413 & 414] are **DENIED**.

**THUS DONE AND SIGNED** this 6th day of January, 2022.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE