**MINUTES [2:05]**
**January 11, 2023**

**ELIZABETH E. FOOTE**
**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| ANTHONY TELLIS, ET AL. | CIVIL ACTION NO. 18-541 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| JAMES M. LEBLANC, ET AL. | MAGISTRATE JUDGE HORNSBY |

On January 11, 2023, the Court convened a pretrial conference in the above-captioned matter. Melanie Bray and Dalton Courson participated on behalf of Plaintiffs. Ms. Bray also indicated that her legal assistant was present in the room. Connell Archey, Keith Fernandez, Randal Robert, and Madaline Rabalais participated on behalf of Defendants. Chloe Moreno is the law clerk in this matter, and any further questions about the minutes should be directed at her.

Defendants recently filed a motion to enroll three additional attorneys in this case. [Record Document 663]. The Magistrate Judge signed Defendants' proposed order, which only sought to enroll two of the three attorneys as counsel in the case. Defendants informed the Court that they would take the steps necessary to enroll the third attorney. The parties were also reminded that they must provide the Court with the names of all individuals in the room with counsel—not just those participating within the camera's view—at the beginning of each day of trial. Should any individuals join or leave the room, those updates must also be shared with the Court. Additionally, because the trial is not taking place in open court, the Court instructed the parties that all witnesses must testify in a room by themselves.[1] Should a witness be unable to testify from a private room, counsel are

---

[1] During the liability phase of trial, it was discovered that a witness was testifying with his employer in the same room. This directive is to prevent such incidents from occurring.

instructed to raise the issue with the Court. Plaintiffs were also instructed to take the necessary steps to terminate attorneys that are no longer participating in the case.

The bench trial is scheduled to begin on January 17, 2022. There are sixteen days allotted to this trial. The parties indicated that this should be enough time. Trial will begin at 9:00 a.m., each morning with a lunch break of up to one-hour each day. The Court will not be allocating time. Trial will recess at 3:45 p.m., on Friday, January 20, 2023. Additionally, the Court may use Friday, January 27, 2023, as a day off depending on the parties' preferences and trial's progression.

Defendants are instructed to confirm which of Plaintiffs' inmate witnesses, if any, are still in the custody of DWCC by **5:00 p.m. on January 12, 2023**. Should any of those witnesses be housed at DWCC, Defendants are instructed to inform Plaintiffs of the arrangements that will be made for them to testify. Plaintiffs are instructed to provide Defendants a general order of witnesses for their entire case in chief by **12:00 p.m., on January 13, 2023**. Defendants are also instructed to ensure that staff will be available to testify. Should an issue arise in carrying out these directives, counsel are instructed to promptly raise the issue. Counsel will exchange the order of witnesses for the first day of trial by **6:00 p.m. on January 16, 2023**, and within one hour of the Court adjourning everyday thereafter. A copy of the witness order shall be provided to the courtroom deputy at the same time. The parties must submit a glossary of all names and unusual terms to the court reporter by **6:00 p.m., on January 16, 2023.**

At trial, the parties will be able to share their screens to publish an exhibit. Defendants proposed that Plaintiffs use the letter "R" when introducing or speaking about exhibits to distinguish the remedy phase exhibits from the ones used in the liability phase. For example, Plaintiffs would refer to their exhibit as PR-A-1. Plaintiffs did not object to this suggestion. The Court will also be

careful to use the "PR" designation to maintain clarity in the record.[2] Parties will have a reasonable time after completion of trial to file all exhibits introduced into evidence on CD-ROMs for the Court of Appeals. The Court ordered the parties to file stipulations into the record **by 5:00 p.m., on January 12, 2023**. The Plaintiffs informed the Court that the P-BB depositions (located on page eighty-nine of the pretrial order) are incorrectly labeled as as "P-CC." Plaintiffs also shared that Michelle Norris's deposition (P-BB-5) is included in Plaintiffs' exhibit books but was not listed in the pretrial order. Finally, the Court reminded counsel to not send its materials in the large, very thick binders (five inches thick or greater).

