UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| BRUCE CHARLES, on behalf of himself and all other similarly situated prisoners at David Wade Correctional Center, | * * * | CIVIL ACTION NO.: 5:18-CV-00541-EEF-MLH |
| and | * * | JUDGE ELIZABETH E. FOOTE |
| The ADVOCACY CENTER, | * * | MAGISTRATE MARK L. HORNSBY |
| PLAINTIFFS, | * * | CLASS ACTION |
| VS. | * * | |
| JAMES M. LEBLANC, *et al.*, | * * | |
| DEFENDANTS. | * | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION TO SUPPLEMENT THE RECORD
AND ADMIT CERTAIN SPECIFIC EVIDENCE OF CURRENT CONDITIONS**

Plaintiffs respectfully submit this Memorandum in Opposition to Defendants' Motion to Supplement the Record and Admit Certain Specific Evidence of Current Conditions (Rec. Doc. 738).

Having been informed years ago that maintenance of medical records for prisoners with mental health disorders is a problem, the Defendants belatedly come to the Court seeking to supplement the record. As this Court has found repeatedly during this litigation, there is often a substantial difference between how prison officials their portray policies and practices at David Wade and the facts on the ground for care of prisoners with mental illness. The Court should not permit Defendants to offer a one-sided evidentiary presentation, in the form of hearsay affidavits, when Plaintiffs have not been given an opportunity for any discovery to probe Defendants' new

proposed testimony or verify these new purported practices. Admission of this late evidence is manifestly prejudicial and the Court should exclude it.

**1. Whether to Permit Introduction of New Evidence Is Within the Court's Discretion.**

The decision whether to permit parties to reopen the record to present new evidence after trial lies within a district court's sound discretion. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331 (1971). The Fifth Circuit reviews a district court's ruling on a motion to reopen for presentation of new evidence for abuse of discretion. *Garcia v. Woman's Hosp. of Texas*, 97 F.3d 810, 814 (5th Cir. 1996). The Fifth Circuit has identified three nonexclusive factors that a district court should consider: "Among the factors the trial court should examine in deciding whether to allow a reopening are the importance and probative value of the evidence, the reason for the moving party's failure to introduce the evidence earlier, and the possibility of prejudice to the non-moving party." *Garcia*, 97 F.3d at 814.

**A. The Caselaw Does Not Require the Court to Admit Unilateral Post Trial Evidence**

Thus, the Court is not required to accept Defendants' late evidence. Defendants suggest that the jurisprudence regarding consideration of "current conditions" of prison conditions means that the Court must permit them to introduce their proposed new post-trial evidence. To the contrary—and as has been discussed in previously filed briefs—the Supreme Court expressly approved a district court's imposition of deadlines in prison conditions litigation as part of orderly trial management. *Brown v. Plata*, 563 U.S. 493, 523 (2011). Defendants cite no Supreme Court case overruling this aspect of *Brown*. Nor do they discuss the *Garcia* factors or any Fifth Circuit case mandating that a court consider unilaterally presented post-trial declarations.

*Valentine v. Collier*, 993 F.3d 270 (5th Cir. 2021), does not support Defendant's late attempt to supplement the record outside of discovery. *Valentine* involves a prison's response to the COVID pandemic. Due to the nature of the pandemic and the need for updated statistics, the

*Valentine* trial court *affirmatively requested* that the Defendants provide weekly updated reports after trial on the prison's COVID testing. *Valentine v. Collier*, 490 F. Supp. 3d 1121, 1135 (S.D. Tex. 2020), *rev'd*, 993 F.3d 270 (5th Cir. 2021). As Judge Dick held in *Lewis v. Cain*, *Valentine* arose under the unique circumstances of a fast-moving pandemic and involved prison officials who were trying to respond to rapid changes on the ground, and it is thus not particularly applicable. *See Lewis v. Cain*, No. CV 15-318-SDD-RLB, 2021 WL 5287856, at *2 (M.D. La. Oct. 8, 2021). In the other case cited by the Defendants, *Dockery v. Cain*, the trial court exercised its discretion to permit the parties to conduct *post-trial discovery* that culminated in submission of supplemental expert reports from both sides. *See Dockery v. Hall*, 443 F. Supp. 3d 726, 736 (S.D. Miss. 2019), *aff'd sub nom. Dockery v. Cain*, 7 F.4th 375 (5th Cir. 2021). The court was not considering unilateral affidavits put forward by the Defendants. Nothing in *Valentine* or *Dockery* requires a court to entertain such otherwise inadmissible post-trial evidence.

