# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| ANTHONY TELLIS, ET AL. | CIVIL ACTION NO. 18-541 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| JAMES M. LEBLANC, ET AL. | MAGISTRATE JUDGE HORNSBY |

## REMEDIAL ORDER

For the reasons previously enunciated by the Court,

Defendants are hereby **ENJOINED** from the following: 1) continuing to violate the Eighth Amendment rights of all inmates in extended lockdown—the Class—through the unconstitutional conditions of confinement and the deficient provision of mental health services; and 2) continuing to violate the rights of inmates with a qualifying mental illness—the Subclass—under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("RA").

Defendants are **ORDERED** to remedy the constitutional, ADA, and RA violations as enumerated by the Court.

Additionally, the Court **ORDERS** the following remedial measures:

**I.  Special Masters**

    a. The Court will appoint three Special Masters: one correctional psychiatrist; one individual with experience working in prisons with segregated housing populations; and one individual with knowledge and expertise in disability access and accommodations, especially those pertaining to mental health.

1

    b. The Special Masters will be appointed to: determine whether there have been any changes at DWCC that cure the Eighth Amendment, ADA, and RA violations enumerated by the Court since the August 30, 2022, discovery cut-off date; develop a remedial plan that is compliant with the below requirements; make recommendations regarding the implementation of the remedial plan; monitor the implementation of the remedial plan; provide periodic status reports to the Court; and ensure the enforcement of the remedial plan in order to cure and eliminate the constitutional, ADA, and RA violations.

    c. The parties shall meet and confer within fourteen days of the signing of this remedial order to identify and discuss potential Special Masters with the qualifications set forth herein. Within thirty days of this remedial order, the parties shall submit to the Court the names of the proposed Special Masters for each position. If the parties are unable to agree on the proposed Special Masters, each party will submit to the Court *up to three* proposed names for each position, along with his/her most recent curriculum vitae.

## II. Improvements Since the Cut-Off Date

As the Court articulated in its remedy phase opinion, Defendants have sought leave to supplement the record with evidence of current conditions on four separate occasions. *See* Record Documents 447, 645, 738, and 745. Defendants contend that the evidence they seek to introduce will prove that the constitutional and statutory violations previously enunciated by the Court have been remedied. It will be the responsibility of the Special Masters to evaluate whether any of the deficiencies have, in fact, been remedied since the August 30, 2022, discovery cut-off date. The Special Masters shall develop and implement a schedule that sets

deadlines for this process and to which the parties must comply. Within fourteen days of their appointment, Defendants shall provide the Special Masters with any evidence they believe proves that the previously enunciated deficiencies have been remedied. Plaintiffs will have the right to request additional discovery as to the existence and effectiveness of these alleged remedies according to the schedule fashioned by the Special Masters. Plaintiffs will then have the right to submit their own evidence to the Special Masters in accordance with that schedule.

## III. Remedial Plan

After the areas in which remedy is still required have been identified, the Special Masters shall draft a proposed remedial plan that addresses the following:

### a. Conditions of Confinement

The remedial plan shall address the Eighth Amendment violations enumerated by the Court regarding the length of time and the conditions of confinement in extended lockdown with the goal of eliminating extended lockdown to the extent practicable. The Special Masters must craft this section of the remedial plan with the psychological harms of extended lockdown in mind. In so doing, the Special Masters may rely upon their own expertise, published literature, and any other reliable sources. The remedial plan shall include:

i. Standards and procedures addressing the physical composition of the cell, including but not limited to the size of the cell; the practice of double bunking; the lack of visual stimulation; the fluctuating noise levels; and the lack of adequate climate controls during hot and cold months.

ii. Standards and procedures to cure the social isolation experienced by inmates in extended lockdown, including but not limited to meaningful and increased recreational time; utilizing communal spaces for mealtime;

3

       out-of-cell religious services, classes, and group programming; additional and/or contact visitation; and additional and confidential telephone privileges.

iii. Standards and procedures to cure the enforced idleness in extended lockdown, including but not limited to the ability of inmates to keep possessions with them in segregated housing; the provision of wireless internet services for inmates that are permitted a tablet; and access to any other in-cell activities that are deemed necessary.

iv. Standards and procedures to cure the practices that keep inmates on extended lockdown for an indefinite length of time, including but not limited to reform and/or reconstruction of the decision making board (the multi-disciplinary review board) to include specific, objective decision-making criteria; the participation and input of mental health providers in the decision making process for housing assignments; the provision to inmates the specific reasoning for the assignment or to preventative segregation; and the provision to inmates written guidance explaining the steps required for them to matriculate out of extended lockdown.

v. Standards and protocols to eliminate the use of strip cell status.

vi. Standards and protocols for the training of all David Wade Correctional Center ("DWCC") and Louisiana Department of Public Safety and Corrections ("DOC") staff on the psychological harms of segregated housing.

      vii. Standards and protocols that account for the psychological harms of segregated housing in all DWCC and DOC policies and procedures.

      viii. Any and all other remedial measures that would address the constitutional violations enumerated by the Court regarding the conditions of confinement in segregated housing.

      ix. Any enforcement mechanisms that would ensure Defendants' compliance with the remedial plan.

  b. <u>Delivery of Mental Health Services</u>

The remedial plan shall address the constitutional violations previously enumerated by the Court regarding the delivery of mental health services in the following areas: screening and evaluations; provision of mental health treatment; adequate mental health staffing; administration of psychotropic medication; record keeping; and the suicide prevention program.

