UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| ANTHONY TELLIS AND BRUCE CHARLES, on behalf of himself and all other similarly situated prisoners at David Wade Correctional Center, | * * * * | |
| | * | CIVIL ACTION NO.: |
| | * | 5:18-CV-00541-EEF-MLH |
| and | * | |
| | * | JUDGE ELIZABETH E. FOOTE |
| The ADVOCACY CENTER, | * | |
| | * | MAGISTRATE MARK L. HORNSBY |
| PLAINTIFFS, | * | |
| | * | CLASS ACTION |
| VS. | * | |
| | * | |
| JAMES M. LEBLANC, *et al.*, | * | |
| | * | |
| DEFENDANTS. | * | |

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**

**TABLE OF CONTENTS**

I.    PROCEDURAL BACKGROUND ..................................................................................1

II.   LEGAL STANDARD AND ANALYSIS .....................................................................3

   A.   Statutory Authorizations ...........................................................................................3

      1.   42 U.S.C. § 1988(b) .............................................................................................3

      2.   42 U.S.C. § 12205 and 29 U.S.C. § 794a(b) ....................................................4

   B.   This Motion Is Timely. ..............................................................................................4

   C.   Calculation of Attorneys' Fees .................................................................................4

      1.   The Lodestar .........................................................................................................4

      2.   The Number of Hours Reasonably Expended ..................................................5

      3.   The Reasonably Necessary Hours of Plaintiffs' Counsel Exceed 21,000 After the Exercise of Billing Judgment .........................................................................................6

         a)   Plaintiffs Have Exercised "Billing Judgment" ...........................................8

         b)   The Number of Hours Reasonably Expended Is Due to the Extensive Nature of the Litigation .........................................................................................................................8

         c)   Time Spent Investigating Conditions at DWCC ......................................10

d)    Time Spent Preparing the Class Action Complaints .................................................12

e)    Time Spent in Discovery and Motions Practice ......................................................12

f)    Time Spent in Trial Proceedings ............................................................................14

g)    Time Spent on Post-Trial Work ..............................................................................15

h)    Time Spent on Motion for Fees and Costs .............................................................16

i)    Plaintiffs Obtained Excellent Results......................................................................17

j)    Plaintiffs May Recover Work by Law Student Interns and Paralegals ...................17

D.   The Reasonable Hourly Rates .........................................................................................18

    1.   The Court Should Apply the Reasonable Hourly Rate in the Shreveport Market. .......18

    2.   The PLRA Does Not Apply to Cap Rates Because the State Protection-and-Advocacy Agency is a Plaintiff. .......................................................................................................21

E.   Calculation of the Lodestar .............................................................................................23

III.    The *Johnson* Factors Weigh in Favor of an Upward Adjustment .....................................23

    1.   Time and Labor Required....................................................................................................24

    2.   Novelty and Difficulty of Issues........................................................................................25

    3.   Skill Required to Perform Legal Services .........................................................................26

    4.   Preclusion of Other Employment .....................................................................................26

    5.   Customary Fee ....................................................................................................................27

    6.   Nature of Fee ......................................................................................................................27

    7.   Time Limitations Imposed by the Client or the Circumstances ...................................27

    8.   Results Obtained................................................................................................................28

    9.   Experience, Reputation, and Ability of the Attorneys ...................................................29

    10.   Undesirability of the Case ..............................................................................................29

    11.   Nature and Length of the Professional Relationship with the Clients......................30

    12.   Awards in Similar Cases ..................................................................................................30

    13.   Johnson Factors Confirm Lodestar Amount and Support an Upward Adjustment in the Lodestar Amount ...........................................................................................................31

IV.   Plaintiffs are Entitled to Recover Reasonable Costs .......................................................31

V.   CONCLUSION ................................................................................................................33

## **TABLE OF AUTHORITIES**

**Cases**

*Alabama Disabilities Advoc. Program v. Wood,* 584 F. Supp. 2d 1314 (M.D. Ala. 2008) ..........22

*Armstrong v. Davis*, 318 F.3d 965 (9th Cir. 2003)........................................................................22

*Atel Mar. Investors, LP v. Sea Mar Mgmt., L.L.C*, 2011 WL 2550505 (E.D. La. June 27, 2011) 20

*Bachemin v. DDMS, LLC*, No. 22-CV-1976, 2023 WL 48665343 (W.D. La. July 31, 2023)......19

*Belfor USA Group, Inc. v. Bellemeade Partners, L.L.C.*, 2010 WL 6300009 (E.D. La. Feb 19, 2010)........................................................................................................................................20

*Bell v United Princeton Props, Inc.*, 884 F.2d 713 (3rd Cir. 1989) .................................................5

*Blum v. Stenson*, 465 U.S. 886, 895 (1984)............................................................................18, 19

*Campbell v. Harold Miller, Jr. Trucking & Paving, LLC*, Civ. No. 6:13-2840, 2014 WL 6389567 (W.D. La. Nov. 13, 2014)..........................................................................................................20

*Cash v. Unocal Corp.*, Civ. No. 6:04-1648, 2014 WL 2980589 (W.D. La. May 27, 2014).........20

*City of Burlington v. Dague*, 505 U.S. 557 (1992).......................................................................29

*Cole v. Collier*, No. 4:14-CV-1698, 2018 WL 2766028 (S.D. Tex. June 8, 2018)...............passim

*Construction South, Inc. v. Jenkins*, 2011 WL 3892225 (E.D. La. Sept. 2, 2011).......................20

*Cruz v. Hauck*, 762 F.2d 1230 (5th Cir. 1985) ............................................................................16

*Dugas v. Mercedes-Benz USA, LCC.*, No. 6:12-CV-02885, 2015 WL 1198604 (W.D. La. March 16, 2015)................................................................................................................................20

*F.D.I.C. v. Z & S Realty Co.*, 132 F.3d 1456 (5th Cir. 1997)........................................................7

*Gagne v. Maher*, 594 F. 2d 336 (2d Cir. 1979) ..........................................................................16

*Geiger v. Gravols Aluminum Boats, LLC*, No. 6:22-CV-00374, 2024 WL 1807954 (W.D. La. April 25, 2024) ........................................................................................................................19

*Gilmore v. Audubon Nature Inst., Inc.*, 353 F. Supp. 3d 499 (E.D. La. 2018).............................31

*Gilmore v. Elmwood S., L.L.C.*, No. CIV.A. 13-37, 2015 WL 1245770 (E.D. La. Mar. 18, 2015) ..........................................................................................................................................31

*Ginest v. Bd. of Cnty. Comms. of Carbon Cnty.*, 423 F. Supp. 2d 1237 (D. Wyo. 2006) ...........31

*Grant v. Gusman*, No. 172797, 2023 WL 315937 (E.D. La. Jan. 19, 2023)................................20

*Green v. Administrators of Tulane Educ. Fund*, 284 F.3d 642 (5th Cir. 2002, as amended on denial of reh'g and reh'g en banc (Apr. 26, 2002), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006).................................................................8

*Hadix v. Johnson*, 65 F.3d 532 (6th Cir. 1995) ...........................................................................29

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)....................................................................3, 5, 17

*Hernandez v. Kalinowski*, 146 F.3d 196 (3d Cir 1998)...............................................................16

*Hornbeck Offshore Services, L.L.C. v. Salazar*, 2011 WL 2214765 (E.D. La. 2011) .................20

*In re Argent Orange Prod. Liab. Litig.*, 611 F. Supp. 1296 (E.D.N.Y. 1985) ...............................6

*Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974) ...................................24, 26

*Jonathan G. ex rel. Charlie Joe G. v. Caddo Par. Sch. Bd.*, 875 F. Supp. 352 (W.D. La. 1994)...4

*La. Power & Light Co. v. Kellstrom*, 50 F.3d 319 (5th Cir. 1995)................................................18

*Lovell v. Chandler*, 303 F.3d 1039 (9th Cir. 2002) .....................................................................31

*Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005) ...............................................................4

*Migis v. Pearle Vision, Inc.,* 135 F. 3d 1041 (5th Cir. 1998) .......................................................28

*Morgan v. Nevada Bd. of State Prison Comm'rs*, 615 F. Supp. 882 (D. Nev. 1985) ....................5

*National Ass'n of Concerned Veterans v. Sec'y of Defense*, 675 F.2d 1319 (D.C. Cir. 1982)........5

*Nelson v. Constant*, No. 1714581, 2021 WL 76407 (E.D. La. Jan. 8, 2021) ..............................20

*Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292 (11th Cir. 1998) ...................................... 8

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010) ................................................................. 5

*Pitre v. City of Eunice*, No. 6:14-CV-02843, 2015 WL 4459964 (W.D. La. July 21, 2015) ........ 19

*Prandini v. Nat'l Tea Co.*, 585 F.2d 47 (3d Cir. 1978) ................................................................ 16

*Prandini v. National Tea Co.*, 585 F.2d 47 (3d Cir. 1978); *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir. 1978) .................................................................................................................................. 6

