UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| BRUCE CHARLES, on behalf of himself and all other similarly situated prisoners at David Wade Correctional Center, | * * * | CIVIL ACTION NO.: 5:18-CV-00541-EEF-MLH |
| | * | |
| and | * | JUDGE ELIZABETH E. FOOTE |
| | * | |
| THE ADVOCACY CENTER, | * | USMJ MARK L. HORNSBY |
| | * | |
| PLAINTIFFS, | * | CLASS ACTION |
| | * | |
| VS. | * | |
| | * | |
| JAMES M. LEBLANC, *et al.*, | * | |
| | * | |
| DEFENDANTS. | * | |

## DECLARATION OF MICHAEL W. BIEN

I, Michael W. Bien, declare:

1.    I am a member of the Bar of this Court and a partner of the firm Rosen, Bien & Galvan LLP.  I have personal knowledge of the matters set forth herein and if called as a witness I could competently so testify.

2.    I submit this Declaration in support of Plaintiffs' Motion for Attorneys' Fees and Costs (ECF No. 805).  For purposes of this declaration I have reviewed the billing records of Plaintiffs submitted in connection with their First Motion and Supplemental Motion and all supporting documentation, and other case materials from the instant action.

3.    To assist the Court in understanding my qualifications for my opinion, I provide below a summary of my qualifications as an attorney with expertise in class action prisoner litigation and attorneys' fees litigation in civil rights cases.

4.    Upon graduation from Northwestern University School of Law in 1980, I joined the law firm of Brobeck, Phleger & Harrison in San Francisco, California.  I was elected to

1

partnership at Brobeck in 1987.  In December 1990, I left Brobeck and formed the law firm, Rosen, Bien & Asaro (which became Rosen, Bien & Galvan in 2006), where I am managing partner.  I have worked exclusively in litigation throughout my career.  The vast majority of my time has been spent on complex litigation in the state and federal courts, usually involving issues of state and federal antitrust laws, class actions, unfair competition, civil rights, disability rights, intellectual property, attorneys' fees or banking law.  Throughout my career, both at Brobeck and with my current firm, I have always represented commercial fee-paying clients in various complex business litigation matters.

5.      I have received numerous awards and instances of peer recognition for my litigation work, including but not limited to, Martindale Hubble A-V rating, repeated selection for the Northern California "Super Lawyer" list in Civil Rights, First Amendment, and Business Litigation, and a 2010 CLAY Award. I have been named by the San Francisco and Los Angeles Daily Journal to its list of the Top 100 Lawyers in California more than ten times – in 2010, 2013, and 2015 to 2023. I have been recognized by Best Lawyers in America for Commercial Litigation since 2013. In 2021, the Daily Journal named me as one of California's Top Lawyers of the Decade.

6.      I have extensive experience in civil rights litigation, particularly involving prison and parole systems.  My firm and I also handle employment and consumer class actions.  I have been lead or co-lead counsel in major civil rights class actions, mostly representing a prisoner or classes of prisoners, or persons with disabilities.  These cases include:

- *National Federation of the Blind v. Uber*, No. 14-cv-4086 NC (N.D.Cal.), class action brought under the Americans with Disabilities Act on behalf of persons who are blind or low-vision and use service animals;

- *Lyft, Inc.*: My law firm represents the National Federation of the Blind and blind individuals in structured negotiations with Lyft, Inc. concerning access to Lyft transportation services for riders with service animals, which resulted in a comprehensive nationwide agreement in January 2017 subject to my law firm's and co-counsel's ongoing compliance monitoring;

- *Hernandez v. County of Monterey*, 5:13-CV-2354-PSG (N.D.Cal.), a class action brought under the 8th and 14th Amendment to the United States Constitution, the ADA, the Rehabilitation Act, and state law on behalf of inmates at the Monterey County Jail. The case achieved a comprehensive class settlement to improve access to services for inmates at the Jail;