**Motions *in Limine***

The Court ruled on four pending Motions *in Limine*. Record Document 645, 646, 654, and 656. The motions are fully briefed and ripe. For the reasons below, the Court **DENIED as pled** the motion considering the admission of evidence of current conditions [Record Document 645], **GRANTED IN PART** and **DENIED IN PART** the motion regarding the burden of proof [Record Document 646], **DENIED** the motion to limit evidence [Record Document 656], and **GRANTED** the motion to limit questioning on prior convictions and potential criminal acts [Record Document 654].

> I.      *Admission of Evidence of Current Conditions [Record Document 645]*

Defendants' filed a motion in limine to admit evidence of current conditions [Record Document 645]. Defendants listed seven "significant new developments" that they purport have been made at DWCC since October 2022. *Id.* at 3. Defendants also provided excerpts from two opinions in similar cases where evidence of current conditions were admitted. *See* Record

---

[2] For the purposes of these minutes, the Court will continue to use exhibit labels consistent with the pretrial order; however, the Court will use Plaintiffs' designations as offered or introduced moving forward.

Documents 645-1, 645-2. Defendants further argued that allowing such information would not be unfairly prejudicial to the Plaintiffs because they "have been timely provided the information and materials regarding these updates, and there is still plenty of time to make any necessary, albeit minor, adjustments in trial preparation." Record Document 645 at 4. In their response, Plaintiffs stated that the purported changes since October 2022 had previously been disclosed as a change that had taken place between June 30, 2022, and August 30, 2022. Record Document 650 at 3-6. Plaintiffs provided evidence of that disclosure along with their response. *See* Record Document 650-1.

At its core, the Court views this issue as one that questions how "current conditions" should be defined. In other words, the Court is already allowing Defendants to admit evidence of current conditions, and it previously defined "current conditions" as conditions at DWCC as of August 30, 2022.[3] Defendants simply disagree with how the Court has defined "current conditions." As this Court articulated prior to the liability phase, when this issue was first raised, *Brown v. Plata* gives district courts discretion to set discovery deadlines. 563 U.S. 493, 523 (2011). Defendants' October 3, 2022, disclosure further demonstrated that there is no present need for the Court to reconsider the way it defined "current conditions" because the changes Defendants purportedly made after October 2022 were identified as changes made before August 30, 2022. *See* Record Document 650-1. Defendants' motion in limine is **DENIED as pled**. The Court will allow evidence of current conditions at DWCC as of August 30, 2022, absent good cause shown.

II.    *Burden of Proof [Record Document 646]*

Defendants' filed a motion in limine regarding the burden of proof at the remedy hearing. [Record Document 646]. Specifically, Defendants "ask the Court to confirm that Plaintiffs continue

---

[3] When the Court continued the trial to January 17, 2023, it also continued the date for "current conditions" to August 30, 2023.

to bear the burden of proof at the remedy hearing." *Id.* at 1. They argue that Supreme Court precedent *(Farmer v. Brennan*, 511 U.S. 825, 845-46 (1994)) and *Valentine v. Collier*, 993 F.3d 270, 282 (5th Cir. 2021) require the inmate demonstrate that the constitutional violations are ongoing and are likely to persist in the future. *Id.* at ¶¶ 3, 4.

As previously indicated, the Court will consider current conditions in the prison as of August 30, 2022, in deciding what—if any—injunctive relief is necessary. The question before the Court is who—which party—has the burden of proving that the harm presently exists and is likely to exist in the future. This is a different question as to whether the Court will consider "current conditions". *Farmer*—a simpler situation—was not bifurcated and involved a specific harm to one individual. The jurisprudence provides no guidance as to who has this burden when there is a bifurcated trial where the Court has already found constitutional and ADA/RA violations.