**B. The Prison Litigation Reform Act Does Not Require Admission of the Declarations**

The Prison Litigation Reform Act ("PLRA"), 18 U.S.C. 3626, applies to the extent it applies to the class claims[1]. The PLRA does not, however, support Defendants' assertion that they be permitted to enter unilateral, post-trial evidence. The requirements for relief are set forth under 3626(a): "prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C 3626(a)(1)(A). The next section describes termination of relief and provides "prospective relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a *current and ongoing* violation of the Federal right." 18 U.S.C. 3626(b)(3).

---

[1] Plaintiff Disability Rights Louisiana (formerly the Advocacy Center) is not bound by the PLRA.

In *Porter v. Clarke*, the Fourth Circuit Court of Appeals addressed these provisions of the PLRA and held that while the language of the two provisions is generally parallel, the phrase "current and ongoing" only appears in Section 3626(b)(3) concerning the *termination* of relief, not in Section 3626(a)(1) regarding the initial entry of prospective relief. 923 F.3d 348, 366-368 (2019). The court reasoned that Congress intentionally omitted the "current and ongoing" language from Section 3626(a)(1), providing strong evidence that Congress did not intend for that standard to apply outside the context of termination. *Id.* at 367. The court also stated that a violation of constitutional rights must be established by the district court during the liability phase in order to warrant the implementation of a remedy. *Id.* at 366-368. Subsequently, during the remedial phase, the focus shifts to determining the relief that is necessary, appropriately tailored, and minimally intrusive to address the previously identified violation. *Id.* In short, the PLRA does not require the Court to consider late-introduced, post-trial evidence regarding prison conditions.

**2. Applying the *Garcia* Factors, the Court Should Exclude the Evidence.**

Applying the *Garcia* factors, the Court should exclude Defendants' late post-trial submission.

**A.     The Proposed Supplementation Unfairly Prejudices Plaintiffs.**

The third factor—prejudice to the non-moving party—weighs heavily against admission of the evidence. Plaintiffs have had limited opportunities for fact discovery for any facts after June 30, 2022. When the trial was rescheduled to commence on January 17, 2023, the Court provided for limited additional discovery by ordering the Defendants to provide a "written description of the changes made at DWCC through August 30, 2022." Rec. Doc. 635. Defendants then provided a document describing changes that purportedly had taken place between the original fact cutoff date of June 30, 2022, through August 30, 2022, and permitted Plaintiffs to issues interrogatories regarding that disclosure. Yet despite the fact cutoff, Defendants continued to introduce and admit

evidence of conditions beyond that date, including processes and procedures in effect at the time of trial.

Now, months after trial, Defendants seek to admit new evidence of purported changes in June 2023 that purportedly took effect in April 2023, months after discovery closed and the Remedy Phase trial ended. Neither Plaintiffs nor the Court have any way to assess this new evidence, which lies entirely within the Defendants' control and raises a host of new questions. For example, Warden Dauzat's declaration states that the new electronic records system contains "all health records made under the system by DWCC medical and mental health providers." (Proposed DR-21 at p. 1.) Which particular records are deemed "health records under the system"? Can the records be modified once they're entered? Does new data overwrite pre-existing data? Is it possible to review historical information in the system? How is information collected before it is entered into the system? Are the mental health treatment plans considered "health records" and if so, did DWCC modify the content of the mental health treatment plan forms when implementing this new system? Which records of interactions between mental health staff and South Compound prisoners are recorded in this new system?