    *i. Screening and Evaluations*

The remedy plan shall include the following to address the constitutional violations regarding screening and evaluations at DWCC:

      1. Standards and protocols governing the intake process when an inmate arrives at DWCC, including but not limited to ensuring that intake screenings are conducted by a qualified mental health clinician; routine, timely, and thorough audits of the intake screenings; improvement in the quality of the intake screenings and their corresponding documentation; investigations into any discrepancies between records from Elayn Hunt Correctional Center and self-reported information from inmates at DWCC;

5

ensuring appropriate referrals to Dr. Seal; ensuring appropriate housing assignments; and individualizing an inmate's mental health needs at intake.

2. Standards and protocols regarding weekly rounds, including but not limited to conducting quality, timely, and routine rounds that are confidential and adequately documented.

3. Standards and protocols regarding the mandatory mental health evaluations for inmates designated as an LOC -2, -3, and -4, including but not limited to conducting thorough and timely assessments using qualified mental health clinicians in confidential settings; the creation and maintenance of the level of care lists; the proper use of the level of care lists; the maintenance of adequate documentation that is audited regularly by a qualified mental health supervisor; and an adequate process for referring the inmates to the psychiatrist if required.

4. Standards and protocols regarding segregated inmate interviews, including but not limited to conducting thorough and timely assessments using qualified mental health clinicians in confidential settings and the creation of adequate documentation that is audited on a regular basis.

5. Standards and protocols to ensure that the treating psychiatrist is made aware of a patient's assignment to segregated housing, extended lockdown, and/or suicide watch and that he plays an

6

active role in an inmate's treatment above merely prescribing psychotropic medication.

  ii. *Mental Health Treatment*

The remedy plan shall include the following to address the constitutional violations regarding the provision of mental health treatment at DWCC:

1. Standards and protocols regarding the individualization of inmate mental health treatment, including but not limited to the creation of comprehensive and individualized treatment plans; the solicitation of input from all stakeholders in an inmate's treatment plan; the creation of metrics and other key performance indicators to measure an inmate's progress and success; and approval from a mental health clinician that is certified to oversee the implementation of these treatment plans.

2. Standards and protocols regarding the types of treatment offered to inmates, including but not limited to the prescription of psychotropic medication; the provision of mental health services beyond the prescription of psychotropic medication; the provision of counseling services to inmates by a licensed psychologist with adequate corresponding documentation; the provision of group programming; the ability for inmates to take individual and/or group classes; and the appropriate use of treatment segregation.

3. Standards and protocols regarding appointments with the psychiatrist, including but not limited to ensuring that all

appointments are confidential in nature, for an adequate amount of time, in a location that permits the inmate to feel safe during his psychiatric appointment, and in compliance with the terms of the psychiatrist's contract with DWCC; and that the psychiatrist be provided with any pertinent information about an inmate that might impact his mental health treatment.

4. Standards and protocols regarding the provision of therapeutic materials, including but not limited to the provision of in-person classes; the availability of correspondence classes that provide inmates with in-depth and substantive feedback; and the ability for an inmate to ask questions and discuss materials with a mental health clinician.

### iii. *Staffing of Mental Health Department*

The remedy plan shall include the following to address the constitutional violations as to the staffing of the mental health department:

Standards and protocols regarding the staffing of the mental health department to ensure adequate access to psychiatric and psychological treatment, including but not limited to providing adequate psychiatric and psychological treatment hours; ensuring that the contract or staff psychiatrist is fulfilling the terms of his contract; that the contract psychiatrist (if used) is able to conduct regular, in-person visits to the facility; that the contract or staff psychiatrist plays an active role in an inmate's treatment above

8

>merely prescribing psychotropic medication; the replacement of non-qualified individuals who provide mental health evaluations and treatment; and the hiring of competent psychologists to provide counseling services on the South Compound.