*Reid v. New York*, 584 F. Supp. 461 (S.D.N.Y. 1984) ................................................................. 5

*Revell v. Prince Preferred Hotels Shreveport, LLC*, No. CV 21-882, 2024 WL 3625214 (W.D. La. Aug. 1, 2024) ........................................................................................................................ 24

*Roberts v. Vantage Deepwater Drilling, Inc.*, 2017 WL 2622693 (W.D. La. June 15, 2017) ...... 20

*Scham v. District Courts Trying Criminal Cases*, 148 F.3d 554 (5th Cir. 1998) ......................... 19

*Shelton v. Louisiana State*, 919 F.3d 325 (5th Cir. 2019) ........................................................... 4

*Shipes v. Trinity Indus.*, 987 F.2d 311 (5th Cir. 1993) ............................................................... 23

*Spell v. McDaniel*, 616 F. Supp. 1069 (E.D.N.C. 1985) ............................................................... 5

*Tollett v. City of Kemah*, 285 F.3d 357 (5th Cir. 2002) .............................................................. 19

*Tomazzolli v. Sheedy*, 804 F.2d 93 (7th Cir. 1986) ..................................................................... 5

*Trivette v. Tennessee Dep't of Correction,* No. 3:20-CV-00276, 2024 WL 3366335 (M.D. Tenn. July 9, 2024) ............................................................................................................................ 22

*Trueblood v. Washington State Department of Social and Health Services*, No. C14-1178 MJP, 2015 WL 12030114, at *1 (W.D. Wash. June 22, 2015) ............................................................ 22

*Trujillo v. Heckler*, 596 F. Supp. 396 (D. Colo. 1984) ................................................................. 5

*Vela v. City of Hous.*, 276 F.3d 659 (5th Cir. 2001) .................................................................... 18

*Volk v. Gonzalez*, 262 F.3d 528 (5th Cir. 2001) ......................................................................... 16

*Walker v. HUD,* 99 F.3d 761 (5th Cir. 1996) .............................................................................. 5

*Watkins v. Fordice*, 7 F.3d 453 (5th Cir. 1993) ..................................................................... 19, 23

*Webb v. Board of Educ.*, 471 U.S. 234 (1985) ............................................................................. 5

**Statutes**

28 U.S.C. § 1920 ......................................................................................................................... 32

29 U.S.C. §794a(b) ............................................................................................................... 3, 4, 22

42 U.S.C. § 1997e(d) ................................................................................................................... 21

42 U.S.C. §12205 ....................................................................................................... 3, 4, 22, 31

42 U.S.C. §1988(b) ....................................................................................................................... 3

**Rules**

Federal Rule of Civil Procedure 23(h)(1) ...................................................................................... 4

Federal Rule of Civil Procedure 54(d)(1) .................................................................................... 32

Plaintiffs, and the Plaintiff Class they represent, respectfully submit this Memorandum in Support of their Motion for an Award of Attorneys' Fees and Costs in accordance with the Court's Remedial Order dated July 18, 2024 (Rec. Doc. 755). In successfully litigating their claims, Plaintiffs have incurred significant time and costs for which they now seek compensation of $**6,489,807.30** in fees and $**537,087.80** in costs through the date of this filing. The fee request consists of the lodestar after application of billing judgment, and the costs reflect expenses actually incurred.

## I.     PROCEDURAL BACKGROUND

Speaking about this case, a spokesperson for the Defendants stated, "Few attorneys have the requisite expertise required to defend these types of cases – especially large-scale class action proceedings such as this matter which involve multiple expert witnesses and millions of pages of documents." Julie O'Donogue, "Legal fight over North Louisiana prison condition costs taxpayers millions", Louisiana Illuminator, Jan. 20, 2022, https://lailluminator.com/2022/01/20/legal-fight-over-north- louisiana-prison-conditions-costs-taxpayers-millions/. Defendants' spokesperson was speaking in justification of the millions of dollars that the Defendants had incurred in legal fees in this proceeding as of 2021. Defendants have acknowledged the skill and expertise required to litigate this case. Bringing it to a successful outcome has required years of enormous effort and resources by Plaintiffs' counsel.

The Court is well familiar with the facts. Plaintiffs are prisoners assigned by the Louisiana Department of Public Safety and Corrections ("LDPSC") to the South Compound at David Wade Correctional Center ("DWCC") and Disability Rights Louisiana ("DRLA"), the Louisiana Protection and Advocacy ("P&A") organization serving persons with disabilities in Louisiana. The case follows an investigation that began in 2016 and which led to the filing of a class action

complaint in 2018 alleging inadequate mental health services, unconstitutional conditions of confinement, and staff brutality. The complaint included claims arising under 42 U.S.C. § 1983, to remedy First and Eighth Amendment violations; the ADA; and Section 504 of the Rehabilitation Act. The class, certified by the Court, includes all individuals housed in DWCC's South Compound (N1, N2, N3, and N4) and includes a subclass of men who have or are perceived as having a disability related to mental health.

After a four-week trial in January 2022, the Court held that Defendants had violated and continued to violate the Eighth Amendment and the ADA and RA by failing to provide mental health services and reasonable accommodations, maintaining prolonged solitary confinement, and creating an environment of mental and physical torture.  The Court dismissed the First Amendment claims. A second phase of discovery and motion practice followed, culminating in a three-week trial on remedies in January and February 2023. On July 18, 2024, the Court entered an Opinion finding that Defendants had not demonstrated that the identified problems had been addressed, Defendants' deliberate indifference persists, and the illegal conditions continue. The Court ruled in favor of the Plaintiffs on all remaining claims, and the Plaintiffs were instructed to submit their motion for attorneys' fees and costs within 30 days.

Roughly a dozen attorneys have represented DRLA and the Plaintiff Class throughout the six years of this litigation. Initially, Plaintiffs were represented by the Advocacy Center (now Disability Rights Louisiana) and Katie Schwartzmann. Subsequently, additional attorneys from the ACLU of Louisiana, the Promise of Justice Initiative, Adams and Reese LLP, and Cohen Milstein contributed in preparation for or during the trial.

DWCC has housed between 256 and 464 individuals in buildings N1-N4 at any given time throughout the case, with an ever-changing population of individuals who are transferred into and

out of the South Compound. Discovery involved hundreds of written requests, months of negotiation, multiple successful motions to compel production (Rec. Doc. 104, 133, 297) and many visits to the remote prison to meet with clients and accompany experts. Defendants ultimately produced hundreds of thousands of pages of medical/mental health and master prison records along with thousands of pages of other documents, hundreds of hours of tier video footage, and hundreds of hours of body camera footage. The case also involved substantial pre-trial motion practice, including but not limited to Plaintiffs successfully defending Defendants' pre-trial motion to dismiss (Rec. Doc. 516), obtaining class certification (Rec. Doc. 462), and defending *Daubert* motions (Rec. Doc. 437). The Court conducted two bench trials lasting approximately four weeks and three weeks, respectively.

This litigation has been difficult and protracted. Plaintiffs seek compensation equivalent to the lodestar or, alternatively, the lodestar with an upward enhancement, in accordance with consideration of the *Johnson* factors, to an amount that the Court deems fair and reasonable.

## II.   LEGAL STANDARD AND ANALYSIS

### A.   Statutory Authorizations

Prevailing parties in Section 1983, ADA, and RA claims are entitled to attorneys' fees under 42 U.S.C. §1988(b), 42 U.S.C. §12205, and 29 U.S.C. §794a(b) respectively.

#### 1.   42 U.S.C. § 1988(b)

A prevailing party in a civil rights case is entitled to attorneys' fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988(b). The purpose of 42 U.S.C. § 1988 is "to ensure effective access to the judicial process for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (internal quotations omitted). The Supreme Court has emphasized that fee awards are crucial to ensure that civil rights violators, not their victims, bear the cost of the violations and related harms. *See, e.g.*, *Martin v. Franklin Capital Corp.*, 546 U.S.

132, 137 (2005).  Section 1983 is the vehicle providing for the vindication of constitutional rights, arguably one of the most important areas of federal court jurisprudence. Despite their import, very few attorneys handle civil rights cases, as they are time-intensive and rigorous. The purpose of § 1988 is to ensure that those who do will be remunerated for their work, with the hope that attorneys will continue the important work of protecting the constitution in cases where clients cannot afford to pay fees.

### 2.   42 U.S.C. § 12205 and 29 U.S.C. § 794a(b)

"The ADA's fee-shifting provision [42 U.S.C. § 12205] is interpreted under the same legal standard as the similar provision in 42 U.S.C. § 1988." *Shelton v. Louisiana State*, 919 F.3d 325, 328 (5th Cir. 2019).  A prevailing party under the Rehabilitation Act is also "entitled to recover attorney's fees pursuant to 29 U.S.C. § 794a(b)." *Jonathan G. ex rel. Charlie Joe G. v. Caddo Par. Sch. Bd.*, 875 F. Supp. 352, 368 (W.D. La. 1994).