- *Gates v. Deukmejian*, No.91-15270 (9 Cir.), (N.D.Cal.), class action brought under the 8th Amendment and the Rehab Act on behalf of all prisoners at the California Medical Facility at Vacaville that achieved a comprehensive settlement that included improved access to medical and mental health care and access to programs and services for inmates with HIV;

- *Brown v. Plata/Coleman*, 131 S.Ct. 1910 (2011), , a class action brought under the 8th and 14th Amendment on behalf of all California prisoners with serious mental illness, resulting in statewide injunctive relief after trial, 912 F.Supp. 1282 (E.D.Cal. 1995), and subsequent remedial process including a three-judge court trial ordering population reduction affirmed by the Supreme Court in 2011;

- *Hecker v. California Dep't of Corrections and Rehabilitation*, 2:05-cv-2441-KLM-DAD (E.D.Cal.), an ADA and Rehab Act class action lawsuit against the California Department of Corrections and Rehabilitation on behalf of all prisoners with psychiatric disabilities, which achieved a statewide settlement, including several significant statewide policy changes to end discriminatory practices and guarantee equal access to programs and services;

- *L.H. v. Schwarzenegger*, 2:06-2042-LKK-DAD (E.D.Cal.), a class action under the 8 and 14 Amendments, the ADA, and the Rehab Act on behalf of all juvenile wards and parolees in California's Department of Juvenile Justice that resulted in an agreement from the State to implement practices and procedures to ensure that juvenile parolees receive fair hearings;

- *Greener v. Shell Oil Co.*, 3:98-CV-2425-BZ (N.D.Cal.), a national ADA class action brought to ensure physical access for people with disabilities at gas stations that resulted in a comprehensive national settlement;

- *Berkeley Center for Independent Living v. Oakland Coliseum*, 3:96-cv-3649-WHO (N.D.Cal.), a successful federal court ADA action on behalf of a class of individuals with disabilities for damages and injunctive relief against the Coliseum, its public entity owners, and all sports teams and entertainment companies operating there;

- *Sabata v. Nebraska Department of Correctional Services*, 4:17-cv-3107-RFR-MDN (D.NE.), a class action lawsuit against the Nebraska Department of Correctional Services and Nebraska Board of Parole, challenging the conditions of confinement in Nebraska's severely overcrowded and understaffed prison system, including constitutionally inadequate medical, dental and mental health

3

care, and the failure to provide reasonable accommodations to prisoners with disabilities.

7.     I also have extensive experience in attorneys' fees litigation.  My experience in attorneys' fees litigation includes extensive negotiation, mediation, motion practice, evidentiary hearing and appellate work in both state and federal courts.  I have served as lead counsel or specially retained fees counsel and as an expert witness on numerous attorneys' fees issues.

8.     My firm and I have represented numerous law firms and not-for profits in attorneys' fees matters in federal court.  These cases include but are not limited to a number of prisoner and disability related cases, such as such as *Armstrong v. Davis*, 318 F.3d 965 (9th Cir. 2003)*, National Federation of the Blind v. Uber Technologies, Inc.*, No. 14-04086, Doc. 203(N.D. Cal. Nov. 8, 2019)*; L.H. v. Brown*, 848 F. Supp. 2d 1141 (E.D. Ca. 2011); *Armstrong v. Brown*, 805 F. Supp. 2d 918 (N.D. Cal. 2011); *L.H. v. Schwarzenegger*, 645 F. Supp. 2d 888 (E.D. Cal. 2009), as well as other civil rights cases, including *Shaw v. San Joaquin County*, No. 01-cv-01668 DFL-PAN (E.D. Cal. July 6, 2006) (awarding over $1 million in fees to trial counsel who prevailed by jury verdict in jail suicide case); *Marques v. Bank of America*, C96-1932 TEH (N.D. Cal. Jan. 23, 2004) (awarding over $1 million in fees in age discrimination case on behalf of terminated bank vice president); *Curls v. Union Pacific Railroad Co.*, CIV-S-99-2514 MCE/GGH (E.D. Cal. Sept. 8, 2003) (awarding trial counsel fees and expenses after jury verdict in favor of railroad employee subject to race-based retaliation); *Williams v. San Francisco Housing Authority* (N.D. Cal. No. C-90-2150 CAL, MJJ, 1993) (representation of disability rights and tenants' rights organization in class action to remove barriers to access public housing programs, secured fee award for merits counsel and the establishment of a periodic fees process for compliance work); *Reyes v. City of Dinuba* (E.D. Cal. No. CV-F-91-168 REC, 1994) (securing fees for prevailing trial counsel in Voting Rights Act challenge); *Holland v. Roeser*, 37 F.3d 501 (9th Cir. 1994) (securing fees for merits counsel in due process challenge to vehicle impoundment policies); *Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir.