The Court views the liability phase as capturing a snapshot in time during which constitutional and ADA/RA violations were found. The Court did not find just a single instance of a harm to a single petitioner, but instead, it found systemic deficiencies in the policies and procedures that effect a class (and subclass) of individuals housed at DWCC during that snapshot. That harm is still present unless Defendants have instituted new policies and procedures as a remedy.

The Court will adopt a burden similar to that recently adopted by Judge Dick in *Lewis v. Cain, No. 3:15-CV-318* (*see* Record Document 646-1), but with more detailed guidance. *Farmer* envisions that Defendants be given an opportunity to provide remedies for the violations. Specifically, *Farmer* states: "in demonstrating that harm is likely to continue and persist in the future, the inmate may rely, in the district court's discretion, on developments that postdate the pleadings and pretrial motions, as the defendants may rely on such developments to establish that the inmate is not entitled to an injunction." 511 U.S. at 846. Defendants shall have the burden to show that the

deficiencies in DWCC's policies and procedures have been remedied since that snapshot in time. But as the above quote also demonstrates, the Plaintiff must also show that Defendants' remedies are insufficient or deficient and that the constitutional and statutory violations are current and likely to persist in the future. Inherent in this burden is that the Plaintiff must also prove the nature and extent of that injunctive relief and that the relief sought is narrowly tailored to eliminate the existing harms.

Lastly, the Court saw no reason to alter the order of trial. Plaintiffs, having the ultimate burden, will have the right of rebuttal; however, the Court cautioned that the Plaintiffs should not wait for rebuttal to introduce evidence of current deficiencies, especially because this is a bench trial, and the Court is able to weigh the evidence as required. Accordingly, Defendants' motion regarding the burden of proof is **GRANTED IN PART, DENIED IN PART**.

III.     *Limit Evidence [Record Document 656]*

This is Defendants' motion in limine seeking to limit Plaintiffs' evidence to the information contained in its 30(b)(6) deposition and its experts. [Record Document 656]. The Court ruled on the two separate issues contained in this motion. First, Defendants list seventy-six things that they ask the Court to preclude because they were not addressed in either the 30(b)(6) deposition or in Plaintiff's expert reports. Record Document 656 at 14-22. Plaintiffs are three parties: 1) the class of individuals housed in segregated housing at DWCC; 2) the subclass of those individuals that have a qualifying mental health condition under that ADA; and 3) DRLA. DRLA's statements during a 30(b)(6) deposition cannot be binding on the class. In other words, the 30(b)(6) deposition is not a judicial admission. Accordingly, the Court **DENIED** the limitation of evidence and Defendants' request for seventy-six preclusions.

Defendants further asked the Court to strike four witnesses that they purport were not timely identified. *Id.* at 22. Defendants argue that the first time they were ever notified of Plaintiff's intent to call the offender witnesses was on December 14, 2022, and that they have not had an opportunity to depose these individuals. *Id.* at 22, 24. In their response, Plaintiffs argue that the identification of these witnesses was timely and in accordance with the scheduling order. Record Document 661 at 2. Plaintiffs clarified that the witnesses will be testifying regarding the changes on the tiers listed by the Defendants as conditions which changed between June 30, 2022, and August 30, 2022, as listed by the Defendants in their October 3, 2022, disclosure to the Plaintiffs. This includes information such as how the new fans are being utilized or any changes that have occurred because of staffing changes. The Court notes that the Plaintiffs were not late in disclosing the witnesses according to the scheduling order, but instead, late in that the disclosure was very close to trial. The Court adheres to the scheduling order it signed. Accordingly, Defendants' request to strike the four inmate witnesses was **DENIED**, subject to one caveat. The Court will limit their testimony to these newly disclosed changes. Plaintiffs are instructed to provide the Court and Defendants a brief summary regarding the topic(s) about which the inmates will testify by **5:00 p.m. on Monday, January 16, 2023.**