Moreover, Dr. Seal testified at the Remedy Phase trial that he did not have access to electronic medication records. (Remedy Phase Trial Tr., vol. III, at 684:24-685:1.). Is medication information now captured in the new system? The declarations don't disclose any of this information, and Plaintiffs have no way to gather evidence on these points. Nor do Plaintiffs have any opportunity to have their expert, Dr. Burns, provide meaningful expert testimony on these purported changes.

As the Fifth Circuit has previously held, "Accepting a supplemental offer of proof that was not subjected to the adversarial process would unfairly distort appellate review and impermissibly

tilt the scales of justice." *United States v. Mizell*, No. 93-1512, 1994 WL 574729, at *4 (5th Cir. 1994) (unpublished opinion). Without any opportunity to probe or challenge Defendants' new purported evidence, and without it being subject to the adversarial process, the Court has no method to test the information provided and Plaintiffs are unfairly prejudiced. For this reason, the information should be excluded.

**B.     The Proposed Supplementation Comes Too Late.**

The second factor is the reason for the moving party's failure to introduce the evidence earlier. Defendants have no good reason why they could not have implemented this system before the Remedy Phase, considering that they have been on notice for years about this problem. They did not make any effort to do so.

Dr. Seal's progress notes have been at issue since prior to the Liability Phase trial when Defendants were questioned about the content and readability during depositions. During the Liability Phase trial, the Court expressed difficulty in reading Dr. Seal's handwritten notes. Yet Defendants made no effort to alter the process by which Dr. Seal created notes between the Liability Phase trial and the Remedy Phase trial. During the Remedy Phase trial, witnesses and the Court again expressed difficulty or impossibility to read Dr. Seal's handwriting. Arguably, having Dr. Seal create an electronic note should have become easier during that time as a result of Dr. Seal seeing patients only virtually from his Texas office. The staff and DWCC and Dr. Seal were already exchanging documents electronically, although Dr. Seal was printing the forms, handwriting the notes, and scanning them back instead of simply creating a typed note that eliminated unnecessary steps and produced a readable document. Defendants waited months following the Remedy Phase trial to purportedly put a system into place to address an issue that had been raised for years in this litigation.

### 3. Purported Changes Do Not Moot Claims At This Stage

Defendants' assertion that Plaintiffs' claims may be mooted based on evidence of their purported changes is in opposition to caselaw. A defendant who seeks to introduce evidence of "current conditions," after being found to have violated constitutional requirements, bears the burden to demonstrate that it is absolutely evident that the alleged wrongful behavior is not likely to happen again in the future. *LaMarca v. Turner,* 995 F.2d 1526, 1541 (11th Cir. 1993). As the Supreme Court stated in *Already, LLC v. Nike, Inc.*:

> We have recognized, however, that a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued. Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends. Given this concern, our cases have explained that a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.

568 U.S. 85, 91 (2013) (internal quotes and cites removed).

This Court found Defendants' practices and policies violated the Constitution, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act. Defendants disagree with the Court's findings and continue to assert that there are no constitutional violations to be remedied. Both of Defendants' experts firmly held the position that a remedy was not necessary in their Remedy Phase reports. This continued assertion that nothing is wrong demonstrates that Defendants have *not* made it "absolutely clear" that their wrongful behavior will not recur. Even presuming the purported change actually addresses and corrects the constitutional violation, Defendants have not met this "formidable burden."