>>*iv. Administration of Psychotropic Medication*

The remedy plan shall include the following to address the constitutional violations as to the administration of psychotropic medication:

>Standards and protocols regarding the administration of psychotropic medication, including but not limited to the use of medical staff to administer psychotropic medication; the provision of training materials and regular training to security and mental health staff on the administration of psychotropic medications; the timely administration of psychotropic medications to ensure proper medication levels; a system of documenting and reporting medication compliance (and non-compliance); the establishment of an auditing system for quality assurance; a functioning E-MAR system and a back-up system for instances where it is not functional; a system of follow-up with inmates who are not taking their medication; the establishment of procedures ensuring that all relevant individuals, including the treating psychiatrist, have access to the E-MAR system; and the consideration of an inmate's medication compliance and any other medical records by the treating psychiatrist.

>    v. *Record Keeping*

The remedy plan shall include the following to address the constitutional violations as to DWCC's record keeping:

> 1. Revision of the processes and procedures for conducting and documenting both the segregated housing interviews and the mental health evaluations of inmates with LOC-2, -3, and -4 designations to ensure meaningful and adequate evaluations and follow-up treatment.
>
> 2. Standards and protocols to ensure adequate record keeping practices, including but not limited to ensuring that the segregated inmate interviews and mental health evaluations are adequately documented and stored in an inmate's record; the elimination of the practice of duplicating records; maintaining detailed records; ensuring consistency across record-keeping practices; if handwritten, maintaining legible records; ensuring that there are adequate electronic record keeping practices; using consent forms for the prescription of medication and any other treatment; and ensuring the availability of an inmate's mental health records to all appropriate parties.
>
>    vi. *Suicide Prevention Program*

The remedy plan shall include the following to address the constitutional violations as to DWCC's suicide prevention program:

1. Standards and protocols to eliminate the use of suicide watch as a punitive measure and to eliminate its use with non-suicidal inmates who are exhibiting signs of mental decompensation.

2. Standards and protocols governing the suicide prevention program, including but not limited to the elimination of the practice of manipulative suicide watch; the creation of a comprehensive assessment of what items are safe for an individual inmate's possession and adequate corresponding documentation; the elimination of the use of the restraint chair and iron restraints; the elimination of the practice of restraining an inmate using the black box in his bunk; the use of the restraint mattress in a health care setting only using leather restraints; the elimination of the use of force and/or chemical spray against an inmate on suicide watch without the participation of a mental health clinician; and the elimination of the use of force and/or chemical spray against an inmate on suicide watch who is restrained.

3. Standards and protocols regarding the provision of treatment to inmates on suicide watch including but not limited to the provision of a suicide risk assessment before placing an inmate on suicide watch; the provision of treatment for inmates on suicide watch, including the prescription of medication, counseling, and psychiatric services; involvement of the treating psychiatrist in the assignment and removal of an inmate to/from suicide watch;

11

  comprehensive training for all staff regarding the conditions of suicide watch; and the provision of a comprehensive assessment and treatment plan after inmates are removed from suicide watch.

4. Standards and protocols regarding the observation of inmates on suicide watch, including but not limited to constant monitoring by security staff and the maintenance of an adequate tier walker program that is confidential in nature and that acts only as a supplement to security's own observations.

5. Standards and protocols regarding reporting mechanisms for suicide watch, including but not limited to a comprehensive list of actions that constitute a suicidal attempt or gesture; a clear process of reporting suicidal attempts or gestures; comprehensive training by the DOC for all individuals tasked with reporting suicidal attempts and gestures on the CO-5 reports; and a system by which the DOC will audit the suicidal attempts and gestures reported in the CO-5 reports.

6. Standards and protocols to ensure routine audits of the suicide prevention program, including but not limited to adequate investigations and assessments of the mental health and security staffs' handling of suicides, suicidal attempts, and suicidal gestures.

      vii. The remedial plan shall include any and all other remedial measures that would address the constitutional violations enumerated by the Court regarding the delivery of mental health services in these six areas.

      viii. The remedial plan shall also include any enforcement mechanisms that would ensure Defendants' compliance with these remedial measures.

  c. <u>ADA and RA Compliance</u>

The remedial plan shall address the ADA and RA violations—including the failure to accommodate and the methods of administration—previously enumerated by the Court. The plan shall include the following:

      i. *Failure to Accommodate*

        1. Standards and protocols regarding modifications to the conditions of confinement and the housing of individuals with mental illness on the South Compound, including but not limited to the provision of an assessment regarding the appropriateness of housing an inmate in segregated housing; the provision of the level of care and heat pathology lists for security staff and training to security staff on those two lists; and alterations to the conditions of confinement—including programming, classes, the provision of property, and other social time.

        2. Standards and protocols regarding modifications to the disciplinary practices employed on inmates with mental illness on the South Compound, including but not limited to creating processes and procedures for any communication between

13

        security and mental health staff before the use of discipline; incorporating mental health staff in the disciplinary process; the provision of training and training materials to security staff and mental health staff regarding DWCC's policies surrounding the use of force; and the adequate reporting of instances where force was used against inmates with mental illness.

  ii. *Methods of Administration*

      1. The adoption of a definition of serious mental illness that is inclusive of all types of serious mental illness at DWCC.