### B.   This Motion Is Timely.

For class action cases, Rule 23(h)(1) provides that a motion for attorneys' fees and nontaxable costs must be made "at a time that the Court sets." The Court's Remedial Order directed Plaintiffs to file their motion within 30 days of the signing of the Order. Rec. Doc. 755 at 18. The Remedial Order is dated July 18, 2024, making the deadline August 19, 2024 (since the 30th day is August 17, 2024, which falls on a Saturday).  Plaintiffs are submitting the motion within the time the Court set.

### C.   Calculation of Attorneys' Fees

### 1.   The Lodestar

Courts generally calculate fees based on the lodestar, or "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S.

424, 433 (1983). There is a "strong" presumption that the lodestar calculation produces a reasonable fee. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).

## 2.  The Number of Hours Reasonably Expended

The party seeking fees must establish reasonableness of the hours expended by submitting adequate documentation and time records. *Walker v. HUD,* 99 F.3d 761, 770 (5th Cir. 1996). The party must show "the reasonableness of the hours they bill and, accordingly, are charged with proving that they exercised billing judgment." *Id.* Once a party submits time records, the opposing party must identify contested entries and detail why those entries are unreasonable. *See Bell v United Princeton Props, Inc.*, 884 F.2d 713, 720 (3rd Cir. 1989) ("...the adverse party's submissions cannot merely allege in general terms that the time spent was excessive.").

Generally, attorney services are compensable under § 1988 and similar statutes if they are "reasonably expended on the litigation." *Hensley*, 461 U.S. at 433.  Compensable activities include "services performed before a lawsuit is formally commenced," such as "the drafting of the initial pleadings and the work associated with the development of the theory of the case." *Webb v. Board of Educ.*, 471 U.S. 234, 243 (1985). They also include background research and reading in complicated cases, *see Tomazzolli v. Sheedy*, 804 F.2d 93, 97-98 (7th Cir. 1986); productive discussions among attorneys for case management purposes, *see National Ass'n of Concerned Veterans v. Sec'y of Defense*, 675 F.2d 1319, 1337 (D.C. Cir. 1982); necessary conferences with paralegals, *Morgan v. Nevada Bd. of State Prison Comm'rs*, 615 F. Supp. 882, 884 (D. Nev. 1985); conferences with potential witnesses, *Spell v. McDaniel*, 616 F. Supp. 1069, 1098 (E.D.N.C. 1985); supervision of attorneys by a senior attorney, *Reid v. New York*, 584 F. Supp. 461, 462 (S.D.N.Y. 1984); negotiation sessions and planning meetings with defendants that are undertaken to further the litigation, *Trujillo v. Heckler*, 596 F. Supp. 396, 400 (D. Colo. 1984); and time spent in reading mail or on the telephone when such efforts contribute to the litigation, *In re Agent*

*Orange Prod. Liab. Litig.*, 611 F. Supp. 1296, 1321, 1348 (E.D.N.Y. 1985), *rev'd in part on other grounds,* 818 F.2d 226 (2d Cir. 1987). In addition, time reasonably expended in preparing the fee application itself is compensable. *See Prandini v. National Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1978); *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir. 1978).

### 3.   The Reasonably Necessary Hours of Plaintiffs' Counsel Exceed 21,000 After the Exercise of Billing Judgment

As demonstrated by the timesheets attached as exhibits to Plaintiffs' motion, Plaintiffs seek to recover attorneys' fees for the work of the attorneys over the course of the seven-year period of this case.  The litigation was initiated by attorneys from the state protection-and-advocacy agency, Disability Rights Louisiana, and attorney Katie Schwartzmann, who handled all fact investigation, discovery, and depositions. As the matter approached trial Plaintiffs enrolled additional legal support from other public interest and private law firms, and those lawyers withdrew after trial. Lead counsel for the Plaintiffs is Melanie Bray, who has worked on this case since initial filing.

The cumulative work for the Plaintiffs' attorneys totals 24,198.49 hours.  In support of their request, Plaintiffs' have attached declarations from Ms. Bray (Exhibit 1); Dalton Courson, current DRLA Litigation Director (Exhibit 2); Katie Schwartzmann (Exhibit 3); Bruce Hamilton (Exhibit 4); Robert Cobbs with Cohen Milstein (Exhibit 5); Jamila Johnson, formerly with Promise of Justice Initiative (PJI) (Exhibit 6); Elena Malik, formerly with PJI (Exhibit 7); Rebecca Ramaswamy, formerly with PJI (Exhibit 8); Nishi Kumar with PJI (Exhibit 9); and Samantha Bosalavage with PJI (Exhibit 10).[1]  The timesheets attached to those declarations consist of over 377 pages and over 10,000 entries. The hours expended by Plaintiffs' counsel were reasonable in light of the amount of work required to litigate this case, as evidenced in the timesheets attached

---

[1]   The attorneys from Adams and Reese donated their time pro bono and have not requested reimbursement of their fees.

to the attorney declarations, which provide contemporaneous time entries as recorded by each attorney.  It is well established in this Circuit that contemporaneous time entries detailing individual tasks are not mandatory for the purposes of fee motions and that estimations of time for tasks is the basis for the award of attorneys' fees. *See, e.g.*, *F.D.I.C. v. Z & S Realty Co.*, 132 F.3d 1456 (5th Cir. 1997).  The attached records satisfy Plaintiffs' burden to document time expended.

Counsel's work included, among other matters, (i) investigating mental health care at DWCC, (ii) preparing the class action complaint, (iii) discovery and extensive motions practice, (iv) trial proceedings, (v) post-trial work, (vi) settlement efforts, and (vii) the instant motion seeking fees and costs.

The requested hours are summarized in the following table:

**Table A: Requested Hours**

| Attorney | Raw Hours[2] | Reductions | Total Hours Sought |
|---|---|---|---|
| Melanie Bray (DRLA) | 6,006.05 | 265.4 | 5,740.65 |
| J. Dalton Courson (DRLA) | 1,212.5 | 40 | 1,172.5 |
| Jonathan Trunnell (DRLA) | 6,698.4 | 1,674.6 | 5,023.8 |
| Emma Douglas (DRLA) | 2,208.8 | 161.15 | 2,047.65 |
| Sarah Voigt (DRLA) | 336.5 | 84.12 | 252.38 |
| Ronald Lospennato (DRLA) | 593.45 | 42.5 | 550.95 |
| Emily Mueller (DRLA) | 945.7 | 36.7 | 909 |
| Katie Schwartzmann | 2622 | - | 2622 |
| Bruce Hamilton (ACLU) | 552.52 | 118.505 | 434.015 |
| Robert Cobbs (Cohen Milstein) | 162.25 | - | 162.25 |
| Jamila Johnson (PJI) | 102.44 | - | 102.44 |
| Elena Malik (PJI) | 162.43 | 40.25 | 122 |
| Rebecca Ramaswamy (PJI) | 36.7 | 9.9 | 26.8 |
| Nishi Kumar (PJI) | 290 | 63.2 | 226.8 |
| Samantha Baslavage (PJI) | 175 | 41 | 134 |
| Legal Assistants | 2029.55 | 146 | 1883.54 |
| **TOTAL** | **24,198.49** | **2,723.34** | **21,474.97** |

---

[2] An attorney from each firm or organization has a signed declaration and a record of the hours spent on this matter, recorded contemporaneously. *See* Exs. 1-10 (Attorney Declarations and Time Sheets).

Plaintiffs' time records demonstrate that counsel only seek to recover for activities reasonably necessary and recognized by courts to be compensable. Counsels' activities were reasonably calculated to address the issues in the case and were necessary to bring this case to a successful resolution. A billing entry is evaluated for reasonableness by considering "the profession's judgment of the time that may be conscionably billed and not the least time in which it might theoretically have been done." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1306 (11th Cir. 1998).

### a)     Plaintiffs Have Exercised "Billing Judgment"

"Billing judgment is usually shown by the attorney writing off unproductive, excessive, or redundant hours." *Green v. Administrators of Tulane Educ. Fund*, 284 F.3d 642, 662 (5th Cir. 2002, *as amended on denial of reh'g and reh'g en banc* (Apr. 26, 2002), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006).  Here, as demonstrated by Exhibit 1 (Ms. Bray's declaration), Exhibit 2 (Mr. Courson's declaration), Exhibit 4 (Mr. Hamilton's declaration), and Exhibits 6-10 declarations from PJI staff, Plaintiffs' counsel has written off at least 2,723.34 hours for work that was clerical or administrative in nature, that involved activities not directly tied to advancing the litigation and work that was duplicative. Plaintiffs have also not included time spent pursuing the First Amendment claim that the court dismissed. Further, Plaintiffs have declined to include the countless hours devoted to work on this case by a number of interns over the years.

### b)     The Number of Hours Reasonably Expended Is Due to the Extensive Nature of the Litigation

As is clear from the declarations submitted by counsel, as well as their detailed time records, the activities for which Plaintiffs' counsel are seeking fees are compensable.  The number of hours expended is high due to the unique difficulties of prison litigation as well as Defendants'

obstreperous tactics.  Indeed, a spokesperson for the Defendants has acknowledged the difficulties of this litigation and the necessary skill and expertise required for a case this complex.

Over nearly six years and through the course of two trials, Defendants unreasonably protracted this case **at every step**. All discovery was heavily contested. Defendants strongly resisted producing plainly discoverable material, requiring multiple motions to compel. *See* Rec. Docs. 104, 133, 297, 318, 357. Plaintiffs had to obtain a protective order to allow the experts to meet with prisoners in a confidential setting, without Defendants, their counsel, or their experts participating. Rec. Doc. 86, 91. Defendants filed a motion for a protective order to restrict Plaintiff counsel from accessing prisoners on the tiers at the cell front, which was denied. Rec. Doc. 102, 153. Plaintiffs had to file a motion for a temporary restraining order due to Defendants' refusal to allow counsel to meet with any prisoners, other than the named Plaintiffs. Rec. Doc. 142, 165. Defendants sought to compel purportedly untimely discovery responses, which resulted in Plaintiffs needing to divert time and resources to responding to the motion to compel rather than preparing the case. Rec. Doc. 112. Defendants' motion was ultimately denied as to all information that was work product and anything that would be otherwise discoverable at the appropriate time, which included the notes created by the expert witnesses. Rec. Doc. 153. Plaintiffs had to seek leave for additional interrogatories because Defendants refused to consent. Rec. Doc. 238, 255. Plaintiffs had to file a motion for contempt due to Defendants' failure to comply with a court order from a motion to compel discovery responses. Rec. Doc. 252. Plaintiffs had to file a motion to compel depositions for trial purposes of key staff who had been previously deposed for class certification purposes due to Defendants' refusal to consent to additional depositions. Rec. Doc. 297, 306.

There were other challenges. Plaintiffs were forced to amend the complaint twice due to shifting class representatives and the transient nature of prison litigation, including some individuals being offered incentives by Defendants for their withdrawal from the litigation. *See* Rec. Doc. 128, 154, 169, 201. The discovery deadlines had to be continued due to the heavy motion practice, which resulted in delay of the Liability Phase Trial to January 2022. *See* Rec. Doc. 150, 180, 195, 220, 269, 293, 352, 362, 370, 389. The parties also had two failed mediations at which the Defendants were plainly not in good faith, wasting enormous effort preparing and traveling for same. Defendants' obstreperous behavior forced not one but two trials: one for the Liability Phase and one for the Remedy Phase. *See* Rec. Doc. 203, 212; 390, 403. Plaintiffs had to defend against motions for summary judgment on both the ADA and 504 claims and the Eighth Amendment Claims. Rec. Doc. 413, 414, 427, 428, 516. Plaintiffs had to defend *Daubert* motions for all three of Plaintiffs' highly qualified experts. Rec. Doc. 393, 400, 437. In short, Defendants needlessly extended this litigation over years and thousands of person-hours, requiring time by counsel to respond and continue pushing the litigation forward.

### c) <u>Time Spent Investigating Conditions at DWCC</u>

This litigation began in 2016 in response to a flood of reports of grossly inadequate mental health care at DWCC and egregious reports of abuse of men housed there. Prior to filing suit, over the course of many months, counsel conducted dozens of detailed in-person interviews with individuals incarcerated at DWCC to investigate the claims of abuse and inadequate mental health care. Counsel also gathered documentation related to mental health care and requests for Administrative Remedy Procedures. Ex. 1 Bray Declaration. The case investigation further involved review of materials, research, and consultation with experts in correctional mental health, prison operations, and restrictive housing regarding standard of care and risk of harm. *Id.*

10

Investigating conditions inside a prison is normally expensive and cumbersome, but this prison was extraordinarily so. It is so remote[3] that very few lawyers go there at all, which likely has contributed to the lengthy history of abuse of the men who live there. The difficulty in the physical isolation of the prison was compounded by the interference of prison officials, who sought to obfuscate the claims of the men at the prison.  Clients reported that they were afraid of retaliation and some men were afraid to proceed with the litigation. Attorney Schwartzmann's name and address was seized by Defendant Nail and taken from a client, and one prisoner was disciplined for bringing a letter from another prisoner to his meeting with counsel—bringing a letter to counsel was "contraband."  All interviews with clients had to be conducted in person, because the men had virtually no phone access and no  other form of communications; many could not read or write, and others believed the mail was monitored so it would not be privileged. The in-person interviews were time consuming because of the extreme mental decompensation of some clients, making effective communication difficult. Follow up on reports of abuse and retaliation was time-consuming because it required seeking permission from the prison in writing, with requisite notice, of the person with whom counsel needed to speak, which generally built in a lag time of weeks. It was not until far into the case that attorneys were allowed to bring laptops into the prison to take notes on client visits; instead, notes had to be hand-written and then typed up subsequently. Ex. 1, Bray Declaration. In short, this case took months to work up from requests for assistance to filing because of the nature of the case, the nature of the clients, and the obstructive behavior of the Defendants. Counsel had an ethical obligation to ensure that allegations were correct and supported, and doing so in this case was simply more logistically difficult than any other on which

---

[3] Courts have recognized "that prison litigation can be particularly time-consuming, as counsel must travel to and from remote prisons to interview witnesses, and may devote many hours to following up on communication." *Cole*, No. 4:14-cv-1698 at *44-45. Wade is even more isolated than the average prison or jail facility; the nearest hotel is Minden or Ruston.

counsel have worked. The legal claims in this case were not the most challenging part; the legal claims and egregious harm were clear. The fact investigation and proof was the hardest part of this case, which is why so many hours were devoted up front to getting that correct.

### d)      Time Spent Preparing the Class Action Complaints

The second phase of the litigation consisted of filing the class action complaint. This work involved coordinating visits with the named Plaintiffs; seeking and obtaining information to finalize factual allegations and extensive research, writing, and revision in developing the complaint, which was filed on February 20, 2018. ECF No. 1. *See* Ex. 1,  Bray Decl.  Counsel in Louisiana later recruited Cohen Milstein Sellers & Toll, PLLC, a nationally renowned firm with expertise in plaintiff-side class action work, to ensure that the Class would have representatives fully versed in the nuances of class action law and procedure.

Plaintiffs later filed two amended complaints in this action. The first one on November 30, 2018, to add the Advocacy Center (currently named Disability Rights Louisiana) as a Plaintiff in the matter. Rec. Doc. 128, 154. The second on March 22, 2019 to remove Anthony Tellis as a named Plaintiff and add Carlton Turner, Damonte Henry, Ronald Brooks, and Larry Jones as named Plaintiffs. Rec. Doc. 169, 201. Subsequently, on May 20, 2019, Plaintiffs filed a Motion to Voluntarily Dismiss Damonte Henry due to his refusal to have contact with class counsel after a purported agreement he had with Col. Nail. Rec. Doc. 196.

### e)      Time Spent in Discovery and Motions Practice

The third phase of litigation consisted of discovery and motions practice following the filing of the class action complaint. Fact discovery in this case for class certification and the Liability Phase began in mid-2018 and ended in March 15, 2020. Fact discovery was reopened for the Remedy Phase beginning March 15, 2020 and ending June 30, 2022, which primarily included updated mental health records, updated master prison records, updated policies and procedures,

and a supplemental expert report. Discovery was reopened for a brief window in October 2022 to allow Plaintiffs an opportunity to seek discovery of allegations that conditions changed from June 30, 2022. Plaintiffs submitted nine additional requests for production and 18 additional interrogatories on facts alleged to be changed from June 30, 2022 through October 2022.

During the Liability Phase discovery, Plaintiffs propounded eleven separate requests for production comprising 153 distinct requests, along with nine sets of interrogatories comprising 34 distinct requests and a set of requests for admission. During the Remedy Phase, Plaintiffs propounded 18 distinct interrogatories and 35 distinct requests for production. Defendants, in turn, propounded a total of roughly 92 distinct requests for production and 38 interrogatories.  These discovery requests required extensive negotiation over the course of months, including detailed correspondence and several conferences—as well as four successful motions to compel production. Rec. Doc. 104 (Plaintiffs' First Motion to Compel), 133 (Plaintiffs' Second Motion to Compel), 204 (Order on Rec. Doc. 133), 297 (Motion to Compel Depositions), 318 (Plaintiffs' Third Motion to Compel), 357 (Plaintiffs' Fourth Motion to Compel). Through discovery, Defendants produced hundreds of hours of video (both body camera footage and tier camera footage), thousands of pages of master prison files, thousands of pages of mental health records, and hundreds of pages of policies and procedures.

In addition to pursuing and reviewing discovery, Plaintiffs conducted three separate site visits with their experts, and one such visit included a photographer. Plaintiffs conducted 31 depositions for the Liability Phase and 22 depositions for the Remedy Phase, including deposing both of Defendants' experts for each phase. Defendants insisted on conducting mental and physical examinations of 43 Plaintiff class members over counsels' objections that it was a misuse of that discovery device. Plaintiffs defended the depositions of 49 class members, and defended 4 separate

30(b)(6) depositions of Disability Rights Louisiana/the Advocacy Center. Expert reports for the Liability Phase were exchanged in January 2021 and for the Remedy Phase in November 2022.

Discovery is particularly challenging in prison cases. All relevant documents are in Defendants' sole possession, and Defendants are also in control of Plaintiffs and Class members themselves. Defendants' antiquated record keeping and disorganized production further contributed to the lengthy discovery process in this case: patient records are kept on paper and required extensive reorganization after being produced by Defendants.

Plaintiffs' major filings in this case included two amended complaints (Rec. Doc. 154 and 201), motions to compel production and memoranda in support (Rec. Doc. 104, 133, 297, 318, 357), a motion for class certification and memoranda in support (Rec. Doc. 2, 317, 397, 412), defending motions for summary judgment (Rec. Doc. 427, 428), defending Daubert motions for all three experts (Rec. Doc. 400, 410), and a motion for sanctions and memoranda in support (Rec. Doc. 243), as well as opposition memoranda to all of Defendants' motions. Plaintiffs filed their pre-trial findings of fact and conclusions of law prior to the Remedy Phase trial on January 9, 2023. Rec. Doc. 665. The Parties filed a number of joint motions, which sometimes involved extensive negotiation.  As this Court is painfully aware, this case has been extensively litigated.

### f)     Time Spent in Trial Proceedings

This Court held a bench trial for the Liability Phase on this matter beginning January 10, 2022 and ending on February 3, 2022. Because Plaintiffs' counsel are not a law firm with extensive resources, counsel enrolled additional attorneys solely for the purpose of this trial. There were dozens of exhibits, and Plaintiffs had to prepare to elicit testimony from a large number of witnesses, not knowing ahead of time when Defendants intended to call their witnesses. Ex. 1, Bray Declaration. The Liability Phase trial lasted sixteen days. At trial, Plaintiffs called 26 witnesses, including three experts, eight class members, and submitted depositions in lieu of live

testimony for seven witnesses. Defendants called a total of ten witnesses, each of whom Plaintiffs cross-examined and many of whom were recalled after Plaintiffs initially called them to testify. Each day of trial also involved considerable work outside the courtroom, including team review of the day, evaluation of the relevant legal issues, and late night preparation for upcoming witnesses. *Id.*

The Remedy Phase trial began January 17, 2023 and ended February 6, 2023. Notably, Plaintiffs were only represented at the Remedy Phase by two lawyers from DRLA, whereas Defendants at this point were represented by four lawyers. There were once again dozens of exhibits and Plaintiffs had to prepare to once again elicit testimony from a large number of witnesses without the benefit of knowing when Defendants intended to call their witnesses. The Remedy Phase trial lasted 14 days. At trial, Plaintiffs called 18 witnesses, once again including three experts and 3 class members, and submitted 5 depositions in lieu of live testimony. Defendants called a total of 8 witnesses, each of whom Plaintiffs cross-examined and many of whom were recalled after Plaintiffs initially called them to testify. Each day of trial also involved considerable work outside the courtroom, including team review of the day, evaluation of the relevant legal issues, and preparation for upcoming witnesses. *Id*.

### g)      Time Spent on Post-Trial Work

Following the Liability Phase trial, Plaintiffs filed their 179-page post-trial proposed findings of fact and conclusions of law on March 15, 2022 (Rec. Doc. 573).  Following the Remedy Phase trial, Plaintiffs filed their post-trial briefing on March 31, 2023 (Rec. Doc. 732) and a reply to Defendants' post-trial briefing on April 21, 2023 (Rec. Doc. 734).

### h)   <u>Time Spent on Motion for Fees and Costs</u>

"[I]t is well settled that fees-on-fees are recoverable under § 1988." *Volk v. Gonzalez*, 262

F.3d 528, 536 (5th Cir. 2001) (citing *Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985). Citing

the Third Circuit, the *Volk* Court stated:

> '[i]f Congress did not intend for attorneys to be fully compensated for their work
> on civil rights claims for prisoners, Congress needed to explicitly express an intent
> to change the established construction to authorize the diminishment of actual fees
> by not compensating attorneys for time . . . spent proving the right to attorney's
> fees.' We acknowledge that the language of § 1997e(d) is not identical to that of §
> 1988(b), yet we are comfortable with the Third Circuit's conclusion that there is no
> material difference between the language of these two provisions. Accordingly, we
> join that circuit in holding that fees-on-fees are "directly and reasonably incurred
> in proving an actual violation of the plaintiff's rights" and therefore recoverable
> under § 1997e(d).

*Volk*, 262 F.3d at 536 (quoting *Hernandez v. Kalinowski*, 146 F.3d 196,199-201 (3d Cir 1998)).

This analysis underscores the important public policy concerns supporting attorneys' fees

in prison cases. Absent the ability to recover fees for their time, including time spent proving the

right to attorneys' fees, it would be very difficult for attorneys to take on cases seeking to advance

the rights of indigent and marginalized people. Denial of fees-on-fees would dilute the award that

plaintiff's attorneys are statutorily authorized to recover, further discouraging attorneys from

bringing these difficult cases. *See, e.g.*, *Gagne v. Maher*, 594 F. 2d 336, 344 (2d Cir. 1979);

*Prandini v. Nat'l Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1978).

Plaintiffs' counsel spent a total of approximately 100 preparing the instant motion. Ex. 1-

A Bray Time; Ex. 2 Courson Time. This work included researching, drafting, editing, and revising

the motion and memorandum in support; gathering, organizing, and reviewing all time sheets, cost

records, and declarations from thirteen attorneys as well as multiple interns and paralegals;

researching attorney rates; reviewing and reducing law student intern hours; reviewing past filings

and notes to confirm hours expended; separating attorney hours by time period; calculating fee

amounts based on attorney hours and rates; calculating reduction of hours; and organizing and reviewing all costs and receipts. Ex. 1 - Bray Decl. This work was completed by Attorneys Bray, Courson, and Schwartzmann. *Id.*

### i) <u>Plaintiffs Obtained Excellent Results</u>

The Court ultimately ruled in favor of Plaintiffs on each of their legal claims but for the First Amendment claim. At core, this case is about the Eighth Amendment, the ADA and Section 504 conditions of confinement. The First Amendment claim was a minor component of the litigation and was only related to Plaintiffs' ability to communicate with counsel for the purposes of advancing the underlying Eighth Amendment, ADA and Section 504 claims. Counsel have removed all billing items specific to that claim from this fee petition.

Plaintiffs "obtained excellent results" overall, and Plaintiffs' attorneys therefore "should recover a fully compensatory fee…encompass[ing] all hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435. Plaintiffs' "fee award should not be reduced simply because [Plaintiffs] failed to prevail on every contention raised in the lawsuit." *Id.* Here, Plaintiffs are not seeking fees for the discrete First Amendment claim, which is easily segregable from the rest of the suit. This Court "should focus on the significance of the overall relief obtained by [Plaintiffs] in relation to the hours reasonably expended on the litigation." *Id.* Plaintiffs fully prevailed in the suit, and on every claim for which they seek fees and costs.

### j) <u>Plaintiffs May Recover Work by Law Student Interns and Paralegals</u>

Plaintiffs' request to recover fees for the legal work of interns and paralegals is reasonable. Hours of substantive legal work performed by interns and paralegals are compensable as attorneys'

fees,[4] and Plaintiffs have not included any legal assistant hours spent on administrative or purely clerical work. Ex. 1, Bray Decl.

### D.    The Reasonable Hourly Rates

As noted above, the "lodestar amount" is the product of the hours reasonably expended multiplied by the applicable hourly rate for the legal services. Thus, the Court must next determine the reasonable hourly rate.  A reasonable hourly rate is derived by "consider[ing] the attorneys' regular rates as well as prevailing market rates." See *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995).  Attorneys working for nonprofit legal organizations should recover rates at the prevailing market rate, not at cost.  *Blum v. Stenson*, 465 U.S. 886, 895 (1984).

### 1.    The Court Should Apply the Reasonable Hourly Rate in the Shreveport Market.

Based on the prevailing market rates in the community for attorneys of comparable skill, experience, and reputation in the Shreveport market, Plaintiffs' attorneys are requesting the rates in the range of $225 to $400 per hour for attorneys and an hourly rate of $108 for paralegal time.

Plaintiffs submitting declarations from attorneys who handle civil rights matters to support these rates.  Attorney William Most attested that he is an attorney with 13 years of experience who litigates civil rights litigation, including prisoner rights.  Mr. Most attests that he was recently awarded $350 per hour in another case in the Western District of Louisiana.  Ex. 11 at ¶ 12.  He also reviewed the rates set forth in this memorandum and attested that they are reasonable, appropriate, and within the range of prevailing market rates in this district.  *Id.* at ¶ 20.  Attorney Casey Denson also submitted a declaration.  She specializes in civil rights and employment cases. Ex. 12 at ¶ 3.  She graduated law school in 2010, *id.* at ¶ 1 and charges a billing rate of $375 per

---

[4] *See Vela v. City of Hous.*, 276 F.3d 659, 681 (5th Cir. 2001) ("Paralegal work can only be recovered as attorney's fees if the work is legal rather than clerical.").

hour, *id.* at ¶ 6. Attorney Garret DeReus also provided a declaration. Ex. 13. Mr. DeReus attests that he has been involved with over 300 cases alleging violations of the ADA and has litigated numerous cases in the Western District of Louisiana, so he is aware of the rates. *Id.* at ¶ 8. He states that he believes that $300 per hour for Ms. Bray, $350 per hour for Mr. Trunnell, and $250 per hour for Ms. Douglas would be reasonable rates. *Id.* at ¶ 18.

Plaintiffs are requesting $6,489,807.30 for a total of 21,474.97 hours, which is an average of only $303.20 per hour. The requested rates are consistent with rates employed by other courts in similar cases. The Western District has held attorneys' fees requests of between $250 to $325 per hour to be reasonable even a decade ago.

A reasonable hourly rate is to be calculated based upon the prevailing market rates in the community for attorneys of comparable skill, experience, and reputation. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The "relevant marked for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits[.]" *Scham v. District Courts Trying Criminal Cases*, 148 F.3d 554, 558 (5th Cir. 1998); *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002); *Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993).

Courts in the Western District of Louisiana have approved rates well within the range being sought by counsel in the instant case. Recent attorney fee awards or settlements in the Western District of Louisiana include: $325 and $250 (*Geiger v. Gravols Aluminum Boats, LLC*, No. 6:22-CV-00374, 2024 WL 1807954 (W.D. La. April 25, 2024)) (attorneys based in Lafayette); $250 and $200 (*Bachemin v. DDMS, LLC*, No. 22-CV-1976, 2023 WL 48665343 (W.D. La. July 31, 2023)) (attorneys based in New Orleans with 10 years experience in civil rights litigation and 5 years with little experience litigating FLSA cases, respectively); $160 (*Pitre v. City of Eunice*, No. 6:14-CV-02843, 2015 WL 4459964 (W.D. La. July 21, 2015)) (attorneys based in Lafayette, LA

19

with approximately 30 and 15 years of experience); $275 (*Dugas v. Mercedes-Benz USA, LCC.*, No. 6:12-CV-02885, 2015 WL 1198604 (W.D. La. March 16, 2015) (Lafayette-based attorney with 15 years of experience who originally requested $450 per hour)); $225 (*Campbell v. Harold Miller, Jr. Trucking & Paving, LLC*, Civ. No. 6:13-2840, 2014 WL 6389567 (W.D. La. Nov. 13, 2014)) (attorney based in Lafayette with approximately 20 years of experience); $200 and $185 (*Cash v. Unocal Corp.*, Civ. No. 6:04-1648, 2014 WL 2980589 (W.D. La. May 27, 2014)) (Metairie, Louisiana-based attorneys with approximately 30 and 15 years of experience); and $275 and $200 (*Roberts v. Vantage Deepwater Drilling, Inc.*, 2017 WL 2622693 (W.D. La. June 15, 2017)).

The Eastern District of Louisiana has found reasonable rates to include: $275 and $225 (*Grant v. Gusman*, No. 172797, 2023 WL 315937 (E.D. La. Jan. 19, 2023)) (attorney with 11 years experience and attorneys with 2-5 years experience, respectively); $400 and $275 (*Nelson v. Constant*, No. 1714581, 2021 WL 76407 (E.D. La. Jan. 8, 2021)) (attorney with over 30 years experience and 11 years experience, respectively); $190 (*Hornbeck Offshore Services, L.L.C. v. Salazar*, 2011 WL 2214765 (E.D. La. 2011)) (finding $190 to be a reasonable billing rate for an attorney with 2 years of experience and up to $420 to be a reasonable rate for more experienced attorneys); $180 (*Belfor USA Group, Inc. v. Bellemeade Partners, L.L.C.*, 2010 WL 6300009 (E.D. La. Feb 19, 2010)) (awarding $250, $210, and $180 to attorneys with 20, 10, and 4 years of experience, respectively); $175 (*Atel Mar. Investors, LP v. Sea Mar Mgmt., L.L.C*, 2011 WL 2550505 (E.D. La. June 27, 2011)) (awarding $175 for an associate with 2 years of experience); and $180 (*Construction South, Inc. v. Jenkins*, 2011 WL 3892225 (E.D. La. Sept. 2, 2011)) (awarding $180 an hour for an associate with 2 years experience).

Courts in other civil rights litigation in this circuit have awarded hourly rates higher than those requested here for attorneys who "are experienced in class action litigation and civil rights work," *Cole v. Collier*, No. 4:14-cv-1698 (S.D. Tex. June 8, 2018), 2018 WL 2766028, at *13, given the unique complexities inherent in such cases. For example, in 2018, the Southern District of Texas found that hourly rates ranging from $650 to $225 were "fair and reasonable for attorneys of [varying] experience" levels and that $150-185 for professional legal support staff and $100 for law clerks was reasonable.[5] That court noted that courts have found similar rates to be reasonable in other civil rights litigation.[6]

Plaintiffs' hourly rates are therefore consistent with market rates in the Western District of Louisiana and should be used in determining lodestar amounts.

2. **The PLRA Does Not Apply to Cap Rates Because the State Protection-and-Advocacy Agency is a Plaintiff.**

The Prison Litigation Reform Act provides a cap on the hourly rate that may be charged "in any action brought by a prisoner who is confined to any jail, prison, or other correctional facility." 42 U.S.C. § 1997e(d). A fee subject to the PLRA may not be "greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel." *Id.*

The PLRA cap does not apply because the state protection-and-advocacy agency, DRLA, is a plaintiff in this case, and DRLA is not "a prisoner who is confined to any jail, prison, or other correctional facility." When a state protection-and-advocacy agency is a party plaintiff suing under associational standing on behalf of its constituents, counsel representing the state P&A are not subject to the PLRA cap, even when joined as a co-plaintiff with prisoners. *See Alabama*

---

[5] *Id.*
[6] *Id.*

*Disabilities Advoc. Program v. Wood,* 584 F. Supp. 2d 1314, 1316 (M.D. Ala. 2008) (holding that PLRA did not apply because Alabama P&A "is clearly not a 'prisoner' under the statute"); *accord Trivette v. Tennessee Dep't of Correction,* No. 3:20-CV-00276, 2024 WL 3366335, at *19 (M.D. Tenn. July 9, 2024) (holding that the PLRA exhaustion requirement does not apply to claims brought by the Tennessee P&A because it is not a "prisoner").

A P&A organization asserts its own distinct claims, even though the work of the attorneys to prove those claims may not be logically separable from the work to enforce claims of prisoner co-plaintiffs. In *Trueblood v. Washington State Department of Social and Health Services,* a federal district court in Washington addressed a prison case squarely under the same set of facts as here and determined that the PLRA cap did not apply. No. C14-1178 MJP, 2015 WL 12030114, at *1 (W.D. Wash. June 22, 2015). The court wrote, "Disability Rights Washington litigated this suit on behalf of its constituents, and work on their behalf cannot be separated from work on behalf of the named Plaintiffs who are also class members. Therefore, it would be improper to reduce Plaintiffs' fee petition even if some Plaintiffs were subject to the PLRA's fee cap." *Id.* (internal citations omitted). Here, too, work by Plaintiffs' counsel to prove DRLA's claims are not logically from the claims brought by the prisoner plaintiffs. The Court should follow the reasoning of *Trueblood* and hold that the PLRA cap on hourly rates does not apply.

**3.      The ADA and Rehabilitation Act Claims are Not Subject to the PLRA Cap.**

If the Court disagrees with the caselaw above and determines that Plaintiffs' fees in this case are subject to the PLRA cap, the ADA and RA claims are not subject to that cap because they are governed by their own fee provisions, 42 U.S.C. § 12205 and 29 U.S.C. § 794. *See Cole v. Collier*, No. 4:14-CV-1698, 2018 WL 2766028, at *15 (S.D. Tex. June 8, 2018); *Armstrong v. Davis*, 318 F.3d 965, 974 (9th Cir. 2003).

### E. **Calculation of the Lodestar**

Multiplying the number of requested hours by the reasonable hourly rate, Plaintiffs request

$6,489,807.30 in attorney fees.

**Table C: Amount Requested for Attorneys' Fees**

| Team Member | Total Hours Sought | Standard Billing Rate | Total Sought |
|---|---|---|---|
| Melanie Bray (DRLA) | 5804.85 | $300 | 1,741,455.00 |
| J. Dalton Courson (DRLA) | 1172.5 | $400 | 469,000.00 |
| Jonathan Trunnell (DRLA) | 5023.8 | $300 | 1,507,140.00 |
| Emma Douglas (DRLA) | 2047.65 | $250 | 511,912.50 |
| Sarah Voigt (DRLA) | 252.38 | $400 | 100,952.00 |
| Emily Mueller (DRLA) | 550.95 | $225 | 123,963.75 |
| Ronald Lospennato (DRLA) | 909 | $400 | 363,600.00 |
| Katie Schwartzmann | 2622 | $400 | 1,048,800.00 |
| Bruce Hamilton (ACLU) | 434.015 | $400 | 173,606.00 |
| Robert Cobbs (Cohen Milstein) | 162.25 | $400 | 64,900.00 |
| Jamila Johnson (PJI) | 102.44 | $400 | 40,976.00 |
| Elena Malik (PJI) | 122 | $250 | 30,500.00 |
| Rebecca Ramaswamy (PJI) | 26.8 | $300 | 8,040.00 |
| Nishi Kumar (PJI) | 226.8 | $300 | 68,040.00 |
| Samantha Baslavage (PJI) | 134 | $250 | 33,500.00 |
| Other Interns / Paralegals | 1883.54 | $108 | 203,422.05 |

## III. **The *Johnson* Factors Weigh in Favor of an Upward Adjustment**

The lodestar amount of $6,489,807.30 calculated above is presumptively reasonable, *Watkins*, 7 F.3d at 457, but the Court has discretion to weigh the fee upward. "Such modifications are proper only in certain rare and exceptional cases supported by both specific evidence on the record and detailed findings by the lower courts." *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993) The Fifth Circuit enumerate twelve factors in *Johnson v. Georgia Highway Express*,

488 F.2d 714, 717–19 (5th Cir. 1974), to consider an adjustment to the lodestar.  Here, consideration of the twelve factors weighs in favor of adjusting the lodestar upward.  *Id.* at 717-18.

As this Court recently summarized:

> The twelve *Johnson* factors are: 1) the time and labor required for the litigation; 2) the novelty and complexity of the questions; 3) the skill required to properly litigate the issues; 4) whether the attorneys had to forego other work to litigate the case; 5) the attorney's customary fee; 6) whether the fee is fixed or contingent; 7) whether any time constraints were imposed by the client or the circumstances of the case; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) whether the case was "undesirable"; 11) the nature and length of the attorney-client relationship; and 12) awards made in similar cases. *Johnson*, 488 F.2d at 717-19. The lodestar may not be adjusted due to a Johnson factor, however, if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting. *Saizan v. Delta Concrete Prod. Co*., 448 F.3d 795, 800 (5th Cir. 2006) "The Supreme Court has twice made clear that the most critical factor in determining the reasonableness of a fee award in a civil rights suit is the degree of success obtained." *Migis*, 135 F.3d at 1047 (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)) (internal citations omitted).

*Revell v. Prince Preferred Hotels Shreveport, LLC*, No. CV 21-882, 2024 WL 3625214, at *3 (W.D. La. Aug. 1, 2024) (Foote, J.).

Applying the *Johnson* factors here weighs in favor of an upward adjustment.

### 1.    Time and Labor Required

In considering the time and labor required to litigate this case successfully, this Court should take into account the size of the class; the confinement of class members in a maximum security facility located in a remote area; the logistical complications involved with the class members; the mental health conditions of the class members and the fact that several faced life-threatening deterioration during the course litigation, resulting in death of at least 2 clients by suicide; the difficulty of maintaining regular communication with class members who are incarcerated; the scope of Plaintiffs' claims; the voluminous and detailed discovery; the litigation

tactics of the Defendants; and the complex nature of mental health, conditions of confinement, and ADA claims.

Courts have recognized "that prison litigation can be particularly time-consuming, as counsel must travel to and from remote prisons to interview witnesses, and may devote many hours to following up on communications from Class members, to whom they owe significant duties under Rule 23." *Cole*, 2018 WL 2766028, at *13.  This case has been and will continue to be extremely logistically difficult for Plaintiffs' counsel. It was undertaken and doggedly litigated despite those challenges.

### 2.      Novelty and Difficulty of Issues

While the questions presented in this litigation are not entirely novel, they were difficult for several reasons. First, conducting a comprehensive investigation of a mental health system within a maximum-security prison presents obvious challenges related to access and transparency. See Exh 1, Bray Declaration & Exh 3, Schwartzmann Declaration. Litigation involving clients who are incarcerated in a remote location presents challenges in logistical issues involving security protocols and correctional staff shortages, which can make visiting and communicating with clients very difficult and time-consuming. All evidence was wholly within Defendants' control, and could only be obtained through careful and perseverant discovery. Witnesses to the unconstitutional mental health care and conditions of confinement at DWCC faced the constant concern of retaliation, to which they were uniquely vulnerable as class members under the direct and exclusive custody and control of the parties against whom they were litigating.

Second, Plaintiffs' claims of inadequate mental health care—including improper screening, improper treatment, inappropriate follow-up, etc.—are complex and specialized, requiring not only mental health expertise but expertise in correctional mental health specifically. Expert observations and opinions had to be extensively documented and meticulously nuanced,

with the difference between standard care and unconstitutional care sometimes boiling down to the time of day a medication is administered or whether a mental health note indicates the reason for the contact. The voluminous mental health and master prison records had to be meticulously analyzed, sorted, and compared to form a complete picture for an individual in order to demonstrate how the conditions of confinement and the lack of mental health care are intertwined.

Similarly, litigating claims under the ADA is a complex, specialized endeavor involving the application of an intricate regulatory and statutory framework.

### 3.   Skill Required to Perform Legal Services

The legal services involved in this action demanded a high level of skill, including expertise in constitutional law, ADA law, mental health and correctional practices, and class action procedure. The matter has also required a full range of legal services: extensive factual investigation, years of counseling clients about their legal options, intricate negotiations, complex and copious written filings, and high-stakes trial presentation. While Plaintiffs' attorneys have varying levels of experience, each applied their skill and energy to the greatest extent in each task. Plaintiffs submit that the unusual and complex nature of this litigation demanded exceptional intellect, creativity, and advocacy skills to vindicate Plaintiffs' rights.

### 4.   Preclusion of Other Employment

While litigating this action, because of the significant time demands it entailed, counsel were largely precluded from taking on other work and cases for extended periods. "This guideline involves the dual consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." *Johnson*, 488 F.2d at 718. In this case, counsel was unable to pursue other pressing advocacy and litigation work that arose due to the demands of this case, which for some counsel included

foreclosing possibly more lucrative or more targeted, easily evidenced cases due to the commitment to the clients in this action. This litigation consumed a large amount of precious resources from Disability Rights Louisiana for the last seven years. Disability Rights Louisiana did not file a single new class action case in 2018, 2019, 2020, 2021, 2022, or 2023, mainly due to the extraordinary demands of this litigation.  Ex. 1, Bray Declaration.

### 5. <u>Customary Fee</u>

Counsel's respective standard hourly rates are discussed *supra*.

### 6. <u>Nature of Fee</u>

Counsel has received no compensation from any client for this matter. It has been undertaken on a purely pro bono basis. This representation was a great financial risk to the individuals and organizations who undertook it, given the consuming nature of the litigation and the expense of travel and time required, and yet was undertaken *pro bono*. This factor weighs heavily in favor of Plaintiffs' attorneys' fees motion.

### 7. <u>Time Limitations Imposed by the Client or the Circumstances</u>

The time limitations imposed by the circumstances of the litigation as well as the remote location of and difficulty in accessing the clients in this litigation were significant. Named Plaintiffs and many class members suffer from mental health conditions that presented a great risk of deterioration, particularly due to the conditions of confinement which can rightly be referred to as mental and physical torture. *See* Rec. Doc. 641. The urgency of their need is literally a matter of life and death, as evidenced by the 2 completed suicides since this litigation was initiated. Counsel was required to work with a great sense of urgency, despite the logistical challenges explained *Supra*.

### 8.        <u>Results Obtained</u>

"[T]he most critical factor in determining the reasonableness of a fee award in a civil rights suit is the degree of success obtained." *Migis v. Pearle Vision, Inc.,* 135 F. 3d 1041, 1047 (5th Cir. 1998) (internal quotations omitted).   There can be no question but that counsel herein obtained truly excellent results. Here, this Court found following the Liability Phase trial that "Defendants, in their official capacities, are violating the Eighth Amendment rights of the Class and the ADA and RA rights of the Subclass." Liability Opinion, Rec. Doc. ECF No. 641 at 163. This Court found that "the conditions on the South Compound rise to the level of an Eighth Amendment violation due to the psychological harms of solitary confinement, the physical composition of the South Compound, the length of time an inmate remains on extended lockdown, the treatment of the mentally ill, and DWCC's disciplinary practices on the unit." *Id.* at 163-164. The Court additionally found Eighth Amendment violations regarding the delivery of mental health, specifically, the Court found "constitutional violations in the screening and evaluation processes, mental health treatment options available to inmates (and the lack thereof), the lack of adequate mental health staffing, the lack of safeguards for the administration of psychotropic medications, the inaccuracy and insufficiency of medical records, and the failures of the suicide prevention program." *Id.* at 164. Regarding Plaintiffs' ADA claims, this Court found that that there are no reasonable accommodations for inmates with mental illness in the extended lockdowns units at DWCC, nor are there reasonable accommodations related to discipline and the use of force on those with mental illness. *Id.* This Court additionally held that the  mental health staff should be involved in the classification system, but are not. *Id.*

The above list of the Court's findings in Plaintiffs' favor is not exhaustive. Plaintiffs obtained an excellent result in this litigation which will literally save lives. This weighs heavily in favor of the requested fees.

### 9.   Experience, Reputation, and Ability of the Attorneys

Plaintiffs' counsel in this litigation are highly reputable and capable attorneys with extensive experience. Attorneys Schwartzmann and Courson have been practicing for 21 years. Attorney Schwartzmann is one of the most qualified prison and civil rights litigators in the State. Ex. 3, Schwartzmann Decl. Courson brings decades of high stakes litigation experience to Plaintiffs' advocacy.  Ex. 2, Courson Decl. Attorney Bray, who has assumed lead counsel role in this litigation, has 8 years of experience and is now serving as DRLA's Director of Legal Programs and Advocacy. Leaders at DRLA, attorneys Voigt and Lospennato have 30 and 40 years of experience, respectively.   Other attorneys on this matter have between three and 17 years of experience, as evidenced by their declarations. *See* Ex. 4-10. Combined, Plaintiffs' attorneys have over 188 years of experience practicing law, an impressively high average of over ten years per individual attorney.

### 10.   Undesirability of the Case

Unfortunately, this action is a quintessential example of an undesirable case. Litigation of prison reform cases has long been recognized to be undesirable litigation from an economic perspective. See, e.g., *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995) ("The predominant reason institutional reform plaintiffs usually have difficulty finding counsel, as the Supreme Court observed in connection with contingent-fee arrangements, is that 'in any legal market where the winner's attorney's fees will be paid by the loser . . . attorneys [are likely to] view [the] case as too risky (i.e., too unlikely to succeed).'") (citing *City of Burlington v. Dague*, 505 U.S. 557, 564 (1992)).   Public contempt for patients who are incarcerated, particularly those serving long sentences, combined with the litigation constraints imposed by the PLRA, the time and expense involved in traveling to DWCC's remote location and bringing these claims, and the expectation that the case would take several years to reach a liability judgment (with years more of remedial

litigation and oversight if successful), made this case a daunting one even within the civil rights community. This Court is uniquely aware of how difficult it is for incarcerated litigants to obtain counsel based on the number of cases out of DWCC and other facilities that are filed and proceed *pro se*.  It has taken eight years, tens of thousands of attorney hours, thousands of dollars of expenses, only to reach this point. No private counsel could possibly have undertaken the financial risk or temporal commitment of this litigation. This factor militates strongly toward an upward adjustment of the lodestar. Counsel undertook a highly undesirable case at great personal and professional expense, because it was the right thing to do.

### 11.   Nature and Length of the Professional Relationship with the Clients

Counsel began meeting with individuals incarcerated at DWCC more than eight years ago to investigate reports of inadequate mental health care. In carrying out this work, Counsel made regular trips—at times monthly and sometimes weekly—to DWCC to meet with Plaintiffs and class members and carry out other tasks of the litigation and communicated by mail and telephone with Plaintiffs and class members regularly. Later, counsel was able to arrange phone calls during the active period of the litigation. Due to the highly personal and high-stakes nature of Plaintiffs' and class members' interest in this action, Counsel have developed meaningful, long-lasting professional relationships with Plaintiffs and class members. Counsel advocates for Plaintiffs' health, safety, and wellbeing in every way professionally possible and maintains relationships with Plaintiffs' family members and loved ones regularly.

### 12.   Awards in Similar Cases

The rates awarded in similar cases are discussed *supra* in Section D.

### 13. Johnson Factors Confirm Lodestar Amount and Support an Upward Adjustment in the Lodestar Amount

In light of the previously discussed factors, the lodestar amount for each attorney and paralegal is a fair and justified remedy to award to Plaintiffs.

Plaintiffs respectfully submit that an upward adjustment is warranted here because of the extraordinary results achieved. *See, e.g.*, *Ginest v. Bd. of Cnty. Comms. of Carbon Cnty.*, 423 F. Supp. 2d 1237, 1240 (D. Wyo. 2006) (awarding 25% enhancement where counsel achieved "excellent results" by obtaining "substantial long-term relief that has resulted in a remedial plan designed to address and provide for medical care and like concerns for inmates who are incarcerated"); *see also Cole v. Collier*, No. 4:14-CV-1698, 2018 WL 2766028, at *15 (S.D. Tex. June 8, 2018) (applying multiplier per *Johnson* factors to approve settlement).

## IV. Plaintiffs are Entitled to Recover Reasonable Costs

As the prevailing party, Plaintiffs are entitled under 42 U.S.C. § 1988 and 42 U.S.C. § 12205 (the ADA fee-shifting provision) to reimbursement for the reasonable costs incurred in pursuing the litigation, excluding items which constitute routine office overhead. In this case, Plaintiffs were careful to meticulously document expenditures associated with the litigation.

The bulk of the costs incurred consist of fees for expert witnesses. 42 U.S.C. § 12205 expressly authorizes the district court to award "litigation expenses," which courts have held to permit recovery of reasonable expert fees. *Gilmore v. Audubon Nature Inst., Inc.*, 353 F. Supp. 3d 499, 517 (E.D. La. 2018); *Gilmore v. Elmwood S., L.L.C.*, No. CIV.A. 13-37, 2015 WL 1245770, at *7 (E.D. La. Mar. 18, 2015); *Lovell v. Chandler*, 303 F.3d 1039, 1058-59 (9th Cir. 2002). The Court's opinions in both the liability and remedy phase trial recognized the expertise and credibility of Plaintiffs' experts—Dr. Kathy Burns, Dr. Craig Haney, and Dan Pacholke. Proof of

the Plaintiffs' ADA claim was intertwined with the other claims and is not separable. *See, e.g.,* Rec. Doc. 754 at 168 (referring to Dr. Burns's testimony during analysis of ADA claim).

The costs of litigation are also permitted under Federal Rule of Civil Procedure 54(d)(1) to the prevailing party. Plaintiffs are timely submitting a bill of costs to collect taxable amounts authorized by 28 U.S.C. § 1920 for amounts recoverable under that statute. Plaintiffs respectfully incorporate that bill of costs herein so that the Court, if it prefers, may address those costs through its consideration of this motion rather than through the Bill of Costs. Additionally, PJI necessarily incurred costs during their course of representation in the amount of $496.70, which are included with Nishi Kumar's declaration in **Exhibit 9.**

**Table D: Costs**[7]

| Expense Category | Costs |
|---|---|
| Category 1: Transcripts and Deposition Fees (included in Bill of Costs) | $44,361.23 |
| Category 2: Expert Costs | $419,495.02 |
| Category 3: Hotels / per diem / meals / fuel / car rentals | $33,644.24 |
| Category 4: Postage and Document Delivery to the court | $1,995.92 |
| Category 5: Data Processing / Data Entry for Discovery Review | $26,496.10 |
| Category 6: Copies necessarily obtained for the case (included in Bill of Costs) | $10,598.59 |
| PJI Necessary Costs (*See* Exhibit 9) | $496.70 |
| | **$537,087.80** |

Plaintiffs' costs are listed in the table above and detailed in Exhibits 14; 14-A through 14-D. Plaintiffs seek a total of **$537,087.80** in cost reimbursement.

---

[7] Ex. 14 - Plaintiff Costs and Fees; Ex. 14-A-D supporting documentation.

## V.     __CONCLUSION__

For the foregoing reasons, Plaintiffs respectfully request that this Court award attorneys' fees and costs in this matter at **$6,489,807.30** in fees and **$537,087.80** in costs.

Respectfully submitted this 17th day of August, 2024,

_/s/ Melanie A. Bray_____
Melanie A. Bray, La. Bar No. 37049
J. Dalton Courson, La. Bar No. 28542
Disability Rights Louisiana
_formerly known as the Advocacy Center_
8325 Oak Street
New Orleans, LA 70118
504-208-4151
504-272-2531 (fax)
mbray@disabilityrightsla.org
dcourson@disabilityrightsla.org

## __CERTIFICATE OF SERVICE__

I certify that, on the 17th day of August, 2024, the foregoing Plaintiff's Motion for Attorneys' Fees and Costs was filed electronically and that it is available for viewing and downloading on the court's CM/ECF system by all parties.

/s/ Melanie Bray_____
Melanie Bray, La. Bar No. 37049