1993); *Gates v. Rowland*, 39 F.3d 1439 (9th Cir. 1994); *Gates v. Gomez*, 60 F.3d 525 (9th Cir. 1995).

9.      As managing partner of a firm, it is my responsibility to set my firm's rates at least once per year.  I also manage the process of sending bills to my clients and engage in frequent discussions with fee paying clients about rates and billing practices.  I have become familiar with the rates charged and the billing and work practices of lawyers in California and around the country in many ways: (1) from my own considerable involvement in attorneys' fees litigation and expert consultations and testimony; (2) by discussing attorneys' fees, billing, and work practices with other attorneys; (3) by representing other attorneys seeking fees; (4) by obtaining declarations from other attorneys regarding market rates, attorneys' fees, billing and work practices; (5) by reviewing surveys, legal newspapers, reported decisions, and treatises regarding prevailing attorneys' rates, fees, billing and work practices; (6) by reviewing attorneys' fees applications and awards in other cases, as well as unpublished decisions; (7) by reviewing rates charged by, and billing and work practices of, other firms that my firm has retained or associated with; and (8) by conducting research in my preparation for testimony as an expert.

10.     I have decades of experience in litigating complex federal civil rights cases involving prisoners, including a number of cases against the California Department of Corrections and Rehabilitation ("CDCR").  Civil rights cases involving prisoners are especially difficult and complex.  *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (noting that "the issues in prisoner civil rights cases are extremely complex and thus require experienced and sophisticated counsel.").  Because of the requisite skill required to handle such cases, and the economic impediments to advance the time and money to pursue them, few lawyers are willing or able to take these cases. These cases are exceedingly difficult to litigate for a number of reasons.

11.     First, clients in prison are difficult to reach and communicate with, given the myriad restrictions on access to incarcerated persons, and the remote locations where prisons are built.  This seems to be true in this case where Wade Correctional Center is far from a major

metropolitan center and, given that the class members are often held in solitary confinement, the clients are completely isolated from the outside world. Prisoners are often transferred to a different prison without warning to an attorney. Unlike a client who is a free person, attorneys for prisoners cannot just pick up the phone and speak to their client at any time. Instead, attorneys often have to use the time-consuming and tedious process of writing back and forth to an incarcerated client. Neither, of course, can an incarcerated client come meet with the attorney at his or her office. Instead, the attorney must travel to the prison, which is situated in a remote area that is several hours drive from the Plaintiffs' attorneys in this case. Furthermore, in order to speak with the client in person, the attorney has to navigate the prison's security apparatus to schedule meetings and get security clearance to enter the prison.

12.     I also know from my experience from litigating complex civil rights cases involving prisoners that significant challenges arise because the law in these cases is often on the cutting edge and is not well defined. Each stage of the litigation presents difficulties not present even in other areas where the law is substantively complex. Very few lawyers are willing to litigate such cases and many are litigated pro se, meaning that there is little published case law to guide counsel. Complex and often novel questions of constitutional law, statutory construction, and federalism arise in a number of contexts. Proving up illegal practices at summary judgment and trial requires extensive work with experts in various fields. This means that even more time is required to litigate such a case.

13.     I have reviewed the timesheets submitted by Plaintiffs' counsel in connection with the Motion for Attorneys' Fees and Costs. It is my opinion that counsel's billing practices comport with standard billing patterns and practices employed by law firms as well as plaintiff attorneys working on prisoner class action cases.

14.     It is my opinion that the number of hours devoted to this matter by counsel is reasonable considering the complexities of prisoner litigation and the breadth of the action, which involved myriad rounds of motion practice, numerous depositions and other discovery, two trials comprising weeks of testimony, among other things, which spanned multiple phases of

litigation over eight years. Furthermore, given the state of Eighth Amendment law – especially in the Fifth Circuit – proving such a violation is very difficult. It is my opinion that a fee-paying client would pay for the work performed in connection with this matter.

15.     The reasonableness of hours billed on a case is also influenced by the Defendants' unduly litigious tactics in the case which required Plaintiff to perform a significant amount of work that would have otherwise been unnecessary. For instance, obtaining certain discovery required filing many motions to compel. Defendants did not agree to allow Plaintiffs' counsel to meet with class members in a private setting requiring litigation that was unnecessary. Plaintiffs had to file for a temporary restraining order because Defendants refused to allow counsel to meet with any prisoners other than the named Plaintiffs. It is my opinion that many of the hours billed by Plaintiffs are thus a product of Defendants' own conduct.

16.     It is evident from the time sheets that plaintiffs' counsel (and paralegals and staff) spent a lot of time maintaining contact with their clients. In a class action case, the attorneys for the Plaintiffs ("class counsel") are legally and professionally obligated to maintain active and current communication with their clients, the named class representatives and members of the certified class, people incarcerated in the David Wade Correctional Center. According to Rule 23, they "must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). A major duty is maintaining communication with class members to inform them of court proceedings, to answer their questions about the progress of the case and ensuring that no members become legally antagonistic to each other. They also must notify the class of important rulings in the case as well as any request for fees by class counsel. Moreover, counsel must inform class members of the pendency of the class action, any proposed settlement, and the involvement of class members at trial. Class members also provide important information to class counsel about what is happening in the prison and in their lives that can provide the factual basis for discovery, motions and additional court-ordered relief. Fulfilling these duties is never easy but it is most difficult when your clients are incarcerated. Hence, the hours expended on

this front is understandable. In my opinion, the time spent by plaintiffs' counsel on communications with their clients: letters, visits, phone calls, was necessary and appropriate.

17.    I notice that class counsel expended time looking for special master candidates. This time was reasonable and necessary. It is very difficult to find capable candidates with the skills and experience necessary to perform the duties of a special master in a prison case. A good special master is very important - to both sides of the case and the Court. Special masters must be able to maintain trust with both defendants and plaintiffs, must have knowledge of the subject matter such that they are familiar with the legal obligations of prison administration as well as the state of the law involving protections for those in jail generally, and solitary confinement in particular. Given their integral role in class actions, it is my opinion that the time expended by counsel in finding able candidates was time well spent.

18.    It is my opinion that a fee enhancement over the lodestar is warranted in this case under *Perdue v. Kenny A.*, 130 S.Ct. 1662 (2010), given the extraordinary results obtained by Plaintiffs' counsel, along with the delay in the payment of fees, for which Defendants are partially responsible. As noted above, Plaintiff's counsel in this case navigated through many factual and legal hurdles over a period of eight difficult years. Defendants could have resolved through mediation by agreeing to provide constitutional medical care to prisoners including accommodations to prisoners with mental illness, but instead took this case through two trials comprising weeks of testimony with dozens of witnesses. Such an enhancement will ensure that prisoners with meritorious cases in the future will be able to attract competent counsel, as is the goal of the fee shifting statutes in the first place.

19.    It is my opinion that Plaintiff exercised significant and appropriate billing judgment in submitting his initial fee application. I understand that counsel excised almost 3,000 hours for (i) time devoted to administrative matters, (ii) time devoted to the First Amendment claim, and (iii) time was trivial, duplicative, or excessive. These reductions were reasonable and demonstrated the exercise of proper billing judgment.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 27th day of June, 2025 at San Francisco, California.

Michael W. Bien