IV.     *Limit Questioning on Prior Convictions and Potential Criminal Acts [Record Document 654]*

Plaintiffs filed its motion in limine to limit questions regarding prior convictions and potential criminal acts. [Record Document 654]. The Court previously ruled on two motions in limine that addressed similar issues before the liability phase trial. *See* Record Document 506 at 5-6. In their response, Defendants did not necessarily oppose Plaintiffs' motion except to raise an objection that during the liability phase trial, Plaintiffs tended to bolster the character of its inmate witnesses. The Court **GRANTED** Plaintiffs' motion and ordered that should Defendants wish to

discuss any disciplinary measures that occurred, they will need to establish independent relevance and approach the bench before addressing it on the stand. Defendants will maintain the right to reurge the issue of Plaintiffs' purported bolstering of a witness's character on the stand because it is an issue that the Court cannot address outside the context of trial.

**Defendants' Objection to Remedy Proposal**

Defendants objected to Plaintiffs' proposed remedy outlined in the pretrial order on five different bases:

> 1) the proposal was not disclosed during either fact or expert discovery; 2) the proposal is premature; 3) the proposal is not based on any specific recommendations made by any expert in this case (and, in fact, goes far beyond the documented opinions of Plaintiffs' experts); 4) the proposal is not narrowly drawn and does not consider the least intrusive means to correct any purported violation; and 5) the proposal does not give substantial weight to any adverse impact or public safety or the operation of the criminal justice system caused by the proposed relief.

Record Document 659 at 68. The Court found this to be a frivolous and unnecessary objection. Plaintiffs proposed remedy is argument only. The Court will not be making its decision as to the remedy of the constitutional and ADA/RA violations based off the proposal in the pretrial order itself. Instead, the Court is going to make its determination based on the evidence presented at trial. Accordingly, the Court **OVERRULED** Defendants' objection to Plaintiffs' remedy proposals.

**Plaintiffs' Objection to 30(b)(6) Deposition**

Plaintiffs objected to the introduction of the 30(b)(6) deposition on six grounds.[4] The Court recognized that the Federal Rules of Evidence allow a 30(b)(6) deposition to be admitted without needing to show the unavailability of the witness. However, the Defendants did not follow the Court's parameters for admitting this 236-page deposition into evidence, which requires the parties to edit the deposition to the portions it wishes to submit for consideration. Thus, the Court

---

[4] Plaintiffs provided further briefing on the issue. *See* Record Document 666.

**OVERRULED** Plaintiffs' objection to the introduction of the 30(b)(6) deposition with stipulations. First, the deposition will not limit the scope of Plaintiffs' trial testimony, in accordance with its ruling on Defendants' motion in limine to limit evidence [Record Document 656] (see above). Additionally, Defendants will need to edit the deposition and outline the areas it wishes to submit to the Court by **5:00 p.m. on January 12, 2023.** Plaintiffs will have until the opening of Defendants' case in chief to reurge its objections; however, the Court cautioned Plaintiffs that they should not waste time objecting to the document as a judicial admission, as the Court has already ruled that it is not one.

**Plaintiffs' Objection to Witnesses**

Plaintiffs also objected to two witnesses. Plaintiffs raised an objection pertaining to Dr. Gregory Seal. Dr. Seal is on the Defendants' "Will Call" list and is described as a "fact witness and expert by way of training in the field of psychiatry." Record Document 660 at 7. Plaintiffs object to Dr. Seal "being considered an expert witness because he has not submitted a written report nor has there been a written disclosure pursuant to Fed. R. Civ. Proc. 26(a)(2)(C)." The Court **SUSTAINED** Plaintiffs' objection, as it did during the liability phase of trial. The Court will limit Dr. Seal's expert testimony as to the treatment of the patients he saw.

Plaintiffs also raised an objection pertaining to Shawn Shelton. Shelton is on the Defendants' "May Call list" and he would potentially testify regarding the current conditions at DWCC, though Defendants admitted they have not had the opportunity to meet with him. Plaintiffs objected to the extent that their witnesses were stricken because of the Court's ruling as to Defendants' motion in limine to exclude evidence [Record Document 656]. The Court **OVERRULED** Plaintiffs' objection to Shelton; to be clear, however, none of the late identified witnesses will be allowed to testify regarding anything other than current conditions, as communicated to the Plaintiffs' in Defendants'

October 3, 2022, disclosure as to changes made at DWCC between June 30, 2022, and August 30, 2022. Defendants are instructed to provide the Court and Plaintiffs a brief summary regarding the topic(s) about which Shelton will testify by **5:00 p.m. on Monday, January 16, 2023.**

**Defendants' Objection to Answers to Interrogatories**

Defendants launched a series of generalized objections to the introduction of answers to interrogatories into the record. *See* Record Document 659 at 78. Citing FRCP 26, one of the bases for Defendants' objections was that supplemental answers on topics had been provided but were not included in the answers to interrogatories. Defendant explained that, for example, sometimes Defendants provided a supplemental answer that covered multiple areas. The Court agreed that Plaintiffs cannot introduce an answer to an interrogatory into evidence without also providing the supplemental answers. The Court **OVERRULED** Defendants' general objections but laid out additional requirements for the parties. By **5:00 p.m. on January 13, 2023**, the Defendants are instructed to provide to the Court and to Plaintiffs any supplemental answers to the interrogatories which Plaintiffs seek to offer. Defendants are ordered to raise any specific objections by that time as well. Plaintiffs will have the opportunity to object to the materials provided before the answers to the interrogatories are entered into the record.

**Objections to Exhibits**

The Court made general observations as to the nature of the objections to exhibits. First, the Court interprets Defendants' repeated use of the word "cumulative" to mean "voluminous." The Court reminded Plaintiffs that "document dumping" on the Court will not be allowed, and evidence must be introduced through a witness who can testify to the relevance of each document. In other words, the Court has discretion to determine whether a party has laid an adequate foundation to introduce voluminous evidence. Generally, the Court will allow voluminous evidence if it illustrates

a particular point that that the Court can gather from a cursory review of the evidence,[5] as opposed to evidence that requires an in-depth review of each document.

There were also repeated instances where "Defendants object to the extent the Plaintiffs will seek to admit prisoner records for prisoners who are not listed as witnesses in this matter." *See e.g.,* Record Document 659 at 82. The Court will not require each inmate to testify regarding each record. This is a class action lawsuit and not about a single action taken against a single inmate. The purpose and relevance of this evidence speaks to the effectiveness of the policies and procedures at DWCC. Inmates will be limited to testifying about the current conditions at DWCC, which as previously mentioned, this Court is defining as the conditions at DWCC of August 30, 2022.

The Court cautioned Defendants against copy and paste objections to the Court without having or providing sufficient information to do so. In many instances, Defendants objected to an exhibit that was a summary of many documents due to purported errors, and yet, were unable to articulate what errors they found. The copy and paste objections show a lack of respect to both opposing counsel and the Court's time. The Court addressed each objection in turn.

    I.    *Defendants' Objections*

        a.  P-B: "Individual Records"

This was a copy and paste objection. Defendants objected "to the extent the Plaintiffs will seek to admit prisoner records for prisoners who are not listed as witnesses in this matter" and because it is voluminous. *Id.* Upon review, the Court held that it would not be requiring each inmate record to be introduced through inmate testimony. Defendants' objection to the individual records

---

[5] For example, during the liability phase, the Court allowed voluminous evidence that the Defendants routinely duplicated the requisite documentation for periodic evaluations.

is **OVERRULED** subject to the Court's requirements for voluminous records. Defendants have the right to reurge as to relevance at trial.

        b.   P-C: "Unusual Occurrence Reports"

This was a copy and paste objection. Defendants objected "to the extent the Plaintiffs will seek to admit prisoner records for prisoners who are not listed as witnesses in this matter" and because it is voluminous. *Id.* Upon review, the Court held that it would not be requiring each inmate record to be introduced through inmate testimony. Defendants' objection to the unusual occurrence reports is **OVERRULED** subject to the Court's requirements for voluminous records. Defendants have the right to reurge as to relevance at trial.

        c.   P-D: "Videos"

This was a copy and paste objection. Defendants objected "to the extent the Plaintiffs will seek to admit prisoner records for prisoners who are not listed as witnesses in this matter" and because it is voluminous. *Id.* at 84. Upon review, the Court held that it would not be requiring each inmate record to be introduced through inmate testimony. Defendants' objection to the videos is **OVERRULED** subject to the Court's requirements for voluminous records. Defendants have the right to reurge as to relevance at trial. Plaintiffs are instructed to print the pictures housed in these exhibits in color and provide them to the Court by **5:00 p.m. on January 12, 2023.**

        d.   P-E-28: "Summary of C-05" Reports and P-E-29: "Summary of ARP Information from C-05 Reports"

This was a copy and paste objection. Defendants objected to these exhibits "on the grounds that Defendants have not had an opportunity to review them in detail. Defendants note that they found errors in some of the summaries from their initial review," relevance, and compliance with "FRE 1006 and Fifth Circuit precedent." *Id*. Plaintiffs prepared these summaries. When asked to provide additional context, Defendants responded that they had not identified any errors with these

summaries. The Court **OVERRULED** this objection. Defendants have the right to reurge as to relevance at trial.

e.   P-G-1: "Summary of Classification Review Boards"

This was a copy and paste objection. Defendants objected to these exhibits "on the grounds that Defendants have not had an opportunity to review them in detail. Defendants note that they found errors in some of the summaries from their initial review," relevance, and compliance with "FRE 1006 and Fifth Circuit precedent." *Id.* Plaintiffs created this summary. When asked to provide additional context, Defendants responded that they had identified "eight to ten errors" that resulted in an additional two-hundred pages being included in these exhibits, and they simply did not have enough time to review the additional documents because they were received in the past few weeks and were voluminous in nature. The Court informed Defendants that the appropriate procedure would have been to petition the Court for additional time. The Court **OVERRULED** this objection. Defendants will have until **8:00 a.m., on January 17, 2023**, to raise any specific objections to these corrections.

f.   P-G-2: "Classification Review Boards"

This was a copy and paste objection. This exhibit is the underlying data comprising the summary creating in P-G-1. Defendants objected "to the extent the Plaintiffs will seek to admit prisoner records for prisoners who are not listed as witnesses in this matter" and because it is voluminous. *Id.* at 85. Upon review, the Court held that it would not be requiring each inmate record to be introduced through inmate testimony. The Court noted that, had the Plaintiff not offered the underlying data, Defendants would have objected to the summary's admission because of the incompleteness of the exhibit. Defendants' objection to the classification review boards is

**OVERRULED** subject to the Court's requirements for voluminous records. Defendants have the right to reurge as to relevance at trial.

g.   P-J-1: "Summary of Mental Health Client List Face Sheets"

Defendants objected to this exhibit "on the grounds that Defendants have not had an opportunity to review them in detail. Defendants note that they found errors in the initial review of some of the summaries prepared by plaintiffs. Defendants further object on the grounds that the summary is missing critical information and is misleading." *Id.* Defendants also "require" compliance with "FRE 1006 and Fifth Circuit precedent." *Id.* Defendants clarified that, while there actually were no errors with this exhibit, the exhibits were missing dates. Plaintiffs stated that the issue of the missing date on each face sheet is an issue they were hoping to explore at trial through testimony. The Court **OVERRULED** this objection. Defendants have the right to reurge as to relevance at trial.

h.   P-J-2: "Mental Health Client List Face Sheets"

This was a copy and paste objection. This exhibit is the underlying data comprising the summary creating in P-J-1. Defendants objected "to the extent the Plaintiffs will seek to admit prisoner records for prisoners who are not listed as witnesses in this matter" and because it is voluminous. *Id.* at 85. Upon review, the Court held that it would not be requiring each inmate record to be introduced through inmate testimony. Defendants' objection to the mental health client list face sheets is **OVERRULED** subject to the Court's requirements for voluminous records. Defendants have the right to reurge as to relevance at trial.

i.   P-M-1: "Administrative Remedy Reports"

Defendants objected to all exhibits in P-M-1 as containing inadmissible hearsay, arguing that they "contain statements out of court and cannot be offered by a non-opposing party. *See* FRE 801.

Page **14** of **19**

Defendants also further object to the introduction of any ARPs related to offenders who are not listed as witnesses as their statements cannot be challenged through cross-examination. These records are voluminous and cumulative." *Id.* at 86. Plaintiffs argued that the ARPs are being offered to prove notice, and not for the truth of the matter asserted. The Court **OVERRULED** Defendants' objection to the administrative remedy reports being inadmissible hearsay. Additionally, the Court is not requiring each inmate record to be introduced through inmate testimony. Defendants have the right to reurge if the exhibits are offered for any other purpose.

j.   P-P-1: "Mental Health Restrictive Housing Appraisal Forms"

This was a copy and paste objection. Defendants objected "to the extent the Plaintiffs will seek to admit prisoner records for prisoners who are not listed as witnesses in this matter" and because it is voluminous. *Id.* at 87. Upon review of this new form, the Court held that it would not be requiring each inmate record to be introduced through inmate testimony. Defendants' objection to the mental health restrictive housing appraisal forms is **OVERRULED** subject to the Court's requirements for voluminous records. Defendants have the right to reurge as to relevance at trial.

k.   P-R-1: "Investigations Documents"

Defendants object "to the extent the Plaintiffs will seek to admit irrelevant records of alleged staff misconduct unrelated to the issues in the case," the exhibit is voluminous, and "depending on the usage, these items may also be objectionable under FRE 404 and 405." *Id.* Defendants explained their concern that these exhibits would be used to introduce evidence of other bad acts committed by DWCC staff members. Plaintiffs stated that the purpose was to highlight processes and procedures surrounding prisoner misconduct. Defendants' objection to investigations documents was **OVERRULED** based on Ms. Bray's representations regarding their purpose. Defendants have the right to reurge if the documents are offered for some other purpose.

l.   P-S-1: "Interview with Segregated Inmate Forms"

This was a copy and paste objection. Defendants objected "to the extent the Plaintiffs will seek to admit prisoner records for prisoners who are not listed as witnesses in this matter" and because it is voluminous. *Id*. Upon review, the Court held that it would not be requiring each inmate record to be introduced through inmate testimony. Defendants' objection to the interview with segregated inmate forms is **OVERRULED** subject to the Court's requirements for voluminous records. Defendants have the right to reurge as to relevance at trial.

m.   P-T-1: "Summary of Dr. Seal Progress Notes"

This was a copy and paste objection. Defendants objected to these exhibits "on the grounds that Defendants have not had an opportunity to review them in detail. Defendants note that they found errors in some of the summaries from their initial review," relevance, and compliance with "FRE 1006 and Fifth Circuit precedent." *Id.* Plaintiffs created this summary. When asked to provide additional context, Defendants responded that do not remember if they had identified any errors in the summary. Plaintiffs similarly articulated that they received no notification of errors in this summary. The Court **OVERRULED** this objection.

n.   P-T-2: "Calendar of Days of Seal Notes"

This was a copy and paste objection. Defendants objected to these exhibits "on the grounds that Defendants have not had an opportunity to review them in detail. Defendants note that they found errors in some of the summaries from their initial review," relevance, and compliance with "FRE 1006 and Fifth Circuit precedent." *Id.* Plaintiffs created this summary and stated that no errors were identified by Defendants. Defendants stated that their only objection is that the calendar goes to June and that they would ask for July and August to be included to be representative of current

conditions, but that "we will cross that bridge when we get there." The Court **OVERRULED** this objection.

o.   P-U-1: "Julia Wood Progress Notes"

Defendants objected to this exhibit because of relevance (the clinician is no longer employed at DWCC) and because of its voluminous nature. Plaintiffs shared that Ms. Wood was only employed at DWCC for a few months. They further articulated that these notes will be used as a contrast to the "ineffective clinician notes" that are more representative of the current conditions. The Court **OVERRULED** this objection subject to the Court's requirements for voluminous records.

p.   P-W: "Mental Health Lists for Security"

Defendants objected to this exhibit because it is voluminous. *Id.* at 88. Plaintiffs informed the Court that they were intending on this exhibit being introduced and explained by a witness through testimony. Defendants' objection to the mental health lists for security is **OVERRULED** subject to the Court's requirements for voluminous records. Defendants have the right to reurge as to relevance at trial.

q.   P-X: "N4 Key and Tier Log Books"

Defendants objected to this exhibit because the records are voluminous, not relevant, and because it was a preclusion that was in their motion *in limine*. *Id.* The Court noted that this is a generalized objection. Plaintiffs argue that the relevance of the log books is the same as it was at the liability phase. Specifically, these log books are being introduced to show movement between the tiers because security staff are tasked with logging the moment of mental health staff in and out of the cells for things like weekly rounds. Plaintiffs stated that they narrowed the scope of the log books to one month in April 2021 and April 2022 because of how voluminous the records are. Defendants stated that the months chosen are not reflective of current conditions, though they are reflective of a

pattern of behavior up until April 2022. The Court **OVERRULED** Defendants' objection to the N4 key and tier log books, but stated that the fact that the months chosen may not be reflective of current conditions will go to the weight.

### r.   P-Y-1: "Individual Counseling Notes"

This was a copy and paste objection. Defendants objected "to the extent the Plaintiffs will seek to admit prisoner records for prisoners who are not listed as witnesses in this matter" and because it is voluminous. *Id.* at 87. The Plaintiffs clarified that the interview forms and segregated inmate forms are the same form used for different interactions. The Court held that it would not be requiring each inmate record to be introduced through inmate testimony. Defendants' objection to the individual counseling notes is **OVERRULED** subject to the Court's requirements for voluminous records. Defendants have the right to reurge as to relevance at trial.

### s.   P-Z-5: "Vera's Exit Memo to Louisiana DOC 2021 FINAL"

Defendants objected to the Vera Memo as inadmissible hearsay and because "The Department's work with Vera is also not properly considered at trial as subsequent remedial measures pursuant to FRE 407." *Id.* Plaintiffs argued that the memo was offered to show notice and that the document is not considered hearsay because it's a public record because it was published on Vera's website. The Court further clarified that a public record is a record that is kept by the government in the normal course of business, such as a birth certificate or driver's record. The parties were unsure if the report was published on the Louisiana Department of Public Safety and Corrections. The Court **DEFFERRED** ruling on this issue until the parties further brief the matter. The parties are ordered to file their briefs by **8:00 a.m. on January 18, 2023**.

## II.   *Plaintiffs' Objections*

### a.   DR-3: "K. Burns, Psychiatry Behind Bars, Current Psychology, Vol. 10, No.2 (February 2011)"

Plaintiffs objected to this exhibit because they argue that it had not been produced during discovery and because of its relevance. *Id.* Defendants stated that this document was produced during discovery for the liability phase,[6] though Plaintiffs indicated they were never able to locate it. Defendants shared that the article may be used for impeachment purposes, but further clarified that "based on Dr. Burns's testimony, it may not even be relevant." The Court **DEFERRED** ruling on this issue until it arises at trial.

**ELIZABETH ERNY FOOTE**
**UNITED STATES DISTRICT JUDGE**

---

[6] There was some conversation during the pretrial conference as to whether the article was produced during discovery or simply "alluded to in a deposition," but Defendants ultimately argued that it was, in fact, produced during liability phase discovery.