### 4. Defendants Are Not Entitled to a Presumption of Good Faith

Finally, in their brief, Defendants aver that they are entitled to a presumption of good faith. Rec. Doc. 738-1, p.7. Defendants' conduct in this case has destroyed any presumption that might

7

have applied in their favor, and this Court should no longer give them the benefit of the doubt or permit them to introduce evidence unilaterally. Some examples of this conduct include:

- Warden Goodwin failed to correct inaccuracies in the ACA audit, and Defendants attempted to rely upon that very audit to prove how in compliance the facility and programs were. [Remedy Phase Trial Tr., vol. IX, at 1930:18-1940:1]

- Defendants provided contradictory information to Plaintiffs and the Court during trial as to the existence of purported LOC 4 lists. [Remedy Phase Trial Tr., vol. VI, at 1283:1-1285:19; 1303:9-1306:5]

- Defendants' October 3 written description of changes made after June 30, 2023, contained purported changes did not take place before August 30 and in some cases were only anticipated to occur in the future. Examples include the reduction of capacity in N2A and N2B from double cell to single cell [Remedy Phase Trial Tr., vol. VI, at 2571:15-2572:8]; James Burgos and Steve Hayden did not switch their job assignments until September 2023 [Remedy Phase Trial Tr., vol. III, at 689:22-690:24]; the sMARt system was not in full operation and relied upon by staff even during the Remedy Phase trial due to issues with the rollout [Remedy Phase Trial Tr., vol. IV, at 814:20-815:9; vol. V, at 1109:19-1110:5; vol VI, at 1265:5-16].

- Testimony during both the Liability Phase trial and the Remedy Phase trial was that the restraint chair was not in use and may not even be on site, despite evidence to the contrary with those same witnesses that it was continuing to be used through at least October 2022. [Remedy Phase Trial Tr., vol. V, at 1014:5-1016:25 (restraint

chair is not used); 1024:1-19 (restraint chair used August 2021); 1025:15-1026:5 (used December 2020)][2]

- Defendants alleged to have updated the documentation and record keeping for the mental health data prior to the Remedy Phase trial, although evidence showed the implementation was not uniform and significant flaws remained. [Remedy Phase Trial Tr., vol. VII, at 1546:7-1550:3]

In short, the Court should not apply a presumption of good faith in Defendants' favor.

### 5. If the Court Permits the Introduction of New Evidence, Plaintiffs Should Be Given an Opportunity for Discovery and Submission of Competing Evidence.

Plaintiffs' expert, Dr. Kathy Burns, provided her expert opinion, based on the information available to her at the time, regarding the quality of the documentation created by the mental health staff, including rationale as to why it continued to be insufficient during the January 2023 trial. Defendants have demonstrated throughout this litigation that they disagree with her testimony and believe that the documentation they are creating is adequate and does not need to be changed. Plaintiffs cannot take the word of Defendants that things are changed and improved without the benefit of discovery and the expertise of Dr. Burns, and this Court should not either.

Plaintiffs are not interested in prolonging this litigation longer than is necessary. This case was filed in February 2018 and the lives of the men living in these conditions without the benefit of adequate mental health treatment has continued to suffer. The fact that there were two completed suicides in December 2020 and January 2022 when there were zero in the five years prior indicates that harmful and substandard conditions remain. To that end, Plaintiffs do not desire to reopen a discovery period to engage in another round of analysis to determine if what Defendants have

---

[2] Additional examples of restraint chair use given under seal. These examples were not an exhaustive list of every instanced of the restraint chair in use, only for the records Plaintiffs were permitted in discovery.

9

purportedly changed is sufficient. Plaintiffs would prefer to await the Court's decision to meaningfully proceed from there. If, however, Defendants are permitted to submit new evidence, without the benefit of discovery, Plaintiffs should be given an opportunity to take discovery, test Defendants' new testimony, and submit competing evidence of current conditions for consideration.

### 6. Conclusion

Defendants Motion to Supplement should be denied. In the alternative, should this Court grant Defendants' Motion to Supplement, the new evidence should be given the weight it deserves in light of Defendants' history and Plaintiffs' inability to conduct discovery on the matter.

Respectfully submitted this 3rd day of July, 2023,

*/s/ Melanie A. Bray*
Melanie A. Bray, La. Bar No. 37049
J. Dalton Courson, La. Bar No. 28542
Disability Rights Louisiana
*formerly known as the Advocacy Center*
8325 Oak Street
New Orleans, LA 70118
504-208-4151
504-272-2531 (fax)
mbray@disabilityrightsla.org