      2. Standards and protocols regarding the provision of an adequate process for requesting reasonable accommodations, including but not limited to training to the ADA Coordinator about her role; the provision of training materials the ADA Coordinator about her role; and the regular provision of materials and information to inmates with a qualifying mental illness.

  iii. The remedial plan shall include any and all other remedial measures that would address the ADA and RA violations—including the failure to accommodate and the methods of administration—enumerated by the Court.

  iv. The remedial plan shall include any enforcement mechanisms that would ensure Defendants' compliance with these remedial measures.

**IV. Cooperation and Access**

   a. No later than thirty days after their appointment, the Special Masters shall have access to DWCC to conduct reviews of the facility, as well as the security, mental health care, and ADA operations.

   b. The Special Masters shall have access to any and all records and documents appropriate and necessary for their tasks, and the DOC shall provide any records and documents requested without delay and within fourteen days following the request. All requests for records and documents shall be made by electronic or physical mail.

   c. The DOC shall designate in writing the employees to whom records requests by the Special Masters should be directed and the means of contacting those individuals.

   d. The DOC shall designate in writing one headquarters employee, one or more Wardens and/or Deputy Wardens, one or more mental health clinicians, one or more members of the medical staff, and one or more security employees that will be coordinating and facilitating the work of the Special Masters.

   e. The Department of Corrections shall facilitate any visits to DWCC within twenty-four hours of any written notice by the Special Masters, who shall be provided reasonable access to the members of the Class and Subclass.

   f. The Special Masters shall be provided electronic access to the record of these proceedings and the Court shall designate an individual in the Clerk of Court's office to assist the Special Masters with the retrieval of documents from the record if necessary.

## V. Reporting

    a. Within 120 days of their appointment, the Special Masters shall submit a report to the Court outlining which of the constitutional deficiencies they believe have been remedied.

    b. Within 120 days of their appointment, the Special Masters shall submit a proposed remedial plan, detailing plans to remedy the deficient conditions of confinement and delivery of mental health services. The plan shall also outline the plans to remedy the ADA and RA violations. This plan shall include recommended steps for implementation, recommended timelines for completion and compliance, and the metrics and key performance indicators that will be used to track the success of this plan.

    c. The time periods provided in subsections (a) and (b) of this section may be extended by the Court upon the request of the Special Masters with good cause, including Plaintiffs' need for discovery and/or the admission of additional evidence.

    d. Within thirty days of filling the report on improvements, either party may file objections to the Special Masters' findings.

    e. Within thirty days of the filing of the proposed remedial plan, either party may submit its proposed amendments. If either party intends to submit proposed amendments, the parties shall meet and confer no less than fourteen days after the Special Masters' submission in an effort to agree upon proposed amendments. The parties shall discuss any proposed amendments with the

       Special Masters no less than seven days before submission of proposed amendments to the Court.

    f. The Court will review the report on improvements, the proposed remedial plan, and any requests for amendment and will enter orders necessary and appropriate to effect the remedies.

    g. The Court may conduct hearings to resolve any disputes as to the Special Masters' report on improvements and the proposed remedial plan.

**VI. Monitoring Implementation of Remedial Plans and Periodic Reports to Court**

    a. Beginning six months after the Court enters an order effectuating the remedial plan, and at recurring intervals every six months thereafter, the Special Masters shall submit a comprehensive report advising the Court of the status of the implementation of each component of the remedial plan. The Special Masters should also articulate any areas of non-compliance or concerns they have regarding the completion of deadlines. The parties shall have fourteen days to comment on any periodic report, after which time the Court will determine whether a status conference or hearing is required.

    b. Monitoring of progress and compliance with the Court's remedial orders shall continue until further order by the Court.

    c. In the event that Defendants act in non-compliance, the Special Masters shall have the ability to take steps to enforce the remedial order.

    d. The Special Masters shall continue to have access to DWCC, the Class and Subclass members, and any records and documents during the monitoring period under the terms set forth above.

VII.   **Fees and Costs**

    a.  All costs associated with the work and reporting of the Special Masters shall be paid by the Defendants.

    b.  As the prevailing parties, Plaintiffs are directed to file a motion to award attorneys' fees and costs within thirty-days of the signing of this order. Oppositions, if any, shall be filed by the Defendants within fourteen days thereafter. Plaintiffs must seek leave before filing a reply to Defendants' opposition.

    c.  Plaintiffs may file supplemental motions for attorneys' fees and costs during the implementation and monitoring period in ninety-day intervals. Defendants shall file any oppositions to those supplemental motions within fourteen days of the filing of the motion.

**THUS DONE AND SIGNED** this 18th day of July, 2024.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE